[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

Dorothy L. Reddic )
 )
_____, )
 )
**Plaintiff(s),** )
 )
vs. )  **Case No.** 18·50043
 )
James T. Dimas, Secretary )
IDHS )
Bruce Rauner, Gov. )
State of Illinois )
**Defendant(s).** )

# FILED

FEB -2 2018

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS

*This form complaint is designed to help you, as a* pro se *plaintiff, state your case in a clear manner. Please read the directions and the numbered paragraphs carefully. Some paragraphs may not apply to you. You may cross out paragraphs that do not apply to you. All references to "plaintiff" and "defendant" are stated in the singular but will apply to more than one plaintiff or defendant if that is the nature of the case.*

1.  This is a claim for violation of plaintiff's civil rights as protected by the Constitution and

    laws of the United States under 42 U.S.C. §§ 1983, 1985, and 1986. Rehabilitation Act of 1973
    Americans with Disabilities Act of 1990
2.  The court has jurisdiction under 28 U.S.C. §§ 1343 and 1367. 34 CFR Part 361

3.  Plaintiff's full name is Dorothy Lynette Reddic .

*If there are additional plaintiffs, fill in the above information as to the first-named plaintiff and complete the information for each additional plaintiff on an extra sheet.*

1335 4th Ave
Rockford, IL 61104
815·200·9730

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

I.   **Plaintiff(s):**

A.   Name: _Dorothy Lynette Reddic_

B.   List all aliases: _Dorothy Reddic_

C.   Prisoner identification number: _N/A_

D.   Place of present confinement: _N/A_

E.   Address: _1335 4th Ave Rockford, IL 61104_

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

II.  **Defendant(s):**

(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

A.   Defendant: _James T. Dimas_

Title: _Secretary_

Place of Employment: _Illinois Department of Human Services_

B.   Defendant: _Quinetta Wade_

Title: _Director_

Place of Employment: _Illinois Department of Human Services DRS_

C.   Defendant: _Richard Madison_

Title: _Deputy General Counsel_

Place of Employment: _IDHS Bureau of Hearings_

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

2                                                     Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

III.   **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A.   Name of case and docket number: _N/A_

B.   Approximate date of filing lawsuit: _N/A_

C.   List all plaintiffs (if you had co-plaintiffs), including any aliases: _____
     _N/A_

D.   List all defendants: _N/A_

E.   Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): _N/A_

F.   Name of judge to whom case was assigned: _N/A_

G.   Basic claim made: _N/A_

H.   Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): _N/A_

I.   Approximate date of disposition: _N/A_

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

## IV.    Statement of Claim:

State here as briefly as possible the facts of your case. Describe how each defendant is involved, including names, dates, and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.) I request a Writ of Certiorari regarding appeals (12-045962 & 12-08998).

The employees at the Illinois Department of Human Services colluded together as their entire agency allowing me as a customer of record with multiple physical and mental illnesses to be subject to: 1) Violation of Due Process Rights for Hearings 2) Falsely Reported & Refused to provide a copy of the ILDHS Policies & Procedures for the Vocational Rehabilitation Program 3) Failure to Provide Reasonable Accommodations despite multiple requests 4) Providing Under representation by "quasi" impartial advocates, 5) Refusal to Provide Services written in Individual Plan for Employment after services were commenced & during the appeal process, 6) Retaliation after filing a civil rights complaint leading to closure notice and failure/refusal to provide services 7) Falsely reporting to read the Frodruct Individualized Plan for Employment knowing I need a hard copy to follow but deceptively saying things aloud that were ommitted from the document requiring my signature 8) Intentionally withholding payment for services resulting in delays in progressing toward vocational goal, psychiatric crisis when Insurance covering mental health medications ended due inability to re-enroll and loss of home mediation foreclosure

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

due to inability to focus without medication, loss wages, loss time with family (ill mother) and pursuit of happiness.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

The employees of the Illinois Department of Human Services failed to intervene and provide adequate and competent assistance from January 27, 2017 - December 20, 2017 when I made a request for assistance and intervention.

Removed by DR 1/31/18
~~+) Mary Beth Scholten, Asst. Bureau Chief for VR~~

1 ~~2~~) Dr. Daniel Grohens, Supervisor

2 ~~3~~) Louis Hamer, Bureau Chief for VR

3 ~~4~~) Beatrice Mwinzi, Senior VR Counselor

4 ~~5~~) Andre Howard, Administrator for VR

5 ~~6~~) Leslie Jenkins, Client Assistant Representative

Dual Roles

6 ~~7~~) Fransico Alvarado, Client Assistance Manager

7 ~~8~~) Fransico Alvarado, Assistant Director Division of Rehab

Removed by DR 1/31/2018
~~O  9) Kari Knight, Client Assistant Manager~~

8 ~~10~~) Quinetta Wade, Director Division of Rehabilitation Services

9 ~~11~~) James T. Dimas, Secretary for IDHS

10 ~~12~~) Corey-Anne Gulkewicz, General Counsel

11 ~~13~~) Robert Girindle, Ethics Officer

12 ~~14~~) Richard Madison, Deputy General Counsel

13 ~~15~~) Ganapathi Ramasiwmey, Bureau Chief Civil Affairs

14 ~~16~~) Martha Younga-White, ADA Coordinator

were all informed requested help, protection, intervention and continued services and 5 No intervened.

Revised 9/2007

15) Louis Hamer, Bureau Chief are
~~James T. Dimas, Senior~~

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

16) Bruce, Rauner, Gov       18) Emily Meehan       19) James Knauf

17) Kelly Poshalk

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**V.   Relief:**

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

1) Order immediate payments to vendors in Individualized Employment Plan Northern Illinois University $4100; Elizabeth Papam ADHD Coach $500
2) Order Release of Findings from Civil Right Complaints & other Remedies where Dorothy Reddic was a victim during 4/2017 - 8/2017
3) Order past due mortgage payments to lender to prevent homelessness
4) Order to pay damages to me (Dorothy Reddic) $250,000.
5) Injunctive Relief & 6) Declaratory Judgement based on Administrative

**VI.   The plaintiff demands that the case be tried by a jury.**  ☐ YES  ☐ NO  Final Decision made on 1/2/2018 Appeals IL-0H596, IL-018998 & 1100253203 & All recordings, rulings & Evidence.

**CERTIFICATION**

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this __31__ day of __January__ 20 __18__

_____
(Signature of plaintiff or plaintiffs)

_____Dorothy Reddic_____
(Print name)

_____
(I.D. Number)

_____1335 4th Ave_____
_____Rockford, IL 61104_____
(Address)

Revised 9/2007
[If you need additional space for ANY section, please attach an additional sheet and reference that section.]



**UNITED STATES DEPARTMENT OF EDUCATION**
OFFICE FOR CIVIL RIGHTS

500 WEST MADISON ST., SUITE 1475
CHICAGO, IL 60661-4544

REGION V
ILLINOIS
INDIANA
IOWA
MINNESOTA
NORTH DAKOTA
WISCONSIN

January 11, 2018

Ms. Dorothy Reddic
1335 4th Ave.
Rockford, IL 61104

**VIA EMAIL AT:** msreddic@hotmail.com

RE: OCR Docket # 05-17-3004

Dear Ms. Reddic:

This is to notify you that the U.S. Department of Education, Office for Civil Rights (OCR), has completed its investigation of the above-referenced complaint that you filed filed against the Illinois Department of Human Services (IDHS), Division of Rehabilitation Services (DORS) alleging retaliation. Hereinafter you are referred to as the Complainant.

The complaint alleged that because the Complainant filed grievances between January 2017 and March 2017 with IDHS's Office of the Executive Inspector General (OEIG) and Bureau of Civil Affairs (BCA) accusing DRS personnel of sex and race discrimination, DRS and Client Assistant Program (CAP) personnel retaliated against the Complainant beginning in March 2017 by, a) refusing to provide services specified in her 2016-2017 Individualized Plan for Employment (IPE), b) interfering with her appeal rights, and c) informing her that they will close her case in August 2017.

OCR enforces Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681-1688, and its implementing regulation at 34 C.F.R. Part 106, and Title VI of the Civil Rights Act of 1964 (Title VI), 42 U.S.C. §§ 2000d – 2000d-7, and its implementing regulation, 34 C.F.R. Part 100, which prohibit discrimination on the bases of sex and race, respectively, by recipients of Federal financial assistance from the Department. These statutes also prohibit retaliation against persons who engage in certain protected activities. Because DRS receives Federal financial assistance from the Department, OCR has jurisdiction over it pursuant to Title IX and Title VI.

OCR reviewed documents provided by the Complainant and DRS and interviewed the Complainant. After carefully considering all of the information obtained during the investigation, OCR determined that there is insufficient evidence to establish that DRS subjected the Complainant to retaliation in violation of Title IX and Title VI as alleged in Allegations (a) and (b). On December 11, 2017, DRS expressed interest in voluntarily resolving Allegation (c) under Section 302 of the CPM. OCR determined that Allegation (c) is appropriate for resolution under Section 302 of the CPM.

The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.

www.ed.gov

Page 2 – OCR Docket no. 05-17-3004

## Legal Standard

The Title IX implementing regulation at 34 C.F.R. § 106.71, incorporates by reference the regulation implementing Title VI at 34 C.F.R. § 100.7(e), which prohibits a recipient or other person from intimidating, threatening, coercing, or discriminating against any individual because he or she made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under the regulation.

A recipient engages in unlawful retaliation when it takes an adverse action against an individual either in response to the exercise of a protected activity or to deter or prevent protected activity in the future. To find a *prima facie* case of retaliation, each of the following three elements must be established:

1. an individual experienced an adverse action caused by the recipient; and
2. the recipient knew that the individual engaged in a protected activity or believed the individual might engage in a protected activity in the future; and
3. there is some evidence of a causal connection between the adverse action and the protected activity.

In determining whether the recipient took the adverse action because an individual engaged in a protected activity or for the purpose of interfering with a protected activity, OCR considers whether there is some evidence of a causal connection between the adverse action and the protected activity. The evidence may include changes in the treatment of the individual after protected activity occurred, the proximity in time between protected activity and adverse action, the recipient's treatment of the individual compared to similarly-situated individuals, or the recipient's deviation from established policies or practices.

If all of the elements of a *prima facie* case of retaliation are established, then OCR considers whether the recipient has presented a facially legitimate, non-retaliatory reason for taking the adverse action. If so, then OCR considers whether the reason for the adverse action is genuine or a pretext for retaliation, or whether the recipient had multiple motives for taking the adverse action.

## Background

Throughout the 2015-2016 and 2016-2017 academic years, the Complainant was enrolled as a doctoral student in the Adult and Higher Education program at Northern Illinois University (NIU). The Complainant, an individual with a disability, was also a customer of DRS' Vocational Rehabilitation (VR) Program, which paid for and or provided services to assist her with attaining her vocational goal of becoming a Postsecondary Education Administrator. Pursuant to her 2015-2016 and 2016-2017 IPEs,[1] the Complainant was entitled to receive VR services throughout each academic year, including partial payment of her tuition and fees for her NIU coursework; books and supplies; ADHD coaching sessions; transportation; job placement;

---

[1] The 2016-2017 IPE covers the provision of services from August 17, 2016 to August 17, 2017.

and a parking permit. Neither IPE specifies that DRS would pay for health insurance[2] or prescription drugs for the Complainant.

DRS paid NIU for the Complainant's fall 2015 tuition/fees and books/supplies. The Complainant's case manager retired in December 2015 and she was assigned a new case manager. During the spring of 2016, the Complainant's new case manager arranged for DRS to issue a second payment to NIU for the Complainant's tuition/fees and books/supplies; however, after NIU did not confirm receipt of the second DRS payment voucher, DRS cancelled the voucher and issued a new payment voucher to NIU that covered tuition /fees and books/supplies but also covered the cost of her spring 2016 student health insurance.

Throughout the 2016-2017 academic year, DRS issued three Notification of Training Services Approved (NOTSA) forms that specify the amounts of financial assistance that DRS would provide for IPE services for certain time periods. The September 9, 2016 and January 9, 2017-NOTSAs cover payments for services from August 22, 2016 to December 19, 2016, while the April 5, 2017-NOTSA covers payments for services from January 17, 2017 to May 13, 2017. All three NOTSAs specify that DRS would pay for tuition and fees, books and/or supplies, transportation, an NIU Parking Permit and consumable supplies.

The NOTSAs also note that certain courses would and would not be covered. The January 9-NOTSA notes that DRS would not fund the fall 2016 PHHE 508 course, nor would it cover books or transportation related to that course. The April 5-NOTSA notes that DRS would not pay costs associated with the spring 2017 PSPA 650 course, but would pay for the spring 2017 CAHA 799[3] course and related services. The IPE and the NOTSAs do not specify that DRS will pay for late fees.

According to DRS, the Complainant's signature on her IPE signifies that she acknowledges that she has the right to appeal any decisions or changes to her IPE with which she disagrees, that she has received notice of and understands her appeal rights, and that she understands that she may call CAP for assistance.

## Factual Summary

The Complainant alleges that because she filed grievances between January 2017 and March 2017 with IDHS's OEIG and BCA accusing DRS personnel of sex and race discrimination, DRS and CAP personnel retaliated against her beginning in March 2017 by a) refusing to provide services specified in her 2016-2017 IPE, b) interfering with her appeal rights, and c) informing her that they will close her case in August 2017.

IDHS reported that on March 30, 2017, the Complainant filed a complaint with OEIG that alleged racial discrimination and sexual harassment by DRS personnel. IDHS reported that BCA did not receive a discrimination complaint from the Complainant. The Complainant did not

---

[2] On August 31, 2015, the Complainant's former case manager informed her that DRS will not pay for medical insurance through NIU because she has Medicaid.
[3] The April 5, 2017-NOTSA incorrectly specifies coverage for a CAHA 798 course but payment was correctly applied to the Complainant's CAHA 799 course.

produce evidence of a discrimination grievance filed with BCA prior to March 30, 2017. Although OCR has no evidence of an earlier, internal discrimination complaint filed by the Complainant against DRS personnel, case notes provided to OCR establish that the Complainant repeatedly told her case manager (on July 13, 2016[4], January 26, 2017[5]) and other DRS and non-DRS staff, including CAP and IDHS Bureau of Hearing staff (on July 13, 2016, January 31, 2017, March 21, 2017, April 12, 2017 and repeatedly throughout June 2017) that she believed her case manager's treatment of the Complainant was discriminatory based on her race. The case notes also reveal that on March 21, 2017, April 12, 2017 and June 16, 2017, the Complainant complained to IDHS staff about sexual harassment[6] by her prior case manager.

*Refusal to provide services specified in IPE*

On May 8, 2017, the Complainant filed an appeal with the IDHS Bureau of Hearings requesting payment for services she believed DRS was required to pay pursuant to her IPE. Specifically, she sought payment to NIU for tuition, books and supplies for her fall 2016 PHHE 508 and spring 2017 PSPA 650 courses and payment for her spring 2017 NIU student health insurance. In support of her assertion that DRS was required to provide payment for these services, the Complainant maintained that the relevant IPE provided coverage for courses at NIU to help her achieve her vocational goal and did not explicitly limit payment to courses required for her doctoral program. She also noted that DRS had paid for her student health insurance both semesters of the prior academic year under an earlier IPE that contained virtually identical language. Lastly, she claimed that she complied with all the stipulations in her IPE, including submitting receipts and supporting documentation to her case manager, following DRS staff instructions and communicating and meeting regularly with DRS staff. The May 8, 2017-appeal was not the first time that the Complainant had complained about or filed an appeal regarding payment for services specified in her IPE. The Complainant's DRS case file revealed that from July 2016 through November 2017, the Complainant has complained to DRS on a monthly basis about its failure to provide services specified in her IPE.

The Complainant's appeal hearing was originally scheduled for July 1, 2017. It was rescheduled several times and a Hearing was held on October 10, 2017, and continued to December 14, 2017.

*Tuition, books and supplies*

Although the Complainant's IPE does not specify it, IDHS reported that since 2015, DRS has communicated to her that it will not pay for tuition, fees, books and related costs for courses that are not required for her doctoral program.[7] The Complainant's DRS case file revealed that from

---

[4] A DRS representative emailed the Complainant on August 29, 2016 and stated "You stated in your most recent e-mail "I believe I am being discriminated against because I filed for a hearing after the last IPE was completed and I am Black." Due to this statement, I am attaching the Individual/ Applicant Discrimination Complaint Form. Instructions can be found on the form."

[5] After this complaint, the Complainant requested and was transferred to a new case manager.

[6] According to the Complainant, in September and November 2016, her case manager sexually harassed her when on one occasion the case manager rubbed the Complainant's hand and said she likes her and on another occasion the case manager rubbed the Complainant's shoulder as she was escorting her out of the office and said, "take care."

[7] See http://catalog.niu.edu/preview_program.php?catoid=44&poid=9969&returnto=2103 for a list of required courses.

January 12, 2017 through May 11, 2017, three different DRS case managers[8] informed the Complainant that DRS cannot pay for costs related to courses that DRS determined were not required for her doctoral degree, or for which the Complainant had not provided updated documentation establishing that the courses were part of her doctoral program. According to DRS, the Complainant had not provided an updated program of study, yet had disclosed that in addition to pursuing her doctorate, she was also taking classes as part of a "Certificate Program in Public Administration." DRS case notes reveal that at least as early as April 25, 2016, and continuing through May 11, 2017, the Complainant's case managers requested a copy of the Complainant's program plan of courses necessary to earn her Ph.D. DRS determined that courses taken in pursuit of the Certificate in Public Administration (i.e. PSPA 650) and courses taken outside of her doctoral program (i.e. PHHE 508) were "optional" and not covered by the IPE.

DRS reported that during the 2016-2017 academic year, the Complainant took classes that were approved by DRS and others that were not because DRS could not determine that they were a required part of her doctoral program. DRS reported that it paid for all fees, including any late fees, related to the 2016-2017 academic year course that was approved by DRS (i.e. CAHA 798), but did not pay for fees related to courses that were not approved (i.e. PHHE 508 and PSPA 650). The Complainant confirmed payment by DRS to NIU in spring 2017 for at least one of her courses.

The Complainant claims that all of the courses she took were to advance her goal of becoming a higher education administrator and were therefore a part of her program of study even if not required by her doctoral program. She asserts that she provided DRS documentation from her Dissertation Chair/Advisor that established that the courses were part of her program of study. The Complainant did not provide OCR with a copy of this document.

*Student health insurance*

The September 6 and January 9-NOTSAs specify that DRS paid NIU for the Complainant's fall 2016 student health insurance; however the April 5-NOTSA does not include a payment for insurance for the spring 2017 semester.

The Complainant's DRS case file indicates that beginning on or about January 26, 2017, and continuing through March 22, 2017, DRS Case Managers informed the Complainant via email that DRS would no longer pay for her NIU student health insurance because she had Medicaid, noting that DRS had previously paid for her student health insurance in error.[9] On January 26,

---

[8] On January 31, 2017 and again on February 10, 2017, per the Complainant's request, her VR case was transferred to a new Case Manager.

[9] A prior case manager documented his conversation with the Complainant during an August 31, 2015 meeting in which the Complainant's IPE was developed. The notes from this meeting indicate that the case manager informed the Complainant that because she received Medicaid she would not need to purchase student health insurance through NIU. Subsequently, on September 18, 2015, the same case manager informed an NIU representative that DRS was not paying for student health insurance for the Complainant and in fact it did not pay for her insurance in 2015. The Complainant's case manager who took over after her first case manager retired subsequently paid for student health insurance for two semesters (spring and fall of 2016). DRS informed OCR that when the Complainant's new case manager discovered the prior case manager's notes explaining why student health insurance would not be covered, she consulted with her supervisor and together they determined that DRS would stop paying for the insurance

her former Case Manager emailed the Complainant that she was not aware that the Complainant was requesting funding for student health insurance for the spring 2017 semester due to her receiving Medicaid and informed her that she would need documentation that the Complainant no longer had Medicaid prior to approving her request.

The Complainant confirmed that she has received Medicaid since 2015. She explained that she signed up for NIU student health insurance in part because she believed that if Medicaid did not provide coverage equal to the NIU student health insurance, then DRS would pay for the NIU insurance. The Complainant claims that under IDHS regulations, DRS must pay for the NIU student insurance because Medicaid does not cover the costs of certain of her required prescription medications. Case notes for the Complainant's case also reveal that unrelated to the question of insurance, one of the Complainant's Case Managers informed the Complainant that DRS would pay for the costs of the prescription medications if Medicaid denied the payment upon receipt of documentation.

According to the Hearing Officer's decision dated January 2, 2018, the October and December 2017 hearings considered only whether DRS was required to pay for the Complainant's student health insurance. In her decision, the Hearing Officer reversed DRS' denial of payment for the Complainant's spring 2017 student health insurance, holding that "while it is possible that the payment of the student insurance plan in the 2016 spring and 2016 fall semesters was a 'mistake,' the Grievant' s expectation that she would continue to receive that funding for the rest of the 2016-2017 academic year, in particular the 2017 spring semester, was more than reasonable" in light of the fact that her IPE in place at the time covered both the 2016 fall and 2017 spring semesters of that academic year. The Hearing Officer did not rule on any of the other matters being appealed. According to DRS, the outstanding issues (payment of tuition, books, supplies, related costs, and late fees for the PHHE 508 and PSPA 650 courses) are scheduled to be addressed during a hearing on January 23, 2018.

*Interference with the Complainant's appeal rights*

In support of her assertion that CAP personnel interfered with her appeal rights, the Complainant maintains that CAP referred her to Prairie Legal Services (PLS) a third-party state-contracted legal services provider that delayed taking her case for approximately two months despite the fact that an appeal hearing was supposed to take place within 60 calendar days of the appeal filing.[10] She claims that during this time period, she requested assistance in preparing for her appeal and CAP personnel continued to refer her to PLS. The DRS case notes reveal that the CAP representative continued to refer her to PLS because CAP had, pursuant to its contract with PLS, referred her case to PLS for assistance.

The Complainant also claims that a CAP representative interfered with her appeal rights when the representative emailed PLS and informed them that the Complainant was being represented by another pro bono legal service provider. The Complainant claims that the CAP representative further interfered with her appeal rights by refusing to provide her written responses to her

---

[10] To the extent the Complainant asserts that PLS' handling of the referral was in some way retaliatory, OCR notes that it lacks jurisdiction over PLS, which is not a recipient of federal financial assistance from the Department.

questions regarding the appeal process and instead emailing her a non-working link to a section of the Illinois Administrative Code.

In denying the Complainant's claims that CAP personnel interfered with her appeal rights, IDHS noted that DRS advised her of CAP and her appeal rights and provided her written information about both. It also asserts that CAP referred the Complainant to a legal service provider.

OCR's review of the Complainant's DRS and CAP case files indicates that a CAP representative was assisting or attempting to assist the Complainant for weeks before she filed her May 8-appeal, including answering numerous questions about the appeal process and then referring her to PLS on April 19, 2017. The file indicates that the Bureau of Hearings received the Complainant's appeal on May 8, 2017, and that on June 9 and June 12, 2017, DRS and BOH, respectively, informed the Complainant that her appeal hearing was scheduled for July 11, 2017. The file indicates that on or about June 12, 2017, the PLS attorney assigned to the Complainant's case informed the Complainant that she could not assist her with her appeal due to a death in the family; PLS did not decline to take her case at that time.

On June 13, 2017, the CAP representative emailed the Complainant that "Due to unforeseen issues (death in the family) of the attorney that you initially spoke with there was a delay in their process. However, I have spoken to the current attorney, [], and she has indicated that your DRS case file is very lengthy and she wants to review it thoroughly. However, she indicates that she will be able to provide you with answers by the end of this week." On July 6, 2017, the CAP representative emailed PLS and inquired whether the Complainant had accepted PLS' offer to represent her on the issues in the appeal. PLS replied on July 7, 2017, that it had not heard from the Complainant but had informed her that PLS could not work on her case until August. On July 7, 2017, the CAP representative replied to PLS stating "I believe she is being represented by Equip for Equality (secretly), and I don't expect her to contact you." The Complainant confirmed to OCR that she initially asked Equip for Equality (Equip) to help her with her appeal but CAP informed her that PLS was its contracted provider. While PLS was reviewing her file, the Complainant continued to copy Equip on emails to CAP and PLS related to her appeal. The Complainant maintains that Equip was not representing her on the appeal matter during the time period that PLS was involved.

On July 18, 2017, PLS informed the Complainant by email that PLS could not represent her in the appeal. In declining to represent her, the PLS attorney explained that it believed the issues raised in her appeal should not be handled separately from DRS's recently issued (July 13, 2017) notice to the Complainant that it was closing her VR case due to non-cooperation. The PLS attorney noted that she believed the issues of non-payment of IPE services and case closure should be addressed in a single proceeding and that PLS's review of the Complainant's case file suggested that there were multiple instances of non-cooperation by the Complainant. Finally, the PLS attorney noted that the Complainant had asked PLS, if it declined to represent her, to refer her case to Equip for Equality. The PLS attorney wrote: "We cannot request that they represent you as they are a separate organization and we aren't familiar with their case acceptance procedures. However, I can contact [Equip for Equality] and let them know that we are no longer offering you assistance with this matter." Significantly, PLS did not inform the Complainant that

it was declining to represent her in the appeal because she had already secured legal representation from another legal entity.

*Notice of case closure*

It is undisputed that on July 13, 2017, DRS sent a notice to the Complainant indicating that her case would be closed on August 17, 2017, due to failure to provide needed documents in support of services, failure to follow up on Academic Program Plan, failure to negotiate appointment dates and time to discuss her case, and other reasons. On July 26, 2017, the Complainant appealed the notice of case closure. An administrative hearing was held on October 10, 2017, and the Hearing Officer rescinded the notice of case closure and ordered DRS to develop a new IPE for the 2017-2018 academic year.[11] On November 21, 2017, the Complainant and DRS met to discuss the new IPE but the matter was continued to February 8, 2018, after an IPE was not finalized.

Previously, on December 14, 2016, DRS had sent the Complainant a notice that her case would be closed. According to DRS, it sent the closure notice because the Complainant had failed to cooperate with her case manager, including failing to attend five scheduled meetings and failing to turn in required documentation. DRS had informed the Complainant that she needed to submit documentation regarding her fall 2016 classes by January 31, 2017. The case file indicates that the Complainant complied with the request and avoided case closure.

**Analysis and Conclusion**

OCR determined that the Complainant engaged in protected activity between July 2016 and March 2017 when she complained internally of sex and race discrimination. Although OCR obtained documentation of only one grievance filed by the Complainant with OEIG in March 2017, which alleged race discrimination and sexual harassment, documentation provided by IDHS establishes that as early as July 13, 2016, the Complainant had complained to her case manager and other DRS staff that she felt the case manager was discriminating against her on the basis of race. The documentation also established that as early as March 2017, the Complainant complained to DRS staff about her case manager allegedly sexually harassing her.

*Allegation (a): Refusal to Provide Services Specified in IPE*

It is undisputed that DRS refused to pay for tuition, books and supplies associated with a total of two courses, one in the fall of 2016 and one in the spring of 2017, and also denied payment for NIU student health insurance starting in the spring of 2017. OCR determined that the denial of payment for these services constitutes an adverse action to the extent that the Complainant's IPE indicated that DRS would cover tuition and for the prior academic year DRS had paid for student health insurance even though it was not specified in her IPE. Next OCR considered whether a causal connection exists between the Complainant's protected internal discrimination complaints and the denial of payment for these services.

---

[11] The Hearing Officer did not issue a written order and did not provide information explaining the basis for the order.

With respect to the denial of payment for tuition for certain courses, the evidence establishes that throughout the fall of 2016 and spring of 2017, DRS informed the Complainant that it would not pay for certain classes not approved by DRS. During this time, multiple DRS case managers asked the Complainant for documentation that the courses at issue were required for her doctoral program, indicating the agency's willingness to pay for the courses upon receipt of that information. Although the Complainant may be correct that her IPE does not specify that DRS will pay only courses required for her doctorate, that was DRS' long-standing interpretation of the IPE. Significantly, DRS' took this position starting in April 2016, before the Complainant first complained of discrimination in July 2016, and continued over the course of the following academic year to request documentation that the Complainant's courses were required under her doctoral program in order to pay for them. Therefore, OCR is unable to establish a causal connection between the Complainant's protected activity and DRS' refusal to pay for certain courses, which at most appears to reflect a difference of opinion between DRS and the Complainant regarding the courses covered by her IPE.

Regarding the denial of payment for student health insurance, here the evidence established that as early as January 2017 and continuing through and beyond March 22, 2017, DRS informed the Complainant that although it had previously paid for her student health insurance, it would no longer do so because she received insurance from Medicaid and DRS believed it was not required to pay the cost of additional student insurance. DRS acknowledged that it had previously paid for the student health insurance and informed the Complainant that payment had been made in error. Significantly, the Complainant began complaining of discrimination by her case manager in July 2016, yet the case manager about whom she complained subsequently authorized payment of the Complainant's student health insurance for the fall of 2016. OCR observed that the case manager who ultimately detected the mistake did not halt payment for the insurance immediately after the Complainant's protected activity. Rather, the very DRS case manager about whom the Complainant was complaining continued to pay for the student health insurance in the fall of 2016, after the Complainant began to accuse her of discrimination. Further, DRS informed the Complainant that it would pay for medications and treatment for which Medicaid denied coverage if the Complainant supplied documentation establishing the denial of coverage, undermining any inference of a retaliatory motive on the part of the case manager or DRS.

In this case, DRS denies that it retaliated against the Complainant and OCR obtained no further information to suggest that the decision was caused by the Complainant's discrimination complaints. OCR determined that DRS' explanation that it would not pay for student health insurance because the Complainant had health insurance through Medicaid was not a post hoc justification for its retaliatory actions as a result of the Complainant's discrimination grievances and complaints. Rather, the evidence indicates that this was DRS' reiteration of an explanation that it had provided to the Complainant as early as the fall of 2015, when her case manager informed her that DRS would not pay for health insurance because the Complainant received Medicaid. Although the hearing officer in the Complainant's appeal ordered DRS to pay for an additional semester of student health insurance, in doing so, the hearing officer found that the Complainant could reasonably believe DRS would continue to pay for student health insurance given that it had paid for insurance previously. Significantly, the hearing officer did not determine that DRS had terminated payment for student health insurance for an improper or

retaliatory reason. In making a determination regarding compliance, OCR must often weigh conflicting evidence and determine whether the preponderance of the evidence substantiates the allegation. In this case, the preponderance of the evidence does not support the allegation that DRS denied payment for the Complainant's student health insurance because of her protected discrimination complaints.[12]

*Allegation (b): Interference with the Complainant's appeal rights*

The Complainant asserts that CAP staff interfered with her appeal rights in numerous ways, including referring her to PLS which was delayed in responding to the referral, and informing PLS that she was "secretly" represented by another legal services provider.

Regarding the Complainant's assertion that CAP itself did not provide necessary assistance, it is undisputed that on one occasion the CAP representative emailed the Complainant information about the appeals process that included a non-working hyperlink. However, the evidence also revealed that the CAP representative provided her with information on how to file her appeal and repeatedly answered her questions, even after the Complainant filed her appeal and after CAP referred her to PLS.

Regarding CAP's referral of the Complainant's case to PLS, OCR noted that the referral was done pursuant to CAP's contract with PLS and not to delay or otherwise deny the Complainant assistance. Moreover, although it is undisputed that PLS was delayed in responding to her after the referral was made, the CAP representative who worked with the Complainant followed up with PLS to confirm that they were evaluating whether to accept the Complainant as a client. Accordingly, OCR determined that none of these actions subjected the Complainant to an adverse action.

Finally, regarding the Complainant's assertion that a CAP representative subjected her to an adverse act when the representative informed PLS that the Complainant was represented by another legal service provider, it is undisputed that on July 7, 2017, a CAP representative emailed PLS that she believed the Complainant was "secretly' represented by another service provider in response to the PLS attorney's email indicating that she had not heard from the Complainant in several weeks. OCR therefore assumes for the purpose of this analysis that the email constituted an adverse action and that a *prima facie* case of retaliation has been established.

Next OCR considered whether IDHS provided a legitimate, non-retaliatory explanation for its actions. Although OCR does not know why the CAP representative informed PLS that she believed the Complainant may have already obtained legal representation, OCR determined that PLS' explanation for declining to represent the Complainant in her appeal hearing had to do with the merits of her claims and not PLS's belief that the Complainant had alternative representation. Further, PLS agreed to contact Equip for Equality, the legal services provider mentioned by the CAP representative to inform Equip that it was not representing the Complainant in her appeal.

---

[12] Although not dispositive of this allegation, OCR notes that DRS is now required to pay for the Complainant's student health insurance for the spring of 2017, pursuant to the January 2, 2018 hearing officer determination, which found only that the Complainant reasonably believed DRS would continue to pay for her student health insurance.

Page 11 – OCR Docket no. 05-17-3004

Under these circumstances, OCR found insufficient evidence of unlawful retaliation. Accordingly, OCR has closed this allegation effective the date of this letter.

*Allegation (c): Notice of case closure*

Prior to the conclusion of OCR's investigation, DRS expressed interest in resolving the complaint. Subsequent discussions with DRS resulted in IDHS signing the enclosed Resolution Agreement (Agreement) on January 5, 2018, which, when fully implemented, will resolve the retaliation allegation raised in the complaint. The Agreement requires DRS to provide training to DRS staff on its non-retaliation policies and on its policies and procedures governing case closures. The Agreement also requires DRS to provide OCR a copy of the Complainant's 2017-2018 IPE and documentation of its implementation. The provisions of the Agreement are aligned with the complaint allegation and the information obtained during OCR's investigation, and consistent with the applicable regulations. OCR will monitor DRS' implementation of the Agreement.

This concludes OCR's investigation of the complaint and should not be interpreted to address the DRS's compliance with any other regulatory provision or to address any issues other than those addressed in this letter. This letter sets forth OCR's determination in an individual OCR case. This letter is not a formal statement of OCR policy and should not be relied upon, cited, or construed as such. OCR's formal policy statements are approved by a duly authorized OCR official and made available to the public.

Please be advised that DRS may not harass, coerce, intimidate, or discriminate against any individual because he or she has filed a complaint or participated in the complaint resolution process. If this happens, the individual may file another complaint alleging such treatment. Under the Freedom of Information Act, it may be necessary to release this document and related correspondence and records upon request. In the event that OCR receives such a request, we will seek to protect, to the extent provided by law, personally identifiable information, which, if released, could reasonably be expected to constitute an unwarranted invasion of personal privacy. The complainant may file a private suit in Federal court, whether or not OCR finds a violation.

If you have any questions, please contact Tamara Perry, Attorney, at 312-730-1510 or by email at Tamara.Perry@ed.gov.

Sincerely,

Aleeza Strubel
Supervisory Attorney

Enclosures

James I. Dimas, Secretary

# Organization

The following is an outline of our agency's organization:





- Chief of Staff - Fred Flather


Affairs, EEO/AA - Ganapathi Ramaswamy, Director

- Accommodation - Martha Younger-White, Bureau Chief
- Communications - Vacant
- Grants Administration - Mary Jennings, Director
- Hispanic/Latino Affairs - Elizabeth Diaz Castillo, Director
- Human Resources - Scott Viniard, Director
- Inspector General - Michael McCotter
- Innovation, Strategy and Performance - Bruce W. Bendix, Director
- Internal Audit - Amy DeWeese, Chief
- Labor Relations - Lori Simmons, Director
- Legislative Affairs - Jennifer Aring, Director
- Security and Emergency Preparedness - Vacant



- Assistant Secretary of Programs - Dr. Maria Bruni, Acting
  - Division of Alcoholism and Substance Abuse - Dr. Maria Bruni, Acting Director
  - Division of Developmental Disabilities - Greg Fenton, Director
  - Division of Family and Community Services - Diane Grigsby-Jackson, Director
  - Division of Mental Health - Diana Knaebe, Director

# Operations

- Assistant Secretary of Operations - Vacant
  - Chief Financial Officer - Robert Brock
    - Budget - Robert Brock, Director
    - Fiscal Services - Alex Jordan, Acting Director
  - Chief Operating Officer - Khari Hunt
    - Business Services - Paul Hartman, Director
    - Chief Information Officer - Brad Long
    - Contract Administration - Brian Bertrand, Director
    - Customer Support - Vacant
    - Clinical, Administrative & Program Support - J. Michael (Mike) Patton, Director
    - Procurement - William Strahle, Agency Procurement Officer

Part 299 - Sexually Violent Persons

## Title 89 Illinois Administrative Code

Part 144 - Developmental Disabilities Services

# Division of Family & Community Services (CHP)

## Title 77 Illinois Administrative Code

Part 2200 - School Based/Linked Health Centers
Part 630 - Maternal and Child Care Health Services Code
Part 635 - Family Planning Services Code
Part 655 - Problem Pregnancy Health Services and Care Projects
Part 672 - WIC Vendor Management Code
Part 700 - Renal Diseases Program for Care and Treatment Code (Repealed)
Part 705 - Hemophilia Program (Repealed)
Part 2250 - Illinois AmeriCorps Program

### Title 89 Illinois Administrative Code

Part 310 - Delivery of Youth Services Funded by the Department of Human Services
Part 313 - Community Services
Part 334 - Administration and Funding of Community Based Services to Youth
Part 500 - Early Intervention Program
Part 501 - Partner Abuse Intervention
Part 504 - Universal Newborn Hearing Screening Program

# Division of Alcoholism and Substance Abuse

## Title 77 Illinois Administrative Code

Part 2000 - Rules of Practice and Procedure in Administrative Hearings (Repealed)
Part 2030 - Award and Monitoring of Funds (Administration of Funding)
Part 2059 - Compulsive Gambling
Part 2060 - Alcoholism & Substance Abuse Treatment and Intervention Licenses
Part 2070 - Schedule of Controlled Substances
Part 2075 - Research (Controlled Substances Activities)
Part 2080 - Electronic Prescription Monitoring Program
Part 2085 - Research (Cannabis Activities)
Part 2090 - Subacute Alcoholism and Substance Abuse Treatment Services

# Division of Family & Community Services (HCD)

## Title 89 Illinois Administrative Code

Part 10 - General Administrative Provisions
Part 111 - Assistance Standards (Repealed)
Part 112 - Temporary Assistance for Needy Families (TANF)
Part 113 - Aid to the Aged, Blind or Disabled
Part 114 - General Assistance
Part 115 - Refugee/Entrant/Repatriate Program
Part 116 - Crisis Assistance
Part 117 - Related Program Provisions
Part 121 - SNAP
Part 130 - Administration of Social Service Programs
Part 165 - Collections and Recoveries
Part 20 - Support Responsibility of Relatives
Part 50 - Child Care

# Division of Rehabilitation Services

## Title 89 Illinois Administrative Code

Part 505 - Confidentiality of Information
Part 510 - Appeals and Hearings
Part 515 - Advisory Councils
Part 520 - Authorizations
Part 521 - Program Definitions
Part 525 - Grants and Contracts
Part 527 - Recovery of Misspent Funds
Part 530 - Criteria for the Evaluation of Programs of Services in Community Rehabilitation Agencies
Part 545 - Ratemaking
Part 546-- Public Use of DHS Facilities

## Vocational Rehabilitation Programs

### Title 89 Illinois Administrative Code

Part 552 - Referral for VR Services
Part 553 - Assessment for Determining Eligibility and Rehabilitation Needs
Part 557 - Application
Part 562 - Customer Financial Participation
Part 567 - Comparable Benefits
Part 572 - Individualized Plan for Employment (IPE)
Part 590 - Services
Part 595 - Closure of a Rehabilitation Case
Part 617 - Closure (Repealed)
Part 640 - Projects with Industry
Part 645 - Worker's Compensation
Part 650 - Vending Facility Program for the Blind
Part 730 - Illinois Center for Rehabilitation and Education/Community Residential Services for the Blind and Visually Impaired
Part 886 - Centers for Independent Living
Part 890 - Telecommunications Devices for the Hearing-Impaired
Part 899 - Lekoteks

## Home Service Programs

### Title 89 Illinois Administrative Code

Part 676 - Program Description
Part 677 - Customer Rights and Responsibilities
Part 679 - Determination of Need (DON) and Resulting Service Cost Maximums (SCMS)
Part 681 - Prescreening
Part 682 - Eligibility
Part 684 - Service Planning and Provision
Part 686 - Provider Requirements, Type Services and Rates of Payment
Part 688 - Illinois Long-Term Care Partnership Program

## Educational Facilities

### Title 89 Illinois Administrative Code

Part 750 - Role of Residential Educational Facilities Operated by the Department of Human Services
Part 751 - Definition of Terms
Part 755 - Admission Procedures
Part 760 - Responsibility for Special Education (Repealed)
Part 765 - Special Education Program and Services
Part 770 - Special Education Instructional Program (Repealed)
Part 775 - Special Education Related Services (Repealed)
Part 780 - Vocational Programs (Repealed)
Part 785 - Home and Hospital Programs (Repealed)

Part 787 - Illinois Children's School and Rehabilitation Center's Respite Program (Repealed)

Part 790 - State Operated or Private Programs (Repealed)

Part 795 - Identification, Evaluation and Placement of Students

Part 800 - Impartial Due Process Hearing (Repealed)

Part 805 - Surrogate Parents (Repealed)

Part 810 - Special Education Personnel (Repealed)

Part 815 - Special Transportation

Part 820 - Evaluation and Coordination of Special Education (Repealed)

Part 825 - Definition of Terms (Repealed)

Part 827 - Rules of Conduct, Discipline, Suspension and Discharge Procedures

Part 828 - Impartial Due Process Hearing

Part 829 - Sex Equity

Part 830 - Non-Academic Programs and Policies

Part 835 - Therkelsen/Hansen College Loan Fund

James I. Dimas, Secretary

# Report Abuse/Neglect of Individuals

## Persons with Mental Illness or Developmental Disability
## OIG 24-hour Hotline 1-800-368-1463

To report abuse/neglect of persons with a mental illness or a developmental disability at a DHS-operated facility, call the OIG 24-hour Hotline **1-800-368-1463 Voice/TTY**.

All other calls will be referred to the <u>DHS Customer Help Line</u>:

- (800) 843-6154 English or Español
- (800) 447-6404 TTY

Si usted sospecha que un individuo discapacitado ha sido abusado, descuidado o estafado económicamente, repórtelo a la Oficina del Inspector General del DHS al: **1-800-368-1463 Voz/TTY.**

Todas las otras llamadas serán transferidas a la <u>Línea de Ayuda para Clientes del DHS</u>:

- (800) 843-6154 inglés o español
- (800) 447-6404 TTY

## Other Allegations of Abuse/Neglect

For other allegations of abuse/neglect of individuals, please use the contact information below.

**DHS Local Office Staff**
- <u>Office of the Executive Inspector General Online Complaint</u>

**Domestic Violence Help Line**
- Call toll free, Confidential, 24 Hour, Multilingual
  1-877-863-6338 (Voice)
  1-877-863-6339 (TTY)

**Education of a Child
with Learning Disability**
- <u>State Board of Education Problem resolution Line</u>
- 1-800-262-6663 (Voice)
- (217) 782-1900 (TTY)

**Elder Abuse
(not in a Nursing Home)**
- <u>Elder Abuse 24-Hour Hotline</u> at 1-866-800-1409 (Voice), 1-888-206-1327 (TTY)
- <u>Department on Aging, Senior Help Line</u>

**Abuse/Neglect of a person with a mental
illness/developmental disability in a Domestic Setting**
- Adult Protective Services at 1-866-800-1409

**Health Professionals**
- <u>Department of Financial and Professional Regulation Online Complaint</u>

**Hospitals or Nursing Homes**
- <u>Illinois Department of Public Health: Nursing Homes in Illinois</u>
- Hotline 1-800-252-4343

**Human Rights Violation**
- <u>Guardianship and Advocacy Commission</u>
- 1-866-274-8023 (Voice)
- (708) 338-7500 (Outside of Illinois)

**Minors (children under 18)**
- <u>Department of Children and Family Services</u>
- 1-800-252-2873 (Voice),



- 1-800-358-5117 (TTY)
- If you are outside of Illinois, call (217) 524-2606

**National Human Trafficking Resource Center (NHTRC)**

- 24 Hour Hotline: 1-888-373-7888
- If you or someone you know is a victim of human trafficking call now.

James I. Dimas, Secretary

# OIG's Duties and Responsibilities

## Vision Statement

The Office of the Inspector General (OIG) will be looked upon as a professional and competent investigative agency.

## Mission Statement

The Office of the Inspector General assists agencies and facilities in prevention efforts by investigating all reports of abuse, neglect and mistreatment in a timely manner, to foster humane, competent, respectful and caring treatment of persons with mental and developmental disabilities.

## Office Authority

The Office of the Inspector General has the authority to investigate allegations of abuse and neglect of adults with mental disabilities (severe mental illness or developmental disabilities) who receive services from state-operated psychiatric hospitals and developmental centers as well as from community programs licensed or funded by DHS in Illinois.

The Office gets involved when an allegation of abuse or neglect is reported against an employee or other person responsible for care of the adult with disabilities. To report suspected abuse or neglect of an adult with disabilities, please call the Office of the Inspector General at 1-800-368-1463.

Information on how to report an incident and on what happens during an investigation are provided in this site. How to contact the Investigations Bureaus as well as other organizations with related services (frequent referral numbers and links) are also available.

When OIG substantiates physical or sexual abuse or neglect that is deemed egregious against an employee of a state facility or community agency, that employee's identity can be placed on the Healthcare Worker Registry operated by the Department of Public Health. That person could be barred from further employment in long-term care.

## Administrative Rules

The Office promulgates Administrative Rules to establish reporting requirements and to stipulate how investigations are initiated, conducted and completed.

## Quality Care Board

A seven-member volunteer board monitors and oversees the operations, policies and procedures of the Office.

## Site Visits

The Office makes unannounced site visits to each state-operated psychiatric hospital and developmental center annually.

## Publications

The Office publishes an Annual Report every December with detailed information on reporting, investigations and all other activities of the Office. You can download the most recent Annual Report from this site.

## Training

The Office's Training Bureau provides training sessions on investigative skills. The Bureau also provides training on Administrative Rule 50 to community agencies throughout Illinois.

## Investigative Protocols

Administrative Rule 50 provides for community agencies to perform investigations on their own with the approval of an OIG Bureau Chief and approved protocol. The Office provides a protocol for adoption by agencies, available here. Questions about the Office and its activities may be sent by e-mail.

James I. Dimas, Secretary

# Office of the Inspector General (OIG)

## Mission Statement

*The Office of the Inspector General assists agencies and facilities in prevention efforts by investigating all reports of abuse, neglect and mistreatment in a timely manner, to foster humane, competent, respectful and caring treatment of persons with mental and developmental disabilities.*



## OIG's Role

OIG investigates allegations of abuse or neglect of individuals who receive mental health services or developmental disability services in programs that are operated, licensed, certified or funded by the Illinois Department of Human Services. OIG also trains people who work with adults with disabilities, conducts random checks to ensure that programs take corrective actions resulting from investigations, and makes site visits to state psychiatric hospitals and developmental centers to assist in preventing abuse and neglect.  For a fuller description of OIG's responsibilities, click here: Duties and Responsibilities of the DHS/OIG

## OIG Hotline

To report abuse or neglect of an adult with disabilities, call **1-800-368-1463** and, if we don't investigate it, we'll find an appropriate office to help you.

Si usted sospecha que un individuo discapacitado ha sido abusado, descuidado o estafado económicamente, repórtelo a la Oficina del Inspector General del DHS. Llame Gratis al: **1-800-368-1463** Voz/TTY



(/oeig/)

(/oeig/search)

OEIG (/oeig/Pages/default.aspx)    About (/oeig/about/Pages/default.aspx)    Investigative Findings

# Investigative Findings

Upon conclusion of an investigation by the Office of Executive Inspector General for the Agencies of the Illinois Governor, a report regarding the investigation may be completed and provided to the appropriate ultimate jurisdictional authority (e.g., the governor with respect to investigations involving agencies under his/her authority or the board of trustees of a state public university or regional transit board with respect to investigations involving its employees). A copy of the report is also furnished to the head of the state agency affected by or involved in the investigation, if appropriate, and to the Illinois Executive Ethics Commission.

Such investigative reports may include a recommendation of administrative action to be taken as a result of violations found by the investigation to be substantiated. Reports may also include recommendations aimed at minimizing the possibility of future occurrences of similar violations or other management actions.

When supported by investigative findings, an investigative report may also be provided to an appropriate prosecutor for review, to determine whether the underlying facts support a criminal prosecution.

Because, by law the OEIG is required to conduct its investigative work in a confidential manner, the records of ongoing investigations are not available to the public. Under certain circumstances, the Illinois Executive Ethics Commission may publicly release our final reports in cases where misconduct is found to have occurred.

It is the general policy of the Office to neither confirm nor deny the existence of an investigation or complaint.

## ABOUT THE OFFICE (/OEIG/ABOUT)

**Message from Maggie Hickey**
**(/oeig/about/Pages/Message.aspx)**

**Management Team**
**(/oeig/about/Pages/Staff.aspx)**

**Jurisdiction**
**(/oeig/about/Pages/jurisdiction.aspx)**

**Investigative Findings**
(/oeig/about/Pages/findings.aspx)

**Frequently Asked Questions**
**(/oeig/about/Pages/faq.aspx)**

**FOIA**
**(/oeig/about/Pages/foia.aspx)**

**Contact the Office**
**(/oeig/about/Pages/writeus.aspx)**

**Other Inspectors General**
**(/oeig/about/Pages/Links.aspx)**

**Grant Review Initiative Team (GRIT) Investigative Members**



(/oeig/)

(/oeig/search)

OEIG (/oeig/Pages/default.aspx)     About (/oeig/about/Pages/default.aspx)     Contact the Office

# Contact the Office

To report a non-emergency violation of law, rule or regulation via telephone, or if you have any problems or questions, call the OEIG toll-free at (866) 814-1113.

To otherwise contact the Office of Executive Inspector General by U.S. mail, by fax, by teletype or by telephone:

### Chicago

Office of Executive Inspector General for the Agencies of the Illinois Governor
69 West Washington Street
Suite 3400
Chicago, Illinois 60602
Phone: (312) 814-5600 or (888) 261-2734 (TTY)
Fax: (312) 814-5479

### Springfield

Office of Executive Inspector General for the Agencies of the Illinois Governor
Illinois Building - 607 East Adams Street
14th Floor
Springfield, Illinois 62701
Phone: (217) 558-5600
Fax: (217) 782-1605

## ABOUT THE OFFICE (/OEIG/ABOUT)

**Message from Maggie Hickey**
**(/oeig/about/Pages/Message.aspx)**

**Management Team**
**(/oeig/about/Pages/Staff.aspx)**

**Jurisdiction**
**(/oeig/about/Pages/jurisdiction.aspx)**

**Investigative Findings**
**(/oeig/about/Pages/findings.aspx)**

**Frequently Asked Questions**
**(/oeig/about/Pages/faq.aspx)**

**FOIA**
**(/oeig/about/Pages/foia.aspx)**

**Contact the Office**
/oeig/about/Pages/writeus.aspx)

**Other Inspectors General**

# State Executive Agency EEO/AA Officers
## April, 2017

| | |
|---|---|
| Adam Alstott<br>Executive Ethics Commission<br>William G. Stratton Building<br>401 S. Spring Street, Room 513<br>Springfield, Illinois 62706<br>217-558-1393<br>Adam.Alstott@illinois.gov | David Morrison<br>Office of Executive Inspector General<br>69 W. Washington, Suite 3400<br>Chicago, Illinois 60602<br>312-814-1932<br>David.Morrison@illinois.gov |
| Jodi Schrage<br>Office of the State Fire Marshal<br>1035 Stevenson Drive<br>Springfield, Illinois 62703-4259<br>217-558-1750<br>Jodi.Schrage@illinois.gov | Karen Weathers<br>Gaming Board<br>801 S. 7th Street, Suite 400<br>Springfield, Illinois 62703<br>217-558-3019<br>Karen.Weathers@igb.illinois.gov |
| Judy McAnarney<br>Office of the Governor<br>Room 207 State House<br>Springfield, Illinois 62706<br>217-558-1014<br>Judith.mcanarney@illinois.gov | Gia Orr<br>Guardianship and Advocacy Commission<br>Michael A Bilandic Building<br>160 N. LaSalle Street, Suite S-500<br>Chicago, Illinois 60601<br>312-793-5919<br>Gia.Orr@illinois.gov |
| Derrick Davis<br>Department of Healthcare & Family Services<br>401 S. Clinton, 5th Floor<br>Chicago, Illinois 60607<br>312-793-1882<br>Derrick.Davis@illinois.gov | Health Information Exchange Authority<br>James R. Thompson Center<br>100 W. Randolph Street, Suite 4750<br>Chicago, Illinois 60601<br>312-814- |
| Dr. Arthur Sutton<br>Board of Higher Education<br>431 E. Adams, Second Floor<br>Springfield, Illinois 62701<br>217-557-7347<br>Sutton@ibhe.org | Lori Tinsley<br>Historic Preservation Agency<br>313 S. Sixth<br>Springfield, Illinois 62701<br>217-785-7948<br>Lori.L.Tinsley@illinois.gov |
| Tracy Wortham<br>Housing Development Authority<br>401 N. Michigan Avenue, Suite 700<br>Chicago, Illinois 60611<br>312-836-5221<br>TWortham@ihda.org | Dr. Ewa I. Ewa<br>Human Rights Commission<br>James R. Thompson Center<br>100 W. Randolph Street, 5th Floor<br>Chicago, Illinois 60601<br>312-814-6281<br>Ewa.Ewa@illinois.gov |
| Michelle Dirksen<br>Department of Human Rights<br>222 S. College Ave., Room 101<br>Springfield, Illinois 62704<br>217-785-5123<br>Michelle.Dirksen@illinois.gov | Ganapathi Ramaswamy<br>Department of Human Services<br>69 W. Washington, 4th Floor<br>Chicago, IL 60602 (312) 793-1862<br>(312) 793-4781 work<br>Ganapathi.Ramaswamy@illinois.gov |

*5 ILCS 430/ 9095*

- Sex
- National Origin
- Age
- Disability
- Ancestry
- Citizenship Status
- Marital Status
- Military Status
- Sexual Orientation

# The Bureau of Civil Affairs

The duties and responsibilities of the Bureau of Civil Affairs include, but are not limited to the following:

- Investigating complaints of discrimination filed internally with the Bureau of Civil Affairs, or externally with regulatory agencies such as the Illinois Department of Human Rights, the U.S. Equal Employment Opportunity Commission, or the U.S. Department of Health and Human Services, Office of Civil Rights.
- Counseling employees concerning the merit of complaints filed.
- Developing and monitoring an annual Affirmative Action Plan, which includes goals, timetables, and monitoring procedures to achieve a diversified workforce reflective of the Illinois population in all DHS offices.
- Monitoring the procedures and regulations intended to ensure non-discrimination in the delivery of services.
- Participating in employment recruitment programs.
- Monitoring employment practices and producing quarterly and annual reports.
- Disseminating information on Equal Employment Opportunity and Affirmative Action.

## What is Equal Employment Opportunity?

Equal Employment Opportunity is a Federal law, covered under Title VII of the Civil Rights Act of 1964. This law prohibits unlawful discrimination in the work place, as an outcome of employment practices including hiring, promotion, transfer, discipline, or any other personnel action. The Bureau of Civil Affairs is charged with the responsibility of assuring that the Department of Human Services is in compliance with the Federal and State civil rights laws and regulations, and that all employees are able to work in an environment free from discrimination or harassment.

## What is Affirmative Action?

Affirmative Action is a Federal policy, established by Executive Order 11246. It is intended to impact the adverse effects of historical or current discrimination. This is accomplished by assuring that members of affirmative action groups (Women, African Americans, Hispanic/Latinos, Asians, Native Americans and People with Disabilities) are represented in the work force, proportionate to their availability in the general population. The "action steps" taken by organizations, with regard to the hiring and promotion of members of the affirmative action groups, constitutes the "affirmative action."

In compliance with state and federal law, IDHS submits an Affirmative Action Plan on an annual basis to the Illinois Department of Human Rights.

## How to File a Charge

If you feel that you have been discriminated against, you have the right to file a charge with the Bureau of Civil Affairs. Charges should be filed in writing on the Charge Complaint Form (IL 444-4027) within 30 working days of the alleged discriminatory act.

If you are not satisfied with the findings of the Bureau of Civil Affairs, or would rather initiate a charge outside of the Department, you may file with the Illinois Department of Human Rights or the U.S. Department of Health and Human Services within 180 days, or with the U.S. Equal Employment Opportunity Commission, within 300 days from the date of the alleged discriminatory act.

## What Happens After a Charge is Filed?

An EEO Officer will conduct an internal investigation within 90 working days from the date the complaint was received to determine whether there is evidence to support the charge. If there is a supporting evidence, a

James T. Dimas, Secretary

# Civil Affairs

In compliance with the Americans with Disabilities Act and the Illinois Human Rights Act, State agencies must ensure that the employment process is accessible to persons with disabilities. Specifically, these laws require that the State provide reasonable accommodations upon request by individuals participating in all steps of the employment process. This includes the initial testing phases of the candidate selection process for state positions as well as the subsequent employment interview process.

Any and all accommodation requests by applicants throughout the State employment process should be appropriately reviewed and considered by the **ADA Coordinator and human resources staff** in state hiring agencies.

If you need such an accommodation, please contact:

**Martha Younger-White**, Bureau Chief, Bureau of Accessibility and Job Accommodation
Voice: (312) 793-0034
TTY: (888) 614-2385
FAX: (312) 793-2406

## Mission to Our Customers

The Bureau of Civil Affairs strives to provide fair and unbiased treatment to employees and individuals requesting services from the Department of Human Services. We strive to create an environment free from discrimination and harassment for those we employ as well as those customers we serve.

Ganapathi Ramaswamy, Civil Affairs, EEO/AA Director

## Contact Us

If you have any questions or concerns about discrimination, harassment, or the process to file a charge you can call the Bureau of Civil Affairs Monday-Friday 8:30 am - 5:00 pm at one of the following numbers:

| **Northern Illinois** | **Central Illinois** | **Southern Illinois** |
|---|---|---|
| Chicago Office | Springfield Office | E. St. Louis Office |
| (312) 793-1862 | (217)524-7068 | (618) 583-2075 |

James I. Dimas, Secretary

# Reasonable Accommodation

## Notice

In compliance with the Americans with Disabilities Act and the Illinois Human Rights Act, State agencies must ensure that the employment process is accessible to persons with disabilities. Specifically, these laws require that the State provide reasonable accommodations upon request by individuals participating in all steps of the employment process. This includes the initial testing phases of the candidate selection process for state positions as well as the subsequent employment interview process. Any and all accommodation requests by applicants throughout the State employment process should be appropriately reviewed and considered by **the ADA Coordinator and human resources staff** in state hiring agencies. If you need such an accommodation, please contact:

Martha Younger-White, Bureau Chief, Bureau of Accessibility and Job Accommodation
Voice: (312) 793-0034
TTY: (888) 614-2385
FAX: (312) 793-2406

## What is Reasonable Accommodation?

Reasonable Accommodation is modifications or adjustments to the job application process and the work environment that enable qualified applicants or employees with disabilities to be considered for a position, to perform the essential functions of a position in the manner or circumstances under which the position held or desired is customarily performed, and to enjoy equal benefits and privileges of employment.

Reasonable Accommodation Frequently Asked Questions

## Who can receive these services?

State of Illinois Department of Human Resources job applicants and/or DHS employees with disabilities can apply for a Reasonable Accommodation request.

## How to apply?

Complete and submit the following two (2) forms to your immediate supervisor who will forward within 5 business days to your Division/Facility Reasonable Accommodation Liaison. The Reasonabile Accommodation Liaison will submit all signed forms to the Bureau of Job Accommodation:

- IL444-4231 - Request for Reasonable Accommodation (.pdf) (expandable) - (R-08-16)

- IL444-4235 - REQUEST FOR REASONABLE ACCOMMODATION - NEW JOB CANDIDATE (.pdf) (expandable) - (N-08-16)

- IL444-4232 - Physician's Medical Review (pdf) - (R-08-12)

## Who is my Reasonable Accommodation Liaision?

Please contact (217) 782-7691 Voice or (217) 557-5564 TTY. A staff will refer you to an appropriate Reasonable Accommodation Liaision based on the division and location where you work or with whom you are applying for employment.

## More Info & Resources

Reasonable accommodations may be categorized as follows:

- **Restructuring and Modification Accommodations**
  These include, but are not limited to, removal of nonessential tasks, job modifications, rearrangement of office furniture, removal of desk drawers, and flexible time to allow for transportation or medical schedules;

- **Technological and Accessibility Accommodations**
  These include, but are not limited to, dictating machines, voice-activated equipment, push-button telephones, opticons, TTY, hand controls for dictating devices, speaker phones, telephone amplifiers, typewriters, braille writers, orthopedic desk chairs, and other adaptive office furniture and audio-looping systems as well as architectural modifications; and

- **Assistive Care Accommodations**
  These include, but are not limited to, readers, drivers, interpreters, and assistants.

Help



**Dorothy Reddic**                                    go to ...

| Account Inquiry | Electronic Payments/Purchases | Account Services |
|---|---|---|
| summary | charges due | payments | pending aid |

## Account Summary

You owe 1,931.70. For the breakdown, access    Charges Due
- Due Now        336.54
- Future Due   1,595.16

..

What I Owe

| Term | Outstanding Charges & Deposits | Pending Financial Aid | Total Due |
|---|---|---|---|
| Fall 2017 | 336.54 | | 336.54 |
| Spring 2018 | 1,595.16 | | 1,595.16 |
| **Total** | **1,931.70** | | **1,931.70** |

Currency used is US Dollar.                              Make A Payment

Remittance Addresses

Financial Aid

---

**Account Inquiry  Electronic Payments/Purchases  Account Services**
Summary  Charges Due  Payments  Pending Aid

go to ...

Help

Dorothy Reddic

---

## Payment History - Charges Paid by this Payment

### 01/31/2018  eCheck Payment

| Payment Breakdown | Term | Applied Payment Amount |
|---|---|---|
| Late Payment Fee | Fall 2016 | 12.26 |
| Late Payment Fee | Fall 2016 | 12.26 |
| Late Payment Fee | Spring 2017 | 5.11 |
| VCB Bookstore Charge S | Spring 2017 | 500.56 |
| HSC Bookstore Charge | Spring 2017 | 127.17 |
| Late Payment Fee | Spring 2017 | 24.41 |
| Late Payment Fee | Spring 2017 | 31.88 |
| Late Payment Fee | Spring 2017 | 25.36 |
| Parking Ticket | Summer 2017 | 20.00 |
| Student Medical Insurance | Fall 2017 | 311.16 |
| Grad IL Tuition | Fall 2016 | 318.59 |
| Grad IL Tuition | Spring 2017 | 411.24 |
| **Total Payment Amount** | | **1,800.00** |

Return to Payment History

Dorothy Reddic

Payment History - Charges Paid by this Payment

01/25/2018  Third Party Payment

| Payment Breakdown | Term | Applied Payment Amount |
|---|---|---|
| Student Medical Insurance | Spring 2017 | 990.50 |
| Total Payment Amount | | 990.50 |

Return to Payment History

# RE: Enrollment

## Donna Siegmeier <dsiegmeier@niu.edu>

Thu 1/25/2018 3:01 PM

To:Dorothy Reddic <msreddic@hotmail.com>;

Hello Dorothy,

Date I received voucher – 01/25/2018

The exact amount on voucher $1039.00 revised to $990.50

**Donna Siegmeier**
Third Party Billing

Office of the Bursar | Division of Administration & Finance
Swen Parson Hall 210 | DeKalb, IL 60115-2828
Phone 815-753-9197 | dsiegmeier@niu.edu | Fax 815-753-0491
niu.edu/bursar

 **Northern Illinois University**
*Your Future. Our Focus.*

**From:** Dorothy Reddic [mailto:msreddic@hotmail.com]
**Sent:** Thursday, January 25, 2018 2:53 PM
**To:** Donna Siegmeier <dsiegmeier@niu.edu>
**Cc:** Dorothy Reddic <msreddic@hotmail.com>
**Subject:** Re: Enrollment

Hello Ms. Donna,

Thank you for the update! Would you please be more specific and inform me of the following:

- Date you received the voucher

- The exact amount for the voucher
If it is easier if you can send me a copy of the voucher and the cover letter that accompanied the voucher I can get the information from those documents.

Your assistance is greatly appreciated!

Respectfully,

Dorothy Reddic

---

**From:** Donna Siegmeier <dsiegmeier@niu.edu>
**Sent:** Thursday, January 25, 2018 1:42 PM
**To:** Dorothy Reddic
**Subject:** RE: Enrollment

Hello Dorothy,

I wanted to inform you I received a voucher from DHS – DORS for Health Insurance, for Spring 2017.

**Donna Siegmeier**
Third Party Billing

Office of the Bursar | Division of Administration & Finance
Swen Parson Hall 210 | DeKalb, IL 60115-2828
Phone 815-753-9197 | dsiegmeier@niu.edu | Fax 815-753-0491
niu.edu/bursar



**Northern Illinois University**
*Your Future. Our Focus.*

**From:** Dorothy Reddic [mailto:msreddic@hotmail.com]
**Sent:** Wednesday, January 24, 2018 4:16 PM
**To:** Bonni Feltz <bfeltz@niu.edu>
**Cc:** Laverne Gyant <lgyant@niu.edu>; Donna Siegmeier <dsiegmeier@niu.edu>; Mary Williams <marywilliams@niu.edu>; StudentInsurance <StudentInsurance@niu.edu>; Dorothy Reddic <msreddic@hotmail.com>
**Subject:** Re: Enrollment

Hello Mrs. Feltz,

I am working tirelessly with the Illinois Department of Human Services Division of Rehabilitation Services Program to pay the outstanding $2166 from the Spring 2017 semester that was awarded to me after 246 days awaiting an appeal decision. The denied me my constitutional rights to due

process of having a hearing in 60 days with the decision implemented. Now they are interfering with the implementation of the decision made by a hearing officer.

It is my intention to be registered in a course or two by the end of the week. I am waiting to see what they are going to pay on the account then I prepared to pay the $1500 difference that will permit me to register. How will the funding be disbursed for the DFI? I am sorry I know you explained this to me before but I can't recall. I don't want to bore you with the magnitude of problems they have caused me impacting my livelihood.

Dr. Gyant, I also need your assistance because as a result of thinking I was moving on campus I began packing things and I can't find the notebook with the permit number for CAHA 799. I know I will need someone to admit me late also if you can ask Jamie Colbert to help me again this semester with getting registered once the hold is released on the account.

Thank you all so much for your support and working with me! If that is unacceptable please let me know because I told my attorneys and DRS' attorney I need to register by the end of today because I need to register for classes and student health insurance. I am out of medication tomorrow without insurance coverage for some of the them.

Please pray with me they make the arrangements to pay as their administrator stated they would do because they are violating an administrative judge's order who happens to be all of their boss. (One day I will tell this story and pray other students are not having these hardships. If you know of any please send them my way.)

Respectfully,

Dorothy Reddic

**From:** Bonni Feltz <bfeltz@niu.edu>
**Sent:** Wednesday, January 24, 2018 3:48 PM
**To:** Reddic, Dorothy (msreddic@hotmail.com)

**Cc:** Laverne Gyant
**Subject:** Enrollment

I still don't see where you have registered Dorothy. Your deadline is in a couple of days.

**Bonni Feltz**
Office Support Specialist

Graduate School Dean's Office
Adams Hall 221 | DeKalb, Illinois 60115-2828
815-753-9654 | 815-753-6366
bfeltz@niu.edu
http://www.niu.edu/grad/

 **Northern Illinois University**
*Your Future. Our Focus.*

 Legal Information Institute [LII]
OPEN ACCESS TO LAW SINCE 1992

CFR › Title 34 › Subtitle B › Chapter III › Part 361 › Subpart B

## 34 CFR Part 361, Subpart B - State Plan and Other Requirements for Vocational Rehabilitation Services

- § 361.10 Submission, approval, and disapproval of the State plan.
- § 361.11 Withholding of funds.
- **SUBJECT GROUP 135**
  **Administration (§§ 361.12 - 361.40)**
  - § 361.12 Methods of administration.
  - § 361.13 State agency for administration.
  - § 361.14 Substitute State agency.
  - § 361.15 Local administration.
  - § 361.16 Establishment of an independent commission or a State Rehabilitation Council.
  - § 361.17 Requirements for a State Rehabilitation Council.
  - § 361.18 Comprehensive system of personnel development.
  - § 361.19 Affirmative action for individuals with disabilities.
  - § 361.20 Public participation requirements.
  - § 361.21 Consultations regarding the administration of the vocational rehabilitation services portion of the Unified or Combined State plan.
  - § 361.22 Coordination with education officials.
  - § 361.23 Requirements related to the statewide workforce development system.
  - § 361.24 Cooperation and coordination with other entities.
  - § 361.25 Statewideness.
  - § 361.26 Waiver of statewideness.
  - § 361.27 Shared funding and administration of joint programs.
  - § 361.28 Third-party cooperative arrangements involving funds from other public agencies.
  - § 361.29 Statewide assessment; annual estimates; annual State goals and priorities; strategies; and progress reports.
  - § 361.30 Services to American Indians.
  - § 361.31 Cooperative agreements with private nonprofit organizations.
  - § 361.32 Provision of training and services for employers.
  - § 361.33 [Reserved]
  - § 361.34 Supported employment State plan supplement.
  - § 361.35 Innovation and expansion activities.
  - § 361.36 Ability to serve all eligible individuals; order of selection for services.
  - § 361.37 Information and referral programs.
  - § 361.38 Protection, use, and release of personal information.
  - § 361.39 State-imposed requirements.
  - § 361.40 Reports; Evaluation standards and performance indicators.

- **SUBJECT GROUP 136**
  **Provision and Scope of Services (§§ 361.41 - 361.57)**
  - § 361.41 Processing referrals and applications.
  - § 361.42 Assessment for determining eligibility and priority for services.
  - § 361.43 Procedures for ineligibility determination.
  - § 361.44 Closure without eligibility determination.
  - § 361.45 Development of the individualized plan for employment.
  - § 361.46 Content of the individualized plan for employment.
  - § 361.47 Record of services.
  - § 361.48 Scope of vocational rehabilitation services for individuals with disabilities.
  - § 361.49 Scope of vocational rehabilitation services for groups of individuals with disabilities.
  - § 361.50 Written policies governing the provision of services for individuals with disabilities.
  - § 361.51 Standards for facilities and providers of services.
  - § 361.52 Informed choice.
  - § 361.53 Comparable services and benefits.
  - § 361.54 Participation of individuals in cost of services based on financial need.
  - § 361.55 Semi-annual and annual review of individuals in extended employment and other employment under special certificate provisions of the Fair Labor Standards Act.
  - § 361.56 Requirements for closing the record of services of an individual who has achieved an employment outcome.
  - § 361.57 Review of determinations made by designated State unit personnel.

Legal Information Institute [LII]

Dear readers,

Today we ask you to help the Legal Information Institute [LII]. We depend on donor support to keep legal information objective and free. If everyone reading this gave $10 right now, our fundraiser would be done within an hour. We're a small nonprofit with costs of a top website: servers, staff and programs. We serve millions of readers, but we run on a fraction of what other top sites spend. If the LII is useful to you, please take one minute to keep it online. *Thank you.*



## Please help the LII

- ⊙ **One-time**
- ○ **Monthly\***

- ○ **$10**
- ○ **$25**
- ○ **$50**

- ○ **$100**
- ○ **$250**
- ○ **OTHER** [____]
- [ Give now! ]

**REMIND ME LATER**

Where does your support go? | By donating, you are agreeing to our privacy policy. The Legal Information Institute is a nonprofit, tax-exempt organization. *If you make a recurring donation, you will be debited by the Legal Information Institute until you notify us to stop. We'll send you an email receipt for each payment, and provide easy cancellation instructions.

## Vocational rehabilitation services

Vocational rehabilitation services - (i) if provided to an individual, means those services listed in 361.48; and

(ii) if provided for the benefit of groups of individuals, means those services listed in § 361.49.

## Source

34 CFR § 361

## Scoping

The following
part:

Is this correct?

---

Legal Information Institute [LII]

Dear readers,

Today we ask you to help the Legal Information Institute [LII]. We depend on donor support to keep legal information objective and free. If everyone reading this gave $10 right now, our fundraiser would be done within an hour. We're a small nonprofit with costs of a top website: servers, staff and programs. We serve millions of readers, but we run on a fraction of what other top sites spend. If the LII is useful to you, please take one minute to keep it online. *Thank you.*



## Please help the LII

- ⊙ **One-time**
- ○ **Monthly\***

- ○ **$10**
- ○ **$25**
- ○ **$50**

- ○ **$100**
- ○ **$250**
- ○ **OTHER** [____]
- [ Give now! ]

vocational rehabilitation services

**REMIND ME LATER**

Where does your support go? | By donating, you are agreeing to our privacy policy. The Legal Information Institute is a nonprofit, tax-exempt organization. *If you make a recurring donation, you will be debited by the Legal Information Institute until you notify us to stop. We'll send you an email receipt for each payment, and provide easy cancellation instructions.

---

Legal Information Institute [LII]

Dear readers,

Today, we need your help. The small staff here at Cornell's Legal Information Institute depends on reader support to provide objective legal information on the Internet, free of charge. We don't ask much: just $10 or $25, if you can spare it, would go a long way toward keeping this important service available to the 35 million people who use it each year. Thanks for your help!

## Please help the LII

- ⊙ **One-time**
- ○ **Monthly\***

- ○ **$10**
- ○ **$25**
- ○ **$50**



(iii) Entity that will provide the services;

(iv) Employment setting and the settings in which the services will be provided; and

(v) Methods available for procuring the services; and

(5) Ensuring that the availability and scope of informed choice is consistent with the obligations of the designated State agency under this part.

(c) *Information and assistance in the selection of vocational rehabilitation services and service providers.* In assisting an applicant and eligible individual in exercising informed choice during the assessment for determining eligibility and vocational rehabilitation needs and during development of the individualized plan for employment, the designated State unit must provide the individual or the individual's representative, or assist the individual or the individual's representative in acquiring, information necessary to make an informed choice about the specific vocational rehabilitation services, including the providers of those services, that are needed to achieve the individual's employment outcome. This information must include, at a minimum, information relating to the -

(1) Cost, accessibility, and duration of potential services;

(2) Consumer satisfaction with those services to the extent that information relating to consumer satisfaction is available;

(3) Qualifications of potential service providers;

(4) Types of services offered by the potential providers;

(5) Degree to which services are provided in integrated settings; and

(6) Outcomes achieved by individuals working with service providers, to the extent that such information is available.

(d) *Methods or sources of information.* In providing or assisting the individual or the individual's representative in acquiring the information required under paragraph (c) of this section, the State unit may use, but is not limited to, the following methods or sources of information:

(1) Lists of services and service providers.

(2) Periodic consumer satisfaction surveys and reports.

(3) Referrals to other consumers, consumer groups, or disability advisory councils qualified to discuss the services or service providers.

(4) Relevant accreditation, certification, or other information relating to the qualifications of service providers.

(5) Opportunities for individuals to visit or experience various work and service provider settings.

(Approved by the Office of Management and Budget under control number 1205-0522)
(Authority: Sections 12(c), 101(a)(19), 102(b)(2)(B), and 102(d) of the Rehabilitation Act of 1973, as amended; 29 U.S.C. 709(c), 721(a)(19), 722(b)(2)(B), and 722(d))



About LII    Contact us    Advertise here    Help    Terms of use    Privacy    [LII]

Cornell Law School

(Authority: Section 7(28) of the Rehabilitation Act of 1973, as amended; 29 U.S.C. 705(26))

(37) *Ongoing support services*, as used in the definition of *supported employment*, means services that -

(i) Are needed to support and maintain an individual with a most significant disability, including a youth with a most significant disability, in supported employment;

(ii) Are identified based on a determination by the designated State unit of the individual's need as specified in an individualized plan for employment;

(iii) Are furnished by the designated State unit from the time of job placement until transition to extended services, unless post-employment services are provided following transition, and thereafter by one or more extended services providers throughout the individual's term of employment in a particular job placement;

(iv) Include an assessment of employment stability and provision of specific services or the coordination of services at or away from the worksite that are needed to maintain stability based on -

(A) At a minimum, twice-monthly monitoring at the worksite of each individual in supported employment; or

(B) If under specific circumstances, especially at the request of the individual, the individualized plan for employment provides for off-site monitoring, twice monthly meetings with the individual;

(v) Consist of -

(A) Any particularized assessment supplementary to the comprehensive assessment of rehabilitation needs described in paragraph (c)(5)(ii) of this section;

(B) The provision of skilled job trainers who accompany the individual for intensive job skill training at the work site;

(C) Job development and training;

(D) Social skills training;

(E) Regular observation or supervision of the individual;

(F) Follow-up services including regular contact with the employers, the individuals, the parents, family members, guardians, advocates or authorized representatives of the individuals, and other suitable professional and informed advisors, in order to reinforce and stabilize the job placement;

(G) Facilitation of natural supports at the worksite;

(H) Any other service identified in the scope of vocational rehabilitation services for individuals, described in § 361.48(b); or

(I) Any service similar to the foregoing services.



(Authority: Sections 7(27) and 12(c) of the Rehabilitation Act of 1973, as amended; 29 U.S.C. 705(27) and 709(c))

(38) *Personal assistance services* means a range of services, including, among other things, training in managing, supervising, and directing personal assistance services, provided by one or more persons, that are -

(i) Designed to assist an individual with a disability to perform daily living activities on or off the job that the individual would typically perform without assistance if the individual did not have a disability;

(ii) Designed to increase the individual's control in life and ability to perform everyday activities on or off the job;

(iii) Necessary to the achievement of an employment outcome; and

(iv) Provided only while the individual is receiving other vocational rehabilitation services. The services may include training in managing, supervising, and directing personal assistance services.

(Authority: Sections 7(28), 12(c), 102(b)(4)(B)(i)(I)(bb), and 103(a)(9) of the Rehabilitation Act of 1973, as amended; 29 U.S.C. 705(28), 709(c), 722(b)(4)(B)(i)(I)(bb), and 723(a)(9))

(39) *Physical and mental restoration services* means -

(i) Corrective surgery or therapeutic treatment that is likely, within a reasonable period of time, to correct or modify substantially a stable or slowly progressive physical or mental impairment that constitutes a substantial impediment to employment;

(ii) Diagnosis of and treatment for mental or emotional disorders by qualified personnel in accordance with State licensure laws;

(iii) Dentistry;

(iv) Nursing services;

(v) Necessary hospitalization (either inpatient or outpatient care) in connection with surgery or treatment and clinic services;

(vi) Drugs and supplies;

(vii) Prosthetic and orthotic devices;

(viii) Eyeglasses and visual services, including visual training, and the examination and services necessary for the prescription and provision of eyeglasses, contact lenses, microscopic lenses, telescopic lenses, and other special visual aids prescribed by personnel who are qualified in accordance with State licensure laws;

(ix) Podiatry;

(x) Physical therapy;

(xi) Occupational therapy;

(xii) Speech or hearing therapy;



(47) *Sole local agency* means a unit or combination of units of general local government or one or more Indian tribes that has the sole responsibility under an agreement with, and the supervision of, the State agency to conduct a local or tribal vocational rehabilitation program, in accordance with the vocational rehabilitation services portion of the Unified or Combined State Plan.



(Authority: Section 7(24) of the Rehabilitation Act of 1973, as amended; 29 U.S.C. 705(24))

(48) *State* means any of the 50 States, the District of Columbia, the Commonwealth of Puerto Rico, the United States Virgin Islands, Guam, American Samoa, and the Commonwealth of the Northern Mariana Islands.

(Authority: Section 7(34) of the Rehabilitation Act of 1973, as amended; 29 U.S.C. 705(34))

(49) *State workforce development board* means a State workforce development board, as defined in section 3 of the Workforce Innovation and Opportunity Act ( 29 U.S.C. 3102).

(Authority: Section 7(35) of the Rehabilitation Act of 1973, as amended; 29 U.S.C. 705(35))

(50) *Statewide workforce development system* means a workforce development system, as defined in section 3 of the Workforce Innovation and Opportunity Act ( 29 U.S.C. 3102).

(Authority: Section 7(36) of the Rehabilitation Act of 1973, as amended; 29 U.S.C. 705(36))

(51) *Student with a disability* -

(i) *Student with a disability* means, in general, an individual with a disability in a secondary, postsecondary, or other recognized education program who -

(A)( 1) Is not younger than the earliest age for the provision of transition services under section 614(d)(1)(A)(i)(VIII) of the Individuals with Disabilities Education Act ( 20 U.S.C. 1414(d)(1)(A)(i)(VIII)); or

(2) If the State involved elects to use a lower minimum age for receipt of pre-employment transition services under this Act, is not younger than that minimum age; and

(B)( 1) Is not older than 21 years of age; or

(2) If the State law for the State provides for a higher maximum age for receipt of services under the Individuals with Disabilities Education Act ( 20 U.S.C. 1400*et seq.*), is not older than that maximum age; and

(C)( 1) Is eligible for, and receiving, special education or related services under Part B of the Individuals with Disabilities Education Act ( 20 U.S.C. 1411*et seq.*); or

(2) Is a student who is an individual with a disability, for purposes of section 504.

(ii) *Students with disabilities* means more than one student with a disability.

(Authority: Sections 7(37) and 12(c) of the Rehabilitation Act of 1973, as amended; 29 U.S.C. 705(37) and 709(c))

(52) *Substantial impediment to employment* means that a physical or mental impairment (in light of attendant medical, psychological, vocational, educational, communication, and other related factors) hinders an individual from preparing for, entering into, engaging in, advancing in, or retaining employment consistent with the individual's abilities and capabilities.



(Authority: Sections 7(20)(A) and 12(c) of the Rehabilitation Act of 1973, as amended; 29 U.S.C. 705(20)(A) and 709(c))

(53) *Supported employment* -

(i) *Supported employment* means competitive integrated employment, including customized employment, or employment in an integrated work setting in which an individual with a most significant disability, including a youth with a most significant disability, is working on a short-term basis toward competitive integrated employment that is individualized, and customized, consistent with the unique strengths, abilities, interests, and informed choice of the individual, including with ongoing support services for individuals with the most significant disabilities -

(A) For whom competitive integrated employment has not historically occurred, or for whom competitive integrated employment has been interrupted or intermittent as a result of a significant disability; and

(B) Who, because of the nature and severity of their disabilities, need intensive supported employment services and extended services after the transition from support provided by the designated State unit, in order to perform this work.

(ii) For purposes of this part, an individual with a most significant disability, whose supported employment in an integrated setting does not satisfy the criteria of competitive integrated employment, as defined in paragraph (c)(9) of this section is considered to be working on a short-term basis toward competitive integrated employment so long as the individual can reasonably anticipate achieving competitive integrated employment -

(A) Within six months of achieving a supported employment outcome; or

(B) In limited circumstances, within a period not to exceed 12 months from the achievement of the supported employment outcome, if a longer period is necessary based on the needs of the individual, and the individual has demonstrated progress toward competitive earnings based on information contained in the service record.

(Authority: Sections 7(38), 12(c), and 602 of the Rehabilitation Act of 1973, as amended; 29 U.S.C. 705(38), 709(c), and 795g)

(54) *Supported employment services* means ongoing support services, including customized employment, and other appropriate services needed to support and maintain an individual with a most significant disability, including a youth with a most significant disability, in supported employment that are -



(i) Organized and made available, singly or in combination, in such a way as to assist an eligible individual to achieve competitive integrated employment;

(ii) Based on a determination of the needs of an eligible individual, as specified in an individualized plan for employment;

(iii) Provided by the designated State unit for a period of time not to exceed 24 months, unless under special circumstances the eligible individual and the rehabilitation counselor jointly agree to extend the time to achieve the employment outcome identified in the individualized plan for employment; and

Support Us!

## Legal Information Institute [LII]
OPEN ACCESS TO LAW SINCE 1992

Dear readers,

Today we ask you to help the Legal Information Institute [LII]. We depend on donor support to keep legal information effective and free. If everyone reading this gave $10 right now, our fundraiser would be done within an hour. We're a small nonprofit with costs of a top website: servers, staff and programs. We advertise nowhere and we run on a fraction of what other top sites spend. If the LII is useful to you, please take one minute to keep it online. Thank you.

### Please help the LII

- ⊙ One-time
- ○ Monthly*

- ⊙ $10
- ○ $25
- ○ $50

- ○ $100
- ○ $250
- ○ OTHER [      ]

- [ Give now! ]

REMIND ME LATER

Where does your support go? | By donating, you are agreeing to our privacy policy. The Legal Information Institute is a nonprofit, tax-exempt organization. *If you make a recurring donation, you will be debited by the Legal Information Institute until you notify us to stop. We'll send you an email receipt for each payment, and provide easy cancellation instructions.

Procedures. The designated State unit must develop and implement procedures to ensure that an applicant or recipient of services who is dissatisfied with any determination made by personnel of the designated State unit that affects the provision of vocational rehabilitation services may request, or, if appropriate, may request through the individual's representative, a timely review of that determination. The procedures must be in accordance with paragraphs (b) through (k) of this section:

Source
34 CFR § 361
(/cfr/text/34/36

Scoping
None

Is this correct?

## Legal Information Institute [LII]
OPEN ACCESS TO LAW SINCE 1992

CFR › Title 34 › Subtitle B › Chapter III › Part 361 › Subpart B › Section 361.52



## 34 CFR 361.52 - Informed choice.

**§ 361.52 Informed choice.**

(a) *General provision.* The vocational rehabilitation services portion of the Unified or Combined State Plan must assure that applicants and recipients of services or, as appropriate, their representatives are provided information and support services to assist applicants and recipients of services in exercising informed choice throughout the rehabilitation process consistent with the provisions of section 102(d) of the Act and the requirements of this section.

(b) *Written policies and procedures.* The designated State unit, in consultation with its State Rehabilitation Council, if it has a Council, must develop and implement written policies and procedures that enable an applicant or recipient of services to exercise informed choice throughout the vocational rehabilitation process. These policies and procedures must provide for -

(1) Informing each applicant and recipient of services (including students with disabilities who are making the transition from programs under the responsibility of an educational agency to programs under the responsibility of the designated State unit and including youth with disabilities), through appropriate modes of communication, about the availability of and opportunities to exercise informed choice, including the availability of support services for individuals with cognitive or other disabilities who require assistance in exercising informed choice throughout the vocational rehabilitation process;

(2) Assisting applicants and recipients of services in exercising informed choice in decisions related to the provision of assessment services;

(3) Developing and implementing flexible procurement policies and methods that facilitate the provision of vocational rehabilitation services and that afford recipients of services meaningful choices among the methods used to procure vocational rehabilitation services;

(4) Assisting eligible individuals or, as appropriate, the individuals' representatives, in acquiring information that enables them to exercise informed choice in the development of their individualized plans for employment with respect to the selection of the -

(I) Employment outcome;

(II) Specific vocational rehabilitation services needed to achieve the employment outcome;

(III) Entity that will provide the services;

(Iv) Employment setting and the settings in which the services will be provided; and

(v) Methods available for procuring the services; and

(5) Ensuring that the availability and scope of informed choice is consistent with the obligations of the designated State agency under this part.

(c) *Information and assistance in the selection of vocational rehabilitation services and service providers.* In assisting an applicant and eligible individual in exercising informed choice during the assessment for determining eligibility and vocational rehabilitation needs and during development of the individualized plan for employment, the designated State unit must provide the individual or the individual's representative, or assist the individual



**ED/OSERS/RSA (/index.cfm)**

(https://www.ed.gov) Rehabilitation Services Administration
ED

About RSA     Funding     Reports     Help

# People and Offices

Click on the information you wish to see (or tab to it and press enter)

| Contact RSA | VR State Agency Contacts | RSA Offices |

### RSA Offices

Office of the Commissioner, Commissioner - *(Carol Dobak has been delegated the authority to perform the functions of the commissioner)*

State Monitoring and Program Improvement Division (SMPID) Carol Dobak

## State Monitoring and Program Improvement Division (SMPID)

The State Monitoring and Program Improvement Division (SMPID) is responsible for state plan review and approval, and for monitoring five RSA formula grant programs to ensure consistency with federal requirements and to ensure that states continue to implement programs designed to improve results for individuals with disabilities, including youth with disabilities.

SMPID is divided into functional units and state teams. Each person in the division participates on both.



## Functional Units

The functional units carry out activities that enable the state teams to monitor and assist states to improve their programs. Each functional unit has a unit chief with supervisory responsibilities over persons who serve in the unit. Each functional unit chief is an expert in the functional area and is responsible for not only accomplishing the purpose of the unit, but also developing skills and expertise in each of the unit members. Each staff person in the division is assigned to one of the four functional units and works with the unit to carry out the purposes of the unit.

- Data Collection and Analysis
  In performing their responsibilities, staff members:

  - review and improve RSA's various databases and work with state agencies to maintain RSA's various databases on all state grantees enabling the Vocational Rehabilitation (VR) (display.cfm?pageid=78#vr) Program Unit to develop individual profiles of each state grantee;

  - support the vocational rehabilitation program unit in the development of the program performance profiles;

  - develop and implement the annual evaluation plan; and

  - provide support to state teams in their data analysis activities.

- Fiscal

  - develop and maintain a fiscal performance data profile of each state grantee,

  - improve and maintain a fiscal monitoring process that state teams will use to determine if state grantees are meeting their fiscal obligations under their respective statutes,

  - oversee the resolution of audit findings (single audits, inspector general audits, Government Accountability Office reports) including grantbacks, primary and collateral determinations,

  - support the fiscal monitoring reviews and audit resolution activities carried out by the state teams,

  - monitor formula grant matching requirements and computes maintenance of effort, and

  - apply statutory requirements for the allotment of funds for rehabilitation programs.

- **Vocational Rehabilitation (VR)**
  In performing their responsibilities, staff members:

  o develop and maintain a program performance profile on each vocational rehabilitation (VR) state grantee that includes an organizational description of how each agency operates;

  o develop and implement systems for the review of state plan submissions, for coordinating with other offices as necessary;

  o improve and maintain the VR state grant monitoring process used by state teams to identify improvements that VR state grantees should make in order to improve their performance and meet their program obligations;

  o support the state teams in their state plan approval, monitoring processes and program improvement efforts;

  o in coordination with the OSERS' Office of the Assistant Secretary (OAS (display.cfm?pageid=339)) Office of Policy and Planning (OPP (http://www2.ed.gov/about/offices/list/osers/pps.html)), participate in the development and dissemination of policy guidance, regulations and program guidance in all areas of responsibility;

  o coordinate with the department in implementation of the department's integrated monitoring activities;

  o develop program performance measures, which are used to evaluate and monitor grantees;

  o provide technical assistance to the state grant programs in the Training and Service Programs Division (display.cfm?pageid=84); and

  o administer the basic VR state grants and the supported employment state grants.

- **Technical Assistance (TA)**
  In performing their responsibilities, staff members:

  o identify and develop and maintain a database of technical assistance (TA) resources;

  o identify and develop networks of partners in each state made up of consumers, providers, state agency representatives, state rehabilitation councils, federal agencies and any other interested parties that wish to participate in the state teams monitoring and program improvement activities;

  o provide technical assistance to state network partners to improve their understanding of the legal and program requirements of the statutes;

  o collaborate with the Training and Service Programs Divisions (display.cfm?pageid=84)' units to identify resources that will assist grantees in their program improvement efforts;

  o provide support to state teams in their efforts to achieve identified improvements in each state;

  o provide technical assistance to grantees funding by the Training and Service Programs Division (display.cfm?pageid=84) in order to improve the skills of vocational rehabilitation (VR) professionals in assisting individuals with disabilities to achieve employment;

  o administer funds authorized under Section 12 of the *Rehabilitation Act* to provide technical assistance and support services to programs funded under the *Act*;

  o administer the Client Assistance Program (programs.cfm?pc=CAP&sub=purpose) and the Protection and Advocacy of Individual Rights (programs.cfm?pc=PAIR&sub=purpose) program;

  o administer the Institute on Rehabilitation Research (IRI) and use the IRI training materials to improve the skills of VR professionals and other stakeholders in the public VR programs; and

  o participate in interagency workgroups with the Department of Labor and the Social Security Administration in order to fully implement the *Workforce Investment Act* and to improve the employment of individuals with disabilities.

## State Teams

There is a state team assigned to every state and that state team is responsible for all of the SMPID's formula grantees that operate in that state. A designated state team member (state liaison) who does not have supervisory responsibility chairs the work of the state team. The state liaison leads and organizes the activities of the state team and includes representatives from consumers, providers, state agency personnel, and other interested parties. A state teams coordinator with non-supervisory responsibility with the state team assists and coordinates the activities of all the state team.

Each state is assigned a state team and each state team is made up of one or more persons from each of the functional units. With the exception of the last item, the state teams work collaboratively with consumers, providers, state agencies, and any other interested parties to carry out the following activities:

- implement a continuous process of performance-based program and fiscal monitoring to identify areas of improvement as well as areas of noncompliance that require corrective action by the grantee;

- develop and issue annual reports, carry out periodic on-site reviews and other monitoring activities required by statute;




- provide technical assistance to assist them to make the improvements and take corrective actions identified in the monitoring process;

- review and approve VR state plans including preparing state plan approval letters, providing appropriate technical assistance to states to ensure consistency with federal requirements and a timely release of federal funds;

- provide policy guidance to grantees;

- review and approve Client Assistance Program (programs.cfm?pc=CAP&sub=purpose) and Protection and Advocacy of Individual Rights (programs.cfm?pc=PAIR&sub=purpose) state assurances; and

- carry out audit resolution activities including single audits, Inspector General audits, grantbacks, primary and collateral determinations.

See also the list of designated State Liaisons for each state and territory. The list can be found at https://rsa.ed.gov/people.cfm (https://rsa.ed.gov/people.cfm?openpanel=1)

Top (display.cfm?pageid=78#)

---

Training and Services Division (TSPD) Tom Finch

Program Support Staff (PSS) Gizelle Young

This content was copied from www.ed.gov (http://www2.ed.gov/about/offices/list/osers/rsa/emold.html) on 12/01/2017



**Home pages**
RSA (/index.cfm)
OSERS (https://www.ed.gov/about/offices/list/osers)
ED.GOV (https://www.ed.gov/)

**About RSA**
Grants and Funding (/grants.cfm)
Legislation and Policy (/policy.cfm)
Orientation Guide for State VR Directors (/display.cfm?pageid=404)
People and Offices (/people.cfm)
Programs (/programs.cfm)
Research and Statistics (/choose.cfm?menu=mb_research)
Resources (/resources.cfm)
What's New in RSA (/whats-new.cfm)

**Reports**
About your state (/about-your-state.cfm)
Annual reports to Congress (/display.cfm?pageid=407)
Data entry (/data-entry.cfm)
Monitoring reports and tables (/choose.cfm?menu=mb_reports_mon)
Performance measures (/choose.cfm?menu=mb_performance)
Products and publications (/display.cfm?pageid=88)
View reports (/choose.cfm?menu=mb_view)

**Tools**
Ad hoc query (/choose.cfm?menu=mb_ahq)
Match calculator (/match-calculator.cfm)
Quick tables (/choose.cfm?menu=mb_quick_tables)
Search for a grant award (/grant-award.cfm)

**Help**
About
Accessibility (/accessibility.cfm)
Disclaimer
FAQs (/faqs.cfm)
Get plug-ins (https://www.ed.gov/help/reqs/download/src=gu)
Info for new users (/info-for-new-users.cfm)
Privacy Policy (http://www2.ed.gov/notices/privacy/index)
Rules of Behavior (/rules.cfm)
Technical Support (/technical-support.cfm)
User Guide (/display.cfm?pageid=291)



**Northern Illinois University**

*Division of Student Affairs & Enrollment Management*

Health Services
DeKalb, Illinois 60115-2828
815-753-1311
Fax 815-753-9599

March 9, 2017

To:  Whom It May Concern

RE:  Dorothy Reddic

DOB: 12/17/76

The above patient has been under my care for anxiety and depression and Attention Deficit Disorder. Despite intensive treatment, her ADD symptoms are only in partial remission and she continues to have significant disability. Due to the above factors, it is my recommendation that she be excused from the requirement that she be required to carry nine credit hours per semester.

Should you need further information, please let me know.

Very truly yours,

Dennis A. Long, M.D.

*Your Future, Our Focus*

Northern Illinois University is an Equal Opportunity/Affirmative Action Institution.

 **ROCKFORD HEALTH** *system*

RMB FAMILY PRACTICE2
2350 N. Rockton Ave.
Rockford IL 61103
Phone: 815-971-7447
Fax: 815-971-9880

July 17, 2017

Patient: **Dorothy Lynette Reddic**
Date of Birth: **12/17/1976**
Date of Visit: **7/17/2017**

To Whom It May Concern:

Dorothy Reddic has been my patient for more than 20 years. She has experienced many health challenges many of which have stabilized with treatment. Recently Dorothy has had medication changes made through other physicians to help her manage her mental health. Although Dorothy is taking the medications her current circumstances are causing her significant stress i.e. her mother's illnesses, her fear of being forced to drop out of school due to the lost of services through Vocational Rehabilitation Services, the loss of her health insurance due her insurance being provided through her school, which would cause her not to have many of her medications which help her manage her mental health.

It is my hope as I coordinate her health care that your agency would carry out your mission to assist individuals like Dorothy Reddic with achieving her career goal. She is so close to finishing her degree if her case were closed and her services are not paid the collective efforts of the healthcare providers would be in jeopardy. She would be at risk of an uncessary hospitalization in addition to many other health risks.

If you have any questions or concerns, please don't hesitate to call.

Sincerely,

Bassam Soufan, MD

**UNIVERSITY OF ILLINOIS**
# COLLEGE OF MEDICINE
# AT ROCKFORD

L.P. Johnson Family Health Center
1221 East State Street · Rockford, Illinois 61104-2232
Tel: 1.815.972.1000 · Fax: 1.815.972.1086

August 21, 2017

Ms. Dorothy Reddic
1335 Fourth Street
Rockford, IL 61104

Dear Ms. Reddic:

You have not been able to attend your psychotherapy appointments and I am concerned about you. Discontinuing psychotherapy abruptly can negatively impact your emotional and psychological well-being. You have been an active participant and I hope you will be able to continue your services.

If you have discontinued services due to financial strain, please contact our patient billing office at the University of Illinois Rockford Campus and request a financial hardship application as you may be eligible. You can call Cindy Intravia at 815-395-5878 for details. I strongly recommend you continue your services and as always, feel free to contact me if you have questions or concerns at 815-395-5716.

Best regards,

Alesia Jones, Ph.D.
Associate Professor
Director of Behavioral Science Program
Licensed Clinical Psychologist
#071.008387

Friday, August 25, 2017



**Northern Illinois University**
*Division of Student Affairs &
Enrollment Management*

Ms. Dorothy Reddie (2982442)
1335 4th Ave
Rockford, Il 61104

Health Services
DeKalb, Illinois 60115-2828
815-753-1311
Fax 815-753-0509

Dear Ms. Reddie:

I've received your request for information regarding your medications as prescribed by Dr. Long at Northern Illinois University, Health Services. The following information is from your visit dated 4/27/2017.

**DIAGNOSIS**
Generalized Anxiety Disorder (F41.1)
Attention-deficit hyperactivity disorder, predominantly inattentive type (F90.0)

**MEDICATION ORDERS**
FLUOXETINE HCL 20 MG CAPS; 1 EVERY OTHER DAY ALTERNATING WITH 2 EVERY OTHER DAY; QTY 45; 4 REFILLS (Renew) *Rx Issued via Printer (Workstation)*
Ordered By: LONG, DENNIS MD
ATIVAN 1 MG TABS; 1 AT HS; QTY 60; 4 REFILLS (Renew) *Rx Issued via Printer (Workstation)*
Ordered By: LONG, DENNIS MD
ADDERALL XR 30 MG ORAL CAPSULE EXTENDED RELEASE 24 HOUR; 1 DAILY; 90 DAYS; QTY 30; 0 REFILLS ; DAYS SUPPLY: 30 (Renew) *Rx Issued via Printer (Workstation)*
Ordered By: LONG, DENNIS MD
ADDERALL XR 30 MG ORAL CAPSULE EXTENDED RELEASE 24 HOUR; 1 DAILY; 90 DAYS; QTY 30; 0 REFILLS ; DAYS SUPPLY: 30 (Renew) *Rx Issued via Printer (Workstation)*
Ordered By: LONG, DENNIS MD  Earliest Fill Date: 5/27/2017
ADDERALL XR 30 MG ORAL CAPSULE EXTENDED RELEASE 24 HOUR; 1 DAILY; 90 DAYS; QTY 30; 0 REFILLS ; DAYS SUPPLY: 30 (Renew) *Rx Issued via Printer (Workstation)*
Ordered By: LONG, DENNIS MD  Earliest Fill Date: 6/27/2017
ADDERALL 20 MG TABS; 1 IN THE AFTERNOON; 90 DAYS; QTY 30; 0 REFILLS ; DAYS SUPPLY: 30 (Renew) *Rx Issued via Printer (Workstation)*
Ordered By: LONG, DENNIS MD
ADDERALL 20 MG TABS; 1 IN THE AFTERNOON; 90 DAYS; QTY 30; 0 REFILLS ; DAYS SUPPLY: 30 (Renew) *Rx Issued via Printer (Workstation)*
Ordered By: LONG, DENNIS MD  Earliest Fill Date: 5/27/2017
ADDERALL 20 MG TABS; 1 IN THE AFTERNOON; 90 DAYS; QTY 30; 0 REFILLS ; DAYS SUPPLY: 30 (Renew) *Rx Issued via Printer (Workstation)*
Ordered By: LONG, DENNIS MD  Earliest Fill Date: 6/20/2017
STRATTERA 100 MG CAPS; 1 CAPSULE EVERY MORNING; QTY 30; 4 REFILLS (Renew) *Rx Issued via Printer (Workstation)*
Ordered By: LONG, DENNIS MD

You have a scheduled appointment on 9/7/2017 at 2:30pm. However, if you have not enrolled in on-campus classes and been assessed service fees by that date you will be considered not-eligible and your appointment will be cancelled.

Please also note that when you enroll for 9 or more classes you will automatically be enrolled in the Student Health Insurance plan. The cost is $1039.00 which is automatically billed to your NIU bursars account. This is for a period of 8/1/2017-12/31/2017. If you have comparable insurance that meets the *Affordable Care Act* you can waive the Student Health Insurance plan. The final day to waive that plan is Monday, September 11th, 2017.

Sincerely,
Karen L. Frazer, RHIA
Health Information Manager
Health Services

*Your Future, Our Focus*



**Northern Illinois University**
*Division of Student Affairs &*
*Enrollment Management*

Student Health Insurance
Health Services Bldg., Rm. 101
DeKalb, Illinois 60115-2828
815-753-0122
Fax 815-753-0985

October 5, 2017

Re: NIU Student Health Insurance

Dear Dorothy,

Northern Illinois University bills students for the Student Health Insurance plan twice a year. The fall coverage runs from August 1 through December 31 and the spring coverage goes from January 1 through July 31, so students have continuous coverage.

During our Open Enrollment/Waiver period, students have the opportunity to accept our insurance or cancel the insurance if they have other insurance that meets our requirements. The fall Open Enrollment/Waiver period usually is open from July 1 through the first week in September. The spring period is open from November 15 through January 31.

For the 2016/17 school year, we charged you for fall insurance on July 15, 2016. The charge of $990.50 was not due until 9/19/16. NIU received payment on 9/29/16. The spring insurance premium, $990.50, was billed on January 10, 2017 and was due on February 13, 2017. Payment is past due.

For our current school year, 2017-18, we charged you $1039.00 for the fall insurance on September 11, 2017. This is due on October 30, 2017. We will start billing for spring insurance in November. The cost will again be $1039.00. For this school year, the average cost for the insurance is $173.00 per month.

According to our policy, it does not matter when you are billed for the insurance or when you pay the premium, coverage begins on 8/1 for the fall semester and on 1/1 for the spring semester.

The Student Insurance plan is through Aetna Student Health and is a PPO. It meets the ACA requirements and is comparable to the Gold plans on the marketplace. I am attaching our Summary of Benefits for you.

Please let me know if you have any questions,

Carole Drennan

Carole Drennan

Benefit Services Supervisor
NIU Student Health Insurance

*Your Future, Our Focus*

Case: 3:20-cv-50286 Document #: 1-5 Filed: 02/02/18 Page 53 of 256 PageID #:53

Dorothy Reddic meeting 11/21/17

Meeting was supposed to begin at 2:00 at the DHS office in DeKalb. CSR arrived 20 minutes late. Meeting didn't begin until 2:40 due to CSR, Andres Howard (Administrator) , Beatrice Mwinzi (VR Counselor) and Brenda Reddic (CSR's mother) needing to sign release of information forms.

Present at the meeting was: Writer, Katie Lee (DeKalb County Manager), Deborah Miller (NIU Disability Support Services), Andres Howard (DHS/DRS Administrator), Beatrice Mwinzi (VR Counselor for CSR), Dorothy Reddic (CSR) and Brenda Reddic (CSR's mother). The purpose of today's meeting was to review and edit CSR's IPE through DRS. Writer was in attendance for support and note taking purposes.

Beatrice began speaking saying that once they complete the IPE it will be active and they will begin paying for college expenses for CSR. CSR has been receiving bills from August 17th to current, Andres stated that those bills will be taken care of once this IPE is active. Beatrice stated that the plan becomes effective the day the IPE is signed. Beatrice stated that everyone has a right to appeal the IPE. Beatrice reiterated that CSR's file is active waiting for the IPE to be completed and signed.

Dorothy spoke up and apologized for being late and all the numerous rescheduling with DRS to get IPE completed. CSR appreciates everyone working with CSR and appreciates all the help. Beatrice is CSR's' 3rd counselor and the 2 previous counselors have both informed CSR of all sorts of different things that weren't consistent so CSR is nervous about what to expect with current Counselor.

Beatrice stated that IPE expired August 17th 2017 the new IPE will take over and there will be no issues with the bills not being paid between August 17th and now. Beatrice filled out most of the IPE while waiting for CSR to arrive.

Deborah broke in and asked a general question of if it's possible to have these meetings audio recorded for people who need it, Beatrice and Andres both stated that it would have to be taken up with Legal and that they were not sure. Dorothy wanted to formally request accommodations because CSR wanted the meetings transcribed so CSR can go back and review them due to her ADHD. CSR stated that she was told by DRS (no name was given) that it was an undue burden. Beatrice told CSR that they don't record meetings and that CSR is welcome to bring whomever to help her take notes and be an extra set of ears. CSR stated that that was why writer was at the meeting taking notes. CSR asked if there is a form she can fill out to request accommodations. Beatrice said no that she needs to send an e-mail to formally request accommodations. Each counselor works individually with each consumer to get them the necessary accommodations. It was suggested by Andres and Beatrice that CSR could have ADHD coach come take notes at meetings but CSR stated that it is not the role of the coach to do such things. CSR and coach usually meet via Skype and occasionally when CSR is in Chicago for other meetings they will meet in person. The role of the coach stated by CSR is to help write everything out, help CSR get organized, fill out a calendar with appointments etc. Also helps CSR with coping skills, disability awareness, learn mindfulness and self-regulation. Andres stated that for billing purposes and records DRS needs summary reports to prove that CSR is utilizing the services. Dorothy stated that she has not

1

Notes from November 21, 2017 Meeting with DRS taken by Jessica Zimmerman from RAMP for Dorothy Reddic during IPE meeting

seen any invoices, Andres stated that that is between the coach and Beatrice it is not CSR's responsibility to worry about billing. Beatrice stated that back in August lots of documents that were needed for the IPE were missing to bring the case current. CSR stated that she wants a heads up of when documents are needed (30-40 days) to prepare all the documents. CSR wants to know exactly what DRS is wanting for progress reports from all the services CSR is receiving to assist her in her education. DRS don't have forms for what they request for reports. Andres said summary reports will suffice, DRS just needs documentation every month. CSR needs documentation from August 17t-December 17th and then in January it will be monthly for progress reports. Dorothy stated that she hasn't been going to ADHD coaching due to services being dropped and not wanting to take on the big bill from coaching. Beatrice will request summary from coach, not CSR's responsibility. All information on the IPE for service provider to get paid, the voucher is submitted with progress report. Dorothy stated that she will follow expectations as long as they are clear and explicit, CSR needs things written down clearly. CSR doesn't want to be viewed as difficult or not cooperating. Beatrice wants to move forward with CSR to help CSR reach her educational goals. Beatrice stated that just ask for clarification for things CSR doesn't understand. Dorothy stated that Equipped for Equality told CSR not to ask questions because then CSR will be viewed as not being cooperative, CSR is just trying to follow rules but is being told many different things.

Beatrice stated that these are the documents needed from CSR today:

Grades from Summer 2017

Class Schedule Fall 2017

NIU bill Fall 2017

Required books/syllabus fall 2017 (CSR stated no books were required)

Signed copy of educational degree plan-signed by academic advisor

Grant waiver

Tax return information

CSR sent in 2 previous degree plans but graduation date has changed due to the circumstances. Beatrice stated that they were not accepted due to the plan being inconsistent. CSR stated she was not aware of that until today. Beatrice needs current degree plan. CSR stated that CSR is finding out next week what she can enroll in for spring, CSR is not progressing like she wants due to everything. CSR was given a hardship scholarship from NIU.

CSR wanted to know if DRS will cover NIU health insurance. Beatrice stated no that because CSR has Medicaid it is comparable and that CSR can't have both. CSR presented a letter from NIU stating it's not comparable and presented Admin code. Beatrice stated that DRS would pay for medicine not covered by Medicaid but needs a letter from Medicaid about what medications they are not covering. Beatrice also needs a list of prescriptions from doctor.

2

Notes from November 21, 2017 Meeting with DRS taken by Jessica Zimmerman from RAMP for Dorothy Reddic during IPE meeting

CSR also stated that she is losing her home and is now choosing to live on NIU campus. Katie Lee spoke up stating that if CSR is a DeKalb resident that CSR can apply for housing because it will be cheaper for CSR than having to pay part of room and board through NIU. Katie stated that Katie will help writer look into that for CSR.

Once back on track Beatrice went through the IPE and CSR asked if CSR could take it home and review it before signing off on it. Beatrice was reluctant but told CSR she could as long as Beatrice had it back by Wednesday at 11 am.

Writer will receive a copy of IPE from CSR once the IPE is signed by the CSR. Writer stated that writer will follow up with CSR tomorrow (11/22)



**IDHS**

Bruce Rauner, *Governor* • James T. Dimas, *Secretary*

JAN **0 2** 2018

BUREAU OF
ASSISTANCE HEARINGS

Dorothy Reddic
1335 4th Ave
Rockford, IL 61104

APPEAL I17-014596
IES APPEAL #1700107496

Dear Dorothy Reddic:

The Illinois Department of Human Services Impartial Hearing Officer heard this Illinois Division of Rehabilitation Services Appeal, made Findings of Fact, and issued a Decision, a copy of which is enclosed.

The Decision is reviewable through the Circuit Courts of the State of Illinois or the federal district courts. The time the courts will allow for filing for such review may be as short as 35 days from the date of this letter.

Yours truly,

JAMES T. DIMAS
SECRETARY

JTD/em

## STATE OF ILLINOIS
## DEPARTMENT OF HUMAN SERVICES

| | | |
|---|---|---|
| IN THE MATTER OF THE APPEAL OF | ) | Docket No. I17-014596 |
| | ) | IES Appeal #1700107496 |
| DOROTHY REDDIC | ) | |
| | ) | Emily Meehan |
| | ) | Hearing Officer |

This appeal was heard by teleconference before Emily Meehan, Department of Human Services (Department) Bureau of Hearings (BOH) Hearing Officer, on October 10, 2017 and December 14, 2017, via telephonic conference by and between the BOH office in Chicago and the Division of Rehabilitation Services (DRS) Dekalb Office. The hearing was delayed 125 days on the motion of the Grievant. The DRS submitted exhibits on July 28, 2017 and October 4, 2017, which were admitted at the hearing. The Grievant submitted exhibits on October 5, 2017 and October 10, 2017, which were admitted at the hearing. The record was closed on December 14, 2017.

The Grievant, Dorothy Reddic, was present and was represented by Brian Pflaum and Jin-Ho Chung, attorneys with Equip for Equality-Chicago, pursuant to written authorization signed by the Grievant on July 26, 2017. At the October 10, 2017 hearing, the Grievant was accompanied (via telephone) by Bradley Bond, Dean of the Graduate School at Northern Illinois University, who testified on behalf of the Grievant. At the December 14, 2017 hearing, the Grievant was accompanied by Jessica Zimmerman and Dana Miller, case managers from the Regional Access Mobility Partnership (RAMP). Beatrice Mwinzi, Senior Rehabilitation Counselor (Counselor), and Andre Howard, Public Service Administrator (PSA) were the witnesses for the DRS. They were represented by Moshe Liberman, Assistant General Counsel. All parties participated in both hearings via telephone.

### ISSUE

The issue is whether DRS properly denied the Grievant's request for funding for the student insurance plan offered through her university for the 2017 spring semester, pursuant to 89 Ill. Adm. Code Section 590.

### DISPOSITION

The decision of the DRS is reversed.

1700107496

## Certificate of Service

The undersigned certifies that on 2nd Day of JANUARY , 2018, a copy of this Decision was mailed to the following:

Grievant:
Dorothy Reddic
1335 4th Ave
Rockford, IL 61104

Brian Pflaum, Staff Attorney
Equip for Equality-Chicago
20 N. Michigan Avenue, Suite 300
Chicago, IL 60602

Division of Rehabilitation Services (via email):
Beatrice Mwinzi, Senior Rehabilitation Counselor

Andre Howard, Public Service Administrator

Moshe Liberman, Deputy General Counsel

Lori Zenner, Administrative Assistant, DHS Division of Rehabilitation Services

Signed: _Sandy Liao_

## Exhibit List

Division of Rehabilitation Services Documents:
1. Case Closure Service Notice dated July 13, 2017
2. IPE dated August 17, 2016
3. Email from PSA to Grievant dated July 13, 2017
4. Notification of Training Services Approved form for period of January 17, 2017 through May 13, 2017, signed by Counselor and dated April 5, 2017
5. Notification of Training Services Approved form for period pf January 17, 2017 through May 12, 2017, unsigned and undated
6. Email from Northern Illinois University administrator dated January 20, 2017
7. Email to Grievant from former VR counselor dated April 21, 2016
8. Case Folder Memorandum dated January 11, 2017 through January 17, 2017
9. Doctoral Program of Courses for Grievant dated April 28, 2011
10. Email dated April 18, 2017
11. Emails dated January 26, 2017

1700107496

## FINDINGS OF FACT

After hearing the testimony of the witnesses and examining the documents, the Hearing Officer found the following facts:

1.  The Grievant is an eligible recipient of VR services.

2.  The Grievant has multiple physical and mental health impairments which interfere with her ability to obtain or retain employment.

3.  The Grievant is pursuing a doctorate in Education in Adult and Higher Education at Northern Illinois University (NIU) with the goal of becoming a university administrator. This employment outcome is stated in the Grievant's Individualized Plan for Employment (IPE), dated August 17, 2016 and covering the period of August 17, 2016 through August 17, 2017, as well as earlier IPEs.

4.  In order to achieve her employment goal, the Grievant requested the VR program to fund the medical insurance plan offered to NIU students for the fall and spring semesters of the 2016-2017 school year. The Grievant's request was made on/or around August 17, 2016.

5.  The DRS paid for the Grievant's student health insurance plan for the 2016 fall semester but denied the funding for the 2017 spring semester, which started in January 2017. Per the Counselor's testimony, she discussed the denial of the insurance with the Grievant in February 2017 or March 2017. At the October 10, 2017 hearing, the Counselor testified that no written notice was ever given to the Grievant that the VR program was denying insurance coverage for the 2017 spring semester. At the December 14, 2017 hearing, the Counselor testified that it was her recollection that the Grievant's previous counselor, who had created the August 17, 2016 IPE, had written a letter to the Grievant explaining that the DRS would not fund the insurance plan in the 2017 spring semester. However, the Counselor did not provide a copy of that letter or any case notes referring to it, nor could she say when she thought it had been mailed to the Grievant. The Grievant denied receiving any letter or written denial notice.

6.  On May 8, 2017, the Grievant filed an appeal via e-mail, requesting a fair hearing and appealing the denial of her request for funding of the NIU insurance plan in the 2017 spring semester.

7.  The Grievant did not request an Informal Resolution Conference.

8.  The Grievant participated in mediation, however, no agreement was reached.

9.  At the hearing, the Grievant testified that the requested VR service was necessary to her success at school and had been included in her IPE for that

2

1700107496

Code section 567.20 prohibited the DRS from covering costs of benefits its customers had access to from other sources. She testified that the student insurance plan sought by the Grievant was comparable to the Medicaid insurance plan the Grievant already had, so she could not approve that benefit.

The Counselor agreed that the previous counselor provided for the insurance plan in the 2016 spring and fall semesters as part of the school fees listed on the Grievant's IPEs. She also agreed that the language in the IPE dated February 8, 2016, which was for the period of March 13, 2016 through May 13, 2016, and the IPE dated August 17, 2016, which was for the period of August 17, 2016 through August 17, 2017, was nearly identical. She testified that in spite of the overwhelming similarity of the IPE language and the prior funding of the student insurance plan, she would not agree that the insurance plan was actually included in the IPE under "tuition and fees." The Counselor said she had been trained to list every service and/or benefit funded by DRS with specificity. She testified that there was actually nothing in either of those IPE's that committed DRS to funding the student insurance plan and the fact that it had been funded under the February 8, 2016 IPE and part of the August 17, 2016 IPE was just a mistake made by the previous counselor. The Counselor acknowledged that there was no way the Grievant could know from her IPEs that DRS should not have paid her student insurance for the 2016 spring and fall semesters or that it would suddenly stop paying it midway through the 2016-2017 academic year.

## DECISION

The time frame for filing a timely appeal is found in 89 Ill. Adm. Code Section 510.80, which states, in part, that:

    b)    A customer must request a hearing within the following time limits:

        1)    if the request is for review of an action by DHS-ORS VR program or HSP, it must be received within 30 calendar days after the date the customer receives notice, or knew or should have known of the issue being grieved, or 35 calendar days after the date of the post mark on the notice, if the Customer was informed by mail, whichever is later;

The issues that can be appealed are found in 89 Ill. Adm. Code Section 510.20, which states, in part, that:

    The following may be appealed under this Part:

    a)    DHS-ORS' refusal to provide any service it is authorized to provide;

4

The IPE "outlines the nature and scope of vocational rehabilitation services to be provided . . . to meet the established objectives that are related to the customer's employment outcome." 89 Ill. Adm. Code §572.30(a). It must be signed by the customer and Counselor (89 Ill. Adm. Code §572.50(a)). Without a service having been approved in the IPE, no authorization for payment can be made. Such authorization must occur "either prior to or simultaneously with the purchase of services." 89 Ill. Adm. Code §520.10.

The definition and applicability of comparable benefits is set forth in 89 Ill. Adm. Code Section 567.20, which states, in relevant part:

a) A comparable benefit is a service that is available at the time the service is needed by a customer and is used to achieve an employment outcome specified in the customer's Individualized Plan for Employment (IPE) (see 89 Ill. Adm. Code 572) that, when provided to DHS-DRS customers by a public or private agency or agencies other than DHS-DRS, offset costs that would otherwise be paid by DHS-DRS.

b) When a customer is requesting DHS-DRS to cover training related services, except for those services that are exempt from financial participation (see 89 Ill. Adm. Code 562.30) in an institution of higher education, the customer shall make formal application for federal assistance by completing the Free Application for Federal Student Aid (FAFSA) and provide proof (or denial) of financial award and the amount of the award before the customer's IPE can be implemented. An IPE for services to prepare and assist the customer in applying for comparable benefits may be developed at any time. Failure of the customer to apply for comparable benefits shall result in the denial of services (see 89 Ill. Adm. Code 567.100).

c) Customers requesting medical services or physical restoration services shall make formal application for Medicaid benefits and complete the process to determine Medicaid eligibility. Eligibility, or ineligibility, for Medicaid benefits shall not, in any way, affect the eligibility for Vocational Rehabilitation services from DHS-DRS.

Based on the applicable laws and rules, as well as the testimony and documents admitted at hearing, the Grievant has met the required burden of proof. There was no dispute as to the fact that the DRS cannot fund benefits that are duplicative of comparable benefits already acquired and/or available to its customers. However, the Grievant offered unrebutted testimony and evidence showing that her Medicaid insurance plan was not comparable to the one offered to students at NIU. (*See* Grievant's Exhibits D and E). Further, while it is possible that the payment of the student insurance plan in the 2016 spring and 2016 fall semesters was a "mistake," the Grievant's expectation that she would continue to receive that funding for the rest of the 2016-2017 academic year, in particular the 2017 spring semester, was more than reasonable. Not only did the IPE in place at the time cover both the 2016 fall and 2017 spring semesters of that academic year, but the IPE language was nearly identical to the IPE that covered the 2016 spring semester. (*See* Grievant's Exhibits A and G).

6

1700107496

For these reasons, the decision of the Division of Rehabilitation Services to deny funding for the student health insurance plan for the 2017 spring semester is reversed.

/s/ Emily Meehan
Impartial Hearing Officer

1700107496

b)   modification of any service currently provided to the Customer by DHS-ORS, termination of a service or case closure, unless agreed to by the Customer and DHS-ORS;

Based on the Findings of Fact, the DHS Impartial Hearing Officer has jurisdiction over this appeal.

The burden of proof in this proceeding is on the Grievant. In order for the DRS decision to be reversed, the Grievant must prove by a preponderance of the evidence that the DRS decision was in error. 89 Ill. Adm. Code 510.105(f) states, in part, that:

> The grievant shall have the responsibility to prove by the preponderance of the evidence that the action or inaction by DHS-ORS was not in accordance with federal or State laws or regulations, against DHS-ORS policy, not in accordance with the grievant's IPE (89 Ill. Adm. Code 572) or HSP Service Plan (89 Ill. Adm. Code 684), or inappropriate for the customer.

The standard of evidence for this proceeding is found in 89 Ill. Adm. Code 510.105(g)(1), which states, in part, that:

> The rules of evidence and privilege as applied in civil cases in the Circuit Courts of this State shall be followed except that any relevant evidence not admissible under those rules of evidence that is of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs, has probative value, and is relevant and material to the facts and issues may be admissible.

The DRS office determines whether to provide a service under the VR Program. 89 Ill. Adm. Code 590.20, states that:

> **Section 590.20 Availability of Services**
> Services described in this Part shall only be provided to customers who have been determined eligible to receive VR services (89 Ill. Adm. Code 553) for whom an Individualized Plan for Employment (IPE) has been developed calling for the provision of such services to reach the customer's employment outcome. There must be documentation in the case record to indicate that services defined in this Part will reduce the customer's impediment to employment.

Through the VR Program, the Grievant has the right to choose any service provider. 89 Ill. Adm. Code 590.40, states that:

> **Section 590.40 Choice of Service Providers**
> a)   Unless otherwise specified in this Part and to the maximum extent possible, the customer shall have the right to choose any service provider to provide those services listed in the IPE. The provider must be certified, licensed or determined qualified to provide the specific service required.
>
> b)   If comparable services are available at a lower cost from a service provider not chosen by the customer, the customer shall pay the difference in costs to use the service provider of his/her choice.

5

reason. She stated that although she had Medicaid coverage, she required additional services, in particular, medications that were not covered by Medicaid. The Grievant stated that she has been diagnosed with significant Attention Deficit Hyperactivity Disorder (ADHD) and that without her medications, she would not be able to stay focused and organized enough to complete her course work. The Grievant stated that she had been informed by her pharmacy, as well as a health care organization advisor, that Medicaid would not fund ADHD medications for adults, so she would either have to get them through supplemental insurance or pay out of pocket. The Grievant testified that she had been told that DRS would not duplicate any comparable benefits she could/did get through other sources, but she disputed that her Medicaid insurance was comparable to NIU's student insurance. The Grievant stated that because the student plan covered not just her ADHD medications, but other services not available to her through Medicaid, it was unreasonable for DRS to deny her the student insurance plan based on the comparable benefits policy.

The Grievant testified that her very first VR counselor told her in 2014 or 2015 that she could not get VR funding for the student insurance plan because of her Medicaid coverage. She stated that when she got switched to a new VR counselor in December 2015, she told the counselor she had signed up for the student insurance herself because she required more healthcare benefits than her Medicaid plan would cover, and that counselor told her that DRS would pay for the student insurance as part of her school fees. The Grievant testified that the DRS program covered the cost of the student health insurance in the 2016 spring semester and the 2016 fall semester, as part of the "tuition and fees" listed on her IPE. She stated that based on the prior funding for the student insurance plan under the August 17, 2016 IPE, she again signed up for the student insurance at the start of the 2017 spring semester. The Grievant said that it wasn't until months after the semester started that the Counselor informed her that the DRS would not fund the student insurance plan because the Grievant had Medicaid.

The Grievant testified that she had been led to believe that her August 17, 2016 IPE included coverage of student medical insurance for both the fall and spring semester of that academic year, based on the fact that the DRS paid for the insurance two semesters in a row under the February 2016 and August 2016 IPEs. The Grievant stated that she was now being charged for that insurance plan, as well as all the associated late fees. She further testified that if she had received timely and adequate notice that DRS would not cover that cost, she may have made a different healthcare choice.

10.   The DRS Counselor testified that although DRS had funded the Grievant's student insurance plan in the 2016 spring and fall semesters, the previous counselor had approved that funding in error. She stated that Administrative

1700107496

12. Invoice vouchers and various receipts
13. Northern Illinois University 2017-2018 Graduate Catalog (3 pages)
14. Emails dated April 4, 2017

Grievant Documents:

A. IPE dated August 17, 2016
B. Northern Illinois University 2014-2015 Graduate Catalog
C. Printout of Grievant's academic progress/degree requirements at Northern Illinois University
D. Printouts of denials of payment for medications from Grievant's pharmacy
E. Email from Crusader Health outreach and enrollment specialist dated June 13, 2017
F. Notice of Training Service Approved form for February 9, 2016 through May 13, 2016
G. IPE dated February 8, 2016
H. Northern Illinois University Payment Policy
I. Grievant's current account balance at Northern Illinois University dated October 5, 2017
J. Case Closure Service Notice dated July 13, 2017
K. Case Folder Memorandum dated August 18, 2015 through July 13, 2017
L. Email from Counselor to Grievant dated July 31, 2017
M. Request for Hearing filed May 8, 2017
N. Medical letter dated July 17, 2017
O. Medical letter dated August 21, 2017
P. Medical letter dated August 25, 2017

9



## Advancing the human and civil rights of people with disabilities

SELF-ADVOCACY ASSISTANCE ★ LEGAL SERVICES ★ DISABILITY RIGHTS EDUCATION ★ PUBLIC POLICY ADVOCACY ★ ABUSE INVESTIGATIONS

October 5, 2017

**VIA E-MAIL**
Moshe M. Liberman
Assistant General Counsel
Illinois Department of Human Services
James R. Thompson Center
100 W. Randolph St., Suite 6-400
Chicago, IL 60601

   Re: *In the Matter of Dorothy Reddic*, I17-014596; I17-018998

Dear Mr. Liberman:

Below, please find our pre-hearing memo.

Issue at Hearing

There are three issues at stake in this hearing. First, whether DRS properly refused to reimburse Ms. Reddic for the fees associated with the course PSPA 650. Second, whether DRS properly refused to reimburse Ms. Reddic for the fees associated with a student health insurance plan. Lastly, whether DRS is entitled to close Ms. Reddic's vocational rehabilitation case.

Documents That May be Presented into Evidence at Hearing

1. Ms. Reddic's current IPE (Exhibit A)
2. Northern Illinois University 2014-2015 Graduate Catalog (Exhibit B)
3. Northern Illinois University Academic Progress/Degree Requirement printout for Ms. Reddic (Exhibit C)
4. Medicaid denials of Ms. Reddic's ADHD medication (Exhibit D)
5. Email from Melinda Craigs-Ingram dated June 13, 2017 (Exhibit E)
6. Notice of Training Service Approved for dates 02/09/2016 to 05/13/2016 (Exhibit F)
7. Ms. Reddic's IPE, dated 02/08/2016 (Exhibit G)
8. Northern Illinois University Payment Policy (Exhibit H)
9. Ms. Reddic's current Northern Illinois University Account Balance (Exhibit I)
10. DRS Service notice for Ms. Reddic's case closure (Exhibit J)
11. DRS Case Folder Memorandum (Exhibit K)

Witness List
We may call the following witnesses:

THE INDEPENDENT, FEDERALLY MANDATED PROTECTION & ADVOCACY SYSTEM FOR THE STATE OF ILLINOIS

JOHN K. HOLTON, PH.D. , BOARD CHAIRPERSON    ZENA NAIDITCH, PRESIDENT & CEO

MAIN OFFICE: 20 N. MICHIGAN AVENUE, SUITE 300 ★ CHICAGO, IL 60602 ★ EMAIL: CONTACTUS@EQUIPFOREQUALITY.ORG ★ TEL: (312) 341-0022

TOLL FREE: (800) 537-2632 ★ TTY: (800) 610-2779 ★ FAX: (312) 541-7544 ★ MULTIPLE LANGUAGE SERVICES

WWW.EQUIPFOREQUALITY.ORG

1. Dorothy Reddic
2. Bradley G. Bond, Ph.D., Dean of the Graduate School at Northern Illinois University, 1425 W. Lincoln Highway, DeKalb, IL 60115
3. Andre Howard, DeKalb DRS office, 1330 Oakwood Avenue, DeKalb, IL 60115
4. Beatrice Mwinzi, DeKalb DRS office, 1330 Oakwood Avenue, DeKalb, IL 60115
5. Sonya Wiley, Rockford VR DRS office, 171 Executive Parkway, Suite 103, Rockford, IL 61107

Summary of Evidence

Grievant Dorothy Reddic is/was a Department of Human Services – Division of Rehabilitation Services ("DRS") customer under the Vocational Rehabilitation Services Program ("VR").

Ms. Reddic will present evidence to support her position that DRS: (1) should provide reimbursement for the fees associated with the course PSPA 650 because the course was authorized by her IPE and goes towards completion of her doctoral program and because DRS failed to provide the required service notice after refusing service; (2) should provide reimbursement for the fees associated with her student insurance plan because reimbursement for the fees was authorized by her IPE and because DRS failed to provide the required service notice after refusing services; and (3) has improperly terminated (or improperly has moved to terminate) her vocational rehabilitation case because she has in good faith cooperated with her DRS counselors and because DRS' reasoning for case closure is otherwise not in accordance with the law.

Submitted by:

Jin-Ho Chung
Senior Civil Rights Attorney
Equip for Equality

Brian Pflaum
Staff Attorney
Equip for Equality

Enclosure:
Exhibits A-K



State of Illinois
Department of Human Services - Division of Rehabilitation Services
**CLOSURE NOTIFICATION**

Date: 07/13/2017
Case Number: 02344928

☐ Certification of Ineligibility
☒ Case File Closed

To: DOROTHY REDDIC

This is to inform you that effective 08/17/2017 your case is being closed because:

Your DRS Case will be closed by 8/17/2017 or thereafter due to your Failure to Cooperate with DRS staff requests so further services can be provided; due to your medical instability (per your admittance of condition and appearance); due to your inability to negotiate appointment dates and time in order to discuss your case progress and further services; due to failure to provide needed documents in support of your provision of services such as failure to provide requested copy of medications prescription so a plan of service can be developed to provide you with needed medications; failure to follow up with your Academic Program plan provided guidelines; due to Oppositional behavior when given advise on appropriate course of actions; failure to recognize our DRS Office schedule (showing up without appointment and demanding services to be provided right there and then despite individuals scheduled responsibilities).

If you have questions regarding closure of your case, or you feel your case should not be closed, you may contact your rehabilitation counselor/instructor or the Client Assistance Program (CAP).

BEATRICE MWINZI
Department of Human Services - DRS
1330 OAKWOOD AVE
DEKALB, IL 60115
Telephone:    (815) 758-2471    (Voice)
              (888) 261-2885    (TTY)

CLIENT ASSISTANCE PROGRAM
100 South Grand Ave East
Basement
Springfield , Il 62794
(800) 641-3929 (V/TTY)

You may have certain rights as a result of this closure, including the right to appeal the decision. Your rights are enclosed in the attached information.

If you do not agree with the decision and wish to file an appeal, follow the directions provided on the attached form, "Your Vocational Rehabilitation Appeal Rights (DRS:4)". The form explains the steps you must follow to file an appeal. The request for an appeal must be received by DHS-DRS no later than 08/17/2017.

As with all services and planning of services, DHS-DRS wants your ideas and views regarding the closure. Please enter your views regarding this closure in the area provided below. You may attach more pages, as needed.

_____
_____
_____
_____

x _____
Customer Signature

_Beatrice Mwinzi_
Rehabilitation Counselor/Instructor Signature

Date _____

Date  7/13/2017

IL 488-0717W (R-10/08)

Department of Human Services Division of Rehabilitation Services Filed: 02/02/18 Page 69 of 256 PageID #:69

State of Illinois
Department of Human Services · Division of Rehabilitation Services

# REQUEST FOR HEARING

This information **must** be completed. (Please Print)

Customer Name: Dorothy Reddic

Customer Date of Birth (Required): __12__ / __17__ / __1976__
                                 month     day     year

Address: 1335 4th Ave.

City/State: Rockford, IL      Zip: 61104      Telephone with area code: 815-200-9730

**I am appealing a decision made by:**
- [X] Vocational Rehabilitation (VR)
- [ ] Home Services Program (HSP)
- [ ] Bureau of Blind Services (BBS)

My DRS counselor's name is:    Beatrice Mwnizi

If you need help in completing this form, please ask your Rehabilitation Counselor, HSP Representative, Rehabilitation Instructor or Case Manager. If you need help requesting your appeal, or you would like to ask about possible representation, contact the Client Assistance Program, 100 North First Street, 1st Floor West, Springfield, IL 62702, 1-800-641-3929 (V/TTY).

- [X] I want to appeal a decision made by DRS on the following date:    April 5, 2017
- [ ] I want to appeal DRS' failure to respond to a request I made on the following date: _____
- [X] I also want to request an informal resolution before the hearing, and understand it is my responsibility to contact my DRS representative or the office supervisor for scheduling.
- [ ] I am a VR or BBS customer and would like to request mediation before the hearing.

Briefly describe the decision(s) or lack of action you would like to appeal:

I am appealing the Notification of Training Services Approved by Beatrice Mwnizi and dated April 5, 2017. I believe the following DRS decisions are in error:

A. The requirement that I pay $411.24 in tuition and fees due to DRS' non-payment of the course PSPA 650.

B. The requirement that I pay $564.26 for books/supplies.

C. DRS' refusal to correct their nonpayment of my NIU student medical insurance resulting in an unpaid balance on my NIU account of $1039 plus late fees.

D. DRS' refusal to pay late fees on my NIU account when payments were tardy due to DRS' actions or lack of action.

E. NOTSA does not record the correct class for the Spring 2017 term. CAHA 797 is the course taken this term along with PSPA 650 rather than CAHA 721.

L488-1949 (R-06-16) Request for Hearing   Printed by Authority of the State of Illinois   -0- Copies

State of Illinois
Department of Human Services – Division of Rehabilitation Services

# REQUEST FOR HEARING

Check Only Those That Apply

*Accomodations requested :*
*1) 8–5 Days to review written documents*
*2) Reciept of documents in PDF format for use with Assisted Technology*
*3) Recorded communications or CC3 when one or more persons are speaking*
*4) 7–10 day notice to submit written documents requested*
*5) Hearing in afternoon at 2pm or later*

☐ My disability is deafness or hard of hearing and I will need: (Check One)
   ☐ Sign language interpreter
   ☐ Tactile interpreter
   ☐ Video – phone conference
   ☐ CART services

☐ My disability is blindness or visual impairment and I will need: (Check One)
   ☐ audiotape or disc
   ☐ all materials provided in large print
   ☐ all materials provided in Braille
   ☐ a reader to assist in my preparation for the hearing

☐ My language preference is _English_ rather than English. I will need an interpreter to participate in the hearing. (Please fill in your normally spoken language.)

☒ I am unable to attend the hearing in the local DHS-DRS office due to my disability. I am requesting to participate in the hearing by telephone.

☒ I have chosen to be represented by the following person or organization in this appeal: (PLEASE PRINT)

Name/Organization: _Equip for Equality, Brian Flavin, Attorney_
Address: _20 N. Michigan Ave # 300 Chicago, IL 60602_
City/State/Zip Code: _____
Telephone with area code: _312-895-7209_ Alternate Telephone with area code: _____

NOTE: If this form is not signed by the customer or by the designated representative, the request for hearing will be denied. If sign by the designated representative, attach the written authorization signed by the customer to request a hearing on behalf of t customer.

• Sign your name or
Make your mark    Customer: _____ Date: _5-1-2017_

• If you have made your mark (x) instead of signing your name, two witnesses must sign here
Signature of Witness _____ Date _____
Signature of Witness _____ Date _____

_____
Representative or legal guardian of adult 18 years of age or older    Relationship to customer

• Parent or guardian signature is required if customer is 17 years of age or younger.

_____    _____    I am the parent or guardian of:
Signature of Parent or Guardian    Date

Please mail this form to the Bureau of Administrative Hearings, with the notice you received, if any, informing you of the decision you are appealing. You may send a copy of your appeal to the local field office listed below.

Illinois Department of Human Services
Bureau of Administrative Hearings
69 W. Washington, 4th Floor
Chicago, IL 60602

cc: Local Field Office
DeKalb DRS Office –Beatrice Mwnizl
Rehabilitation Services
1330 Oakwood Ave. DeKalb, IL 60115

IL488-1949 (R-06-16) Request for Hearing   Printed by Authority of the State of Illinois   -0- Copies     Page 2 of 2



State of Illinois
Department of Human Services - Division of Rehabilitation Services
**REQUEST FOR HEARING**

This information must be completed. (Please Print)
Customer Name: Dorothy Reddic
Address: 1335 4th Ave
City/State: Rockford, IL Zip: 61104
Telephone with area code: 815·200·9730

My DRS representative(s) name is: Beatrice Mwinzi

| I am appealing a decision made by: |
|---|
| ☒ Vocational Rehabilitation (VR) |
| ☐ Home Services Program (HSP) |
| ☐ Bureau of Blind Services (BBS) |

If you need help in completing this form, please ask your Rehabilitation Counselor, HSP Representative, Rehabilitation Instructor or Case Manager. If you need help requesting your appeal, or would like to ask about possible representation, contact the Client Assistance Program, 100 North First Street, 1st Floor West, Springfield, IL 62702, 1-800-641-3929 (V/TTY).

☒ I want to appeal a decision made by DRS on the following date 11/21/2017.

☒ I want to appeal DRS' failure to respond to a request I made on the following date 12/1/2017.

☐ I also want to request an informal resolution before the hearing and understand it is my responsibility to contact my HSP representative or the office supervisor for scheduling.

☐ This request concerns HSP Service Hour Parameters

☐ I am a VR or BBS customer and would like to request mediation before the hearing.

Briefly describe the decision(s) or lack of action you would like to appeal:

On November 21, 2017 Individualized Employment Plan (IPE) Writing meeting Section 512.50 IPE Development and Content, the Vocational Rehabilitation Services Counselor, Beatrice Mwinzi refused to provide a written copy of the plan which would allow me to follow along with her, but she stated she was reading the actual plan aloud during our meeting. Therefore, Beatrice's equivocation lead to a written IPE lacking great detail discussed during the meeting allowing me as a customer to make Informed choice regarding services written in the IPE but she gave the illusion that she was including various services but wanted me to sign the IPE lacking details in a hurry while my advocates left the meeting. Before I signed the services Beatrice added the details she missed failed to include and requested she commence services. Beatrice stated the IPE was invalid. I submitted a VR exception requesting payment for students medical insurance on 11/22/2017 but I never received a response. On 12/1/2017 I sent a request to the DRS Director, Quinetta Wade requesting that she authorizes the commencement of services written in my IPE according to Section 512.50, 508·170 and federal regulation § 361.57; 34 CFR Part 361 and 29 US Code § 721 (2)(b)(ii)(II) and the Rehabilitation Services Act of 1973; Administrative Rules, Rehabilitation Services website, Informed Choice Keeping Track of Your Progress and State Rehabilitation Council. AHS 350 found on the Illinois Department of Human Services website.

Failed to pay outstanding Tuition & Fees $1,426.74 E) Mileage Reimbursement

Failed to pay ADHD Coaching - $162.00

Failed to pay for Parking Permit - $102.00

F) Supplies for School failed to arrange voucher $25

488-1949W (R-7-07)

G) Fail...

Page 1 of 2



State of Illinois
Department of Human Services - Division of Rehabilitation Services
**REQUEST FOR HEARING**

✓ Check Only Those That Apply: ✓ *See Letter submitted to ADA Coordinator, Martha Pounger-White*

☐ My disability is deafness or hard of hearing and I will need: (Check One) *11/30/2017*

    ☐ Sign language interpreter      *Requesting Accommodations*

    ☐ Tactile interpreter

    ☐ Video-phone conference

    ☐ CART services

☐ My disability is blindness or visual impairment and I will need: (Check One)

    ☐ audiotape or disc

    ☐ all materials provided in large print

    ☐ all materials provided in Braille

    ☐ a reader to assist in my preparation for the hearing

☐ My language preference is _____ rather than English. I will need an interpreter to participate in the hearing. **(Please fill in your normally spoken language.)**

☒ I am unable to attend the hearing in the local DHS-DRS office due to my disability. I am requesting to participate in the hearing from my home by telephone.

☐ I have chosen to be represented by the following person or organization in this appeal: (PLEASE PRINT)

Name/Organization: _____

Address: _____

City/State/Zip Code: _____

Telephone with area code: _____

Alternate telephone with area code: _____

NOTE: If this form is not signed by the customer or by the designated representative, the request for hearing will be denied.

• **Sign your name or Make your mark**      Customer: _~~signature~~_      Date: _12/11/2017_

• **If you have made your mark (x) instead of signing your name, two witnesses must sign here**

Signature of Witness: _____

Signature of Witness: _____ Date: _____

•_____ Date: _____

Representative or legal guardian of adult 18 years of age or older

• **Parent or guardian signature is required if customer is 17 years of age or younger.**      Relationship to customer

_____

Signature of Parent or Guardian    Date    I am the parent or guardian of _____

Name of Customer

Please mail this form to the Bureau of Administrative Hearings, with the notice you received, if any, informing you of the decision you are appealing. You may send a copy of your appeal to the local field office listed below.

Illinois Department of Human Services
Bureau of Administrative Hearings
401 S Clinton, 6th floor
Chicago, IL 60607

cc: Local Field Office

488-1949W (R-7-07)

# Case Summary for DOROTHY Lynette REDDIC

## Customer Information

| | |
|---|---|
| Birth Date | 12/17/1976 |
| Address | 1335 4th Avenue, ROCKFORD, IL 61104 **Map to Residential Address** |
| County | Winnebago |
| Phone | (815) 200-9730 Voice |
| Email Address | msreddic@hotmail.com |
| Signature Status | Customer Signs |

## Case Details

| | |
|---|---|
| Case # | 02344928 |
| Type | VR |
| Status | Rehabilitation Plan |
| Office | ROCKFORD VR |
| Counselor | DANIEL GROHENS |
| Caseload | 039 |
| Dual Case # | |

## Disabilities

| Level | Impairment,Cause |
|---|---|
| Primary | Cognitive Impairments (learning, thinking, processing, concentration), Attention-Deficit Hyperactivity Disorder (ADHD) |
| Secondary | Other Mental Impairments, Anxiety Disorders |
| Other | Other Orthopedic Impairments (e.g. limited range of motion), Physical Disorders / Conditions (not listed elsewhere) |
| Other | Respiratory Impairments, Asthma and other Allergies |
| Other | General Physical Debilitation (fatigue, weakness, pain, etc.), Cardiac and other Conditions of the Circulatory System |

## Companion Information

| Name | Caseload | Start Date |
|---|---|---|
| BEATRICE MWINZI | 059 | 11/10/2015 |

## Case History

| Action | Date |
|---|---|
| Referral | 11/06/2014 |
| Case Transfer | 11/19/2014 |
| Application | 11/26/2014 |
| Eligibility | 01/26/2015 |
| Rehabilitation Plan | 08/31/2015 |

## VR Information

| | |
|---|---|
| Job Title | Education Administrators, Postsecondary |
| Goal Completion Date | 12/20/2017 |
| TTW Status | IPE Completed |
| Projected Graduation Date | 12/13/2018 |

## Payment Information

| | |
|---|---|
| Authorized as of | 07/07/2016 |
| Amount Authorized | $5,482.68 |
| Outstanding Balance | $737.69 |

## Document Dates

| Document | Completion Date |
|---|---|
| Interview | 11/26/2014 |
| Initial Interview | 01/25/2015 |
| Certification | 01/26/2015 |
| Assessment | 08/31/2015 |
| Financial | 06/23/2016 |
| Survey of Individual Needs | 08/31/2015 |
| IPE | 06/23/2016 |
| Training Services | 06/30/2016 |
| Closure | Incomplete |

## Program History

| Program | Start Date | End Date |
|---|---|---|
| University - NORTHERN ILLINOIS UNIVERSITY | 09/02/2015 | |

| To Do | |
|---|---|
| Type | Due Date |
| IPE Review Due | 07/15/2016 |
| Release Expiring | 07/31/2016 |



State of Illinois
Department of Human Services - Division of Rehabilitation Services
VOCATIONAL REHABILITATION PROGRAM
**UNIVERSITY CASE TRANSFER**

Customer Name: _Dorothy Reddic_   Case Number: _#02344928_

Campus Address: _IDHS-DRS_
_1330 Oakwood Ave_
_DeKalb, IL._

☑Yes ☐No  Has the college case summary been completed and approved by the Supervisor?   _8/28/2015_
Date

☑Yes ☐No  Has contact been made with the University Counselor by the home Counselor?   _2-10-17_
Date

**Customer Responsibilities**

The customer has been informed of their financial participation responsibilities and the amount they must contribute towards their training costs. In addition, the customer has received:

1. A copy of the INFORMATION AND INSTRUCTIONS FOR STUDENTS RECEIVING DHS-DRS FINANCIAL CONTRIBUTION (IL488-2460W) and has been provided with an explanation of the responsibilities identified on the form.   _2-10-17_   Date
2. The information regarding the location of the University office and the name and function of the University Counselor.   _2-10-17_   Date

**Financial**

Case file contains and/or documents the following:

1. ☑Yes ☑No  Customer has applied for financial aid.  _(see note 8/28/15)_
   ☐Yes ☐No  If yes, has the amount been confirmed?
   If yes, list type and amount.  Type: _pending_   Amount:
2. ☐Yes ☑No  The increased Cost screen in WebCM has been completed. _N/A_
3. ☐Yes ☑No  NOTIFICATION OF TRAINING SERVICES APPROVED (IL488-0286) has been completed showing vendors, DHS-DRS financial participation, customer participation and comparable benefits. _Not Spring 2017_
4. ☑Yes ☐No  Does the customer require a reasonable accommodation?  Please list any reasonable accommodations known at this time: _ADHD Coaching (8/31/15); Possibly NIU accommodation regarding time to complete assignments, tests; Dragon speaking Naturally Premiere to Go (12/2/15)_ _(Case note 8/31/15)_
5. ☑Yes ☐No  Will customer be covered under a health insurance policy other than student insurance?  If yes, list company name and policy number: _Has Medicaid through February 2017_
   Company Name:   Policy Number:

x _____
**Rehabilitation Counselor/Instructor**

x _Daniel E Grohens R88_
**Rehabilitation Services Supervisor**

Date

Date _2-10-2017_

State of Illinois
Department of Human Services - Division of Rehabilitation Services

# VR Case Transfer Checklist



All questions must be answered. "No" answers require an explanation. All parties must remember that the transfer process should never interfere or jeopardize customer service.

Document is to be completed and signed by sending counselor and sending supervisor.

Customer Name: Dorothy Reddic    Case Number: 02344928

| No. | Item | Yes | No | N/A | Comment |
|-----|------|-----|-----|-----|---------|
| 1 | Is the case in application status or above? If the case is in referral, the referral will be faxed to the appropriate office. | ☑ | ☐ | ☐ | |
| 2 | Is an initial interview narrative completed and in the VCM case notes? | ☑ | ☐ | ☐ | |
| 3 | Is there a Consent for Services form (IL488-2458) in the folder if the customer is under the age of 18? | ☐ | ☐ | ☑ | |
| 4 | Is there appropriate documentation of disability contained in the folder? | ☑ | ☐ | ☐ | |
| 5 | Is the Certification of Eligibility completed and a signed copy included in the folder? | ☑ | ☐ | ☐ | |
| 6 | Is the Assessment Summary completed and a signed copy included in the folder? | ☑ | ☐ | ☐ | |
| 7 | Is the Financial Analysis completed and a signed copy included in the folder? (If case is SSI/SSDI or for exempt services only, check N/A). | ☑ | ☐ | ☐ | |
| 8 | Is the IPE current and signed by both the counselor and the customer (guardian/representative, if appropriate) and in the case folder? | ☑ | ☐ | ☐ | Not |
| 9 | Have services outlined on the IPE been authorized for by sending district? | ☑ | ☐ | ☐ | other requested services, eg, insurance, Nondissentation classes/Books |
| 10 | Has the VCM Increased Cost Screen been completed? | ☐ | ☐ | ☐ | |
| 11 | Has the TTW been obtained and a copy included in the folder? | ☐ | ☐ | ☑ | |
| 12 | Are case notes current and up-to-date in VCM? | ☑ | ☐ | ☐ | |
| 13 | Has the University Case Transfer form (IL488-0266) been completed (for university case transfer)? | ☑ | ☐ | ☐ | |
| 14 | Does the VCM case folder contain a transfer summary that discusses current services, customer direction, and any special circumstances? | ☑ | ☐ | ☐ | |
| 15 | Does the VCM summary screen contain an accurate current address and phone number for the customer? | ☐ | ☐ | ☐ | |
| 16 | Has the correct office been located for transfer? **Consider customer choice.** | ☑ | ☐ | ☐ | Elects to be served by DeKalb office. |

_____    _____    Daniel Gjohens 2-10-17
Sending Counselor          Date      Sending Supervisor          Date

IL488-2307 (R-11-07)                                              Page 1 of 1

# Case Summary for DOROTHY Lynette REDDIC

## Customer Information

| | |
|---|---|
| Birth Date | 12/17/1976 |
| Address | 1335 4th Avenue, ROCKFORD, IL 61104 **Map to Residential Address** |
| County | Winnebago |
| Phone | (815) 200-9730 Voice |
| Email Address | |
| Signature Status | Customer Signs |

## Case Details

| | |
|---|---|
| Case # | 02344928 |
| Type | VR |
| Status | Eligibility |
| Office | ROCKFORD VR |
| Counselor | OSCAR TRUJILLO |
| Caseload | 039 |
| Dual Case # | |

## Disabilities

| Level | Impairment,Cause |
|---|---|
| Primary | Cognitive Impairments (learning, thinking, processing, concentration), Attention-Deficit Hyperactivity Disorder (ADHD) |
| Secondary | Other Mental Impairments, Anxiety Disorders |
| Other | Other Orthopedic Impairments (e.g. limited range of motion), Physical Disorders / Conditions (not listed elsewhere) |
| Other | Respiratory Impairments, Asthma and other Allergies |
| Other | General Physical Debilitation (fatigue, weakness, pain, etc.), Cardiac and other Conditions of the Circulatory System |

## Case History

| Action | Date |
|---|---|
| Referral | 11/06/2014 |
| Case Transfer | 11/19/2014 |
| Application | 11/26/2014 |
| Eligibility | 01/26/2015 |

## VR Information

| | |
|---|---|
| Job Title | None |
| Goal Completion Date | |
| TTW Status | None |
| Projected Graduation Date | |

## Document Dates

| Document | Completion Date |
|---|---|
| **Interview** | 11/26/2014 |
| **Initial Interview** | 01/25/2015 |
| **Certification** | 01/26/2015 |
| **Financial** | Incomplete |

## To Do

| Type | Due Date |
|---|---|
| Maximum Time to Plan | 04/26/2015 |

State of Illinois
Department of Human Services - Division of Rehabilitation Services
**CERTIFICATION OF ELIGIBILITY AND PRIORITY FOR ORDER OF SELECTION**

| Customer Name: DOROTHY REDDIC | Case Number: 02344928 |
|---|---|

Primary Disability: Cognitive Impairments (learning, thinking, processing, concentration)
Causation: Attention-Deficit Hyperactivity Disorder (ADHD)
Secondary Disability: Other Mental Impairments
Causation: Anxiety Disorders

| Yes ☐  No ☒ | The customer receives SSDI/SSI benefits and is considered to be an individual with a significant disability. The customer has expressed an interest in achieving an employment outcome. |
|---|---|

-OR-

| ☒ | It has been determined the customer intends to achieve an employment outcome and has a disability(ies) resulting in substantial impediments to any employment. The customer will require Vocational Rehabilitation services in order to prepare for, secure, retain, or regain employment consistent with the customer's unique strengths, resources, priorities, concerns, abilities, capabilities, interests, and informed choice. |
|---|---|

-AND-

### FUNCTIONAL LIMITATIONS

Describe the extent of the functional capacities and the functional limitations, which result in an impediment(s) to employment.

- **Mobility** — Serious

*Description of Limitations:* Plantar Fascitis, bilateral knee pain, patelar tendinitis. Customer suffers from pain to her knees, ankles and feet. She experiences soreness to touch and intermittent limping. She has required orthotics to her feet for arch support. Customer has problems with some acities such as walking long distances, and climbing stairs. Customer will need to be employed in a position that will not aggravate her condition. She will not be able to perform duties which would require her to perform the above activities.

*Source of Determination:* Medical Records from Dr. Washington, Winterhalter, Bassam, Rockford Health System, and the Northern Illinois University Health Clinic.

- **Communication** — None
- **Self Care** — None
- **Self Direction** — Serious

*Description of Limitations:* Depression and anxiety disorder. Customer feels very stressed often. She is teary eyed due to her depression. She has been despondent due to problems in work settings. She becomes irritable due to her feeling of stress. Customer is also very anxious in a variety of settings. She also has difficulty with sleeping averaging at times only 4 hours of sleep. Customer will need continued professional mental health counseling to help her so that when she is in the work setting she will be able to cope and safeguard her job.

*Source of Determination:* Medical Records from Dr. Washington, Winterhalter, Bassam, Rockford Health System, and the Northern Illinois University Health Clinic.

- **Interpersonal Skills** — None
- **Work Tolerance** — None

*Description of Limitations:* Tacychardia, chronic back pain, foot pain, plantar fascitis, bilateral knee pain, ADHD, asthma, morbid obesity. Customer suffers from a rapid heart beat. She is easily fatigued. She has a limited range of motion to her knees and with her back. She is not able to physically exert herself. She cannot wlak long distances, climb stairs or lift heavy items. She also experiences much foot pain with an inability to bear much weight. She experiences numbness and tingling and weakness to affected areas of her body. Her asthma becomes aggravated when she walks frequently and when the weather is cold or the wind is strong. She also experiences chest pains. Customer also has difficulty with concentration, and organization. Customer will have difficulty in physical settings and in areas where she will need to be focused on her job duties.

*Source of Determination:* Medical Records from Dr. Washington, Winterhalter, Bassam, Rockford Health System, and the Northern Illinois University Health Clinic.

- **Work Skills** — None



State of Illinois
Department of Human Services - Division of Rehabilitation Services
**CERTIFICATION OF ELIGIBILITY AND PRIORITY FOR ORDER OF SELECTION**

Customer Name: DOROTHY REDDIC

Case Number: 02344928

Primary Disability: Cognitive Impairments (learning, thinking, processing, concentration)
Causation: Attention-Deficit Hyperactivity Disorder (ADHD)
Secondary Disability: Other Mental Impairments
Causation: Anxiety Disorders

Yes ☐ No ☒ The customer receives SSDI/SSI benefits and is considered to be an individual with a significant disability. The customer has expressed an interest in achieving an employment outcome.

-OR-

☒ It has been determined the customer intends to achieve an employment outcome and has a disability(ies) resulting in substantial impediments to any employment. The customer will require Vocational Rehabilitation services in order to prepare for, secure, retain, or regain employment consistent with the customer's unique strengths, resources, priorities, concerns, abilities, capabilities, interests, and informed choice.

-AND-

## FUNCTIONAL LIMITATIONS

Describe the extent of the functional capacities and the functional limitations, which result in an impediment(s) to employment.

- **Mobility**                    **Serious**

*Description of Limitations:* Plantar Fascitis, bilateral knee pain, patelar tendinitis. Customer suffers from pain to her knees, ankles and feet. She experiences soreness to touch and intermittent limping. She has required orthotics to her feet for arch support. Customer has problems with some actities such as walking long distances, and climbing stairs. Customer will need to be employed in a position that will not aggravate her condition. She will not be able to perform duties which would require her to perform the above activities.

*Source of Determination:* Medical Records from Dr. Washington, Winterhalter, Bassam, Rockford Health System, and the Northern Illinois University Health Clinic.

- **Communication**              **None**
- **Self Care**                  **None**
- **Self Direction**             **Serious**

*Description of Limitations:* ▓▓▓▓▓▓ and ▓▓▓▓▓▓. Customer feels very stressed often. She is teary eyed due to her depression. She has been despondent due to problems in work settings. She becomes irritable due to her feeling of stress. Customer is also very anxious in a variety of settings. She also has difficulty with sleeping averaging at times only 4 hours of sleep. Customer will need continued professional mental health counseling to help her so that when she is in the work setting she will be able to cope and safeguard her job.

*Source of Determination:* Medical Records from Dr. Washington, Winterhalter, Bassam, Rockford Health System, and the Northern Illinois University Health Clinic.

- **Interpersonal Skills**       **None**
- **Work Tolerance**             **None**

*Description of Limitations:* Tacychardia, chronic back pain, foot pain, plantar fascitis, bilateral knee pain, ADHD, asthma, morbid obesity. Customer suffers from a rapid heart beat. She is easily fatigued. She has a limited range of motion to her knees and with her back. She is not able to physically exert herself. She cannot wlak long distances, climb stairs or lift heavy items. She also experiences much foot pain with an inability to bear much weight. She experiences numbness and tingling and weakness to affected areas of her body. Her asthma becomes aggravated when she walks frequently and when the weather is cold or the wind is strong. She also experiences chest pains. Customer also has difficulty with concentration, and organization. Customer will have difficulty in physical settings and in areas where she will need to be focused on her job duties.

*Source of Determination:* Medical Records from Dr. Washington, Winterhalter, Bassam, Rockford Health System, and the Northern Illinois University Health Clinic.

- **Work Skills**                **None**

IL488-2244W (R-10/06)



State of Illinois
Department of Human Services - Division of Rehabilitation Services

**CERTIFICATION OF ELIGIBILITY AND PRIORITY FOR ORDER OF SELECTION**

---

Customer Name: DOROTHY REDDIC

Case Number: 02344928

---

## REQUIRED SERVICES

The following services are anticipated to address the impediments to employment:

- **Counseling and Guidance**
  *Service Description:* Customer will need counseling and guidance in order to assist her in successfully obtaining employment in the community.
- **Information and Referral**
  *Service Description:* Customer will need all necessary information and community referrals in order to assist her in obtaining and maintaining employment.
- **Physical/Mental Restoration**
  *Service Description:* Customer will require mental restoration in the form of mental health counseling so that she will be able to maintain good physical and emotional health which will help her to be successfully employed in the community.
- **Placement**
  *Service Description:* Customer will need job placement services in order to obtain and maintain employment in the community.
- **Other Service**          Transportation Assistance
  *Service Description:* Customer will need transportation services in order to seek out employment in the community, and to keep all vocational related appointments.

## ORDER OF SELECTION

Based on the functional capacities and the customer's requirement for multiple services over an extended period of time, the customer is considered to have a:

☐ Most significant disability          ☒ Very significant disability          ☐ Significant disability

x _(signature)_
**Rehabilitation Counselor/Instructor**

1-26-15
Date

---

IL488-2244W (R-10/06)



State of Illinois
Department of Human Services - Division of Rehabilitation Services
**ASSESSMENT SUMMARY**

| Customer Name: Dorothy Reddic | Case Number: 02344928 |
|---|---|

I.     Employment Outcome/How Determined/Why Suitable

Customer's vocational goal is to be employed as a Postsecondary Education Administrator. She has chosen this vocational goal and is asking the Division of Rehabilitation Services (DRS) for assistance in obtaining this goal.

Employment of Postsecondary Education Administrators is expected to grow by 19 percent from 2010 to 2020, about as fast as the average. Expected growth is due to increases in enrollments.

The customer is currently involved in a Doctorate program at Northern Illinois University in the field of Postsecondary Educational Administration. It is expected that the customer will be successful in obtaining employment in this field. She feels confident that she will be successful in this vocational goal and the same is shared by her Vocational Rehabilitation Counselor.

II.     Describe and Justify Services Needed to Reach the Employment Outcome.

Counseling and Guidance: Customer will need counseling and guidance in order to assist her in successfully obtaining employment in the community.
Information and Referral: Customer will need all necessary information and community referrals in order to assist her in obtaining and maintaining employment.
Physical/Mental Restoration: Customer will require physical and mental restoration in order to maintain good physical and emotional health which will help her to be successfully employed in the community.
Training: Customer will need training in order to assist her in obtaining and maintaining employment in the community.
Placement: Customer will need job placement services in order to obtain and maintain employment in the community.
Other Service: Customer will need transportation services in order to seek out employment in the community, and to keep all vocational related appointments.

_____
Rehabilitation Counselor

8-3-15
Date

IL 488-2339W (R-12-99)

**State of Illinois**
**Department of Human Services - Division of Rehabilitation Services**
## INDIVIDUALIZED PLAN FOR EMPLOYMENT

**Customer Name:** DOROTHY REDDIC

**Rehabilitation Counselor/Instructor:** OSCAR TRUJILLO

**Case Number:** 02344928

**Date Completed:** 8-31-15

### Plan

| | | | |
|---|---|---|---|
| Amendment Number: | 0 | | |
| No cost services only? | ☐ Yes ☒ No | Review Date: | 12/13/2015 |
| Post employment plan? | ☐ Yes ☒ No | Post employment anticipated? | ☐ Yes ☒ No |
| | | WIA Referral? | ☐ Yes ☒ No |

### Amendment

| | |
|---|---|
| Annual Review? | ☐ Yes ☒ No |
| Change in Goal? | ☐ Yes ☒ No |
| Change in Service? | ☐ Yes ☒ No |

### GOAL

| | |
|---|---|
| Goal Completion Date: | 12/13/2018 |
| Customer is job ready? | ☐ Yes ☒ No |
| Job Chosen: | Education Administrators, Postsecondary |

I understand that I am eligible to receive services through the Division of Rehabilitation Services (DRS) Vocational Rehabilitation program as I am an individual with a disability and need services to get, keep, advance in, or re-enter a job. The Job Chosen above is my job goal and I expect to achieve my employment outcome by the Goal Completion Date above.

I understand I may appeal any decisions or changes to my plan I do not agree with. I have been given my appeal rights and understand them. I understand I may call Client Assistance Program (CAP) for assistance at 1-(800) 641-3929 (V/TTY) to get help.

Based on my informed choice, my counselor and I have discussed the services and approved service providers necessary to reach my job goal and how to get those services. My counselor and I have selected the services and approved service providers listed below.

### SERVICES

| Service: | Support Services - Tuition and Fees, books and supplies |
|---|---|
| Provider: | NORTHERN ILLINOIS UNIVERSITY |
| Start Date: | 08/31/2015 |
| End Date: | 12/13/2015 |
| Funding Source: | Division of Rehab Services |
| Progress: | Customer will provide course schedule and syllabus. She will provide grades from each semester. Customer will follow all instructions from school staff and will do well in her studies. |

| Service: | Counseling & Guidance - Counseling and Guidance |
|---|---|
| Provider: | DHS-DIVISION OF REHABILITATION SERVICES |
| Start Date: | 08/31/2015 |
| End Date: | 08/31/2016 |
| Funding Source: | No Cost Service |
| Progress: | Customer will follow all appropriate instructions and directions 100% from the staff at the Division of Rehabilitation Services in order to be successfully employed in the community. Customer will remain in contact with DRS during the life of her case. |

IL 488-0694W (09/10)



State of Illinois
Department of Human Services - Division of Rehabilitation Services
**INDIVIDUALIZED PLAN FOR EMPLOYMENT**

Customer Name: DOROTHY REDDIC                                          Case Number: 02344928

| Service: | Information & Referral - Information and Referral |
|---|---|
| Provider: | DHS-DIVISION OF REHABILITATION SERVICES |
| Start Date: | 08/31/2015 |
| End Date: | 08/31/2016 |
| Funding Source: | No Cost Service |
| Progress: | Customer will follow up 100% on all appropriate community referrals and take all appropriate information which will assist her in becoming successfully employed. |

| Service: | Job Placement - Job Placement Services |
|---|---|
| Provider: | DHS-DIVISION OF REHABILITATION SERVICES |
| Start Date: | 08/31/2015 |
| End Date: | 08/31/2016 |
| Funding Source: | No Cost Service |
| Progress: | Customer will follow all appropriate instructions and directions 100% from the staff of the Division of Rehabilitation Services in order to be successfully employed. Customer will follow up 100% on all appropriate job leads provided. |

| Service: | Job Training - Training- Premier to Go. |
|---|---|
| Provider: | DONKA INC |
| Start Date: | 08/31/2015 |
| End Date: | 12/13/2015 |
| Funding Source: | Division of Rehab Services |
| Progress: | Customer will be assisted with software training with the program called Premier-To-Go. Customer will utilize the training to assist her in training while attending NIU. |

| Service: | Support Services - ADHD Coaching |
|---|---|
| Provider: | ELIZABETH PAPARO |
| Start Date: | 08/31/2015 |
| End Date: | 12/13/2015 |
| Funding Source: | Division of Rehab Services |
| Progress: | Customer will utilize the ADHD Coach to assist her in successfully completing her Doctorate at NIU. |





State of Illinois
Department of Human Services - Division of Rehabilitation Services
**INDIVIDUALIZED PLAN FOR EMPLOYMENT**

Customer Name: DOROTHY REDDIC

Case Number: 02344928

| | |
|---|---|
| Service: | Support Services - Transportation Assistance |
| Provider: | FRIEND OF MAN |
| Start Date: | 08/31/2015 |
| End Date: | 08/31/2016 |
| Funding Source: | Division of Rehab Services |
| Progress: | Customer will utilize transportation assistance in the form of authorized mileage reimbursement provided through the Division of Rehabilitation Services in order to commute to and from NIU on a one time daily basis, and to attend all employment related meetings in regards to her Vocational Rehabilitation case. |

| | |
|---|---|
| Service: | Support Services - Parking Fee |
| Provider: | FRIEND OF MAN |
| Start Date: | 08/31/2015 |
| End Date: | 12/13/2015 |
| Funding Source: | Division of Rehab Services |
| Progress: | Customer will be assisted by DRS with her parking fee in order to park at NIU and attend classes. |

**Responsibilities**

Customer's personal and financial responsibilities in achieving the job objective are:

Customer will turn in school grades each semester, apply for appropriate scholarships on time if available and all financial aid offered, agree to comply with the Division of Rehabilitation Services academic sponsorship rules while attending Northern Illinois University. She will follow all appropriate instructions and directions from the staff of the Division of Rehabilitation Services. She will stay in contact with the Division of Rehabilitation Services during the life of her case. She will keep all professional appointments and follow all appropriate instructions from all service providers identified in her Individualized Plan for Employment (IPE). She must maintain at least a cumulative "C" grade point average each semester, or maintain a sufficient cumulative GPA to meet graduation requirements. Customer will be responsible for 10% of her tuition.

Comments:

Dorothy Reddic

I understand my Plan will be reviewed on <u>12/13/2015</u>

At this time I do do not expect to need Post Employment Services, but will have my need reviewed before my case is closed.

Ticket to Work: ————
If you have been determined disabled by the Social Security Administration and qualify for the Ticket to Work Program, you agree to assign the DHS/Division of Rehabilitation Services your Ticket to Work by signing this Document.

x _____     _8/31/15_     _____
Customer                      Date          Parent/Guardian


_____     _8-31-71_
Rehabilitation Counselor/Instructor:     Date


IL 488-0694W (09/10)

State of Illinois
Department of Human Services - Division of Rehabilitation Services
**INDIVIDUALIZED PLAN FOR EMPLOYMENT**

Customer Name: DOROTHY REDDIC

Case Number: 02344928

Rehabilitation Counselor/Instructor: OSCAR TRUJILLO

Date Completed: 12/14/2015

## Plan

| | | | |
|---|---|---|---|
| Amendment Number: | 1 | Review Date: | 01/19/2016 |
| No cost services only? | ☐ Yes ☒ No | Post employment anticipated? | ☐ Yes ☒ No |
| Post employment plan? | ☐ Yes ☒ No | WIA Referral? | ☐ Yes ☒ No |

## Amendment

| | |
|---|---|
| Annual Review? | ☐ Yes ☒ No |
| Change in Goal? | ☐ Yes ☒ No |
| Change in Service? | ☒ Yes ☐ No |

## GOAL

| | |
|---|---|
| Goal Completion Date: | 12/13/2018 |
| Customer is job ready? | ☐ Yes ☒ No |
| Job Chosen: | Education Administrators, Postsecondary |

I understand that I am eligible to receive services through the Division of Rehabilitation Services (DRS) Vocational Rehabilitation program as I am an individual with a disability and need services to get, keep, advance in, or re-enter a job. The Job Chosen above is my job goal and I expect to achieve my employment outcome by the Goal Completion Date above.

I understand I may appeal any decisions or changes to my plan I do not agree with. I have been given my appeal rights and understand them. I understand I may call Client Assistance Program (CAP) for assistance at 1-(800) 641-3929 (V/TTY) to get help.

Based on my informed choice, my counselor and I have discussed the services and approved service providers necessary to reach my job goal and how to get those services. My counselor and I have selected the services and approved service providers listed below.

## SERVICES

| | |
|---|---|
| Service: | Support Services - Tuition and Fees, books and supplies |
| Provider: | NORTHERN ILLINOIS UNIVERSITY |
| Start Date: | 08/31/2015 |
| End Date: | 12/13/2015 |
| Funding Source: | Division of Rehab Services |
| Progress: | Customer will provide course schedule and syllabus. She will provide grades from each semester. Customer will follow all instructions from school staff and will do well in her studies. |

| | |
|---|---|
| Service: | Counseling & Guidance - Counseling and Guidance |
| Provider: | DHS-DIVISION OF REHABILITATION SERVICES |
| Start Date: | 08/31/2015 |
| End Date: | 08/31/2016 |
| Funding Source: | No Cost Service |
| Progress: | Customer will follow all appropriate instructions and directions 100% from the staff at the Division of Rehabilitation Services in order to be successfully employed in the community. Customer will remain in contact with DRS during the life of her case. |



State of Illinois
Department of Human Services - Division of Rehabilitation Services
**INDIVIDUALIZED PLAN FOR EMPLOYMENT**

Customer Name: DOROTHY REDDIC                                    Case Number: 02344928

| Service: | Information & Referral - Information and Referral |
|---|---|
| Provider: | DHS-DIVISION OF REHABILITATION SERVICES |
| Start Date: | 08/31/2015 |
| End Date: | 08/31/2016 |
| Funding Source: | No Cost Service |
| Progress: | Customer will follow up 100% on all appropriate community referrals and take all appropriate information which will assist her in becoming successfully employed. |

| Service: | Job Placement - Job Placement Services |
|---|---|
| Provider: | DHS-DIVISION OF REHABILITATION SERVICES |
| Start Date: | 08/31/2015 |
| End Date: | 08/31/2016 |
| Funding Source: | No Cost Service |
| Progress: | Customer will follow all appropriate instructions and directions 100% from the staff of the Division of Rehabilitation Services in order to be successfully employed. Customer will follow up 100% on all appropriate job leads provided. |

| Service: | Job Training - Training- Premier to Go. |
|---|---|
| Provider: | DONKA INC |
| Start Date: | 12/14/2015 |
| End Date: | 01/19/2016 |
| Funding Source: | Division of Rehab Services |
| Progress: | Customer will be assisted with software training with the program called Premier-To-Go. Customer will utilize the training to assist her in training while attending NIU. |

| Service: | Support Services - ADHD Coaching |
|---|---|
| Provider: | ELIZABETH PAPARO |
| Start Date: | 12/14/2015 |
| End Date: | 01/19/2016 |
| Funding Source: | Division of Rehab Services |
| Progress: | Customer will utilize the ADHD Coach to assist her in successfully completing her Doctorate at NIU. This will be for her final 12 sessions out of an authorized 24 sessions. |





State of Illinois
Department of Human Services - Division of Rehabilitation Services
**INDIVIDUALIZED PLAN FOR EMPLOYMENT**

Customer Name: DOROTHY REDDIC

Case Number: 02344928

| | |
|---|---|
| Service: | Support Services - Transportation Assistance |
| Provider: | FRIEND OF MAN |
| Start Date: | 08/31/2015 |
| End Date: | 08/31/2016 |
| Funding Source: | Division of Rehab Services |
| Progress: | Customer will utilize transportation assistance in the form of authorized mileage reimbursement provided through the Division of Rehabilitation Services in order to commute to and from NIU on a one time daily basis, and to attend all employment related meetings in regards to her Vocational Rehabilitation case. |

| | |
|---|---|
| Service: | Support Services - Parking Fee |
| Provider: | FRIEND OF MAN |
| Start Date: | 08/31/2015 |
| End Date: | 12/13/2015 |
| Funding Source: | Division of Rehab Services |
| Progress: | Customer will be assisted by DRS with her parking fee in order to park at NIU and attend classes. |

**Responsibilities**

Customer's personal and financial responsibilities in achieving the job objective are:

Customer will turn in school grades each semester, apply for appropriate scholarships on time if available and all financial aid offered, agree to comply with the Division of Rehabilitation Services academic sponsorship rules while attending Northern Illinois University. She will follow all appropriate instructions and directions from the staff of the Division of Rehabilitation Services. She will stay in contact with the Division of Rehabilitation Services during the life of her case. She will keep all professional appointments and follow all appropriate instructions from all service providers identified in her Individualized Plan for Employment (IPE). She must maintain at least a cumulative "C" grade point average each semester, or maintain a sufficient cumulative GPA to meet graduation requirements. Customer will be responsible for 10% of her tuition.

Comments:

Dorothy Reddic

I understand my Plan will be reviewed on <u>01/19/2016</u>

At this time I do do not expect to need Post Employment Services, but will have my need reviewed before my case is closed.

Ticket to Work:
If you have been determined disabled by the Social Security Administration and qualify for the Ticket to Work Program, you agree to assign the DHS/Division of Rehabilitation Services your Ticket to Work by signing this Document.

x _____     _12-14-15_ _____     _____
Customer                                Date                          Parent/Guardian

_____     _12-14-15_ _____
Rehabilitation Counselor/Instructor:    Date

IL 488-0694W (09/10)



State of Illinois
Department of Human Services - Division of Rehabilitation Services
**INDIVIDUALIZED PLAN FOR EMPLOYMENT**

Customer Name: DOROTHY REDDIC

Case Number: 02344928

Rehabilitation Counselor/Instructor: <u>DANIEL GROHENS</u>

Date Completed: <u>02/08/2016</u>

## Plan

| | | | |
|---|---|---|---|
| Amendment Number: | 2 | Review Date: | <u>01/08/2017</u> |
| No cost services only? | ☐ Yes ☒ No | Post employment anticipated? | ☐ Yes ☒ No |
| Post employment plan? | ☐ Yes ☒ No | WIA Referral? | ☐ Yes ☒ No |

| **Amendment** | | **GOAL** | |
|---|---|---|---|
| Annual Review? | ☐ Yes ☒ No | Goal Completion Date: | <u>12/20/2017</u> |
| Change in Goal? | ☒ Yes ☐ No | Customer is job ready? | ☐ Yes ☒ No |
| Change in Service? | ☐ Yes ☒ No | Job Chosen: | <u>Education Administrators, Postsecondary</u> |

I understand that I am eligible to receive services through the Division of Rehabilitation Services (DRS) Vocational Rehabilitation program as I am an individual with a disability and need services to get, keep, advance in, or re-enter a job. The Job Chosen above is my job goal and I expect to achieve my employment outcome by the Goal Completion Date above.

I understand I may appeal any decisions or changes to my plan I do not agree with. I have been given my appeal rights and understand them. I understand I may call Client Assistance Program (CAP) for assistance at 1-(800) 641-3929 (V/TTY) to get help.

Based on my informed choice, my counselor and I have discussed the services and approved service providers necessary to reach my job goal and how to get those services. My counselor and I have selected the services and approved service providers listed below.

## SERVICES

| | |
|---|---|
| Service: | Job Training - Tuition and Fees up to the maximum allowed. |
| Provider: | NORTHERN ILLINOIS UNIVERSITY |
| Start Date: | 03/21/2016 |
| End Date: | 05/13/2016 |
| Funding Source: | Division of Rehab Services |
| Progress: | Customer will provide course schedule and grades from each semester. Customer will follow all instructions from school staff and will do well in her studies. |

| | |
|---|---|
| Service: | Counseling & Guidance - Counseling and Guidance |
| Provider: | DHS-DIVISION OF REHABILITATION SERVICES |
| Start Date: | 02/08/2016 |
| End Date: | 02/01/2017 |
| Funding Source: | No Cost Service |
| Progress: | Customer will follow all appropriate instructions and directions 100% from the staff at the Division of Rehabilitation Services in order to be successfully employed in the community. Customer will remain in contact with DRS during the life of her case. |

IL 488-0694W (09/10)



State of Illinois
Department of Human Services - Division of Rehabilitation Services
**INDIVIDUALIZED PLAN FOR EMPLOYMENT**

Customer Name: DOROTHY REDDIC                                  Case Number: 02344928

| | |
|---|---|
| Service: | Information & Referral - Information and Referral |
| Provider: | DHS-DIVISION OF REHABILITATION SERVICES |
| Start Date: | 02/08/2016 |
| End Date: | 02/01/2017 |
| Funding Source: | No Cost Service |
| Progress: | Customer will follow up 100% on all appropriate community referrals and take all appropriate information which will assist her in becoming successfully employed. |

| | |
|---|---|
| Service: | Support Services - ADHD Coaching |
| Provider: | ELIZABETH PAPARO |
| Start Date: | 02/08/2016 |
| End Date: | 07/07/2016 |
| Funding Source: | Division of Rehab Services |
| Progress: | Customer will utilize the ADHD Coach to assist her in successfully completing her Doctorate at NIU. ~~This will be for her final 12 sessions out of an authorized 24 sessions.~~ Weekly until 5/13, once per week, then every other week. DHC |

| | |
|---|---|
| Service: | Support Services - Transportation Services by (Vehicle# 08500) (Bus# 08710): DRS may fund transportation, including tolls if pre-approved, via customer, which may be terminated at DRS counselor's discretion; pending household income verification (as required); Payment may only be made for bus or mileage in a given month. |
| Provider: | Customer |
| Start Date: | 02/08/2016 |
| End Date: | 02/01/2017 |
| Funding Source: | Division of Rehab Services |
| Progress: | Client will use DRS transportation reimbursement for one round trip per day for employment related activities listed in the plan (transportation expense for in person applications/interviews, job fairs, meetings, or travel to work until first paycheck). Customer must submit to DRS a mileage/ job log (and any bus tickets receipts), no later than the 5th day of the month following travel, for eligibility of up to RMTD monthly bus pass rate or 50% of current IRS travel reimbursement rate. |

| | |
|---|---|
| Service: | Job Placement - Placement Services |
| Provider: | ROCKFORD VR |
| Start Date: | 02/08/2016 |
| End Date: | 02/01/2017 |
| Funding Source: | Division of Rehab Services |
| Progress: | Client will receive assistance in obtaining employment. |





State of Illinois
Department of Human Services - Division of Rehabilitation Services
**INDIVIDUALIZED PLAN FOR EMPLOYMENT**

Customer Name: DOROTHY REDDIC

Case Number: 02344928

| | |
|---|---|
| Service: | Support Services - Follow-Up |
| Provider: | ROCKFORD VR |
| Start Date: | 02/08/2016 |
| End Date: | 02/01/2017 |
| Funding Source: | Division of Rehab Services |
| Progress: | Customer will receive assistance in keeping a job for 90 days or more. |

| | |
|---|---|
| Service: | Support Services - Books and supplies up to the maximum allowed |
| Provider: | NIU BOOKSTORE |
| Start Date: | 02/08/2016 |
| End Date: | 05/13/2016 |
| Funding Source: | Division of Rehab Services, Veterans |
| Progress: | Customer will syllabus, book receipts and grades from each semester. Customer will follow all instructions from school staff and will do well in her studies. |

**Responsibilities**

Customer's personal and financial responsibilities in achieving the job objective are:

Customer will turn in school grades each semester, apply for appropriate scholarships on time if available and all financial aid offered, agree to comply with the Division of Rehabilitation Services academic sponsorship rules while attending Northern Illinois University. She will follow all appropriate instructions and directions from the staff of the Division of Rehabilitation Services. She will stay in contact with the Division of Rehabilitation Services during the life of her case. She will keep all professional appointments and follow all appropriate instructions from all service providers identified in her Individualized Plan for Employment (IPE). She must maintain at least a cumulative "C" grade point average each semester, or maintain a sufficient cumulative GPA to meet graduation requirements.

Comments:

Customer will be responsible for 10% of her tuition.

I understand my Plan will be reviewed on 01/08/2017

At this time I do do not expect to need Post Employment Services, but will have my need reviewed before my case is closed.

Ticket to Work:

If you have been determined disabled by the Social Security Administration and qualify for the Ticket to Work Program, you agree to assign the DHS/Division of Rehabilitation Services your Ticket to Work by signing this Document.

x _(signature)_ _2/8/2016_ _____
Customer                    Date                        Parent/Guardian

_(signature)_ Eds, LPC  _02/08/2016_
Rehabilitation Counselor/Instructor:   Date



State of Illinois
Department of Human Services - Division of Rehabilitation Services
**INDIVIDUALIZED PLAN FOR EMPLOYMENT**

Customer Name: DOROTHY REDDIC                                      Case Number: 02344928

Rehabilitation Counselor/Instructor: DANIEL GROHENS            Date Completed: 05/23/16

### Plan

| Amendment Number: | 3 | Review Date: | 07/15/2016 |
|---|---|---|---|
| No cost services only? | ☐ Yes ☒ No | Post employment anticipated? | ☐ Yes ☒ No |
| Post employment plan? | ☐ Yes ☒ No | WIA Referral? | ☐ Yes ☒ No |

| **Amendment** | | **GOAL** | |
|---|---|---|---|
| Annual Review? | ☐ Yes ☒ No | Goal Completion Date: | 12/20/2017 |
| Change in Goal? | ☐ Yes ☒ No | Customer is job ready? | ☐ Yes ☒ No |
| Change in Service? | ☐ Yes ☒ No | Job Chosen: | Education Administrators, Postsecondary |

I understand that I am eligible to receive services through the Division of Rehabilitation Services (DRS) Vocational Rehabilitation program as I am an individual with a disability and need services to get, keep, advance in, or re-enter a job. The Job Chosen above is my job goal and I expect to achieve my employment outcome by the Goal Completion Date above.

I understand I may appeal any decisions or changes to my plan I do not agree with. I have been given my appeal rights and understand them. I understand I may call Client Assistance Program (CAP) for assistance at 1-(800) 641-3929 (V/TTY) to get help.

Based on my informed choice, my counselor and I have discussed the services and approved service providers necessary to reach my job goal and how to get those services. My counselor and I have selected the services and approved service providers listed below.

### SERVICES

| Service: | Job Training - Tuition and Fees up to the maximum allowed. |
|---|---|
| Provider: | NORTHERN ILLINOIS UNIVERSITY |
| Start Date: | 05/24/2016 |
| End Date: | 07/26/2016 |
| Funding Source: | Division of Rehab Services |
| Progress: | Customer will provide course schedule and grades from each semester. Customer will follow all instructions from school staff and will do well in her studies. |

| Service: | Counseling & Guidance - Counseling and Guidance |
|---|---|
| Provider: | DHS-DIVISION OF REHABILITATION SERVICES |
| Start Date: | 05/24/2016 |
| End Date: | 08/17/2016 |
| Funding Source: | No Cost Service |
| Progress: | Customer will follow all appropriate instructions and directions 100% from the staff at the Division of Rehabilitation Services in order to be successfully employed in the community. Customer will remain in contact with DRS during the life of her case. |

IL 488-0694W (09/10)                                                                                    Page 1 of 3



State of Illinois
Department of Human Services - Division of Rehabilitation Services
**INDIVIDUALIZED PLAN FOR EMPLOYMENT**

Customer Name: DOROTHY REDDIC                                           Case Number: 02344928

| | |
|---|---|
| Service: | Information & Referral - Information and Referral |
| Provider: | DHS-DIVISION OF REHABILITATION SERVICES |
| Start Date: | 05/24/2016 |
| End Date: | 08/17/2016 |
| Funding Source: | No Cost Service |
| Progress: | Customer will follow up 100% on all appropriate community referrals and take all appropriate information which will assist her in becoming successfully employed. |

| | |
|---|---|
| Service: | Support Services - ADHD Coaching |
| Provider: | ELIZABETH PAPARO |
| Start Date: | 05/24/2016 |
| End Date: | 07/07/2016 |
| Funding Source: | Division of Rehab Services |
| Progress: | Customer will utilize the ADHD Coach to assist her in success in her Doctorate at NIU. Sessions are approved for one hour every other week, the weeks of: 5/23/2016, 06/06/2016, 06/20/2016, 07/04/2016. |

| | |
|---|---|
| Service: | Support Services - Transportation Services by (Vehicle# 08500) (Bus# 08710): DRS may fund transportation, including tolls if pre-approved, via customer, which may be terminated at DRS counselor's discretion; pending household income verification (as required); Payment may only be made for bus or mileage in a given month. |
| Provider: | Customer |
| Start Date: | 05/24/2016 |
| End Date: | 07/26/2016 |
| Funding Source: | Division of Rehab Services |
| Progress: | Client will use DRS transportation reimbursement for one round trip per day for employment related activities listed in the plan (transportation expense for in person applications/interviews, job fairs, meetings, or travel to work until first paycheck). Customer must submit to DRS a mileage/ job log (and any bus tickets receipts), no later than the 5th day of the month following travel, for eligibility of up to RMTD monthly bus pass rate or 50% of current IRS travel reimbursement rate. |

| | |
|---|---|
| Service: | Job Placement - Placement Services |
| Provider: | ROCKFORD VR |
| Start Date: | 05/24/2016 |
| End Date: | 08/17/2016 |
| Funding Source: | Division of Rehab Services, All Other Sources |
| Progress: | Client will receive assistance in obtaining employment. |



IL 488-0694W (09/10)                                                              Page 2 of 3

State of Illinois
Department of Human Services - Division of Rehabilitation Services
**INDIVIDUALIZED PLAN FOR EMPLOYMENT**

Customer Name: DOROTHY REDDIC

Case Number: 02344928

| Service: | Support Services - Follow-Up |
|---|---|
| Provider: | ROCKFORD VR |
| Start Date: | 05/24/2016 |
| End Date: | 08/17/2016 |
| Funding Source: | Division of Rehab Services |
| Progress: | Customer will receive assistance in keeping a job for 90 days or more. |

| Service: | Support Services - Books and supplies up to the maximum allowed |
|---|---|
| Provider: | NIU BOOKSTORE |
| Start Date: | 05/24/2016 |
| End Date: | 07/26/2016 |
| Funding Source: | Division of Rehab Services, Veterans |
| Progress: | Customer will syllabus, book receipts and grades from each semester. Customer will follow all instructions from school staff and will do well in her studies. |

**Responsibilities**

Customer's personal and financial responsibilities in achieving the job objective are:

Customer will turn in school grades each semester, apply for appropriate scholarships on time if available and all financial aid offered, agree to comply with the Division of Rehabilitation Services academic sponsorship rules while attending Northern Illinois University. She will submit proof of household income. She will follow all appropriate instructions and directions from the staff of the Division of Rehabilitation Services. She will stay in contact with the Division of Rehabilitation Services during the life of her case, at least monthly. She will keep all professional appointments and follow all appropriate instructions from all service providers identified in her Individualized Plan for Employment (IPE). She must maintain at least a cumulative "C" grade point average each semester, or maintain a sufficient cumulative GPA to meet graduation requirements.

Comments:

Customer will be responsible for 10% of her tuition and fees.

I understand my Plan will be reviewed on 07/15/2016

At this time I do  do not  expect to need Post Employment Services, but will have my need reviewed before my case is closed.

Ticket to Work:
If you have been determined disabled by the Social Security Administration and qualify for the Ticket to Work Program, you agree to assign the DHS/Division of Rehabilitation Services your Ticket to Work by signing this Document.

x _____     5/19/2016     _____
Customer                              Date                Parent/Guardian

_____     5/23/16
Rehabilitation Counselor/Instructor:          Date

IL 488-0694W (09/10)



**State of Illinois**
**Department of Human Services – Division of Rehabilitation Services**
**INDIVIDUALIZED PLAN FOR EMPLOYMENT**

Customer Name: DOROTHY REDDIC                                    Case Number: 02344928

Rehabilitation Counselor/Instructor: <u>DANIEL GROHENS</u>            Date Completed: <u>06/23/16</u>

### Plan

| | | | |
|---|---|---|---|
| Amendment Number: | <u>4</u> | Review Date: | <u>07/15/2016</u> |
| No cost services only? | ☐ Yes ☒ No | Post employment anticipated? | ☐ Yes ☒ No |
| Post employment plan? | ☐ Yes ☒ No | WIA Referral? | ☐ Yes ☒ No |

### Amendment

| | |
|---|---|
| Annual Review? | ☐ Yes ☒ No |
| Change in Goal? | ☐ Yes ☒ No |
| Change in Service? | ☐ Yes ☒ No |

### GOAL

| | |
|---|---|
| Goal Completion Date: | <u>12/20/2017</u> |
| Customer is job ready? | ☐ Yes ☒ No |
| Job Chosen: | <u>Education Administrators, Postsecondary</u> |

I understand that I am eligible to receive services through the Division of Rehabilitation Services (DRS) Vocational Rehabilitation program as I am an individual with a disability and need services to get, keep, advance in, or re-enter a job. The Job Chosen above is my job goal and I expect to achieve my employment outcome by the Goal Completion Date above.

I understand I may appeal any decisions or changes to my plan I do not agree with. I have been given my appeal rights and understand them. I understand I may call Client Assistance Program (CAP) for assistance at 1-(800) 641-3929 (V/TTY) to get help.

Based on my informed choice, my counselor and I have discussed the services and approved service providers necessary to reach my job goal and how to get those services. My counselor and I have selected the services and approved service providers listed below.

### SERVICES

| | |
|---|---|
| Service: | Job Training - Tuition and Fees up to the maximum allowed. |
| Provider: | NORTHERN ILLINOIS UNIVERSITY |
| Start Date: | 05/24/2016 |
| End Date: | 07/26/2016 |
| Funding Source: | Division of Rehab Services |
| Progress: | Customer will provide course schedule and grades from each semester. Customer will follow all instructions from school staff and will do well in her studies. |

| | |
|---|---|
| Service: | Counseling & Guidance - Counseling and Guidance |
| Provider: | DHS-DIVISION OF REHABILITATION SERVICES |
| Start Date: | 05/24/2016 |
| End Date: | 08/17/2016 |
| Funding Source: | No Cost Service |
| Progress: | Customer will follow all appropriate instructions and directions 100% from the staff at the Division of Rehabilitation Services in order to be successfully employed in the community. Customer will remain in contact with DRS during the life of her case. |



IL 488-0694W (09/10)



State of Illinois
Department of Human Services – Division of Rehabilitation Services
**INDIVIDUALIZED PLAN FOR EMPLOYMENT**

Customer Name: DOROTHY REDDIC

Case Number: 02344928

| Service: | Information & Referral – Information and Referral |
|---|---|
| Provider: | DHS-DIVISION OF REHABILITATION SERVICES |
| Start Date: | 05/24/2016 |
| End Date: | 08/17/2016 |
| Funding Source: | No Cost Service |
| Progress: | Customer will follow up 100% on all appropriate community referrals and take all appropriate information which will assist her in becoming successfully employed. |

| Service: | Support Services – ADHD Coaching |
|---|---|
| Provider: | ELIZABETH PAPARO |
| Start Date: | 05/24/2016 |
| End Date: | 07/30/2016 |
| Funding Source: | Division of Rehab Services |
| Progress: | Customer will utilize the ADHD Coach to assist her in success in her Doctorate at NIU. Sessions are approved for one hour the weeks of: 5/30/2016, 06/06/2016, 06/20/2016, 06/27/2016; and just recently approved for another voucher for once weekly services for the weeks of 07/04/2016, 07/11/2016, 07/18/2016, 07/25/2016. |

| Service: | Support Services – Transportation Services by (Vehicle# 08500) (Bus# 08710): DRS may fund transportation, including tolls if pre-approved, via customer, which may be terminated at DRS counselor's discretion; pending household income verification (as required); Payment may only be made for bus or mileage in a given month. |
|---|---|
| Provider: | Customer |
| Start Date: | 05/24/2016 |
| End Date: | 07/26/2016 |
| Funding Source: | Division of Rehab Services |
| Progress: | Client will use DRS transportation reimbursement for one round trip per day for employment related activities listed in the plan (transportation expense for in person applications/interviews, job fairs, meetings, or travel to work until first paycheck). Customer must submit to DRS a mileage/ job log (and any bus tickets receipts), no later than the 5th day of the month following travel, for eligibility of up to RMTD monthly bus pass rate or 50% of current IRS travel reimbursement rate. |

| Service: | Job Placement – Placement Services |
|---|---|
| Provider: | ROCKFORD VR |
| Start Date: | 05/24/2016 |
| End Date: | 08/17/2016 |
| Funding Source: | Division of Rehab Services, All Other Sources |
| Progress: | Client will receive assistance in obtaining employment. |



IL 488-0694W (09/10)



State of Illinois
Department of Human Services – Division of Rehabilitation Services
**INDIVIDUALIZED PLAN FOR EMPLOYMENT**

Customer Name: DOROTHY REDDIC                                    Case Number: 02344928

| | |
|---|---|
| Service: | Support Services – Follow-Up |
| Provider: | ROCKFORD VR |
| Start Date: | 05/24/2016 |
| End Date: | 08/17/2016 |
| Funding Source: | Division of Rehab Services |
| Progress: | Customer will receive assistance in keeping a job for 90 days or more. |

| | |
|---|---|
| Service: | Support Services – Books and supplies up to the maximum allowed |
| Provider: | NIU BOOKSTORE |
| Start Date: | 05/24/2016 |
| End Date: | 07/26/2016 |
| Funding Source: | Division of Rehab Services, Veterans |
| Progress: | Customer will syllabus, book receipts and grades from each semester. Customer will follow all instructions from school staff and will do well in her studies. |

| | |
|---|---|
| Service: | Support Services – Due to her disability, customer is in need of Software to help her with information processing for success in her Doctoral program. |
| Provider: | DONKA, INC |
| Start Date: | ~~06/28/2016~~ Spw 06/23/16 |
| End Date: | 08/17/2016 |
| Funding Source: | Division of Rehab Services |
| Progress: | DRS with fund the cost $259.89 of Dragon Naturally Speaking 13 Premium Mobile software to allow her to record important information while on the go, including at the library, in class, and at home. |

**Responsibilities**

Customer's personal and financial responsibilities in achieving the job objective are:

Customer will turn in school grades each semester, apply for appropriate scholarships on time if available and all financial aid offered, agree to comply with the Division of Rehabilitation Services academic sponsorship rules while attending Northern Illinois University. She will submit proof of household income. She will follow all appropriate instructions and directions from the staff of the Division of Rehabilitation Services. She will stay in contact with the Division of Rehabilitation Services during the life of her case, at least monthly. She will keep all professional appointments and follow all appropriate instructions from all service providers identified in her Individualized Plan for Employment (IPE). She must maintain at least a cumulative "C" grade point average each semester, or maintain a sufficient cumulative GPA to meet graduation requirements.

Comments:

Customer will be responsible for 10% of her tuition and fees.

I understand my Plan will be reviewed on 07/15/2016

At this time I do  do not  expect to need Post Employment Services, but will have my need reviewed before my case is closed.

Ticket to Work:
If you have been determined disabled by the Social Security Administration and qualify for the Ticket to Work Program, you  agree assign the DHS/Division of Rehabilitation Services your Ticket to Work by signing this Document.

IL 488-0694W (09/10)                                                    Page  3 of 4



**State of Illinois**
**Department of Human Services – Division of Rehabilitation Services**
**INDIVIDUALIZED PLAN FOR EMPLOYMENT**

Customer Name: DOROTHY REDDIC

Case Number: 02344928

x _~signature~_

Customer

Date: 6/21/16

Parent/Guardian

_~signature~_ als, vapc

Rehabilitation Counselor/Instructor:

Date: 06/23/16



IL 488-0694W (09/10)



State of Illinois
Department of Human Services - Division of Rehabilitation Services
**INDIVIDUALIZED PLAN FOR EMPLOYMENT**

Customer Name: DOROTHY REDDIC                    Case Number: 02344928

Rehabilitation Counselor/Instructor: <u>DANIEL GROHENS</u>          Date Completed: _08/17/2016_

## Plan

| | | | |
|---|---|---|---|
| Amendment Number: | <u>5</u> | Review Date: | <u>07/17/2017</u> |
| No cost services only? | ☐ Yes ☒ No | Post employment anticipated? | ☐ Yes ☒ No |
| Post employment plan? | ☐ Yes ☒ No | WIA Referral? | ☐ Yes ☒ No |

| **Amendment** | | **GOAL** | |
|---|---|---|---|
| Annual Review? | ☐ Yes ☒ No | Goal Completion Date: | <u>12/20/2017</u> |
| Change in Goal? | ☒ Yes ☐ No | Customer is job ready? | ☐ Yes ☒ No |
| Change in Service? | ☒ Yes ☐ No | Job Chosen: | <u>Education Administrators, Postsecondary</u> |

I understand that I am eligible to receive services through the Division of Rehabilitation Services (DRS) Vocational Rehabilitation program as I am an individual with a disability and need services to get, keep, advance in, or re-enter a job. The Job Chosen above is my job goal and I expect to achieve my employment outcome by the Goal Completion Date above.

I understand I may appeal any decisions or changes to my plan I do not agree with. I have been given my appeal rights and understand them. I understand I may call Client Assistance Program (CAP) for assistance at 1-(800) 641-3929 (V/TTY) to get help.

Based on my informed choice, my counselor and I have discussed the services and approved service providers necessary to reach my job goal and how to get those services. My counselor and I have selected the services and approved service providers listed below.

## SERVICES

| | |
|---|---|
| Service: | Job Training - Tuition and Fees up to the maximum allowed. |
| Provider: | NORTHERN ILLINOIS UNIVERSITY |
| Start Date: | 08/17/2016 |
| End Date: | 08/17/2017 |
| Funding Source: | Division of Rehab Services |
| Progress: | Customer will provide course schedule and grades from each semester. Customer will follow all instructions from school staff and will do well in her studies. |

| | |
|---|---|
| Service: | Counseling & Guidance - Counseling and Guidance |
| Provider: | DHS-DIVISION OF REHABILITATION SERVICES |
| Start Date: | 08/17/2016 |
| End Date: | 08/17/2017 |
| Funding Source: | No Cost Service |
| Progress: | Customer will follow all appropriate instructions and directions 100% from the staff at the Division of Rehabilitation Services in order to be successfully employed in the community. Customer will remain in contact with DRS during the life of her case. |



State of Illinois
Department of Human Services - Division of Rehabilitation Services
**INDIVIDUALIZED PLAN FOR EMPLOYMENT**

Customer Name: DOROTHY REDDIC

Case Number: 02344928

| | |
|---|---|
| Service: | Information & Referral - Information and Referral |
| Provider: | DHS-DIVISION OF REHABILITATION SERVICES |
| Start Date: | 08/17/2016 |
| End Date: | 08/17/2017 |
| Funding Source: | No Cost Service |
| Progress: | Customer will follow up 100% on all appropriate community referrals and take all appropriate information which will assist her in becoming successfully employed. |

| | |
|---|---|
| Service: | Support Services - ADHD Coaching |
| Provider: | ELIZABETH PAPARO |
| Start Date: | 08/30/2016 |
| End Date: | 08/17/2017 |
| Funding Source: | Division of Rehab Services |
| Progress: | Customer may utilize the ADHD Coach to assist her in success in her Doctorate at NIU. Sessions may be approved for one hour per week during the college semesters, once requested documentation for July 2016 sessions is received from Elizabeth Paparo. Both will be advised upon approval. |

| | |
|---|---|
| Service: | Support Services - Transportation Services by (Vehicle# 08500) (Bus# 08710): DRS may fund transportation, including tolls if pre-approved, via customer, which may be terminated at DRS counselor's discretion; pending household income verification (as required); Payment may only be made for bus or mileage in a given month. |
| Provider: | Customer |
| Start Date: | 08/17/2016 |
| End Date: | 08/17/2017 |
| Funding Source: | Division of Rehab Services |
| Progress: | Client will use DRS transportation reimbursement for one round trip per day for employment related activities listed in the plan (transportation expense for in person applications/interviews, job fairs, meetings, travel to approved training, or travel to work until first paycheck. Customer must submit to DRS a mileage/ job log (and any bus tickets receipts), no later than the 5th day of the month following travel, for eligibility of up to RMTD monthly bus pass rate or 50% of current IRS travel reimbursement rate. |

| | |
|---|---|
| Service: | Job Placement - Placement Services |
| Provider: | ROCKFORD VR |
| Start Date: | 08/17/2016 |
| End Date: | 08/17/2017 |
| Funding Source: | Division of Rehab Services, All Other Sources |
| Progress: | Client will receive assistance in obtaining employment; to start near the end of training. |



State of Illinois
Department of Human Services - Division of Rehabilitation Services
**INDIVIDUALIZED PLAN FOR EMPLOYMENT**

Customer Name: DOROTHY REDDIC                                    Case Number: 02344928

| | |
|---|---|
| Service: | Support Services - Follow-Up |
| Provider: | ROCKFORD VR |
| Start Date: | 08/17/2016 |
| End Date: | 08/17/2017 |
| Funding Source: | Division of Rehab Services |
| Progress: | Customer will receive assistance in keeping a job for 90 days or more. |

| | |
|---|---|
| Service: | Support Services - Books and supplies up to the maximum allowed |
| Provider: | NIU BOOKSTORE |
| Start Date: | 08/17/2016 |
| End Date: | 08/17/2017 |
| Funding Source: | Division of Rehab Services, Veterans |
| Progress: | Customer will syllabus, book receipts and grades from each semester. Customer will follow all instructions from school staff and will do well in her studies. |

| | |
|---|---|
| Service: | Support Services - Customer is in need of a Parking permit. |
| Provider: | Customer |
| Start Date: | 08/17/2016 |
| End Date: | 08/17/2017 |
| Funding Source: | Division of Rehab Services |
| Progress: | DRS with fund $92.00 for a Parking permit, for which customer will submit receipt to DRS. |

**Responsibilities**

Customer's personal and financial responsibilities in achieving the job objective are:

Customer will turn in school grades, class schedule, current plan of training, College bill with awards, Book/Supplies list, syllabi, each semester, apply for appropriate scholarships on time if available and all financial aid offered, agree to comply with the Division of Rehabilitation Services academic sponsorship rules while attending Northern Illinois University. She will submit proof of household income. She will follow all appropriate instructions and directions from the staff of the Division of Rehabilitation Services. She will stay in contact with the Division of Rehabilitation Services during the life of her case, and meet in person at least monthly.

Comments:

DRS will send vouchers when documentation for the semester has been received. Customer will be responsible for 10% of her tuition and fees, unless an exception is granted. She will keep all professional appointments and follow all appropriate instructions from all service providers identified in her Individualized Plan for Employment (IPE). She must maintain at least a cumulative "C" grade point average each semester, or maintain a sufficient cumulative GPA to meet graduation requirements.

I understand my Plan will be reviewed on 07/17/2017

At this time I do (do not) expect to need Post Employment Services, but will have my need reviewed before my case is closed.

Ticket to Work:

If you have been determined disabled by the Social Security Administration and qualify for the Ticket to Work Program, you agree assign the DHS/Division of Rehabilitation Services your Ticket to Work by signing this Document.



State of Illinois
Department of Human Services - Division of Rehabilitation Services
**INDIVIDUALIZED PLAN FOR EMPLOYMENT**

Customer Name: DOROTHY REDDIC

Case Number: 02344928

x _Dee Mhul_

Customer

_8/17/2016_

Date

_____

Parent/Guardian

_JWB EdS, LcPc_

Rehabilitation Counselor/Instructor:

_08/17/16_

Date



State of Illinois
Department of Human Services - Division of Rehabilitation Services
**INDIVIDUALIZED PLAN FOR EMPLOYMENT**

---

Customer Name: DOROTHY REDDIC

Case Number: 02344928

Rehabilitation Counselor/Instructor: <u>BEATRICE MWINZI</u>

Date Completed: <u>11/21/2017</u>

### Plan

| | | | |
|---|---|---|---|
| Amendment Number: | <u>6</u> | Review Date: | <u>11/21/2018</u> |
| No cost services only? | ☐ Yes ☒ No | Post employment anticipated? | ☐ Yes ☒ No |
| Post employment plan? | ☐ Yes ☒ No | | |

### Amendment

| | |
|---|---|
| Annual Review? | ☒ Yes ☐ No |
| Change in Goal? | ☒ Yes ☐ No |
| Change in Service? | ☒ Yes ☐ No |

### GOAL

| | |
|---|---|
| Goal Completion Date: | <u>11/21/2018</u> |
| Customer is job ready? | ☐ Yes ☒ No |
| Job Chosen: | <u>Education Administrators, Postsecondary</u> |

I understand that I am eligible to receive services through the Division of Rehabilitation Services (DRS) Vocational Rehabilitation program as I am an individual with a disability and need services to get, keep, advance in, or re-enter a job. The Job Chosen above is my job goal and I expect to achieve my employment outcome by the Goal Completion Date above.

I understand I may appeal any decisions or changes to my plan I do not agree with. I have been given my appeal rights and understand them. I understand I may call Client Assistance Program (CAP) for assistance at 1-(800) 641-3929 (V/TTY) to get help.

Based on my informed choice, my counselor and I have discussed the services and approved service providers necessary to reach my job goal and how to get those services. My counselor and I have selected the services and approved service providers listed below.

### SERVICES

| | |
|---|---|
| Service: | Training - Tuition and Fees minus available Grants and Waivers and Customer 10 Percent Contribution. |
| Provider: | DRS In-House |
| Start Date: | 11/21/2017 |
| End Date: | 11/21/2018 |
| Progress: | Customer will complete all required courses and graduate on scheduled date and obtain and maintain employment in the community. |

| | |
|---|---|
| Service: | Counseling & Guidance - Vocational Counseling and Guidance regarding Training and Employment. |
| Provider: | DRS In-House |
| Start Date: | 11/21/2017 |
| End Date: | 11/21/2018 |
| Progress: | Customer will follow all appropriate instructions and directions from DRS staff in order to successfully complete college training and obtain employed. Customer will remain in contact with DRS staff during the life of this case. |

---



State of Illinois
Department of Human Services - Division of Rehabilitation Services
**INDIVIDUALIZED PLAN FOR EMPLOYMENT**

Customer Name: DOROTHY REDDIC                                    Case Number: 02344928

| | |
|---|---|
| Service: | Information & Referral - Customer will be provided Information and Referrals as determined necessary for completing college training and employment. |
| Provider: | DRS In-House |
| Start Date: | 11/21/2017 |
| End Date: | 11/21/2018 |
| Progress: | Customer will follow up 100% on all appropriate community referrals and appropriate information which will assist her in completing college training and becoming successfully employed. |

| | |
|---|---|
| Service: | Supportive Services - Customer will be provided ADHD Coaching Services as determined necessary by DRS staff. |
| Provider: | ELIZABETH PAPARO |
| Start Date: | 11/21/2017 |
| End Date: | 11/21/2018 |
| Progress: | Customer may utilize the ADHD Coach services to assist her in successful completion of her Doctorate Degree at NIU. Sessions may be approved for one hour per week during the college semesters, and documentation of progress for must be provided to DRS at least on a monthly basis. |

| | |
|---|---|
| Service: | Supportive Services - Customer will be provided Transportation Allowance on a semester basis only for the Fall Semester 2017 only based on round trip Mileage for the days customer is attending classes at NIU. Customer must provide a class schedule at the beginning of the semester. Customer will live in the NIU dorms beginning in the Spring Semester 2018. |
| Provider: | DRS In-House |
| Start Date: | 11/21/2017 |
| End Date: | 12/25/2017 |
| Progress: | Client will attend classes as scheduled during the school Term. |

| | |
|---|---|
| Service: | Supportive Services - Required Books and supplies based on course syllabus. Customer will be allowed $25.00 for consumable Supplies. |
| Provider: | NIU BOOKSTORE |
| Start Date: | 11/21/2017 |
| End Date: | 11/21/2018 |
| Progress: | Customer will provide syllabus, book receipts and grades from each semester. |

| | |
|---|---|
| Service: | Supportive Services - Customer will be assisted with purchase of a Parking permit for the Fall Semester only since customer will be living in the dorms in the Spring Semester 2018. |
| Provider: | NOORTHERN ILLINOIS UNIVERSITY |
| Start Date: | 11/21/2017 |
| End Date: | 12/25/2017 |
| Progress: | Customer will have a place to park her car will on the NIU campus. |



State of Illinois
Department of Human Services - Division of Rehabilitation Services
**INDIVIDUALIZED PLAN FOR EMPLOYMENT**

Customer Name: DOROTHY REDDIC                                    Case Number: 02344928

| | |
|---|---|
| Service: | Supportive Services - Room and Board costs minus Grants and customer contribution of $1548.00 per semester beginning with the Spring Semester 2018 |
| Provider: | NIU |
| Start Date: | 01/15/2018 |
| End Date: | 11/21/2018 |
| Progress: | Customer will have a place to stay during the school year while she attends NIU. |

**Responsibilities**

Customer's personal and financial responsibilities in achieving the job objective are:

Customer will turn in school grades, class schedule, current plan of training, College bill with awards, Book/Supplies list, syllabi, each semester, apply for appropriate Grants on time if available, comply with the Division of Rehabilitation Services academic sponsorship rules while attending Northern Illinois University. She will submit proof of household income. She will follow all appropriate instructions and directions from the staff of the Division of Rehabilitation Services. She will stay in contact with the Division of Rehabilitation Services during the life of her case, and meet in person at least twice per semester.

Comments:

DRS will send vouchers when documentation for the semester has been received. Customer will be responsible for 10% of her tuition and fees. She will keep all professional appointments and follow all appropriate instructions from all service providers identified in her Individualized Plan for Employment (IPE). She must maintain at least a Cumulative Grade Point average of 3.00 each semester, or maintain a sufficient cumulative GPA to meet the PhD graduation requirements.

I understand my Plan will be reviewed on <u>11/21/2018</u>

At this time I do  do not  expect to need Post Employment Services, but will have my need reviewed before my case is closed.

Ticket to Work:
If you have been determined disabled by the Social Security Administration and qualify for the Ticket to Work Program, you agree to assign the DHS/Division of Rehabilitation Services your Ticket to Work by signing this Document.

x_____        *11/21/17*        _____
Customer                          Date               Parent/Guardian

*Beatrice Min*        *11/21/17*
Rehabilitation Counselor/Instructor:        Date



State of Illinois
Department of Human Services - Division of Rehabilitation Services
**INDIVIDUALIZED PLAN FOR EMPLOYMENT**

Case Number: 02344928

her Name: DOROTHY REDDIC

Information & Referral - Customer will be provided Information and Referrals as determined necessary for completing college training and employment.

DRS In-House

| | |
|---|---|
| Start Date: | 11/21/2017 |
| End Date: | 11/21/2018 |
| Progress: | Customer will follow up 100% on all appropriate community referrals and appropriate information which will assist her in completing college training and becoming successfully employed. |

| | |
|---|---|
| Service: | Supportive Services - Customer will be provided ADHD Coaching Services as determined necessary by DRS staff. |
| Provider: | ELIZABETH PAPARO |
| Start Date: | 11/21/2017 |
| End Date: | 11/21/2018 |
| Progress: | Customer may utilize the ADHD Coach services to assist her in successful completion of her Doctorate Degree at NIU. Sessions may be approved for one hour per week during the college semesters, and documentation of progress for must be provided to DRS at least on a monthly basis. |

| | |
|---|---|
| Service: | Supportive Services - Customer will be provided Transportation Allowance on a semester basis only for the Fall Semester 2017 only based on round trip Mileage for the days customer is attending classes at NIU. Customer must provide a class schedule at the beginning of the semester. Customer will live in the NIU dorms beginning in the Spring Semester 2018. |
| Provider: | DRS In-House |
| Start Date: | 11/21/2017 |
| End Date: | 12/25/2017 |
| Progress: | Client will attend classes as scheduled during the school Term. |

| | |
|---|---|
| Service: | Supportive Services - Required Books and supplies based on course syllabus. Customer will be allowed $25.00 for consumable Supplies. |
| Provider: | NIU BOOKSTORE |
| Start Date: | 11/21/2017 |
| End Date: | 11/21/2018 |
| Progress: | Customer will provide syllabus, book receipts and grades from each semester. |

| | |
|---|---|
| Service: | Supportive Services - Customer will be assisted with purchase of a Parking permit for the Fall Semester only since customer will be living in the dorms in the Spring Semester 2018. |
| Provider: | NOORTHERN ILLINOIS UNIVERSITY |
| Start Date: | 11/21/2017 |
| End Date: | 12/25/2017 |
| Progress: | Customer will have a place to park her car will on the NIU campus. |

State of Illinois
Department of Human Services - Division of Rehabilitation Services

# VR Exception Request

Customer Name: Dorothy Reddic

DRS Counselor: Beatrice Mwinzi

Address: 1335 4th Ave.

DRS Office Location: DeKalb, IL

Rockford, IL 61104

Supervisor Initials: _____

Phone: 815-200-9730

(Supervisor must initial before request is sent to Bureau Chief.)

Date of Request: 11 / 21 / 2017

## THE CUSTOMER OR THEIR REPRESENTATIVE SHALL COMPLETE THE FOLLOWING:

1. What specific exception are you requesting?
I am requesting the VRS program to pay for the Student Health Insurance Provided by Northern Illinois University in the amount of $990.50 for ~~error made on 11/2/2~~ the Fall 2017 and Spring 2018 semesters.

2. Why is the exception necessary for you to reach your employment goal?
The health insurance is imperative because it covers all the essential medications needed to treat my conditions i.e. for ADHD which is not covered by Illinois Medicaid for adults older than 19 years of age.

3. What are other ways you have attempted to meet this need?
I have purchased the medication. I have had a friend pay for the medication. It have attempted to have Medicaid cover the medications for ADHD several times and each time it is has been denied. I appealed the decision with the assistance of State

## THE DRS REHABILITATION COUNSELOR SHALL COMPLETE THE FOLLOWING:

1. Do you support the customer's request for this exception? Please explain how the exception will assist the customer in reaching their employment goal.

2. What specific administrative rules were addressed?

3. What comparable benefits or other resources have been considered?

**All exception requests will be reviewed by appropriate DRS personnel and a written decision rendered within ten(10) business days from the date the request was received. A denial may be appealed (89 Ill. Admin. Code Part 510) and the customer shall be informed of their appeal rights along with the availability of the Client Assistance Program.**

An Exception Request was submitted on _____. After review, I have made the following decision:

☐ The exception request is approved.

☐ The exception request is denied.

☐ The following revision or clarification is required:

Re-submission Date: _____

_____
DRS Bureau Chief

_____
Date

IL488-2433 (N-5-09)



State of Illinois
Department of Human Services – Division of Rehabilitation Services
**Information and Instructions for Students Receiving DHS-DRS Financial Contribution**

## HOUSING

1. A housing contract is your sole responsibility regardless of whether DHS-DRS may have authorized payment for increased cost for housing. DHS-DRS will not pay any monetary penalties incurred. Authorizing an increased cost payment for shelter by DHS-DRS does not mean that DHS-DRS agrees with the terms of your contract or that DHS-DRS is a party to your contract.

2. You are to inform your DHS-DRS counselor of your complete address and phone number and notify your DHS-DRS counselor immediately of any change to your address or phone number.

3. Overpayments of increased costs may result in your repayment of funds to DHS-DRS.

## HEALTH AND MEDICAL ISSUES

1. Withdrawal from the training institution or classes for health or medical reasons requires written verification from a physician or the institution's health service at the time of withdrawal.

2. Verification of medical or health withdrawal must be provided immediately to your DHS-DRS counselor.

3. You must inform your DHS-DRS counselor of all hospitalizations or medical treatments affecting your school attendance.

If health insurance coverage is offered and required by the training institution, it must be purchased unless you have personal coverage equal to or greater than that of the training institution.

*Doesn't say comparable, but Medicaid isn't equal or greater than Aetna*

## FINANCIAL ISSUES

1. You must provide proof of the award or denial of financial assistance, the amount of such award, acceptance at the institution and any previous college transcripts before your DHS-DRS counselor can authorize a financial contribution.

2. Only when economic need has been confirmed on the Customer Financial Analysis form and Increased Cost Worksheet form will your DHS-DRS counselor approve a financial contribution for tuition, fees, increased cost in excess of your normal living expenses, or other services necessary for the attainment of your employment goal.

   If you receive SSI or SSDI, you are excluded from completion of the Customer Financial Analysis Form but you remain responsible for all your normal living expenses.

3. You must complete the financial analysis form annually or at any time there is a change in the financial situation for you or your family in order for you to continue to receive a DHS-DRS financial contribution unless you are a recipient of SSI or SSDI.

4. Your DHS-DRS counselor may pay for books and supplies required of all students to complete only the training courses necessary for the attainment of your employment goal. *books*

5. Your DHS-DRS counselor will pay for support services such as note taker, attendant, reader or interpreter only when they are needed and when training is in session.



State of Illinois
Department of Human Services - Division of Rehabilitation Services
## Information and Instructions for Students Receiving DHS-DRS Financial Contribution

As a student receiving a financial contribution from DHS-DRS you are to read and keep a copy of this document, following the conditions therein. You forfeit DHS-DRS financial contribution if you fail to follow these instructions or fail to maintain the stated standard of academic excellence.

*periodic is not monthly*

### CUSTOMER CONTACTS WITH VR COUNSELOR

You should establish and maintain contact with your DHS-DRS counselor and provide class schedules, grade transcripts and schedules and to evaluate progress toward achieving your employment goal. You are strongly encouraged to contact your DHS-DRS counselor any time you need counsel, advice, vocational information or any other time your DHS-DRS counselor may be able to assist you. Anytime conditions or situations exist that may affect you or the attainment of your employment goal, contact your DHS-DRS counselor!

### ACADEMIC PERFORMANCE STANDARDS

1. DHS-DRS will provide a financial contribution toward your education for the equivalent of no more than three academic years to obtain an Associate's degree or Junior standing and up to three additional academic years to complete a Bachelor's degree.

2. Academic excellence is expected of all students receiving a financial contribution from DHS-DRS. For DHS-DRS to continue providing a financial contribution towards your educational program, you must maintain a "C" grade point average(GPA), (e.g., 2.0 on a 4.0 point system or 3.0 on a 5.0 system), at each grading period (e.g. semester, quarter, term, etc); and you must also maintain a sufficient cumulative GPA to meet graduation requirements in your major field of study. If at any time your cumulative GPA fails to meet either of these two requirements, DHS-DRS will continue providing a financial contribution for only one additional grading period, regardless of when taken, providing you and your counselor agree continued training is appropriate. At the completion of the additional grading period, you must meet each of the two above cumulative grade requirements or DHS-DRS financial contribution will end.

3. If you fail a course for which DHS-DRS has paid, you will be required to pay for an equal number of credit hours in the following term.

4. You must have pre-approval from your DHS-DRS counselor to change or drop a course during a term. If you drop a course or withdraw without prior approval from DHS-DRS, you will be required to pay for an equal number of hours the following term.

### GRADUATE SCHOOL PROGRAMS

1. DHS-DRS shall provide a financial contribution toward the cost of graduate school only when the graduate degree is required to achieve your chosen employment outcome. Counseling with your DHS-DRS counselor will determine if your chosen employment outcome requires a graduate degree and meets this requirement.

2. Customers attending graduate school are required to make a financial contribution toward the cost of training of no less than ten percent of tuition and fees for the program. This contribution is in addition to any financial participation determined through the Customer Financial Analysis. Customers who receive SSI or SSDI benefits are exempt from this requirement.

3. You must apply and show proof of acceptance or denial, of graduate school financial assistance, including but not limited to, tuition waivers, stipends, fellowships, scholarships, internships, and work study programs. You must inform your counselor of the amount of any award and acceptance at the institution and to the appropriate graduate program before the implementation of your IPE or subsequent amendment will occur.

*Provided to Sonya Wiley*

### GRADE REPORTS AND CLASS SCHEDULES

1. All grade reports are to be provided immediately to your DHS-DRS counselor upon completion of each grading period. Failure to provide grade reports shall result in termination of the DHS-DRS financial contribution.

2. Class schedules must be provided to your DHS-DRS counselor at the beginning of each term. *Not before enrolling.*

Número de apelación: 1700107496
RE: Dorothy Reddic
Fecha: 11/15/2017
Nombre de la oficina: Appeals DHS Office
Dirección de la oficina: 69 W WASHINGTON 4
CHICAGO, IL 60602

E-mail del Departamento: DHS.BAH@illinois.gov
No. de teléfono: (800) 435 - 0774
TTY: (877) 734 - 7429
Fax: (312) 793 - 3387

DOROTHY REDDIC
1335 4TH AVE
ROCKFORD, IL 61104

**Usted puede manejar su apelación en línea en**
**https://abe.illinois.gov/abe/access/appeals**

**Si tiene preguntas sobre este documento o necesita**
**ayuda para traducirlo, por favor contacte (800) 435-0774,**
**(877) 734-7429 (TTY)**

# Carta Para Programar Audiencia

Esto es para avisarle que un oficial de audiencia escuchara su apelacion en la siguiente fecha y hora:

Diciembre 14, 2017, 1:00PM

Esta fecha, horario y lugar de audiencia reemplaza cualquier otra fecha, horario y lugar de algún otra cita de audiencia referida en avisos recibidos anteriormente de la fecha de este aviso. Esta carta reemplaza cualquier aviso anterior bajo el número de apelación de este caso.

Esta audiencia será llevada a cabo por teléfono. En la fecha y horario de la audiencia, usted será comunicado al siguiente número de teléfono: (815) 200-9730. Si este número no es el correcto o si no hay algún número indicado, por favor comuníquese con la oficina de apelaciones indicada en este aviso. Si no tiene acceso a un teléfono, por favor escríbale al coordinador(a) de apelaciones a la dirección indicada arriba, envíe un correo electrónico o comuníquese por Internet en el portal de Apelaciones ABE (abe.illinois.gov/abe/access/appeals). Trataremos de comunicarnos con usted a la hora indicada arriba. Sin embargo, le pedimos que permanezca cerca de su teléfono por la mañana / tarde. El oficial de apelaciones tratará de comunicarse con usted lo más pronto posible. Sin embargo, le pedimos que permanezca cerca de su teléfono por la mañana / tarde. Si el oficial de audiencias no puede comunicarse con usted y usted no responde, su apelación se considerará abandonada y será desestimada.

Si gusta cambiar la manera en como conducir la audiencia, puede usar el portal de apelaciones ABE (abe.illinois.gov/abe/access/appeals) o comunicarse con la Oficina de Apelaciones para aprobación antes de la fecha de la audiencia. Su solicitud de cambio en relación a como conducir la audiencia no está aprobada hasta que reciba la confirmación de La Oficina de Apelaciones.

Esta audiencia cubrirá los siguientes asuntos:

Usted tiene la opción de atender a una conferencia de resolución informal el al oficina local. Por favor de comunicarse con la oficina local para citar su conferencia.

Lea la información al reverso de esta página.



Failure to be available, to participate or to proceed will result in this appeal being dismissed unless you show that unexpected circumstances prohibited you from being available. You must show that your absence was the result of a death in the family, personal injury or illness that reasonably prohibited you from attending the hearing, a sudden and unexpected emergency, or other circumstances beyond your control that reasonably prevented you from being available for the hearing.

A certified letter will be mailed separately including additional information about your hearing date.

Please be aware that you can check the status of your appeal via the https://abe.illinois.gov/abe/access/appeals You can also request a new hearing date, withdraw your appeal, view notices, and see upcoming appointments. Going on the website to request changes to your appeal may shorten your processing time. In order to access your account, you will be required to provide either your social security number or your individual ID number (1193922287) and date of birth.

Bureau Chief<br>
Bureau of Hearings<br>
Department of Human Services<br>
DHS.BAH@illinois.gov

CC: Equip For Equality - Chicago - Brian, Pflaum



Puede pedir un intérprete de lenguaje de señas, idiomas o un lector para participar en la audiencia. Su petición debe de hacerse al coordinador de audiencias por lo menos 10 días antes de la audiencia. Si usted tiene una discapacidad de la vista, puede pedir un lector para leer los documentos proporcionados por el Departamento de Servicios Humanos / Departamento Servicios de Rehabilitación en preparación para la audiencia o puede pedir que los materiales se proporcionen en braille, letra grande o con audio. Esta petición debe de ser hecha por lo menos 5 días laborales después de ser informado/a de la fecha de la audiencia.



Usted tiene el derecho de pedir una mediación para resolver su caso. Por favor comuníquese con el coordinador de audiencias para pedir una mediación También, usted tiene el derecho de pedir asistencia del Programa Asistencia al Cliente (CAP). Puede llamar a CAP al (800) 641-3929.

Si le gustaría retirar su apelación, por favor de enviarnos una carta con su firma dirigida al coordinador de audiencia o enviarla por correo electrónico, o el portal de apelaciones ABE (abe.illinois.gov/abe/access/appeals), o llamar al número de teléfono localizado arriba de esta carta.

Si necesita acomodaciones bajo la Ley de Americanos con Discapacidades, comuníquese con esta oficina lo más pronto posible antes de la audiencia.

Usted debe de presentar todos los documentos y cualquier otra información a la Oficina de Apelaciones antes de la fecha de la audiencia. Puede presentar los documentos por medio del portal de apelaciones ABE (abe.illinois.gov/abe/access/appeals) o enviarlos por correo, fax o correo electrónico. Si presenta documentos a la Oficina de Apelaciones, entonces es su responsabilidad en asegurarse que los mismos documentos también son presentados al representante del Departamento (esta es la oficina cual decisión está apelando). Usted puede ser representado por un abogado o otra persona.

Si usted está representado por abogado u otra persona, usted puede usar el portal de apelaciones ABE (abe.illinois.gov/abe/access/appeals) o comunicarse con la Oficina de Apelaciones por lo menos tres (3) días laborales antes de la audiencia. Debe de proporcionar el nombre e información para comunicarnos de su representante. Si su representante ya está incluido en su petición de audiencia, por favor ignorar este párrafo.

Cualquier información, documentos o lista de testigos deben de ser presentado por lo menos tres (3) días laborales antes de la audiencia. Usted puede enviar esa información a la Oficina de Apelaciones a la dirección listad arriba, por correo electrónico, o por el portal de apelaciones ABE https://abe.illinois.gov/abe/access/appeals

Si usted no está disponible para esta audiencia debe comunicarse con la Oficina de Audiencias a través a el portal de apelaciones ABE en https://abe.illinois.gov/abe/access/appeals o la dirección indicada arriba. Por favor haga su petición a la Oficina de Audiencias por escrito y envíelo por correo o por correo electrónico por lo menos tres (3) días laborales antes de la audiencia y envíe una copia de su petición a la oficina local. Un aplazamiento retrasará la resolución de su apelación. Si no le avisan que el aplazamiento ha sido aprobado, se espera que esté disponible en audiencia programada.

Si la Oficina de Audiencias no le avisa que el aplazamiento fue aprobado, se espera que esté disponible en la fecha lista arriba. Si usted no está disponible para participar o proceder resultará en que su apelación será despedida al menos que usted demuestre que circunstancias inesperadas le impidieron participar. Usted debe de demonstrar que su ausencia fue debido a muerte en la familia, lesión personal o enfermedad que razonablemente le prohibió asistir a la audiencia, una emergencia inesperada u otra circunstancia fuera de su control que razonablemente le previno estar disponible en la audiencia.



Le enviaremos una carta certificada indicando detalles adicionales sobre la fecha de su audiencia.

Por favor tenga presente que usted puede verificar el estado de su apelación a través de nuestra página de internet de apelaciones en: https://abe.illinois.gov/abe/access/appeals Aquí, usted podrá solicitar una nueva fecha de audiencia, retirar su apelación, ver avisos y próximas citas. Realizando cambios sobre su apelación, a través de nuestra página de internet, acortara el tiempo de procesamiento. Para poder acceder a su cuenta, se le pedirá que proporcione su número de seguro social o su número de identificación (ID) individual (1193922287) y su fecha de nacimiento.

Jefe de la Oficina<br>
Oficina de Apelaciones<br>
Departamento de Servicios Humanos<br>
DHS.BAH@illinois.gov

CC: Equip For Equality - Chicago - Brian, Pflaum





| | |
|---|---|
| Número de apelación: | 1700253203 |
| RE: | DOROTHY REDDIC |
| Fecha: | 12/19/2017 |
| Nombre de la oficina: | Appeals DHS Office |
| Dirección de la oficina: | 69 W WASHINGTON 4 |
| | CHICAGO, IL 60602 |
| E-mail del Departamento: | DHS.BAH@illinois.gov |
| No. de teléfono: | (800) 435 - 0774 |
| TTY: | (877) 734 - 7429 |
| Fax: | (312) 793 - 3387 |

DOROTHY REDDIC
1335 4TH AVE
ROCKFORD, IL 61104

Usted puede manejar su apelación en línea en
https://abe.illinois.gov/abe/access/appeals

# Confirmación de Apelación

Por este medio le informamos que la Oficina de Apelaciones ha recibido la solicitud de apelación presentada el **Diciembre 12, 2017**. Por favor tenga en cuenta que su número de identificación individual es 1004842072.

Por favor, informar a la Oficina de Apelaciones si usted se ha mudado.

La Oficina de Apelaciones le enviara una carta de programación con la fecha y hora de la audiencia.



Por favor tenga presente que usted puede verificar el estado de su apelación a través de nuestra página de internet de apelaciones a: https://abe.illinois.gov/abe/access/appeals Aquí, usted podrá solicitar una nueva fecha de audiencia, retirar su apelación, ver avisos y próximas citas. *Realizando cambios sobre su apelación, a través de nuestra página de internet, acortará el tiempo de procesamiento.* Para poder acceder a su cuenta, se le pedirá que proporcione su número de seguro social o su número de identificación (ID) individual (1004842072) y su fecha de nacimiento.

Gracias por su paciencia.

Jefe de la oficina
Oficina de apelaciones
Departamento de Servicios Humanos
DHS.BAH@illinois.gov

CC: Appeals DHS Office - Kris, Smith, Appeals DHS Office - Andre, Howard, Appeals DHS Office - Beatrice, Mwinzi



Lea la información al reverso de esta página.



## Información Importante Sobre su Apelación

o   La próxima comunicación que usted recibirá de la Oficina de Apelaciones será una carta de audiencia con la fecha y hora programada e información adicional acerca de lo que sucederá en la audiencia.  Usted debe recibir esta carta dentro de 30 días.

o   Si en cualquier momento durante el proceso usted decide cancelar o retirar su apelación, por favor, envié una carta firmada por correo, fax, o correo electrónico informando a la Oficina de Apelaciones que usted no desea continuar con su audiencia.

o   Usted puede tener a alguien que lo represente en la audiencia. Puede ser un amigo, un pariente, o un abogado. Si decide ser representado necesita notificar a la Oficina de Apelaciones por escrito por correo, fax, o correo electrónico al menos tres días antes de su audiencia. Por favor incluya el nombre, dirección, número de teléfono y correo electrónico de su representante.

o   Ahora es el momento de comenzar a reunir la documentación que le gustaría presentar al oficial de la audiencia.

o   Si se muda, por favor llame o contacte a la Oficina de Apelaciones inmediatamente.



DHS – Bureau of Hearings                                      (297)   Page 1 of 1
69 West Washington, 4th Floor
Chicago, Illinois 60602

                        Illinois Department of Human Services
                  800-435-0774 (Voice)      877-734-7429 (TTY)
                  312-793-3387 (Fax)        DHS.BAH@Illinois.gov (email)

EQUIP FOR EQUALITY – CHICAGO                   Date: October 13, 2017
BRIAN PFLAUM                                     Re: DOROTHY REDDIC
20 NORTH MICHIGAN AV                        Appeal #: I17-014596
SUITE 300                                       Case #:
CHICAGO, IL 60602                       Local Office: DRS Dekalb Office

Dear BRIAN PFLAUM:

The person named above had a hearing scheduled for Tuesday, October 10, 2017, at 1:00PM w
has been rescheduled for a later date.  You and your client will receive a new HEARING
NOTICE LETTER containing the date and time of the rescheduled hearing.  Additionally,
your client will also receive a scheduling letter via Certified Mail.

                              Bureau Chief,
                              Bureau of Hearings
                              Department of Human Services
                              DHS.BAH@illinois.gov (e-mail)


RESET LETTER -- REPRESENTATIVE

C: DOROTHY REDDIC
   1335 4TH AVE
   ROCKFORD, IL 61104
   (815)200-9730

C: ANDRE (SUPERVISOR). HOWARD
   DRS DEKALB OFFICE
   1330 OAKWOOD AVENUE
   DEKALB, IL 60115
   (815)758-2471

C: MOSHE LIBERMAN
   DRS DHS GENERAL COUNSEL
   100 WEST RANDOLPH STREET
   SUITE 6-400
   CHICAGO, IL 60601
   (312)814-8330

C: BEATRICE (VR COUNSELOR). MWINZI
   DRS DEKALB OFFICE
   1330 OAKWOOD AVENUE
   DEKALB, IL 60115
   (815)758-2471

DHS – Bureau of Hearings                                    (299)   Page 1 of 1
69 West Washington, 4th Floor
Chicago, Illinois 60602


                    Illinois Department of Human Services
            800-435-0774 (Voice)      877-734-7429 (TTY)
            312-793-3387 (Fax)        DHS.BAH@Illinois.gov (email)

EQUIP FOR EQUALITY - CHICAGO                Date: October 13, 2017
BRIAN PFLAUM                                  Re: DOROTHY REDDIC
20 NORTH MICHIGAN AV                     Appeal #: I17-018998
SUITE 300                                   Case #:
CHICAGO, IL 60602                    Local Office: DRS Dekalb Office


Dear BRIAN PFLAUM:

The request for a hearing by DOROTHY REDDIC was withdrawn through a document
signed by that person or their representative, or on the record at the hearing.
Therefore, the appeal is now concluded and any future hearing dates will be cancelled.

This withdrawal is the Department's Final Administrative Decision and is reviewable
only through the Circuit Courts of the State of Illinois.  It does not affect the
right to appeal any future action which the client deems adverse.


                              James T. Dimas
                              Secretary
                              Department Of Human Services


WITHDRAWAL LETTER

C: DOROTHY REDDIC
   1335 4TH AVENUE
   ROCKFORD, IL 61104
   (815)200-9730

C: ANDRE (SUPERVISOR). HOWARD
   DRS DEKALB OFFICE
   1330 OAKWOOD AVENUE
   DEKALB, IL 60115
   (815)758-2471

C: MOSHE LIBERMAN
   DRS DHS GENERAL COUNSEL
   100 WEST RANDOLPH STREET
   SUITE 6-400
   CHICAGO, IL 60601
   (312)814-8330

C: BEATRICE (VR COUNSELOR). MWINZI
   DRS DEKALB OFFICE
   1330 OAKWOOD AVENUE
   DEKALB, IL 60115
   (815)758-2471



State of Illinois
Department of Human Services - Division of Rehabilitation Services
**YOUR VOCATIONAL REHABILITATION APPEAL RIGHTS**

You have the right to appeal decisions made on your case by the Department of Human Services - Division of Rehabilitation Services (DRS). If you have a problem or a concern with any action DRS has taken, we suggest you discuss it first with your counselor prior to filing an appeal as many times the issue can be resolved to everyone's satisfaction. If you choose to appeal, you must file your appeal __within 30 days__ from the date you received notice of the decision.

File your appeal by writing to:　　　　DHS Hearings Coordinator, Bureau of Administrative Hearings
　　　　　　　　　　　　　　　　　　　69 W Washington , 4th Floor
　　　　　　　　　　　　　　　　　　　Chicago , Il 60602
　　　　　　　　　　　　　　　　　　　(312) 793-8134 (Voice) or (312) 793-2697 (TTY)

Include an explanation of why you disagree with the decision made and what services you want from DRS. If you are in need of an accommodation (e.g., an interpreter, large print, Braille, etc.), make sure you indicate that on your appeal request. Also, include your name, address, phone number, and your counselor's name and office location. MAKE SURE YOU SIGN YOUR REQUEST FOR AN APPEAL.

After making your appeal request, you have three options on how to proceed - the Informal Resolution Conference, Mediation, and/ or Formal Hearing. IT IS UP TO YOU HOW TO HANDLE THE APPEAL. You can do all three steps, two steps, or only one, but if you choose to do more than one step, you must go in the order listed below.

__Informal Resolution Conference__
A review of the decision with the goal of mutually resolving the issue being appealed. To request an informal resolution conference, contact your counselor's supervisor. If this does not resolve the issue, you may request the Mediation Process, or proceed with the Formal Hearing.

__Mediation__ *Another person who can't make a decision but help you think*
Request this process by contacting the DHS Hearings Coordinator or your counselor's supervisor. A mediator will be assigned by the Hearings Coordinator and will try to help you reach an agreement with DRS. If successful, the mediator will put the agreement in writing. Information learned during mediation is confidential and cannot be used against you later. *In person*

__Formal Hearing__
If your issue has not been resolved, you may proceed with a Formal Hearing. Both you and your counselor must provide a written summary of evidence (a brief description of information you will present and a list of individuals you wish to speak) to the Hearing Officer and your counselor at least 3 days prior to the hearing. During the Formal Hearing, the Impartial Hearing Officer will hear the facts of the case and make a written decision about your case within 30 days.

Your appeal must be heard within 60 days of your request and your planned services will continue throughout the appeal process.

You have the right to see and/or have a copy of information from your case file released to you as is allowed by confidentiality guidelines.

You can present any information you wish during any stage of the appeal process and you can have anyone you want represent you. NOTE: DRS does not reimburse the cost of private legal assistance.

You may contact your counselor for further information. For help in requesting your appeal or for possible representation, contact the Client Assistance Program, 100 South Grand Ave East , Basement Springfield , Il 62794 or call 1-(800) 641-3929(voice) or 1-(888) 460-5111(TTY).



State of Illinois
Department of Human Services

| | |
|---|---|
| Appeal Number: | 1700253203 |
| RE: | DOROTHY REDDIC |
| Date of Notice: | 12/19/2017 |
| Office Name: | Appeals DHS Office |
| Office Address: | 69 W WASHINGTON 4 |
| | CHICAGO, IL 60602 |
| Bureau Email: | DHS.BAH@illinois.gov |
| Phone: | (800) 435 - 0774 |
| TTY: | (877) 734 - 7429 |
| Fax: | (312) 793 - 3387 |

You can manage your appeal online at
https://abe.illinois.gov/abe/access/appeals

DOROTHY REDDIC
1335 4TH AVE
ROCKFORD, IL 61104

# Appeal Confirmation

This is to advise you that the Appeals Office has received the appeal filed on **December 12, 2017**. Please note that your Individual ID is 1004842072.

Please inform the Appeals Office if you have moved.

The Appeals Office will send a Hearing Scheduled Letter containing the date and time of the hearing.

Please be aware that you can check the status of your appeal via the Appeals website at https://abe.illinois.gov/abe/access/appeals.You can also request a new hearing date, withdraw your appeal, view notices, and see upcoming appointments. *Going on the website to make changes to your appeal will shorten the processing time.* In order to access your account, you will be required to provide either your social security number or your individual ID number (1004842072) and date of birth.

Thank you for your patience.

Bureau Chief
Bureau of Hearings
Department of Human Services
DHS.BAH@illinois.gov

CC: Appeals DHS Office - Kris, Smith, Appeals DHS Office - Andre, Howard, Appeals DHS Office - Beatrice, Mwinzi

Turn this page over to read more information on the back.



2010297

DHS - Bureau of Hearings
69 West Washington, 4th Floor
Chicago, Illinois 60602

(409)   Page 1 of
SEE REVERS

Illinois Department of Human Services
800-435-0774 (Voice)       877-734-7429 (TTY)
312-793-3387 (Fax)         DHS.BAH@Illinois.gov (email)

DOROTHY REDDIC
1335 4TH AVE                        Date: July 10, 2017
ROCKFORD, IL 61104                  Appeal #: I17-014596
                                    Case #:

Dear DOROTHY REDDIC:

A Hearing Officer will hear this appeal on:

Tuesday, August 1, 2017, 9:00AM

This hearing will be conducted by telephone. On the hearing date and time, you will
be contacted at the following phone number: (815)200-9730. If this phone number is not
correct or if we do not have a phone number listed for you, please contact the Bureau
of Hearings at (800)435-0774 to update your phone number. If you do not have access
to a telephone, please write to the Bureau of Hearings 69 W. Washington, 4th Floor,
Chicago, IL 60602 to make alternate arrangements.

We will strive to contact you at the time listed above, however we ask that you remain
by your phone for two hours after the time listed above in the case that we are
running behind schedule. The Hearing Officer will call you as soon as possible.
Please be prepared to stay on the phone (at least the entire morning/the afternoon)
for your hearing. If the Hearing Officer is unable to reach you and we do not hear
from you, your appeal will be considered abandoned and it will be dismissed.

The hearing will cover the following issues:

Jurisdiction - Tuition Assistance

If you would like to withdraw your request for a hearing, please mail a signed letter
addressed to the Hearings Coordinator or submit it by e-mail. If you have withdrawn
this appeal, please disregard this letter.

You have the option to attend an informal resolution conference at the local office.
Please contact your local office to schedule the conference. You have the right to
pursue mediation to resolve your case. Please contact the Hearings Coordinator to
request mediation. You also have the right to assistance from the Client Assistance
Program (CAP). CAP can be reached at 1-800-641-3929.

You may request a sign language interpreter, a language interpreter, or a reader to
attend the hearing. Your request should be made to the Hearings Coordinator at least
10 days before the date of the hearing. If you are visually impaired, you may either
request a reader to read materials provided by DHS-ORS in preparation for the hearing
or request that the materials be provided in Braille, large print, or an audio file.
Your request must be made within 5 working days after being informed of the date of
the hearing.

If you need an accommodation under the Americans With Disabilities Act, contact the Hearings Coordinator by phone, e-mail, or mail as soon as possible.

If you are represented by an attorney or any other person, you must notify the Hearings Coordinator in writing at least three (3) working days prior to the hearing date. You must provide the name and contact information for your representative. If your representative is already listed on your request for hearing form, please disregard this section.

Any information, documents, or witness lists must be presented at least three (3) working days before the hearing. You can send that information to the Hearings Coordinator at the address listed above or by e-mail to the address listed below.

If you are unable to be available for this hearing, you must contact the local office and let them know that you are requesting a continuance from the Hearings Coordinator. Please make your request to the Hearings Coordinator in writing by mail or by e-mail at least three (3) working days before the hearing date and send a copy of your request to the local office. A continuance will delay resolution of your appeal. If you are not notified that your continuance has been granted, you are expected to be available on the above date.

Failure to participate or proceed will result in this appeal being dismissed unless you show that your absence was the result of a death in the family, personal injury or illness that reasonably prohibited you from attending the hearing, a sudden and unexpected emergency, or other circumstances beyond your control that reasonably prevented you from being available for the hearing.

A certified letter will be mailed seperately including additional information about your hearing date.

Bureau Chief,
Bureau of Hearings
Department of Human Services
DHS.BAH@illinois.gov (e-mail)

HEARING NOTICE LETTER

C: ANDRE (SUPERVISOR). HOWARD
   DRS DEKALB OFFICE
   1330 OAKWOOD AVENUE
   DEKALB, IL 60115
   (815)758-2471

C: BEATRICE (VR COUNSELOR). MWINZI
   DRS DEKALB OFFICE
   1330 OAKWOOD AVENUE
   DEKALB, IL 60115
   (815)758-2471

DHS - Bureau of Hearings                                                    (655)    Page 1
69 West Washington, 4th Floor                                                       SEE REV
Chicago, Illinois 60602


                    Illinois Department of Human Services
                    800-435-0774 (Voice)      877-734-7429 (TTY)
                    312-793-3387 (Fax)        DHS.BAH@Illinois.gov (email)


DOROTHY REDDIC
1335 4TH AVE                                          Date: June 12, 2017
ROCKFORD, IL 61104                                    Appeal #: I17-014596
                                                      Case #:


Dear DOROTHY REDDIC:

A Hearing Officer will hear this appeal on:

        Tuesday, July 11, 2017, 9:00AM

This hearing will be conducted by telephone. On the Hearing date and time, you will
be contacted at the following phone number: (815)200-9730. If this phone number is
correct or if we do not have a phone number listed for you, please contact the Bureau
of Hearings at (800)435-0774 to update your phone number. If you do not have access
to a telephone, please write to the Bureau of Hearings 69 W. Washington, 4th Floor,
Chicago, IL 60602 to make alternate arrangements.

We will strive to contact you at the time listed above, however we ask that you remain
by your phone for two hours after the time listed above in the case that we are
running behind schedule. The Hearing Officer will call you as soon as possible.
Please be prepared to stay on the phone (at least the entire morning/the afternoon)
for your hearing. If the Hearing Officer is unable to reach you and we do not hear
from you, your appeal will be considered abandoned and it will be dismissed.

The hearing will cover the following issues:

Tuition Assistance / *Should state tuition and fees including*
                      *school medical insurance on*

If you would like to withdraw your request for a hearing, please mail a signed letter
addressed to the Hearings Coordinator or submit it by e-mail. If you have withdrawn
this appeal, please disregard this letter.

You have the option to attend an informal resolution conference at the local office.
Please contact your local office to schedule the conference. You have the right to
pursue mediation to resolve your case. Please contact the Hearings Coordinator to
request mediation. You also have the right to assistance from the Client Assistance
Program (CAP). CAP can be reached at 1-800-641-3929.

You may request a sign language interpreter, a language interpreter, or a reader to
attend the hearing. Your request should be made to the Hearings Coordinator at least
10 days before the date of the hearing. If you are visually impaired, you may either
request a reader to read materials provided by DHS-ORS in preparation for the hearing
or request that the materials be provided in Braille, large print, or an audio file.
Your request must be made within 5 working days after being informed of the date of
the hearing.

(656)  Page 2

If you need an accommodation under the Americans With Disabilities Act, contact the Hearings Coordinator by phone, e-mail, or mail as soon as possible.

If you are represented by an attorney or any other person, you must notify the Hearings Coordinator in writing at least three (3) working days prior to the hearing date. You must provide the name and contact information for your representative. your representative is already listed on your request for hearing form, please disregard this section.

Any information, documents, or witness lists must be presented at least three (3) working days before the hearing. You can send that information to the Hearings Coordinator at the address listed above or by e-mail to the address listed below.

If you are unable to be available for this hearing, you must contact the local office and let them know that you are requesting a continuance from the Hearings Coordinator Please make your request to the Hearings Coordinator in writing by mail or by e-mail at least three (3) working days before the hearing date and send a copy of your request to the local office. A continuance will delay resolution of your appeal. you are not notified that your continuance has been granted, you are expected to be available on the above date.

Failure to participate or proceed will result in this appeal being dismissed unless you show that your absence was the result of a death in the family, personal injury illness that reasonably prohibited you from attending the hearing, a sudden and unexpected emergency, or other circumstances beyond your control that reasonably prevented you from being available for the hearing.

A certified letter will be mailed seperately including additional information about your hearing date.

Bureau Chief,
Bureau of Hearings
Department of Human Services
DHS.BAH@illinois.gov (e-mail)

HEARING NOTICE LETTER

C: ANDRE (SUPERVISOR). HOWARD
DRS DEKALB OFFICE
1330 OAKWOOD AVENUE
DEKALB, IL 60115
(815)758-2471

C: BEATRICE (VR COUNSELOR). MWINZI
DRS DEKALB OFFICE
1330 OAKWOOD AVENUE
DEKALB, IL 60115
(815)758-2471

DHS — Bureau of Hearings                                    (1577)  Page 1 of
69 West Washington, 4th Floor
Chicago, Illinois 60602


                    Illinois Department of Human Services
              800-435-0774 (Voice)      877-734-7429 (TTY)
              312-793-3387 (Fax)        DHS.BAH@Illinois.gov (email)


DOROTHY REDDIC                              Date: June 9, 2017
1335 4TH AVE                               Appeal #: I17-014596
ROCKFORD, IL 61104                         Case #:


Dear DOROTHY REDDIC:

This is to advise that the Bureau of Hearings has received your request for an appeal
filed on May 8, 2017.

We will send a HEARING NOTICE LETTER containing the date and time of hearing.  Thank
you for your patience.

                              Bureau Chief,
                              Bureau of Hearings
                              Department of Human Services
                              DHS.BAH@illinois.gov (e-mail)


C: ANDRE (SUPERVISOR). HOWARD
   DRS DEKALB OFFICE
   1330 OAKWOOD AVENUE
   DEKALB, IL 60115
   (815)758-2471

C: BEATRICE (VR COUNSELOR). MWINZI
   DRS DEKALB OFFICE
   1330 OAKWOOD AVENUE
   DEKALB, IL 60115
   (815)758-2471



State of Illinois
Department of Human Services

| | |
|---|---|
| Appeal Number: | 1700107496 |
| RE: | Dorothy Reddic |
| Date of Notice: | 11/15/2017 |
| Office Name: | Appeals DHS Office |
| Office Address: | 69 W WASHINGTON 4 |
| | CHICAGO, IL 60602 |
| Bureau Email: | DHS.BAH@illinois.gov |
| Phone: | (800) 435-0774 |
| TTY: | (877) 734-7429 |
| Fax: | (312) 793-3387 |

Կր․ԿրԿր․Կ․Կ․ՈՒ․ՈՒՈՒ․Ո․Ո․Ո․ՈՒ․Ո․Ո․Ո․Ո

**BRIAN PFLAUM**
**20 NORTH MICHIGAN AV**
**SUITE 300**
**CHICAGO, IL 60602**

You can manage your appeal online at
https://abe.illinois.gov/abe/access/appeals
Si tiene preguntas sobre este documento o necesita
ayuda para traducirlo, por favor contacte (800) 435-0774,
(877) 734-7429 (TTY)

# Hearing Scheduled Letter

This is to advise that a Hearing Officer will hear this appeal on the following date and time:

December 14, 2017, 1:00PM

This hearing date and time replaces any other scheduled hearing dates, times, or locations referenced in other letters that you received prior to the date of this letter. This letter supersedes all prior scheduling letters under this appeal number.

This hearing will be conducted by telephone. On the hearing date and time, you will be contacted at the following phone number: (815) 200-9730. If this phone number is not correct, is listed as a zero because you did not provide a phone number, no phone number is listed, or you do not have access to a telephone, you can use the ABE Appeals Portal (abe.illinois.gov/abe/access/appeals) or contact the Appeals Office to provide an updated phone number or to request an alternative means of conducting the hearing. We will strive to contact you at the stated time. However, we ask that you remain by your phone until you receive a phone call. The Hearing Officer will call you as soon as possible. If you plan on having witnesses testify at the hearing, all witnesses must be available at the start of the hearing. If you are using a cell phone, the phone should be appropriately charged so it is available for the entire time period of the hearing. If the Hearing Officer is unable to reach you and we do not hear from you, your appeal will be considered abandoned and it will be dismissed.

If you want to change the method of conducting the hearing, you can use the ABE Appeals Portal (abe.illinois.gov/abe/access/appeals) or contact the Appeals Office for approval prior to the hearing date. Your request to change the method of conducting the hearing is not approved until you receive confirmation from the Appeals Office.

The hearing will cover the following issues:

You have the option to attend an informal resolution conference at the local office. Please contact your local office to schedule the conference.


481853

You may request a sign language interpreter, a language interpreter, or a reader to attend the hearing. Your request should be made to the Hearings Coordinator at least 10 days before the date of the hearing. If you are visually impaired, you may either request a reader to read materials provided by DHS-DRS in preparation for the hearing or request that the materials be provided in Braille, large print, or an audio file. Your request must be made within 5 working days after being informed of the date of the hearing.

You have the right to pursue mediation to resolve your case. Please contact the Hearings Coordinator to request mediation. You also have the right to assistance from the Client Assistance Program (CAP). CAP can be reached at (800) 641-3929.

If you would like to withdraw your request for a hearing, please send a signed letter addressed to the Appeals Office by mail, e-mail, or the ABE Appeals Portal (abe.illinois.gov/abe/access/appeals), or call the phone number at the top of this letter.

If you need an accommodation under the Americans With Disabilities Act, contact the Appeals Office as early as possible in advance of the hearing.

You must submit all documents and other information to the Appeals Office prior to the hearing date. You can submit documents through the ABE Appeals Portal (abe.illinois.gov/abe/access/appeals) or by sending them to the Appeals Office by mail, e-mail, or fax. If you submit documents to the Appeals Office, then it is your responsibility to ensure that the same documents are submitted to the Department representative (this is the office that made the decision which you are appealing). You may be represented by an attorney, advocate, or other person of your choice, at your expense.

If you are represented by an attorney or any other person, you can use the ABE Appeals Portal (abe.illinois.gov/abe/access/appeals) or contact the Appeals Office in writing at least three (3) working days prior to the hearing date. You must provide the name and contact information for your representative. If your representative is already listed on your request for hearing form or letter, please disregard this paragraph.

Any information, documents, or witness lists must be presented at least three (3) working days before the hearing. You can send that information to the Appeals Office at the address listed above, email listed above, or through the ABE Appeals Portal https://abe.illinois.gov/abe/access/appeals

If you are unable to be at this hearing, you must contact the Appeals Office through the ABE Appeals Portal https://abe.illinois.gov/abe/access/appeals or at the contact information as indicated above. Please make your request to the Appeals Office in writing by mail or by e-mail at least three (3) working days before the hearing date and send a copy of your request to the local office. A continuance will delay resolution of your appeal. If you are not notified that your continuance has been granted, you are expected to be available on the above date.

If the Appeals Office does not notify you that a postponement has been granted, you will be expected to be available on the above date. Failure to be available, to participate or to proceed will result in this appeal being dismissed unless you show that unexpected circumstances prohibited you from being available. You must show that your absence was the result of a death in the family, personal injury or illness that reasonably prohibited you from attending the hearing, a sudden and unexpected emergency, or other circumstances beyond your control that reasonably prevented you from being available for the hearing.

Turn this page over to read more information on the back.



Failure to be available, to participate or to proceed will result in this appeal being dismissed unless you show that unexpected circumstances prohibited you from being available. You must show that your absence was the result of a death in the family, personal injury or illness that reasonably prohibited you from attending the hearing, a sudden and unexpected emergency, or other circumstances beyond your control that reasonably prevented you from being available for the hearing.

A certified letter will be mailed separately including additional information about your hearing date.

Please be aware that you can check the status of your appeal via the https://abe.illinois.gov/abe/access/appeals You can also request a new hearing date, withdraw your appeal, view notices, and see upcoming appointments. Going on the website to request changes to your appeal may shorten your processing time. In order to access your account, you will be required to provide either your social security number or your individual ID number (1193922287) and date of birth.

Bureau Chief
Bureau of Hearings
Department of Human Services
DHS.BAH@illinois.gov

CC: Equip For Equality - Chicago - Brian, Pflaum



| | |
|---|---|
| Número de apelación: | 1700107496 |
| RE: | Dorothy Reddic |
| Fecha: | 11/15/2017 |
| Nombre de la oficina: | Appeals DHS Office |
| Dirección de la oficina: | 69 W WASHINGTON 4 |
| | CHICAGO, IL 60602 |
| E-mail del Departamento: | DHS.BAH@illinois.gov |
| No. de teléfono: | (800) 435 - 0774 |
| TTY: | (877) 734 - 7429 |
| Fax: | (312) 793 - 3387 |

BRIAN PFLAUM
20 NORTH MICHIGAN AV
SUITE 300
CHICAGO, IL 60602

Usted puede manejar su apelación en línea en
https://abe.illinois.gov/abe/access/appeals

Si tiene preguntas sobre este documento o necesita
ayuda para traducirlo, por favor contacte (800) 435-0774,
(877) 734-7429 (TTY)

# Carta Para Programar Audiencia

Esto es para avisarle que un oficial de audiencia escuchara su apelacion en la siguiente fecha y hora:

Diciembre 14, 2017, 1:00PM

Esta fecha, horario y lugar de audiencia reemplaza cualquier otra fecha, horario y lugar de algún otra cita de audiencia referida en avisos recibidos anteriormente de la fecha de este aviso. Esta carta reemplaza cualquier aviso anterior bajo el número de apelación de este caso.

Esta audiencia será llevada a cabo por teléfono. En la fecha y horario de la audiencia, usted será comunicado al siguiente número de teléfono: (815) 200-9730. Si este número no es el correcto o si no hay algún número indicado, por favor comuníquese con la oficina de apelaciones indicada en este aviso. Si no tiene acceso a un teléfono, por favor escríbale al coordinador(a) de apelaciones a la dirección indicada arriba, envíe un correo electrónico o comuníquese por Internet en el portal de Apelaciones ABE (abe.illinois.gov/abe/access/appeals). Trataremos de comunicarnos con usted a la hora indicada arriba. Sin embargo, le pedimos que permanezca cerca de su teléfono por la mañana / tarde. El oficial de apelaciones tratará de comunicarse con usted lo más pronto posible. Sin embargo, le pedimos que permanezca cerca de su teléfono por la mañana / tarde. Si el oficial de audiencias no puede comunicarse con usted y usted no responde, su apelación se considerará abandonada y será desestimada.

Si gusta cambiar la manera en como conducir la audiencia, puede usar el portal de apelaciones ABE (abe.illinois.gov/abe/access/appeals) o comunicarse con la Oficina de Apelaciones para aprobación antes de la fecha de la audiencia. Su solicitud de cambio en relación a como conducir la audiencia no está aprobada hasta que reciba la confirmación de La Oficina de Apelaciones.

Esta audiencia cubrirá los siguientes asuntos:

Usted tiene la opción de atender a una conferencia de resolución informal el al oficina local. Por favor de comunicarse con la oficina local para citar su conferencia.

Lea la información al reverso de esta página.



State of Illinois
Department of Human Services

| | |
|---|---|
| Appeal Number: | 1700107496 |
| RE: | Dorothy Reddic |
| Date of Notice: | 11/15/2017 |
| Office Name: | Appeals DHS Office |
| Office Address: | 69 W WASHINGTON 4 |
| | CHICAGO, IL 60602 |
| Bureau Email: | DHS.BAH@illinois.gov |
| Phone: | (800) 435 - 0774 |
| TTY: | (877) 734 - 7429 |
| Fax: | (312) 793 - 3387 |

DOROTHY REDDIC
1335 4TH AVE
ROCKFORD, IL 61104

You can manage your appeal online at
https://abe.illinois.gov/abe/access/appeals
Si tiene preguntas sobre este documento o necesita
ayuda para traducirlo, por favor contacte (800) 435-0774,
(877) 734-7429 (TTY)

# Hearing Scheduled Letter

This is to advise that a Hearing Officer will hear this appeal on the following date and time:

December 14, 2017, 1:00PM

This hearing date and time replaces any other scheduled hearing dates, times, or locations referenced in other letters that you received prior to the date of this letter. This letter supersedes all prior scheduling letters under this appeal number.

This hearing will be conducted by telephone. On the hearing date and time, you will be contacted at the following phone number: (815) 200-9730. If this phone number is not correct, is listed as a zero because you did not provide a phone number, no phone number is listed, or you do not have access to a telephone, you can use the ABE Appeals Portal (abe.illinois.gov/abe/access/appeals) or contact the Appeals Office to provide an updated phone number or to request an alternative means of conducting the hearing. We will strive to contact you at the stated time. However, we ask that you remain by your phone until you receive a phone call. The Hearing Officer will call you as soon as possible. If you plan on having witnesses testify at the hearing, all witnesses must be available at the start of the hearing. If you are using a cell phone, the phone should be appropriately charged so it is available for the entire time period of the hearing. If the Hearing Officer is unable to reach you and we do not hear from you, your appeal will be considered abandoned and it will be dismissed.

If you want to change the method of conducting the hearing, you can use the ABE Appeals Portal (abe.illinois.gov/abe/access/appeals) or contact the Appeals Office for approval prior to the hearing date. Your request to change the method of conducting the hearing is not approved until you receive confirmation from the Appeals Office.

The hearing will cover the following issues:

You have the option to attend an informal resolution conference at the local office. Please contact your local office to schedule the conference.



You may request a sign language interpreter, a language interpreter, or a reader to attend the hearing. Your request should be made to the Hearings Coordinator at least 10 days before the date of the hearing. If you are visually impaired, you may either request a reader to read materials provided by DHS-DRS in preparation for the hearing or request that the materials be provided in Braille, large print, or an audio file. Your request must be made within 5 working days after being informed of the date of the hearing.

You have the right to pursue mediation to resolve your case. Please contact the Hearings Coordinator to request mediation. You also have the right to assistance from the Client Assistance Program (CAP). CAP can be reached at (800) 641-3929.

If you would like to withdraw your request for a hearing, please send a signed letter addressed to the Appeals Office by mail, e-mail, or the ABE Appeals Portal (abe.illinois.gov/abe/access/appeals), or call the phone number at the top of this letter.

If you need an accommodation under the Americans With Disabilities Act, contact the Appeals Office as early as possible in advance of the hearing.

You must submit all documents and other information to the Appeals Office prior to the hearing date. You can submit documents through the ABE Appeals Portal (abe.illinois.gov/abe/access/appeals) or by sending them to the Appeals Office by mail, e-mail, or fax. If you submit documents to the Appeals Office, then it is your responsibility to ensure that the same documents are submitted to the Department representative (this is the office that made the decision which you are appealing). You may be represented by an attorney, advocate, or other person of your choice, at your expense.

If you are represented by an attorney or any other person, you can use the ABE Appeals Portal (abe.illinois.gov/abe/access/appeals) or contact the Appeals Office in writing at least three (3) working days prior to the hearing date. You must provide the name and contact information for your representative. If your representative is already listed on your request for hearing form or letter, please disregard this paragraph.

Any information, documents, or witness lists must be presented at least three (3) working days before the hearing. You can send that information to the Appeals Office at the address listed above, email listed above, or through the ABE Appeals Portal https://abe.illinois.gov/abe/access/appeals

If you are unable to be at this hearing, you must contact the Appeals Office through the ABE Appeals Portal https://abe.illinois.gov/abe/access/appealsor at the contact information as indicated above. Please make your request to the Appeals Office in writing by mail or by e-mail at least three (3) working days before the hearing date and send a copy of your request to the local office. A continuance will delay resolution of your appeal. If you are not notified that your continuance has been granted, you are expected to be available on the above date.

If the Appeals Office does not notify you that a postponement has been granted, you will be expected to be available on the above date. Failure to be available, to participate or to proceed will result in this appeal being dismissed unless you show that unexpected circumstances prohibited you from being available. You must show that your absence was the result of a death in the family, personal injury or illness that reasonably prohibited you from attending the hearing, a sudden and unexpected emergency, or other circumstances beyond your control that reasonably prevented you from being available for the hearing.

Turn this page over to read more information on the back.



# Your Vocational Rehabilitation Appeal Rights

State of Illinois
Department of Human Services - Division of Rehabilitation Services

You have the right to appeal decisions made on your case by the Department of Human Services - Division of Rehabilitation Services (DRS). If you have a problem or a concern with any action DRS has taken, we suggest you discuss it first with your counselor prior to filing an appeal as many times the issue can be resolved to everyone's satisfaction. If you choose to appeal, you must file your appeal within 30 days from the date you received notice of the decision.

File your appeal by writing to:

DHS Hearings Coordinator, Bureau of Administrative Hearings
100 South Grand Avenue East, 3rd Floor
Springfield, IL 62726
(217) 557-1545 Voice or (217) 557-2547 TTY

Include an explanation of why you disagree with the decision made and what services you want from DRS. If you are in need of an accommodation (e.g., an interpreter, large print, Braille, etc.), make sure you indicate that on your appeal request. Also, include your name, address, phone number, and your counselor's name and office location. MAKE SURE YOU SIGN YOUR REQUEST FOR AN APPEAL.

After making your appeal request, you have three options on how to proceed - the Informal Resolution Conference, Mediation, and/or Formal Hearing. IT IS UP TO YOU HOW TO HANDLE THE APPEAL. You can do all three steps, two steps, or only one, but if you choose to do more than one step, you must go in the order listed below.

## Informal Resolution Conference

A review of the decision with the goal of mutually resolving the issue being appealed. To request an informal resolution conference, contact your counselor's supervisor. If this does not resolve the issue, you may request the Mediation Process, or proceed with the Formal Hearing.

## Mediation

Request this process by contacting the DHS Hearings Coordinator or your counselor's supervisor. A mediator will be assigned by the Hearings Coordinator and will try to help you reach an agreement with DRS. If successful, the mediator will put the agreement in writing. Information learned during mediation is confidential and cannot be used against you later.

## Formal Hearing

If your issue has not been resolved, you may proceed with a Formal Hearing. Both you and your counselor must provide a written summary of evidence (a brief description of information you will present and a list of individuals you wish to speak) to the Hearing Officer and your counselor at least 3 days prior to the hearing. During the Formal Hearing, the Impartial Hearing Officer will hear the facts of the case and make a written decision about your case within 30 days.

Your appeal must be heard within 60 days of your request and your planned services will continue throughout the appeal process.

You have the right to see and/or have a copy of information from your case file released to you as is allowed by confidentiality guidelines.

You can present any information you wish during any stage of the appeal process and you can have anyone you want represent you. NOTE: DRS does not reimburse the cost of private legal assistance.

You may contact your counselor for further information. For help in requesting your appeal or for possible representation, contact the Client Assistance Program, 100 North First Street, 1st Floor West, Springfield, IL 62702 or call 1-800-641-3929 (voice) or 1-888-460-5111 (TTY).

DRS:4 (N-09-06)



August 28, 2017

Dorothy Reddic
1335 4th Ave
Rockford, IL 61104

<u>Via Email</u>

Dorothy Reddic
Brian Pflaum – Attorney for Grievant
Moshe Liberman – Attorney for Department
Beatrice Mwinzi – Vocational Rehabilitation Counselor
Andre Howard - Vocational Rehabilitation Supervisor
RE: Mediation Letter and Agreement to Mediate - I17-014596, I17-018998

Dear Ms. Reddic, Mr. Pflaum, Mr. Liberman, Ms. Mwinzi and Mr. Howard,

My name is Kelly Pasholk and I have been assigned as the Mediator in this matter. My objective is to assist each party in exploring their own interests, understanding the perspective of the other party, and, if possible, reaching an agreement. In other words, my job is to see if you can resolve the issues under appeal amongst yourselves. I do not represent any party and will not decide any issue in this case.

The Mediation will be confidential as provided by law. However, I would like both parties to know that I will have to break confidentiality to the extent necessary that I become aware of serious imminent harm to any other person or party or if attorney misconduct arises.

Also during the Mediation, it may be helpful for me to talk to each party privately. Meeting privately with each party is allowed in Mediation since the Mediator is not a decision maker. Everything said during these private conversations is confidential, unless you give me permission to share specific information

As stated above, I am disclosing to you that I am an attorney and have been a member of the Illinois Bar for 5 years. Since June 2017, I have been a Supervising Administrative Law Judge in the Bureau of Hearings. In addition, I have completed training and courses in Mediation and Arbitration. Although I am a licensed attorney, the services I am providing in this matter are solely as a neutral third party and I will not act as an advocate for any party to this Mediation. All parties are encouraged to have independent legal counsel.

- 1 -

The date for the Mediation is as follows:

DATE:       September 6, 2017
TIME:       9:00 AM
TELEPHONE: Via conference call (see below)

I have set up a conference line for the date of the Mediation. On September 6, 2017, @ 9:00 AM, please call 888-494-4032 and enter the access code 782-863-8595. You will be asked if you are entering the call as a participant or host. You will be entering the call as a participant; once the host (which is me) has called, we will be connected.

If you want to prior to the Mediation you can send me a brief summary of the issues (via email) that you would like to discuss during the Mediation. Please limit the summary to three pages. If you send me a summary, please send a copy to the other party at the same time.

Enclosed is an "Agreement for Mediation" which should be signed by all parties to this matter and sent back to me before September 6, 2017, @ 9:00 AM. Please read this agreement carefully and if you have any questions concerning any of its contents, please feel free to contact me directly. The agreement states that you are participating in Mediation voluntarily and agree to keep the Mediation confidential.

If the Mediation is successful, I will put the agreement in writing and advise the Bureau of Hearings that there has been a resolution. If the parties are unable to resolve this matter through Mediation, I will notify the Bureau Chief at the Bureau of Hearings in writing that the matter was not resolved and the matter will go to hearing.

The following is my contact information so that you can send me a signed copy of the Mediation agreement as well as the summary of issues and anything else that you want me and the other parties to review before the Mediation.

    Kelly Pasholk
    Supervising Administrative Law Judge/Mediator
    Bureau of Hearings, DHS
    69 W. Washington, 4th Floor
    Chicago, IL 60602
    (312) 793-6065
    Kelly.Pasholk@illinois.gov

Sincerely,
Kelly Pasholk

- 2 -

## MEDIATION AGREEMENT

### A.    Parties

Dorothy Reddic, Andre Howard and Beatrice Mwinzi (the "parties"), their respective attorneys and Kelly Pasholk (the "mediator") are scheduled to participate in a mediation. The parties and mediator agree to enter into the following agreement and agree to mediate to resolve the disputed issue(s).

### B.    Mediator

Kelly Pasholk agrees to serve as a mediator in connection with the mediation. The mediator is an impartial and will not serve as an advocate for either party. The mediator may meet with parties separately in a private session during the mediation process. Such meetings are confidential unless the party says otherwise. The mediator's role is to help the parties voluntarily negotiate their dispute.

The mediator shall disclose any potential conflicts of interests at any time throughout the mediation process. After such disclosure, the parties shall decide whether to continue the mediation or select another mediator.

### C.    Nature of Mediation

The parties agree to work with Kelly Pasholk as mediator. The mediation process is voluntary through which the mediator assists the parties in exploring solution alternatives. The mediator will also assist the parties in talking about and understanding all issues before any agreements are made so that both parties arrive at solutions that they both consider fair.

### D.    Voluntary Mediation

Mediation is a voluntary process; however, the parties agree to put forth a good faith effort to achieve an amicable solution. Either party may end or suspend the mediation process at anytime or for any reason.

The mediator also reserves the right to terminate the mediation process if the mediator feels that the mediation will lead to an unjust or unworkable result, or if the mediator determines that he or she can no longer effectively perform a facilitative role. The parties shall also determine the scope of the mediation and those boundaries shall be adhered to.

### E.    Confidentiality

Anything discussed during the process of mediation is confidential. The mediator will not disclose or discuss anything said here with anyone other than the parties.

The parties agree not to call the mediator to testify concerning the mediation. The parties understand that the mediator has an ethical responsibility to break confidentiality she becomes aware of serious imminent harm to any other person or party or if attorney misconduct arises

By signing below the parties acknowledge that they have read and understood the terms of this agreement and agree to be bound by its terms.

_____    9/2/2017
Party                                                   Date

_____    _____
Party                                                   Date

_____    _____
Party's Attorney                                       Date

# THE VOCATIONAL REHABILITATION PROGRAM APPEAL PROCESS

## THE DEPARTMENT OF HUMAN SERVICES
## OFFICE OF REHABILITATION SERVICES

### CONTACT INFORMATION FOR THE HEARINGS COORDINATOR

Bureau of Hearings
69 W WASHINGTON ST 4TH FL
CHICAGO, IL 60602

(800) 435-0774 (voice)
(877) 734-7429 (TTY)
(312) 793-3387 (fax)

DHS.HSPAppeals@illinois.gov
(e-mail)

### APPEAL RIGHTS

An appeal is a no-cost way for you to ask for a review of an action taken by the Department of Human Services ("DHS"), Division of Rehabilitation Services ("DRS") or the failure of the DRS to take action. If you participate in the Vocational Rehabilitation ("VR") Program or were denied participation in VR, you have the right to appeal a determination made by the DRS and to request a hearing. Additionally, you have the right to participate in Mediation and an Informal Resolution Conference. This brochure will explain your rights for the appeal process.

You can still try to resolve the issues informally with the DRS office, even after you request an appeal hearing. If you cannot resolve the issues, your appeal will be heard by a randomly assigned Hearing Officer. If you are appealing more than one issue, the BOH may decide to consolidate your issues into a single hearing.

The hearing will happen within sixty (60) calendar days from the date the Hearings Coordinator at the Department of Human Services Bureau of Hearings ("BOH") receives your request, unless you and the DRS office agree to an extension of time. The Hearings Coordinator will be your person to contact regarding the hearing. You should contact the Hearings Coordinator to:

- ✓ request a different hearing date,
- ✓ formally notify the BOH of who will represent you at the hearing,
- ✓ withdraw your appeal, or
- ✓ send documents for the Hearing Officer to review for the hearing.

### CAN THE BOH HEAR MY CASE?

You **can** appeal if the DRS office:

- ✓ refuses to provide any service it is authorized to provide,
- ✓ changes any service the DRS currently provides to you,
- ✓ ends a service or closes your case without your agreement,

You may request a foreign language interpreter, a sign language interpreter, or a reader to attend the hearing. Please make your request at least ten (10) days before the hearing. If you are visually impaired, you may either request a reader to read materials provided by the DRS office in preparation for the hearing or request that the materials are provided in Braille, large print, or on an audio recording. Please make your request within five (5) business days after you receive the notice of the date the hearing will take place.

All of the scheduled meetings regarding the appeal will be made at a reasonable time, date, and place.

You can review your case file, medical records, and other related documents before and during the hearing. You have a right to:

- ✓ an explanation of the appeal process,
- ✓ withdraw your appeal at any time,
- ✓ a timely, impartial, and confidential hearing, and
- ✓ question the DRS employees involved in the appealed action during the hearing.

Your services will continue until a final decision is made **unless** :

- ✓ the services were obtained through your misrepresentation, fraud, collusion, or criminal conduct,
- ✓ the service has been planned but not begun, or
- ✓ the customer, or the customer's parent, family member, guardian, advocate, or duly authorized representative requests that the service end.

Your services **will not continue** past the ending date on your Individualized Plan for Employment unless you and your Counselor agree to it. The extension will last until the Decision is mailed.

Your hearing will not be continued for the purpose of continuing services. A service that is the subject of an appeal will not continue if:

- ✓ you caused or requested the change,
- ✓ a service provider other than the DRS caused the change on its own,
- ✓ the service was planned for or authorized, but has not yet started, or
- ✓ there is medical or psychological information in your case record that serves as a reason to withhold a service.

The BOH will record the hearing electronically. This will be the official recording of the hearing. The BOH will provide one copy of the recording to you at no cost if you request it. If you cannot access an electronic recording, you can request the BOH to create a transcript of the hearing in an accessible format and provide you a copy at no cost.

You may request a Conference at any time, from when you filed your appeal until the Decision is issued. You can request a Conference by contacting your DRS office. Your representative can also attend the Conference.

The Conference will be led by a DRS supervisor. The supervisor is there to:

- ✓ explain the purpose of the Conference,
- ✓ assist in determining and clarifying the issues,
- ✓ ensure a fair and complete presentation and discussion of relevant information, and
- ✓ discuss possible agreement on a course of action.

If no agreement is reached, the DRS supervisor will explain what happens next in the appeal process. At the conclusion of the Conference, the DRS supervisor will write up any agreements you make into a document and ask you to sign it. If all of the issues have been worked out, please send a withdrawal notice to the Hearings Coordinator. If some issues are still unresolved, the DRS supervisor will list them on the document.

## MEDIATION

You have the option to participate in a no-cost mediation. Mediation is a meeting led by a neutral third party to open or improve communication in order to help you and the DRS office reach an agreement.

Mediation is confidential and will not be used as evidence in a hearing. The Mediator will be a randomly assigned hearing officer trained in mediation. You are free to end the mediation at any time.

If you want to mediate your case, please call or write to the Hearings Coordinator and request mediation. Requesting mediation will not delay your hearing or the Decision. You and the DRS office can submit evidence to the mediator for purposes of the mediation.

If you resolve your issues and reach an agreement with the DRS office through mediation, the DRS office will put your agreement into writing. Both you and the DRS office will sign the agreement. If all of your issues have been resolved, you will need to withdraw your appeal. This can be done by sending mail or an e-mail to the Hearings Coordinator.

## THE HEARING

**The hearing may last the entire morning or afternoon**, depending on the amount of information you and the DRS witnesses provide during the hearing. If you need a break during the hearing, make sure you let the Hearing Officer know so that the hearing can formally pause. The hearing will be recorded electronically, so the time of the breaks needs to be stated on the recording. The hearing is confidential and not open to the general public unless you want the hearing open to the general public.

The Hearing Officer will conduct the hearing by telephone. You must appear at the DRS office. If you cannot appear at the DRS office because of your disability, the hearing can occur in your home or you can request to participate by telephone. Make your request to the Hearings Coordinator by mail or e-mail at **least three (3) days** prior to the hearing. If you are allowed to participate by phone, please use a landline telephone. If you use a cellular telephone, make sure your battery is charged so that you can participate in the entire hearing.

The Decision will be issued within 30 calendar days after the hearing and put into effect within 20 calendar days after the DRS office receives the Decision.

If you do not agree with the Decision, you can ask for a review of the Decision in state court or in federal court. If you seek this type of review, the DRS office will still put into effect the Decision **before** the court completes its review.

Dorothy Reddic

Wed 12/27/2017 11:30 AM

To: Dimas, James T. <James.T.Dimas@illinois.gov>;

Cc: Wade, Quinetta <Quinetta.Wade@illinois.gov>; Madison, Richard <Richard.Madison@illinois.gov>; DHS.HSPAppeals <DHS.HSPAppeals@illinois.gov>; Wright, Kari <Kari.Wright@illinois.gov>; bdallas@niu.edu <bdallas@niu.edu>; Dorothy Reddic <msreddic@hotmail.com>; Stellar, Tonya <Tonya.Stellar@ed.gov>; Carol.Dobak@ed.gov <Carol.Dobak@ed.gov>; VR UNIT CHIEF DOE RSA <suzanne.mitchell@ed.gov>; Younger-White, Martha <Martha.Younger-White@illinois.gov>; Perry, Tamara <Tamara.E.Perry@ed.gov>;

Importance: High

Greetings Secretary James T. Dimas,

I have some questions which I need clarification and direct contact information for those who hold the positions listed below. As you are aware I am a tax payer in the state of Illinois and a person with disabilities who has been eligible for services through the Illinois Department of Human Services Division of Rehabilitation Services program since 2015 but I have been denied services by your staff therefore I have been going through a six-eight month hearing process to receive services. I have shared with many of the staff my ability status makes working through your processes very difficult but I have utilized the correspondence provided by your office and there are many inconsistencies, non-working phone numbers, letters sent in the mail by ghost writers (Titles rather than the name of the person) and emails come from multiple email address without names regarding the same appeal making it very daunting to follow the trail of communication and/or to get direct questions answered.) I have been told by the RSA staff that they provide funding to the Client Assistance Program to answer many of the questions I have sought but I have been told in Illinois our CAP staff have no authority over whether or not IDHS complies with the federal regulations for the Rehabilitation Services Act of 1973, they are unable to provide a direct working number to the Bureau of Hearings and Appeals, they can't ensure that the Bureau of Hearings provides reasonable accommodations during an appeal process, they can't make the VR provide a customer access to their files as outlined in the regulations when preparing for an appeal hearing, they don't have the authority to request an appeal on behalf of a VR customer, they are unable to assist with filing a lawsuit in the Circuit Court and they don't know what remedies are available when the Bureau of Appeals fails to follow the administrative or federal codes prior to a final administrative decision.

I am sharing all this with you to inform you that I have done my due diligence before contacting you but I realize there is no one other than the governor who is the highest ranking state employee within the Illinois Department of Human Services therefore in order to get definitive answers to my questions or concerns I would contact you directly prior to seeking clarification from the Governor's office. I recognize Gov. Rauner has been working hard over the past year to remove red tape causing delays in services, additional use of tax funds and adverse reactions to taxpayers and residents of Illinois but I see that there is still much work to do as it relates to the Illinois Department of Human Services. I pray he is aware of the multifaceted challenges faced by those of us with disabilities when interfacing with the agencies designated to provide services to people with disabilities. Considering he own nursing homes I know he can understand how important it is for a person with a disability to have a voice exercising informed choices as it relates to the services being rendered by state of Illinois employees utilizing federal dollars. It is of utmost importance that for me as a 40 year old Black woman that none of my civil rights are denied and that those who provide me services do so with fidelity creating an environment which levels the playing field to ensure my full participation is afforded to me through these services as strive to achieve my vocational goal and exercise my rights. I want you to know I write these things with the utmost respect and sincerity as a person with disabilities seeking your assistance with ensuring I receive the best information promptly so I can exercise rights afforded to customers outlined in the federal regulations and codes.

Questions for the IDHS:
- Who has this role for the IDHS DRS VR as it relates to hearings, "The final decision-maker for the hearing shall be designated by rule or statute governing the hearing. If there is no such designation in rule or statute, the Secretary shall designate the final decision-maker."
- Does the IDHS DRS VR have "an impartial review if the State has established procedures for such review under subparagraph "as it relates to hearings ?
- Does the IDHS DRS VR have a hearing board as it relates to hearings?
- What is the difference between the DHS.BAH@illinois.gov; DHS.HSPAppeals@illinois.gov and DHS.HSPCoordinator@illinois.gov email addresses when submitting a request for an appeal or updating information or asking questions?
- What is the official method for requesting reasonable accommodations as a person with disabilities when engaging with the IDHS? Does this differ from the various divisions?

Thank you in advance for your assistance and your prompt responses!

Respectfully,

Dorothy Reddic

Mwinzi, Beatrice <BEATRICE.MWINZI@illinois.gov>

Wed 10/11/2017 5:36 PM

To: msreddic@hotmail.com <msreddic@hotmail.com>;

Cc: BrianP@equipforequality.org <BrianP@equipforequality.org>; Liberman, Moshe <Moshe.Liberman@illinois.gov>; Howard, Andre M.
  <Andre.M.Howard@illinois.gov>; Hardy, Jennifer <Jennifer.Hardy@illinois.gov>;

Dear Ms. Reddic,

This is a follow up with you regarding our meeting to complete an IPE for your DRS case. I have scheduled you a meeting on Thursday, November 2nd, 2017 at 10:00 AM at our DeKalb DRS Office located at 1330 Oakwood Avenue, DeKalb, IL. 60115. In order to complete your IPE for DRS services we will need the following items:

1. Summer 2017 Grades  *Need to complete class*
2. Fall Semester 2017 Class Schedule
3. Fall Semester 2017 NIU Bill for Tuition & Fees, Required Books & Supplies, and Graduate Financial Award letter. — *Need to obtain*
4. ~~...~~  *what is this?*
5. Fall Semester 2017 ADHD Coach Bill and Monthly Progress Notes.  *VR responsibility will vendor*
6. A Copy of your 2016 Income Taxes that you filed this year.  *why?*  *they have access*
   ~~...~~
   ~~...~~ *letter from Karen Frazier*

Please bring the requested items with you at the time of the meeting or you may submit them to our DRS office earlier at your convenience.

Thank you.

Sincerely,

Beatrice

Beatrice Mwinzi, M.A.,
Senior Rehabilitation Counselor
IDHS/Division Of Rehabilitation Services
1330 Oakwood Avenue
DeKalb, IL 60115
Tel: 815-758-2471
Fax: 815-758-6942
E-Mail: Beatrice.mwinzi@illinois.gov

→ *Katie @ RAMP will help with Medicaid Card & Denials of Medication*

→ *Deb Miller will help to obtain program plan from Dr. Bryant that meets the requirements*

→ *Dr. Long to provide actual*

State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.

RE: Vocational Rehabilitation Services Continued Concerns and Complaints with Illinois---PROMPT Attention is Requested 7-31-2017



Stellar, Tonya <Tonya.Stellar@ed.gov>

Wed 8/16/2017 2:16 PM

To Dorothy Reddic <mizreddic@hotmail.com>;

Dear Ms. Reddic:

This email is in response to your follow-up inquiry submitted to RSA on July 31, 2017, regarding the provision and funding of disputed VR services and the appeals process. Specifically, you requested clarification as to whether the Illinois Division of Rehabilitation Services (DRS) is required to pay for disputed fees during the appeals process and for the options for recourse if your appeal has not been heard within 60 days from the date an individual files an appeal and services have not been rendered.



As previously communicated in a response emailed to you on June 19, 2017, RSA does not intervene directly with individual consumers; rather it funds a Client Assistance Program (CAP) in each State to assist applicants or eligible individuals experiencing issues with the provision of services through programs funded under the Rehabilitation Act of 1973, as amended by title I of the Workforce Innovation and Opportunity Act (Rehabilitation Act). In accordance with section 112 of the Rehabilitation Act, the CAP provides advocacy and legal representation to eligible individuals based on the merits of the individual's concerns. RSA further clarified that you have the right to appeal any decision made by DRS, as well as the right to receive assistance through CAP. The CAP has the right to determine the availability and level of representation for applicants based on the merits of the case and its available resources. You may recall in the June 19, 2017, correspondence, Ms. Leslie Jenkins, Illinois CAP representative, and Francisco Alvarado, acting CAP director, agreed to provide you with any clarification you needed related to the appeals process, including rules from the Illinois Administrative Code (IAC) specific to appeals and hearings.

In response to your most recent inquiry, we are providing additional guidance to clarify answers to your remaining questions. However, RSA continues to encourage you to pursue resolution of State matters of the State level. As clarified on July 25, 2017, a VR agency may withhold, suspend, reduce, or terminate the provision of VR services if there have been provided under an approved Individualized plan for employment (IPE) pending mediation, or by a decision by a hearing officer or administrative law judge. In accordance with 34 CFR § 361.57(c)(3), if an individual or the individual's representative, as appropriate, acting on behalf of or services that have been obtained through misrepresentation, fraud, collusion, or criminal conduct on the part of the individual or the individual's representative. As indicated, a VR agency may only pay for the VR services (e.g., tuition, fees, books and supplies for postsecondary education) approved by the VR agency and identified on the approved and signed IPE. You will need to work with the CAP representative, Ms. Jenkins, or Prairie State Legal Services to determine if the disputed tuition and fees were included as the approved job training services on your current IPE.

As you are aware, determinations made by a VR agency may be reviewed through informal dispute resolution, mediation, or impartial due process hearings. In response to your May 9, 2017, correspondence of May 1, 2017, filing of a request for a review of DRS' determination, you were scheduled for June 9, 2017, for an impartial due process hearing in section July 11, 2017. For your request on June 9, 2017, the initial due process hearing was rescheduled for August 1, 2017, at 9:00 am via telephone. On June 12, 2017, the CAP informed you of a delay in the review if your case by the Prairie State Legal Services attorney with whom you met, due to a death in the attorney's family, and that your case had been transferred to another attorney at the firm. At that time, the CAP also communicated that if the date or time of the scheduled hearing presented a problem, you were permitted to make a request for a continuance for the impartial hearing officer within three working days prior to the original hearing date.

In accordance with 34 CFR 361.57(e), a hearing conducted by an impartial hearing officer must be held within 60 days of an applicant's request for review of a determination made by the VR agency that affects the provision of VR services, unless informal resolution or mediation agreement is achieved before the 60th day of the parties request for a hearing. As previously communicated, you were scheduled within 60 calendar days, including the day you filed your request and the day for which the first hearing was scheduled. It appears that your hearing extension of time was agreed upon on July 10 for parties to attempt to resolve informally while the impartial hearing is still pending. In response to your concerns regarding the timely scheduling of an impartial due process hearing and your request for clarifying any recourse you may have, please contact Richard Madison, the Illinois Deputy General Counsel & CAse Administrative Law Judge Office of General Counsel at (312) 793-8894 or at richard.madison@illinois.gov.

After an impartial due process hearing, the impartial hearing officer makes a decision based on the provisions of the approved VR services and the requirements of the Rehabilitation Act, Federal and State regulations, and policies that are consistent with Federal regulations. You should receive a full written report of the findings and grounds for the decision within 30 days after the hearing is completed. The hearing officer's decision is final; however, you may request an impartial review if Illinois has established procedures for such a review.



During the months of April and May 2017, the RSA CAP liaison responded to your request for clarification of Federal statutory and regulatory provisions and reviewed the concerns you submitted related to sections of the Illinois Administrative Code via the web link in the IAC that you submitted to her on April 25, 2017. The Illinois CAP representative, Ms. Jenkins, whom you have been working with, has also provided you with clarification of State statute and regulations in writing, per your request. On June 21, 2017, Mr. Jenkins sent you an email suggesting you meet in person to address the issues you raised. She offered to go through each of your issues one by one and to review the rules and policies as they relate to your appeal. Per your request, she also offered to record this meeting so that you could review the meeting discussion, as needed. It is the CAP's intent to ensure that you receive any required accommodation that will enhance your ability to understand your services. Please continue to work with the Illinois CAP should you need additional information in accessible formats.

On May 4, 2017, the RSA CAP liaison provided you with the contact information for the U.S. Department of Education's Office of Civil Rights and encouraged you to contact it should you wish to file a complaint or to receive technical assistance related to any civil rights issues. If you have not done so, you may contact the Office of Civil Rights headquarters office in Washington D.C. for assistance related to civil rights at (800) 421-3481 or at OCR@ed.gov or through the U.S. postal service at:

U.S. Department of Education
Office for Civil Rights
Lyndon Baines Johnson Department of Education Bldg.
400 Maryland Avenue, SW
Washington, DC 20202-1100

RSA appreciates the opportunity to review your concerns and the information you provided. We encourage you to continue to work with the CAP, Prairie State Legal Services, and DRS to address your issues and concerns.

I wish you much success in your future and we hope this response provided you with a greater understanding of your due process rights.

Tonya

Tonya M. Stellar, M.A., CRC
Vocational Rehabilitation Program Specialist
State Team Facilitator
Rehabilitation Services Administration
Office of Special Education and Rehabilitative Services
U.S. Department of Education
550 12th Street SW, PCP 5097
Washington, DC 20202
(202) 245-6638
Tonya.stellar@ed.gov

From: Dorothy Reddic [mailto:mizreddic@hotmail.com]
Sent: Monday, July 31, 2017 12:28 PM
To: Stellar, Tonya
Cc: Dorothy Reddic; Edward.Anthony@ed.gov; Dobak, Carol; Glashan, Laura
Subject: Vocational Rehabilitation Services Continued Concerns and Complaints with Illinois---PROMPT Attention is Requested 7-31-2017
Importance: High

1. **PSPA 650 course $411.24 payment is due to Northern Illinois University** based on (Section 572.50 IPE Development and Content) which must be developed and agreed to and signed by the customer and approved by the customer which was completed on August 17, 2016 and signed by Dorothy Reddic, customer and Sonya Wiley, counselor.
   a. Section 572.50 Highlights the development and content process
   b. Section 572-30 Purpose of the IPE related to the customer's employment outcome based on informed choices.
   c. Section 572.60 Format of the IPE (a copy of the original IPE and any amendments MUST be provided to the customer.)
   d. Section 572.80 IPE amendments (any change to an individual planned program of services requires an amendment to the IPE. The "CASE RECORD" MUST have documentation reflecting the reason for the amendment.
   e. Section 572.100 Case Record Documentation (The customer's case record must contain documentation and justification for any decision to provide, deny or alter any services.)
   f. **Section 557.20 Informed Choice (VR customers have the right to full and active participants in the VR process…Through APPROPRIATE means of communication, customers will be informed about the availability and scope of informed choice, how it may be exercised,** and availability of auxiliary services for customers with cognitive or other disabilities who require assistance in exercising informed choice…DHS-DRS will also provide the customer with information that includes: a) the cost of services; b) the duration of services; c) accessibility of services; d) the qualifications of providers; e) the type of service offered by providers; ….**The decision-making process for the customer shall take into account the customer's values and characteristics, the availability of resources and alternatives and general employment outlook.)**
2. **Books and Supplies $564.26 payment is due to Northern Illinois University** based on
   a. (Section 521.20 Definitions "Support Services" means non-disability related services (e.g. tutors, transportation, books and supplies, etc.) needed to assist in the completion of a substantial service required to obtain the employment outcome.
   b. (Section 590.20 Availability of Services)
   c. (Section 590.230 Financial Guidelines for Training Services)
      i. b)   DHS-DRS VR Program will assist with the purchase of books, supplies and materials required of all students, necessary for a customer to complete his or her training program in accordance with 89 Ill. Adm. Code 562 and 89 Ill. Adm. Code 567 (Comparable Benefits). DHS-DRS may contribute up to $25 per term for consumable supplies (e.g., paper, pencils, notebooks).

3.) **NIU student medical insurance $1039 plus late fees.**
   a. (Section 590.230 Financial Guidelines for Training Services)
      a. c)   DHS-DRS will assist with the purchase of the medical/health related insurance coverage, if offered and required by the training institution. This shall be done in accordance with 89 Ill. Adm. Code 562 and 89 Ill. Adm. Code 567.

## Section 510.60: Service Notice

a)  This Section applies to VR and HSP customers only.

b)  When an individual applies for VR or HSP services from DHS-ORS, the individual must be informed that DHS-ORS notifies customers whenever it denies, modifies or terminates a service or services, if not mutually agreed upon, and of the right to action within 60 calendar days after a request for an application. DHS-ORS must send the customer a service notice at least 15 working days before the effective date of the action.

d)  The service notice must:

1)  contain the name, address and telephone number of the person to whom the request for a hearing must be made;

2)  outline the action;

3)  state the basis for the action;

4)  give the effective date of the action; and

5)  inform the customer of the right to a hearing in the matter and of the specific means of initiating the hearing.

e)  For issues related to the disposition of services during the hearing process, the customer must be advised that DHS-ORS will continue to provide the disputed services until DHS-ORS final decision has been rendered unless:

1)  the services being provided were obtained through misrepresentation, fraud, collusion or criminal conduct on the part of the customer;

2)  the service has been planned but not commenced; or

3)  the customer, or as appropriate, the customer's parent, family member, guardian, advocate or duly authorized representative requests the service be terminated. Continuances in the proceeding shall not be issued for the purpose of extending services.

b. **Section 521.20 Definitions** "Comparable Benefit" means a service that is available at the time the service is needed by a customer and is used to determine eligibility (see 89 Ill. Adm. Code 553) or to achieve the vocational goal and objectives specified in the customer's Individualized Plan for Employment (IPE) (see 89 Ill. Adm. Code 572) that, when provided to DHS-DRS customers by a public or private agency or agencies other than DHS-DRS, offset costs that would otherwise be paid by DHS-DRS or the customer.

c. **Section 590.35 Effect of Comparable Benefits**
Unless otherwise specified, Comparable Benefits (89 Ill. Adm. Code 567) must be sought for all services provided under this Part.

d. **Section 590.80 Medication**

a) DHS-DRS may pay for:

1) **medication as a substantial service necessary to cure or stabilize a condition in accordance with the customer's IPE; or**

2) **ongoing medication as a support service to the substantial service on the customer's IPE.**

b) Customers provided services under subsection (a) must be re-evaluated every six months to determine whether their medication needs are still required.

(Source: Amended at 36 Ill. Reg. 5698, effective April 13, 2012)

**Argument of Comparable Benefits:**

**Illinois Medicaid Recipient at the time of enrollment in the NIU Insurance.**

- **Illinois Medicaid does NOT cover medication for ADHD for Adults over the age of 19 years of age as evidenced by three "Claim Responses" provided by Downtown Discount Drugstore on**
  - **9/29/2016 Strattera 100 mg**
    - **(60) Product/Service not covered for patient age**
    - **(76) Plan limitations exceeded**
    - **(75) Prior Authorization Required**
  - **3/6/2017 Amphetamine Salt Com 20 mg**
    - **(60) Product/Service not covered for patient age**
    - **(76) Plan limitations exceeded**
  - **3/27/2017 Amphetamine Salt ER 30 mg**
    - **(60) Product/Service not covered for patient age**
    - **(76) Plan limitations exceeded**
    - **(75) Prior Authorization Required**

**NIU Student Insurance (Atena) Coverage for ADHD Medications**
- **Strattera 100 mg ($565.26 for one month)**
- **Amphetamine Salt Com 20 mg ($77.74 for one month)**
- **Amphetamine Salt ER 30 mg ($189.28 for one month)**
- **Total Monthly Expense without Insurance Coverage: ($832.28/month) and annual cost for (12 months $9,987.36)**

**If Illinois Medicaid is a "Comparable Benefit" to the NIU Student Insurance then DRS would have requested to pay for ADHD medication that is not covered by Medicaid which is four times more than the entire cost of insurance for twelve months $2,078.**

- **Illinois Medicaid Non-coverage of ADHD medication paid for by DRS---$9,987 Vs.**
- **NIU Student Insurance twelve months of coverage paid by DRS and covers ADHD medication for $2,078 annually.**

4.) The INACTION of DRS resulted in late fees, negative credit reporting, inability to register for courses in the Summer 2017 Semesters and Fall 2017 semesters. "Inaction" means the failure of DHS-DRS to act within the time lines specified by the program rules.

"Informed Choice" means an interactive process between DHS-DRS and the customer that provides sufficient, objective information and options that are designed to empower the customer in selecting services, providers and outcomes.

"Assistive Technology" means any item, piece of equipment, product or system, whether modified, customized or acquired commercially from the manufacturer or off the shelf, that is used to increase, maintain or improve the functional capabilities of an individual with a disability.

"Rehabilitation Technology" means systematic application of technologies, devices and services to meet the needs of people with disabilities and to address the barriers confronted by them.

**Dorothy Reddic Response to Being Denied Services for an Appeal Hearing July 11, 2017:**

A.) Tuition---$411.24 (PSPA 650)

B.) Books/Supplies---$564.26

C.) Student Medical Insurance $1039

D.) Late Fees incurred due to the lack of sufficient payments made by DRS


It is my understanding according to the Administrative Code this means the above issues are to be paid until a decision is rendered through the process of a hearing. I asked my counselor on May 11, 2017 at our last meeting if these items were going to be paid and she informed me I was misunderstanding this rule. I am not sure how because it appears very clear and concise. I do not that I am in negative standing financially with the university, I had to disclose more about my disabilities than necessary or warranted begging the Bursars office to grant me permission to register for classes. I know that I am going to lose my health insurance which will leave me without a way to have prescriptions filled that were going to be covered by DRS based on a March 2017 request that has not been accomplished to date due to a request for a copy of an actual prescription of controlled substance which is illegal for me to do and no alternative for documentation has been determined acceptable. I really don't see how this process is fair or how this could be discriminatory or retaliatory when clearly there was a delay in finding out the correct way to file an appeal, a possible delay in getting a date for the request for hearing, the non-continuance of services as outlined in Section 510.60 and no assistance from the Client Assistance Program with resolving any of these issues even with a referral to an outside source that has not accepted my case for assistance.


It is my hope and prayer that I can receive a detailed response to this email by the close of business today along with a follow-up name and phone number to a live person who can assist me with follow-up questions and next steps. Your assistance is anticipated and appreciated.


Respectfully,


Dorothy Reddic

815-519-5439


<http://www.ilga.gov/commission/jcar/images/admincode.gif>

TITLE 89: SOCIAL SERVICES
CHAPTER IV: DEPARTMENT OF HUMAN SERVICES SUBCHAPTER a: GENERAL PROGRAM PROVISIONS PART 510 APPEALS AND HEARINGS SECTION 510.60 SERVICE NOTICE

_____


Section 510.60  Service Notice


e)      For issues related to the disposition of services during the hearing process, the customer must be advised that DHS-ORS will continue to provide the disputed services until DHS-ORS final decision has been rendered unless:

1)     the services being provided were obtained through misrepresentation, fraud, collusion or criminal conduct on the part of the customer;

2)     the service has been planned but not commenced; or

3)     the customer, or as appropriate, the customer's parent, family member, guardian, advocate or duly authorized representative requests the service be terminated.  Continuances in the proceeding shall not be issued for the purpose of extending services.

_____

From: DHS.HSPAppeals <DHS.HSPAppeals@Illinois.gov>
Sent: Monday, May 8, 2017 3:57 PM
To: Dorothy Reddic
Cc: Mwinzi, Beatrice; Howard, Andre M.
Subject: RE: [External] Request for Hearing Dorothy Reddic ---Please Confirm Receipt

You may fax it to: 312 793-8573

From: Dorothy Reddic [mailto:msreddic@hotmail.com]
Sent: Monday, May 08, 2017 3:08 PM
To: DHS.HSPAppeals
Cc: Mwinzi, Beatrice; Howard, Andre M.; Dorothy Reddic
Subject: RE: [External] Request for Hearing Dorothy Reddic ---Please Confirm Receipt

Hi do you have a fax number I can send it to?

Thank you!

Dorothy Reddic

On May 8, 2017 2:19 PM, "DHS.HSPAppeals" <DHS.HSPAppeals@Illinois.gov> wrote:

Your form was blank - no information was on the form.

From: Dorothy Reddic [mailto:msreddic@hotmail.com]
Sent: Monday, May 08, 2017 2:13 PM
To: DHS.HSPAppeals
Cc: Howard, Andre M.; Mwinzi, Beatrice; Dorothy Reddic
Subject: RE: [External] Request for Hearing Dorothy Reddic ---Please Confirm Receipt

Good Afternoon,

Please advise me what makes my form incomplete. I have been calling and the phone number keeps hanging up on me.

Your prompt attention is request. Thank you very much!

Respectfully,

Dorothy Reddic

On May 8, 2017 1:13 PM, "DHS.HSPAppeals" <DHS.HSPAppeals@Illinois.gov> wrote:

Good Afternoon Ms Reddic,

Please be advised, the form submitted is not complete and therefore we're unable to process your submission.

Please complete the form and remit upon completion.

Thank you.

From: Dorothy Reddic [mailto:msreddic@hotmail.com]
Sent: Monday, May 01, 2017 8:39 PM
To: DHS.BAH
Cc: Mwinzi, Beatrice; Howard, Andre M.; Dorothy Reddic
Subject: [External] Request for Hearing Dorothy Reddic ---Please Confirm Receipt
Importance: High

Dear Hearings Coordinator:

My name is Dorothy Reddic, Vocational Rehabilitation Customer and I am requesting a hearing. Please find the Request for Hearing Form attached. Also please confirm receipt.

Respectfully,

Dorothy Reddic

RE: [External] Request for Hearing Dorothy Reddic ---Please Confirm Receipt 6-8-2017

DHS.HSPAppeals <DHS.HSPAppeals@Illinois.gov>

Tue 7/18/2017 9:45 AM

To:Jenkins, Leslie C. <Leslie.C.Jenkins@Illinois.gov>;

Cc:Mwinzi, Beatrice <BEATRICE.MWINZI@illinois.gov>; Howard, Andre M. <Andre.M.Howard@illinois.gov>; Shakur, Taqiyyah <Taqiyyah.Shakur@Illinois.gov>; Alvarado, Francisco <Francisco.Alvarado@illinois.gov>; Dorothy Reddic <msreddic@hotmail.com>;

🖇 1 attachments (1011 KB)

Reddic--Release of Informations for CAP 4-12-2017.pdf;

Good morning,

The Bureau of Hearings has received your request for Mediation.

At this time, the Bureau of Hearings is unable to process requests from unauthorized individuals. A Release of Information does not grant authorization. Should you have a signed document granting the authority to represent the client, please remit.

Also, please be advised that Mediation is unable to occur before a scheduled hearing. A continuation request may also be requested so that Mediation occurs before a set hearing.

Thank you for your time and understanding,
IL Department of Human Services
Bureau of Hearings


-----Original Message-----
From: Jenkins, Leslie C.
Sent: Monday, July 17, 2017 10:32 AM
To: DHS.BAH
Cc: Mwinzi, Beatrice; Howard, Andre M.; Shakur, Taqiyyah; Alvarado, Francisco; Dorothy Reddic
Subject: RE: [External] Request for Hearing Dorothy Reddic ---Please Confirm Receipt 6-8-2017

Good Morning,

DRS/VR customer, Dorothy Reddic, would like to request a Mediation with regards to Appeal #117-014596. CAP is sending this request on behalf of the customer. The customer's ROI is attached. Your prompt attention to this matter is greatly appreciated as hearing has been scheduled for August 1, 2017.

Leslie C. Jenkins
Client Assistance Program (CAP)
4450 North Prospect Road
Peoria Heights, IL 61616
(309) 686-7877 Phone
(309) 686-7880 Fax
Leslie.c.jenkins@illinois.gov


-----Original Message-----
From: DHS.HSPAppeals
Sent: Friday, June 09, 2017 10:33 AM
To: Dorothy Reddic
Cc: Mwinzi, Beatrice; Howard, Andre M.; Shakur, Taqiyyah; Jenkins, Leslie C.; Alvarado, Francisco
Subject: RE: [External] Request for Hearing Dorothy Reddic ---Please Confirm Receipt 6-8-2017

Good Morning Ms. Reddic,

Please be advised that a subsequent submission is valid and therefore an appeal is currently pending under appeal #: I17-014596.

Currently your appeal hearing is scheduled for July 11, 2017.

In regards to the outstanding balance issue, that is an issue to be address at your scheduled hearing of July 11, 2017 before a hearing.

Thank you.

From: Dorothy Reddic [mailto:msreddic@hotmail.com]
Sent: Thursday, June 08, 2017 4:29 PM
To: DHS.HSPAppeals
Cc: Mwinzi, Beatrice; Howard, Andre M.; Shakur, Taqiyyah; Dorothy Reddic; Jenkins, Leslie C.; Alvarado, Francisco
Subject: Re: [External] Request for Hearing Dorothy Reddic ---Please Confirm Receipt 6-8-2017
Importance: High

Greetings "Rosa" or Director of Hearings:

My name is Dorothy Reddic, a customer of the DRS VRS program. On May 1, 2017 I filed a Request for Hearing to your office via email. I received an email on May 8, 2017 informing me that my request was "Incomplete" and upon further inquiry I was informed by an "unnamed" person from this email that the document I submitted was blank. I sent the completed form I sent the first time to this email address and faxed it to the following fax number provided: 312 793-8573 and requested confirmation upon receipt. Although I did not receive a confirmation.

Since that time 30 days have passed and I have called the following number 1-800-435-0774 (voice) on many occasions over the past 30 days and each time I have been hung up on when I selected the Appeals/Hearing option. I have called several numbers seeking the phone number to a live person who could tell me the status of the request for hearing filed on May 1, 2017. This week I was blessed to speak to two individuals who work for DHS and requested assistance regarding the hearing process I was provided three more numbers two for Chicago with a 312 area code and a non-working Springfield number but I was unable to reach anyone. I persisted to call multiple numbers and select various options and I spoke to a kind woman named "Rosa" who indicated the person I needed to speak with was also named "Rosa" who coordinates the hearings. I asked to speak to a supervisor and she transferred me to Mrs. Jones who indicated that she was not the person who handles appeals for VRS but "Rosa" was the person I needed to speak with because I didn't have an appeal date assigned. She agreed to walking the message to Rosa and asking her to return my call on Tuesday, June 6, 2017 in the afternoon with further information. Unfortunately I have not received any return calls from Rosa nor have I received a letter notifying me of the "timely" and "impartial hearing" regarding my request for a hearing.

It is unfortunate as a person with multiple disabilities I have to seek multiple entities for assistance to figure out how to file an appeal, a complaint and how to properly follow-up regarding the status of the hearing. DHS assist individuals as myself with disabilities but the process isn't conducive to a person with disabilities and it seems very unfair but it is distressing. Although I have asked multiple people when I have spoken to someone I am not sure how the term "timely" is defined but 30 days seems to be reasonable. Please provide me a clear definition of how "timely' is defined.

Additionally based on Section 510.60 Service Notice, I would like to know why I have an outstanding balance with Northern Illinois University for the items listed on the Request for Hearing:

offers a variety of technical programs at the certificate, diploma and associate degree levels. In addition, NTID students may participate in educational programs available through the host institution, the Rochester Institute of Technology (http://www.rit.edu/).

- *Act to Promote Education of the Blind* of March 3, 1879.
  The *Act* supports the American Printing House for the Blind (APH (http://www.aph.org/)) to provide high-quality educational materials to legally blind persons enrolled in educational or vocational training programs below the college level so that these students may benefit more fully from their educational programs. Materials are produced and made available free of charge to schools and states through proportional allotments that reflect the number of blind students in each state. The allotments are based on an annual census, conducted by APH, of the number of students who are legally blind in each state and are provided in the form of credits.

- *The Helen Keller National Center Act.* (*HKNC*)
  The Helen Keller National Center for Deaf-Blind Youths and Adults (http://www.hknc.org/) (as amended by P.L. 99-506; 29 U.S.C. 1901 (http://www.gpo.gov/fdsys/pkg/USCODE-2011-title29/html/USCODE-2011-title29-chap21.htm) et seq.) was created by Congress in 1969 and operates under the auspices of Helen Keller Services for the Blind, Inc (http://www.helenkeller.org/). The center provides services on a national basis to individuals who are deaf-blind, their families and service providers through three component programs.

- *The Randolph-Sheppard Act.* (Vending Facilities for the Blind)
  The Vending Facility Program (/programs/rsarsp/index.html) authorized by the *Randolph-Sheppard Act* (P.L. 74-732, as amended by P.L. 83-565 and P.L. 93-516, 20 U.S.C. section 107 (http://www.gpo.gov/fdsys/pkg/USCODE-2011-title20/html/USCODE-2011-title20-chap6A-sec107.htm) et seq.) provides persons who are blind with remunerative employment and self-support through the operation of vending facilities on federal and other property. The program, enacted into law in 1936, was intended to enhance employment opportunities for trained, licensed blind persons to operate vending facilities. At the outset, sundry stands were placed in the lobbies of federal office buildings and post offices. The law was amended in 1954 and again in 1974 to ensure individuals who are blind a "priority" in the operation of vending facilities on federal property that include cafeterias, snack bars, miscellaneous facilities, and facilities comprised solely of vending machines.

^ Top

## Implementing OSERS' Policies and Legislation

Additional resources and information about legislation and policy can be found on the following pages:

- OSEP (Office of Special Education Programs) Legislation & Policy (/about/offices/list/osers/osep/policy.html)

- RSA (Rehabilitation Services Administration) Legislation & Policy (/about/offices/list/osers/rsa/policy.html)

^ Top

| OSERS Navigation |
|---|
| About OSERS (/about/offices/list/osers/aboutus.html) \| People and Offices (/about/offices/list/osers/people.html) \| Programs and Projects (/about/offices/list/osers/programs.html)<br>Grants and Funding (/about/offices/list/osers/funding.html) \| Legislation and Policy (/about/offices/list/osers/policy.html)<br>Publications, Products, Research and Statistics (/about/offices/list/osers/reports.html)<br>Additional Resources (/about/offices/list/osers/resources.html) \| Contact and Feedback (/about/offices/list/osers/contacts.html) \| FAQs (/about/offices/list/osers/faq.html) |

Printable view (/print/about/offices/list/osers/policy.html)          Last Modified: 06/15/2017

## How Do I Find...

- Student loans, forgiveness (/fund/grants-college.html?src=m)
- College accreditation (http://www.ed.gov/accreditation?src=m)
- Every Student Succeeds Act (ESSA) (http://www.ed.gov/essa?src=m)
- FERPA (/policy/gen/guid/fpco/ferpa/index.html?src=m)
- FAFSA (http://fafsa.ed.gov/)

More > (/about/top-tasks.html?src=m)

## Information About...

- Transforming Teaching (http://www.ed.gov/teaching?src=m)
- Family and Community Engagement (http://www.ed.gov/family-and-community-engagement?src=m)
- Early Learning (/about/inits/ed/earlylearning/index.html?src=m)

## Related Topics

Dorothy Reddic
1335 4th Ave. Rockford, IL 61104
815-200-9730
msreddic@hotmail.com

Illinois Division of Rehabilitation Services
Attention: Quinetta Wade
100 S. GRAND AVENUE,
1ST FLOOR
SPRINGFIELD, IL 62762
Phone: 217-782-2094
Email address: Quinetta.Wade@illinois.gov

December 1, 2017

Re: Individualized Employment Plan Services—Enforcement Requested

Dear Ms. Wade,

My name is Dorothy Reddic, Illinois Department of Human Services Vocational Rehabilitation customer in the DeKalb office, but a person living with a disability pursuing my vocational goals. I am requesting you as the Director of the IDHS DRS VR program to exercise your authority to direct the Vocational Rehabilitation Services Program of DeKalb, IL to require the DeKalb, IL VR staff, Beatrice Mwinzi and Andre Howard to implement the IPE as written with my informed choices inserted on the Individualized Employment Plan which was excluded in print despite my input during the Individualized Employment Development/writing of the plan on November 21, 2017. The IPE is signed by myself and Beatrice Mwinzi and it includes both of our insight on the document. The State of Illinois Administrative Code,

> *Section 572.50 IPE Development and Content The IPE must be developed, agreed to and signed by the customer, or, as appropriate, the customer's parent, family member, guardian, advocate, or authorized representative, and approved and signed by the counselor. The IPE shall be developed and implemented in a manner that affords the customer the opportunity to exercise informed choice (89 Ill. Adm. Code 557.20) in selecting an employment outcome, the specific vocational services to be provided, the provider of the services and the methods used to provide services.*

Please see the IPE included with this email that was written on 11/21/2017, signed by me the customer and Beatrice Mwinzi, VR counselor. In an email written by Beatrice Mwinzi on 11/29/2017 she requested I return for another meeting to write a new IPE after taking time off from work, spending two hours on the highway to travel to and from the DeKalb VR office, including the time of the four other people who were present with me during the four-hour meeting to write a new plan as states it has been invalidated by my handwritten additions. She intentionally misled me during the meeting knowing my disabilities do not afford me the same opportunity to participate in meetings without reviewing a document, having it read aloud and being able to ask questions she deceptively informed me that she was covering everything that was in the IPE. Upon review I discovered it was not inclusive of the information we discussed and it was almost written verbatim like the previous IPE which has caused me to be stuck in an ongoing seven-month appeal hearing process to dispute services denied by the IDHS DRS VR

Dorothy Reddic
1335 4th Ave. Rockford, IL 61104
815-200-9730
msreddic@hotmail.com

despite their failure to provide proper notice and having previously making payments for the same items under the same IPE the previous semester.

You are aware of the many challenges I have experienced as a result of your staff's misuse of their authority, federal funds and causing great harm to me as a person with mental health disorders, physical challenges and the injuries caused by the adverse actions of the Illinois Department of Human Services staff, I am asking you to intervene and stop the perpetual discriminatory practices by the staff under your direction as the Director of the Division of Rehabilitation Services for the Illinois Department of Human Services.

The State of Illinois Administrative Codes are in "Conflict of Authority" with the federal regulations based on the Illinois Department of Human Services Division of Rehabilitation Services and Bureau of Appeals Hearings failure to continue services during an appeal filed on May 1, 2017, failure to afford due process within 60 days based on the appeal hearing extending into December 2017 without the consent of the customer or representatives and failure to adhere to the rulings of the hearing officer when instructed to write a new Individualized Plan of Employment and resume services as directed by the Emily Mehaan, Administrative Law Judge on October 12, 2017 during the appeal hearing filed on July 26, 2017 regarding the Notice of Closure issued by IDHS DRS VR staff on July 13, 2017, illegally per the ALJ and regulations. I implore you as the Director of the Illinois Department of Human Services Division of Rehabilitation Services Vocational Program to issue an immediate directive to your staff to ensure all services as written in the Individualized Employment Plan dated November 21, 2017 be commenced to prevent the further denial of services I am qualified to receive according to the Rehabilitation Services Act of 1973.

**Your prompt attention is requested and required to these matters.**

Respectfully,

Dorothy Reddic
Illinois Vocational Rehabilitation Services Customer

Enclosures: Individualized Employment Plan for Dorothy Reddic 11-21-2017; Notes from November 21, 2017 Meeting with DRS taken by Jessica Zimmerman from RAMP for Dorothy Reddic during IPE meeting; Email from Beatrice Mwinzi 10/11/2017; Email from Tonya Stellar 8/16/2017; Email from Andre Howard 7-30-2017; Northern Illinois University Unpaid Bills—Reddic for Spring 2017 & Fall 2017; NIU Parking Permit Rates 2017-18; ADHD Coaching for Dorothy Reddic Bill 10-17-2017; Administrative Codes 590.230, Information and Instructions for Students Receiving DHS-DRS Financial Contribution; NIU Term Summaries Spring 2017 & Fall 2017; NIU Student Health Insurance; VR Exception Request 11/21/2017; Administrative Code: 567.30 Exceptions to Comparable Benefits; 567.20 Comparable Benefits, Letter from Dr. Soufan 7-17-2017; Letter from Dr. Jones 8-21–2017; Letter from Karen Frazer 8-25-2017; (3) Pharmacy Detail Claims; Letter from Dr. Long 3-9-2017; Letter from Carole Drennan 10-5-2017; Request for Hearing for Dorothy Reddic 5-1-2017; Closure Notification for Dorothy Reddic 7-13-2017; Request for Hearing Dorothy Reddic 7-25-2017; State of Illinois Vocational Rehabilitation Appeal Rights

CC: Bryan Dallas, Tonya Stellar, Congresswoman Cherri Bustos, State Representative Litesa Wallace, Jessica Zimmerman, Katie Lee, Jackie Sundquist, Debra Miller, Beatrice Mwinzi, Andre Howard, Lori Zenner, Client File

Dorothy Reddic
1335 4th Ave. Rockford, IL 61104
815-200-9730
msreddic@hotmail.com

## Rehabilitation Services Act of 1973 (Excerpts Applicable)

- **Illinois Administrative Code 572.50 (e)** *In unusual circumstances, the Chief of the Bureau of Field Services or the Bureau of Blind Services may grant an exception to the timeline in subsection (d) upon request and when an appropriate justification is provided by the counselor with acknowledgement from the customer,*

- **Illinois Administrative Code 508.170 (c) Miscellaneous** *Conflict of Authority. If the hearing is being conducted pursuant to federal law and there is a conflict between this Part and federal procedural or evidentiary requirements, then the federal requirements shall control.*

**§ 361.57 Review of determinations made by designated State unit personnel.**

**(e)** *Impartial due process hearings.* **The State unit must establish and implement formal review procedures, as required under paragraph (b)(1)(i) of this section, that provide that –**

- **(1)** Hearing conducted by an impartial hearing officer, selected in accordance with paragraph (f) of this section, must be held within 60 days of an applicant's or recipient's request for review of a determination made by personnel of the State unit that affects the provision of vocational rehabilitation services to the individual, unless informal resolution or a mediation agreement is achieved prior to the 60th day or the parties agree to a specific extension of time;

- **(4)** *Impact on provision of services:* The State unit may not institute a suspension, reduction, or termination of vocational rehabilitation services being provided to an applicant or recipient, including evaluation and assessment services and individualized plan for employment development, pending a resolution through mediation, pending a decision by a hearing officer or reviewing official, or pending informal resolution under this section unless –

- **(i)** The individual or, in appropriate cases, the individual's representative requests a suspension, reduction, or termination of services; or

- **(ii)** The State agency has evidence that the services have been obtained through misrepresentation, fraud, collusion, or criminal conduct on the part of the individual or the individual's representative.

- 34 CFR Part 361 and 29 U.S. Code § 721 (2)(B)(ii)(II) - State plans Designated State Agency Designated State Unit has a full-time director who is responsible for the day-to-day operation of the vocational rehabilitation program;

Dorothy Reddic
1335 4th Ave. Rockford, IL 61104
815-200-9730
msreddic@hotmail.com

| References |
|---|

The Rehabilitation Services Act of 1973. https://www2.ed.gov/policy/speced/reg/narrative.html

Administrative Rules. http://www.dhs.state.il.us/page.aspx?Item=22450

Rehabilitation Services. http://www.dhs.state.il.us/page.aspx?item=29764

Informed Choice. http://www.dhs.state.il.us/page.aspx?item=32188

Keeping Track of Your Progress. http://www.dhs.state.il.us/page.aspx?item=55172

State Rehabilitation Council—DHS 3000



State of Illinois
Department of Human Services - Division of Rehabilitation Services
## INDIVIDUALIZED PLAN FOR EMPLOYMENT

Customer Name: DOROTHY REDDIC

Case Number: 02344928

Rehabilitation Counselor/Instructor: BEATRICE MWINZI

Date Completed: 11/21/2017

### Plan

| | | |
|---|---|---|
| Amendment Number: | 6 | |
| No cost services only? | ☐ Yes ☒ No | Review Date: 11/21/2018 |
| Post employment plan? | ☐ Yes ☒ No | Post employment anticipated? ☐ Yes ☒ No |

### Amendment

| | | GOAL | |
|---|---|---|---|
| Annual Review? | ☒ Yes ☐ No | Goal Completion Date: | 11/21/2018 |
| Change in Goal? | ☒ Yes ☐ No | Customer is job ready? | ☐ Yes ☒ No |
| Change in Service? | ☒ Yes ☐ No | Job Chosen: | Education Administrators, Postsecondary |

I understand that I am eligible to receive services through the Division of Rehabilitation Services (DRS) Vocational Rehabilitation program as I am an individual with a disability and need services to get, keep, advance in, or re-enter a job. The Job Chosen above is my job goal and I expect to achieve my employment outcome by the Goal Completion Date above.

I understand I may appeal any decisions or changes to my plan I do not agree with. I have been given my appeal rights and understand them. I understand I may call Client Assistance Program (CAP) for assistance at 1-(800) 641-3929 (V/TTY) to get help.

Based on my informed choice, my counselor and I have discussed the services and approved service providers necessary to reach my job goal and how to get those services. My counselor and I have selected the services and approved service providers listed below. *Health insurance based on customer's need based on for comparable benefit*

### SERVICES *Tuition up to 9 credit hours per term based on the advisement of NIU.*

| | |
|---|---|
| Service: | Training - Tuition and Fees minus available Grants and Waivers and Customer 10 Percent Contribution. *How will you determine what tuition and fees you* |
| Provider: | DRS In-House *will pay? What amount will you pay?* |
| Start Date: | 11/21/2017 *When will you make these payments?* |
| End Date: | 11/21/2018 *Will you write "Tuition & fees as outlined by NIU personnel* |
| Progress: | *to achieve vocational goal" up to 9 credit* Customer will complete all required courses and graduate on scheduled date and obtain and *hours* maintain employment in the community. *a semest* |

| | |
|---|---|
| Service: | Counseling & Guidance - Vocational Counseling and Guidance regarding Training and Employment. |
| Provider: | DRS In-House |
| Start Date: | 11/21/2017 |
| End Date: | 11/21/2018 |
| Progress: | Customer will follow all appropriate instructions and directions from DRS staff in order to successfully complete college training and obtain employed. Customer will remain in contact with DRS staff during the life of this case. |

*Counselor will provide clear, concise, step-by-step instructions in an electronic format outlining the date, time and method for submitting the information. The counselor will allow the customer to make an informed decision regarding the timelines to ensure the customer drives the services provided.*

*The counselor will assist the customer with navigating and correct linking to achieve referrals.*



State of Illinois
Department of Human Services – Division of Rehabilitation Services
**INDIVIDUALIZED PLAN FOR EMPLOYMENT**

Customer Name: DOROTHY REDDIC

Case Number: 02344928

| Service: | Information & Referral – Customer will be provided Information and Referrals as determined necessary for completing college training and employment. |
|---|---|
| Provider: | DRS In-House |
| Start Date: | 11/21/2017 *The counselor will ensure the referrals are made in* |
| End Date: | 11/21/2018 *writing and will send partial referrals to agencies or* |
| Progress: *(Agreed upon)* | *organizations with the written consent of the customer to her* Agreed upon |
| | Customer will follow up 100% on all appropriate community referrals and appropriate information *the* which will assist her in completing college training and becoming successfully employed. *cush w* |

| Service: | Supportive Services – Customer will be provided ADHD Coaching Services as determined necessary by DRS staff. |
|---|---|
| Provider: | ELIZABETH PAPARO |
| Start Date: | 11/21/2017 *Counselor will work directly with vendor provide her a* |
| End Date: | 11/21/2018 *description of approved services, outline how to complete* |
| Progress: *Remove due to ADHD impacting me outside the semesters and* | *invoices and request clearly write acceptable terms of pa* Customer may utilize the ADHD Coach services to assist her in successful completion of her *surhu[?]* Doctorate Degree at NIU. Sessions may be approved for one hour per week during the college *require* semesters, and documentation of progress for must be provided to DRS at least on a monthly *acceptance) is required in preparation for the semester Advise* basis. *Comp[?]* |

| Service: | Supportive Services – Customer will be provided Transportation Allowance on a semester basis only for the Fall Semester 2017 only based on round trip Mileage for the days customer is attending classes at NIU. Customer must provide a class schedule at the beginning of the semester. Customer will live in the NIU dorms beginning in the Spring Semester 2018. |
|---|---|
| Provider: | DRS In-House *Transportation Allowance will be covered for* |
| Start Date: | 11/21/2017 *appointments, support services, purchasing school supplies* |
| End Date: | 12/25/2017 *meetings with VR counselor and other services tied* |
| Progress: | *to her IPE to assist the customer achieve her vocational* Client will attend classes as scheduled during the school Term. *goal. The customer will submit a mileage form every 30-60 days to VR Counsel* |

| Service: | Supportive Services – Required Books and supplies based on course syllabus. Customer will be allowed $25.00 for consumable Supplies. |
|---|---|
| Provider: | NIU BOOKSTORE *will increase to include printer ink & paper by* |
| Start Date: | 11/21/2017 *Counselor* |
| End Date: | 11/21/2018 *will include fees for software required for* |
| Progress: | *dissertation.* ✓ Customer will provide syllabus, book receipts and grades from each semester. |

| Service: | Supportive Services – Customer will be assisted with purchase of a Parking permit for the Fall Semester only since customer will be living in the dorms in the Spring Semester 2018. |
|---|---|
| Provider: | NOORTHERN ILLINOIS UNIVERSITY *The appropriate parking passes* |
| Start Date: | 11/21/2017 *will be purchased when the customer is a* |
| End Date: | 12/25/2017 *Commuter student and/or when customer lives* |
| Progress: | Customer will have a place to park her car will on the NIU campus. *in campus housing* |

*Counselor will work with customer to determine when it is appropriate to purchase an off campus and residential permit every semester based on the customers living arrangements. Counselor will arrange payment with NIU.*



State of Illinois
Department of Human Services - Division of Rehabilitation Services
**INDIVIDUALIZED PLAN FOR EMPLOYMENT**

Customer Name: DOROTHY REDDIC

Case Number: 02344928

| | |
|---|---|
| Service: | Supportive Services – Room and Board costs minus Grants and customer contribution of $1548.00 per semester beginning with the Spring Semester 2018 |
| Provider: | NIU |
| Start Date: | 01/15/2018 |
| End Date: | 11/21/2018 |
| Progress: | Customer will have a place to stay during the school year while she attends NIU. |

Responsibilities *Counselor will inform NIU through Voucher their agreement to payment room & board plus inform customer within 7-10 days of*

Customer's personal and financial responsibilities in achieving the job objective are: *& board plus inform customer within 7-10 days of*
Customer will turn in school grades, class schedule, current plan of training, College bill with awards, Book/Supplies list, syllabi, *local* each semester, apply for appropriate Grants on time if available, comply with the Division of Rehabilitation Services academic *do* sponsorship rules while attending Northern Illinois University. She will submit proof of household income. She will follow all appropriate instructions and directions from the staff of the Division of Rehabilitation Services. She will stay in contact with the Division of Rehabilitation Services during the life of her case, and meet in person at least twice per semester. *when customer*

Comments: *1st billing*
DRS will send vouchers when documentation for the semester has been received. Customer will be responsible for 10% of her tuition and fees. She will keep all documentation and follow all appropriate instructions from all service providers identified in her Individualized Plan for Employment (IPE). She must maintain at least a Cumulative Grade Point average of 3.00 each semester, or maintain a sufficient cumulative GPA to meet the PhD graduation requirements.

I understand my Plan will be reviewed on 11/21/2018.

At this time I do do not expect to need Post Employment Services, but will have my need reviewed before my case is closed.

Ticket to Work:
If you have been determined disabled by the Social Security Administration and qualify for the Ticket to Work Program, you agree to assign the DHS/Division of Rehabilitation Services your Ticket to Work by signing this Document.

X _(signature)_ _(With Written revisions)_ on      11/21/17
Customer                                              Date                          Parent/Guardian

_(signature)_ Beatrice Mu___      11/21/17
Rehabilitation Counselor/Instructor:                Date

Notes from November 21, 2017 Meeting with DRS taken by Jessica Zimmerman from RAMP for Dorothy Reddic during IPE meeting

Dorothy Reddic meeting 11/21/17

Meeting was supposed to begin at 2:00 at the DHS office in DeKalb. CSR arrived 20 minutes late. Meeting didn't begin until 2:40 due to CSR, Andres Howard (Administrator) , Beatrice Mwinzi (VR Counselor) and Brenda Reddic (CSR's mother) needing to sign release of information forms.

Present at the meeting was: Writer, Katie Lee (DeKalb County Manager), Deborah Miller (NIU Disability Support Services), Andres Howard (DHS/DRS Administrator), Beatrice Mwinzi (VR Counselor for CSR), Dorothy Reddic (CSR) and Brenda Reddic (CSR's mother). The purpose of today's meeting was to review and edit CSR's IPE through DRS. Writer was in attendance for support and note taking purposes.

Beatrice began speaking saying that once they complete the IPE it will be active and they will begin paying for college expenses for CSR. CSR has been receiving bills from August 17th to current, Andres stated that those bills will be taken care of once this IPE is active. Beatrice stated that the plan becomes effective the day the IPE is signed. Beatrice stated that everyone has a right to appeal the IPE. Beatrice reiterated that CSR's file is active waiting for the IPE to be completed and signed.

Dorothy spoke up and apologized for being late and all the numerous rescheduling with DRS to get IPE completed. CSR appreciates everyone working with CSR and appreciates all the help. Beatrice is CSR's 3rd counselor and the 2 previous counselors have both informed CSR of all sorts of different things that weren't consistent so CSR is nervous about what to expect with current Counselor.

Beatrice stated that IPE expired August 17th 2017 the new IPE will take over and there will be no issues with the bills not being paid between August 17th and now. Beatrice filled out most of the IPE while waiting for CSR to arrive.

Deborah broke in and asked a general question of if it's possible to have these meetings audio recorded for people who need it. Beatrice and Andres both stated that it would have to be taken up with Legal and that they were not sure. Dorothy wanted to formally request accommodations because CSR wanted the meetings transcribed so CSR can go back and review them due to her ADHD. CSR stated that she was told by DRS (no name was given) that it was an undue burden. Beatrice told CSR that they don't record meetings and that CSR is welcome to bring whomever to help her take notes and be an extra set of ears. CSR stated that that was why writer was at the meeting taking notes. CSR asked if there is a form she can fill out to request accommodations. Beatrice said no that she needs to send an e-mail to formally request accommodations. Each counselor works individually with each consumer to get them the necessary accommodations. It was suggested by Andres and Beatrice that CSR could have ADHD coach come take notes at meetings but CSR stated that it is not the role of the coach to do such things. CSR and coach usually meet via Skype and occasionally when CSR is in Chicago for other meetings they will meet in person. The role of the coach stated by CSR is to help write everything out, help CSR get organized, fill out a calendar with appointments etc. Also helps CSR with coping skills, disability awareness, learn mindfulness and self-regulation. Andres stated that for billing purposes and records DRS needs summary reports to prove that CSR is utilizing the services. Dorothy stated that she has not

1

Notes from November 21, 2017 Meeting with DRS taken by Jessica Zimmerman from RAMP for Dorothy Reddic during IPE meeting

seen any invoices, Andres stated that that is between the coach and Beatrice it is not CSR's responsibility to worry about billing. Beatrice stated that back in August lots of documents that were needed for the IPE were missing to bring the case current. CSR stated that she wants a heads up of when documents are needed (30-40 days) to prepare all the documents. CSR wants to know exactly what DRS is wanting for progress reports from all the services CSR is receiving to assist her in her education. DRS don't have forms for what they request for reports. Andres said summary reports will suffice, DRS just needs documentation every month. CSR needs documentation from August 17t-December 17th and then in January it will be monthly for progress reports. Dorothy stated that she hasn't been going to ADHD coaching due to services being dropped and not wanting to take on the big bill from coaching. Beatrice will request summary from coach, not CSR's responsibility. All information on the IPE for service provider to get paid, the voucher is submitted with progress report. Dorothy stated that she will follow expectations as long as they are clear and explicit, CSR needs things written down clearly. CSR doesn't want to be viewed as difficult or not cooperating. Beatrice wants to move forward with CSR to help CSR reach her educational goals. Beatrice stated that just ask for clarification for things CSR doesn't understand. Dorothy stated that Equipped for Equality told CSR not to ask questions because then CSR will be viewed as not being cooperative, CSR is just trying to follow rules but is being told many different things.

Beatrice stated that these are the documents needed from CSR today:

Grades from Summer 2017

Class Schedule Fall 2017

NIU bill Fall 2017

Required books/syllabus fall 2017 (CSR stated no books were required)

Signed copy of educational degree plan-signed by academic advisor

Grant waiver

Tax return information

CSR sent in 2 previous degree plans but graduation date has changed due to the circumstances. Beatrice stated that they were not accepted due to the plan being inconsistent. CSR stated she was not aware of that until today. Beatrice needs current degree plan. CSR stated that CSR is finding out next week what she can enroll in for spring, CSR is not progressing like to she wants due to everything. CSR was given a hardship scholarship from NIU.

CSR wanted to know if DRS will cover NIU health insurance. Beatrice stated no that because CSR has Medicaid it is comparable and that CSR can't have both. CSR presented a letter from NIU stating it's not comparable and presented Admin code. Beatrice stated that DRS would pay for medicine not covered by Medicaid but needs a letter from Medicaid about what medications they are not covering. Beatrice also needs a list of prescriptions from doctor.

2

Notes from November 21, 2017 Meeting with DRS taken by Jessica Zimmerman from RAMP for Dorothy Reddic during IPE meeting

CSR also stated that she is losing her home and is now choosing to live on NIU campus. Katie Lee spoke up stating that if CSR is a DeKalb resident that CSR can apply for housing because it will be cheaper for CSR than having to pay part of room and board through NIU. Katie stated that Katie will help writer look into that for CSR.

Once back on track Beatrice went through the IPE and CSR asked if CSR could take it home and review it before signing off on it. Beatrice was reluctant but told CSR she could as long as Beatrice had it back by Wednesday at 11 am.

Writer will receive a copy of IPE from CSR once the IPE is signed by the CSR. Writer stated that writer will follow up with CSR tomorrow (11/22)

3



State of Illinois
Department of Human Services - Division of Rehabilitation Services

# VR Exception Request

| | |
|---|---|
| Customer Name: Dorothy Reddic | DRS Counselor: Beatrice Mwinzi |
| Address: 1335 4th Ave. | DRS Office Location: DeKalb, IL |
| Rockford, IL 61104 | Supervisor Initials: |
| Phone: 815-200-9730 | (Supervisor must initial before request is sent to Bureau Chief.) |
| Date of Request: 11 / 21 / 2017 | |

## THE CUSTOMER OR THEIR REPRESENTATIVE SHALL COMPLETE THE FOLLOWING:

1. What specific exception are you requesting?
I am requesting the VRS program to pay for the Student Health Insurance Provided by Northern Illinois University in the amount of $990.50 for _erase made on 1/2/h_ the Fall 2017 and Spring 2018 semesters.

2. Why is the exception necessary for you to reach your employment goal?
The health insurance is imperative because it covers all the essential medications needed to treat my conditions i.e. for ADHD which is not covered by Illinois Medicaid for adults older than 19 years of age.

3. What are other ways you have attempted to meet this need?
I have purchased the medication. I have had a friend pay for the medication. It have attempted to have Medicaid cover the medications for ADHD several times and each time it is has been denied. I appealed the decision with the assistance of State

## THE DRS REHABILITATION COUNSELOR SHALL COMPLETE THE FOLLOWING:

1. Do you support the customer's request for this exception? Please explain how the exception will assist the customer in reaching their employment goal.

2. What specific administrative rules were addressed?

3. What comparable benefits or other resources have been considered?

All exception requests will be reviewed by appropriate DRS personnel and a written decision rendered within ten(10) business days from the date the request was received. A denial may be appealed (89 Ill. Admin. Code Part 510) and the customer shall be informed of their appeal rights along with the availability of the Client Assistance Program.

An Exception Request was submitted on _____. After review, I have made the following decision:

☐ The exception request is approved.

☐ The exception request is denied.

☐ The following revision or clarification is required:

Re-submission Date: _____

_____

_____
DRS Bureau Chief                                    Date

L488-2433 (N-5-09)                                                    Page 1 of 1

To Whom It May Concern:

April 12, 2017

I attended two meetings at the IL Department of Human Services/Vocational Rehabilitation Services, Rockford IL with Dorothy Reddic. I did this as an observer. I believe the first meeting was late August or in September, 2016. The second meeting was January 31, 2017. I was required to sign in both times.

The first appointment was with Dorothy's caseworker, Sonya Wiley. I sat and listened to the conversation between the two of them and noticed these things:

- Sonya's desk was piled and she had trouble finding things that she needed to address Dorothy's concerns. She appeared to rely solely on her memory as a back-up for what she said.
- Dorothy produced appropriate documentation when asked and took notes during the conversation; Sonja did not do either.
- Sonya mainly appeared to be focused on saying Dorothy was wrong without proving it. For example: Dorothy referenced a deadline and email that Sonya had required. Sonya said Dorothy missed the deadline. Dorothy would go to her papers to show it to her. Sonya would dismiss this as "not what I remembered" and not provide any documentation to support her assertion. This type of interchange occurred for a deadline, a parking pass and book fees.
- Towards the end of the first appointment, Sonya began to be friendly with Dorothy. At the beginning of the appointment she was somewhat adversarial, but towards the end, she made an out of context comment about how much she liked President Obama and at one point reached over to pat Dorothy's hand. This friendliness seemed odd after the earlier behavior.

The second meeting was with Dr. Daniel Grohens and William (Bill) Meyers. When we walked in the room, Bill Meyers launched into his assessment of how to handle Dorothy's case since there had been a complaint filed against Sonya. After listening to him for a few minutes, Dorothy expressed confusion since she thought the meeting was called to help resolve several issues that had been left hanging after she had filed the complaint.

Dorothy expressed a strong conflict of interest with Bill based on her past contact with him at another agency. She wanted the pending compensation for services resolved.

The goal of the meeting appeared to be to first to try to persuade Dorothy to accept Bill as a caseworker. After considerable consultation, the secondary goal seemed to be to transfer Dorothy's case to Dekalb. There was a sense that both parties present for VRS thought Dorothy's complaints at the meeting and against Sonya unreasonable and unwise. The fact that she had filed a complaint made both staff members wary.

A couple of things that I found concerning. Sonya had communicated that Dorothy didn't show up for appointments. For several of the appointments under discussion, Dorothy was in the hospital having heart surgery. This seemed unreasonable to me to expect someone to leave their hospital bed for a VRS appointment. Dr. Grohens explained that these missed appointments did count as a demonstration of her unwillingness to work with VRS. Unfortunately, it appears that Sonja was telling Dorothy that she had to come once a month for a required appointment. Dr Grohens confirmed that monthly appointments were not a VRS requirement. It appears that it was a Sonja specific requirement.

In another incident, Dorothy's veracity was questioned. Confirmation and appropriate documentation of her course of study was evidently disallowed because the verbiage on it was not 'likely to have been written by a professor.' The implication was that Dorothy had written the document herself.

It was a long meeting and I had to leave before it was finished.

Mary Pulliam
815-494-2905
mwpulliam@comcast.net

From the desk of:
Dorothy Reddic
1335 4th Ave. Rockford, IL 61104
815-200-9730
msreddic@hotmail.com

DHS—Bureau of Hearings
C/O Richard Madison & James T. Dimas
69 West Washington, 4th Floor
Chicago, IL 60602

December 20, 2017

Re: Illinois Department of Human Services Appeal Hearing for Vocational Rehabilitation
Services

Dear Mr. Madison and Mr. Dimas,

As a citizen of the United States of America, my constitutional rights have been degraded
impeding my ability to pursue life, liberty and the pursuit of happiness on **January 30, 2017**
when multiple infractions occurred and continued throughout the year of 2017 including as
recent as **December 14, 2017**. According to the **Rehabilitation Act of 1973, Section 102**
(Eligibility and Individualized Plan for Employment), I am a customer who was determined to be
eligible for services in March 2015 and the most recent Individualized Plan for Employment
written on **November 21, 2017.**

The **Americans with Disabilities Act of 1990, Title II** prohibits discrimination and is meant to
ensure equal opportunity for persons with disabilities in employment, state, and local
government services, public accommodations, commercial facilities and transportation in
particular it prohibits discrimination against a "qualified individual with a disability" which I am.
Additionally the ADA of 1993 prohibits government entities from excluding people with
disabilities from participating in services, programs or activities; must eliminate unnecessary
eligibility standards or rules that deny individuals with disabilities equal opportunity to enjoy
their services, programs, or activities unless 'necessary' for provisions of the services and are
required to make reasonable modifications in policies and procedures, that deny equal access to
individuals with disabilities, unless a fundamental alteration the program would result." It has
been the practice of the Illinois Department of Human Services Division of Rehabilitation
Services staff to deny the many requests I have made for accommodations based on my diverse
abilities for which were

On **January 30, 2017**, I was assured by Dr. Daniel Grohens and William Meyers the services
written in the IPE that was commenced on **August 9, 2016** would be commenced evidenced by
payments made to Northern Illinois University for multiple services including, "Tuition and
Fees." During this meeting a discussion of discrimination commenced and I requested a change
of counselors and a transfer to the Vocational Rehabilitation Services office in DeKalb, IL. Dr.
Grohens said, "You filed that complaint against Sonya and you are going to wish you never did."
I left the meeting distraught, crying and emotionally dysregulated due to the intimidating
statements made by the supervisor Daniel Grohens regarding my desire to exercise my right to

1

From the desk of:
Dorothy Reddic
1335 4th Ave. Rockford, IL 61104
815-200-9730
msreddic@hotmail.com

file a civil rights complaint against one of his staff. I contacted Louis Hamer, Bureau Chief for the Illinois Vocational Rehabilitation Services via email and multiple phone calls. He agreed to transfer my case to a new counselor in the IDHS VR office in DeKalb, IL and arranged for Beatrice Mwinzi to come meet me during a meeting with Debra Miller, Northern Illinois University Manager for Disability Resource Center on **February 9, 2017**. Once again, I made a formal request to have my case transferred to the DeKalb office and this was complete as of **February 23, 2017.**

On **February 23, 2017** I met with Beatrice Mwinzi in the IDHS VR DeKalb office where we reviewed the current Individualized Plan for Employment that had been written by Sonya Wiley in the IDHS VR-Rockford office and transferred with my case. Beatrice stated the IPE didn't need any revisions and agreed to arrange past due payments to Northern Illinois University for services in the IPE, "Tuition and Fees" within the next week. After multiple forms of contact, I received a Notice of Services Agreement on **April 5, 2017** from Beatrice Mwinzi which was also sent to Northern Illinois University outlining the amounts to be paid along with the services. These amounts were in error and caused a great hardship because the semester was 80% completed and the failure to pay the full amount impeded my ability to register for courses delaying the progress of my vocational rehabilitation goals outlined in the IPE. I filed a "Request for Hearing" on **May 1, 2017, May 8, 2017 and May 9, 2017** because I received an email from DHS.Appeals@illinois.gov (unnamed person and no working phone number to this division) stating my request was incomplete. I made many attempts to contact the Bureau of Hearings and Appeals with the assistance of the Client Assistance Program, Leslie Jenkins & Francisco Alvarado, Division of Rehabilitation Services Staff (Quinetta Wade, Louis Hamer, Andre Howard, and Beatrice Mwinzi), I even contacted the U.S. Department of Education Office of Special Education Rehabilitation Services staff (Carol Dobak—Commissioner, Marissa Luzzi, and Tonya Stellar). I was informed by all those mentioned they had no authority or control over the scheduling of the appeals hearings and could not provide me a working contact number or a name of a contact person until approximately **July 2017** when Tonya Stellar provided me the name and number of Richard Madison, Bureau Chief for the Bureau of Appeals and Hearings.

Tonya Stellar, the State Liaison for the U.S. Department of Education Office of Rehabilitation Services for Illinois wrote in an correspondence that all requests for appeals are supposed to occur **within 60 days** and my appeal was not scheduled for 64 days at that time. She instructed me to communicate with Richard Madison and provided his contact information. I did contact him and the hearing was scheduled on **July 11, 2017** but during this time the IDHS VR-DeKalb denied access to my client file and eventually provided redacted copies of the files ensuring I would not have the evidence needed to prove with the preponderance of evidence that services were suspended and reduced unjustly. Additionally, when I filed a complaint of civil rights violations to the Bureau of Civil Affairs during the investigation process the IDHS VR-DeKalb became upset and continued to deny payment for services, records and issued a notification of closure on **July 13, 2017.** I was informed by Andre Howard, Administrator for the IDHS VR-

2

From the desk of:
Dorothy Reddic
1335 4th Ave. Rockford, IL 61104
815-200-9730
msreddic@hotmail.com

DeKalb, "Our office is an impasse with you there are no further services we can provide you with a third party intervention." From that date until now, services have been suspended despite multiple requests for the continuation of services as outlined in the "Provisions" section of the Rehabilitation Act but every request in writing, in person, motion and during the hearing was denied by your staff.

**On July 26, 2017 I filed a second request for appeal regarding the "Notice of Closure" received on July 13, 2017, referred to as Appeal# Il7-018998.** Once again multiple requests were made regarding providing a mutually agreed upon date and time for the appeal hearing was made and denied by your staff. On **October 10, 2017** an appeal for hearing was held based on the consolidated requests for **Appeals Il7-018998 (filed July 26, 2017) and Il7-014596 (filed on May 1, 2017)** via phone conducted by Emily Mehaan, Hearing Officer but due to her work schedule the appeal hearing was continued at approximately 4:00 PM as she was scheduled to end her work day. She informed me the continuation date would be placed back in the rotation for a scheduled continuation which occurred on December 14, 2017. *Jan. 9 @ 9am* *2018*

On **October 10, 2017,** during the consolidated appeal hearings, Mrs. Emily Mehaan informed the IDHS VR staff, (Moshe Liberman, Andre Howard, Beatrice Mwinzi and Jennifer Hardy) it was illegal to suspend or reduce services during the process of an appeal. She then ordered the staff to schedule a meeting with me to resume services effective as of the date of the lapsed Individualized Plan for Employment **(8/17/2017)** within a three-week timeframe. A mutually agreed upon meeting was scheduled on **November 21, 2017** to write a new Individualized Plan for Employment at the IDHS VR-DeKalb which exceeded four hours. I requested a hard copy of the final version of the Individualized Plan for Employment as it was being discussed by the VR counselor, Beatrice Mwinzi and her supervisor Andre Howard but she denied to make the accommodation despite my request so that I could fully participate in the process based on my disabilities. Beatrice fraudulently stated she was reading the IPE aloud and I found this information to be false upon my arrival at home when I had uninterrupted time to read the IPE without distractions there were many details omitted which were agreed upon during the meeting. After multiple requests to take a copy of the document home for review before signing it by myself and my advocate Jessica Zimmerman from RAMP, Beatrice agreed with the prompting of her supervisor to allow me to take it home to read it before signing in agreement. Once I discovered the document fraudulently represented the items discussed in the IPE development meeting dismissing my informed choices I decided to handwrite the changes that were missing and signed the IPE stating I was agreement with the handwritten changes. Based on our agreement I submitted the signed copy to Beatrice Mwinzi via email as an attachment on **November 22, 2017** requesting immediate payment of past due charges for services outlined "Tuition and Fee" in the IPE to Northern Illinois University and payment to Elizabeth Paparo, ADHD Coach. On November 29, 2017 I received an email from Beatrice Mwinzi stating the IPE was invalid due to my handwritten additions. She never addressed her fraudulently behavior of intentionally giving me the impression that she was accepting my informed choices writing them

*Sec. 508.110 (m)*

*10/27/17*

*11/21/17*

*Sec. 102 (ii) (iii)*

*pg 61*

3

From the desk of:
Dorothy Reddic
1335 4th Ave. Rockford, IL 61104
815-200-9730
msreddic@hotmail.com

in the IPE then attempting to have me sign the document without adequate time to read, process and digest the document.

On November 30, 2017 I wrote a letter to Quinetta Wade, Director for the Division of Rehabilitation Services in Illinois, requesting she enforce the terms of the IPE based on Administrative Code:

**Illinois Administrative Code 572.50** (e) *In unusual circumstances, the Chief of the Bureau of Field Services or the Bureau of Blind Services may grant an exception to the timeline in subsection (d) upon request and when an appropriate justification is provided by the counselor with acknowledgement from the customer,*

Mrs. Wade agreed to meet with me on **November 30, 2017 at 1:00 PM** but then later rescinded her offer to meet with me based on the advice of her counsel. Her inaction to the request was a denial to the request.

On **December 12, 2017**, I submitted a "Request for Hearing" to the DHS.Appeals@illinois.gov and Richard Madison, Bureau of Appeals and Hearings requesting a fair hearing without violations to my rights to due process as in the previous requests for appeals hearings filed on **May 1, 2017 and July 26, 2017.** Mr. Madison sent me an email stating he noticed I was scheduled for an appeal on **December 14, 2017 at 1:00 PM** and I could ask the hearing officer if she would consolidate the request for appeal. I cited the administrative code informing him that decision is supposed to be made by "The Department" and requested his assistance with facilitating the discussion with the hearing officer, Emily Mehaan. On **December 14, 2017,** Mrs. Mehaan asked if I wanted to request that she hear the new appeal regarding IDHS VR-DeKalb office's failure to commence services in the latest Individualized Plan for Employment. I told her based on my understanding it was her decision and she instructed me to tell her why she should include it in the current appeal hearing. I informed her that the IPE was developed as a result of an order she made during the **October 10, 2017** Hearing for Appeal regarding the **Appeals Il7-018998 (filed July 26, 2017) and Il7-014596 (filed on May 1, 2017).** During this time, I asked her if she were to hear the appeal would this make the consolidated appeal hearings inclusive of three appeals and she said, no. She stated that the notice of closure appeal was gone. Unfortunately, I didn't understand how this could be the case but I needed to time to process this information she stated about the appeal regarding the notice of closure was gone. I explained to her why I thought she should hear the appeal essential citing the administrative codes which were violated similar to an appeal, she allowed the IDHS VR staff to make comments and she told me that if I wanted to have the appeal heard I needed to file a request to have it heard but I couldn't write in additions despite being deceptively lead to believe the document included other language that included my informed choices regarding the services included in the plan to help me achieve my vocational goals.

4

From the desk of:
Dorothy Reddic
1335 4th Ave. Rockford, IL 61104
815-200-9730
msreddic@hotmail.com

(6) HEARING BOARD.—
(A) IN GENERAL.—A fair hearing board, established by a State before January 1, 1985, and authorized under State law to review determinations or decisions under this Act, is authorized to carry out the responsibilities of the impartial hearing officer under this subsection.

RE: Request for Appeal for Dorothy Reddic 12-12-2017---Please Review and Reply 12-13-2017

 Dorothy Reddic

Wed 12/13/2017 4:17 PM

To: Madison, Richard <Richard.Madison@illinois.gov>;

Cc: Jessica Zimmerman <jzimmerman@rampcil.org>; dmiller@rampcil.org <dmiller@rampcil.org>; Jackie Sundquist <JSundquist@rampcil.org>; Dimas, James T. <James.T.Dimas@illinois.gov>; Gulkewicz, CoreyAnne <CoreyAnne.Gulkewicz@illinois.gov>; Stellar, Tonya <Tonya.Stellar@ed.gov>; Carol.Dobak@ed.gov <Carol.Dobak@ed.gov>; Glesing, Laura <laura.glesing@mail.house.gov>; bdallas@niu.edu <bdallas@niu.edu>; DHS.HSPAppeals <DHS.HSPAppeals@illinois.gov>; DHS.AuxiliaryAids <DHS.AuxiliaryAids@illinois.gov>; Younger-White, Martha <Martha.Younger-White@illinois.gov>; Dorothy Reddic <msreddic@hotmail.com>;

Hello Mr. Madison,

I really appreciate your prompt response to the appeal email. As much as I appreciate your suggestion I have been instructed to follow the administrative code for filing an appeal and according to Section 14.40 Consolidation of Appeals is determined by "The Department." Since I am not a member of "The Department" it seems improper for me to approach the Hearing Officer tomorrow with this information considering there are other administrative codes that outline what steps are to take place in the case of assigning hearings that are outside of the scope of my capability. For your convenience I have included the Administrative Codes because these matters are not something I take lightly I don't want to over step my boundaries or not follow the proper steps and risk not having my appeal heard in a timely manner or having the ability to properly prepare for the appeal. Therefore I am requesting your assistance as the Bureau Chief to make a decision as to whether or not the "inaction" of the VR staff fraudulently writing an IPE and excluding pertinent details discussed and agreed upon during the IPE development should be discussed during tomorrow's appeal hearing.

As I stated Mr. Madison I attempted to avoid another hearing by seeking a decision my the Director Quinetta Wade and based on her inaction she and the other staff left me no choice but to file a request for an appeal. The reason I submitted the request to you is because the state liaison for the Department of Education Rehabilitation Services, Tonya Stellar previously informed me you were the decision maker regarding the appeals hearing for the Illinois Department of Human Services as pertains to the federal regulations of the Rehabilitation Act of 1973. If that is true then I am asking you to ensure that I receive a fair, impartial hearing, in a timely manner, with the continuation of services based on the signed IPE and federal regulations, during a time that is mutually agreed upon by myself and the staff of IDHS, with access to my complete client file and fairness and parity providing reasonable accommodations afforded to me as person with multiple disabilities outlined by Title II of the ADA.

Out of fear of a miscarriage of justice I am going to decline your offer to have me ask the hearing officer if the appeal submitted on 12/12/2017 should be consolidated with the appeal being heard that was filed on May 1, 2017 regarding services from January 2017 out of fear of not properly following the proper procedures for appeal hearings. I trust this is why the Administrative Codes outline the individual responsible for coordinating the appeal hearings.

Section 508.50 Notice and Initiation of Administrative Hearings
Section 508.110 Hearings
508.170 Miscellaneous

Unfortunately nothing in the Administrative Code or Federal regulations give me the authority to make the request of the hearing officer as outlined in your email. Therefore, I await your decision and determination regarding the appeal filed on 12/12/2017. Thank you!

Respectfully,

Dorothy Reddic

Sent from Mail for Windows 10.

From: Madison, Richar
Sent: Wednesday, December 13, 2017 2:17 PM
To: Dorothy Reddic
Cc: Jessica Zimmerman; dmiller@rampcil.org; Jackie Sundquist; Dimas, James T.; Gulkewicz, CoreyAnne; Stellar, Tonya; Carol.Dobak@ed.gov; Glesing, Laura; bdallas@niu.edu; DHS.HSPAppeals; DHS.AuxiliaryAids; Younger-White, Martha
Subject: RE: Request for Appeal for Dorothy Reddic 12-12-2017

Ms. Reddic,

You currently have an appeal scheduled for tomorrow at 1pm. Please raise these issues with the Hearing Officer at the n =Hearing. The Hearing Officer can make a clear determination of whether these issues are related to the issues already under appeal, and can be

consolidated, or whether a new appeal should be filed for these issues. I am also going to include this email (with your attachment) as part of that appeal record (Appeal Number 1700107496 / I17-014596).

Regards,
Richard L. Madison

> [x] The picture can't be displayed.

> Richard L. Madison
> Deputy General Counsel & Chief Administrative Law Judge
> Bureau of Hearings, Office of General Counsel
> Illinois Department of Human Services
> 69 W. Washington, 4th Floor, Chicago, IL
> O: 312-793-8894 | richard.madison@illinois.gov

Please print only if necessary.

---

**From:** Dorothy Reddic [mailto:msreddic@hotmail.com]
**Sent:** Tuesday, December 12, 2017 7:56 PM
**To:** DHS.HSPAppeals; DHS.BAHCoordinator; DHS.AuxiliaryAids; Madison, Richard; Younger-White, Martha
**Cc:** Jessica Zimmerman; dmiller@rampcil.org; Jackie Sundquist; Dorothy Reddic; Dimas, James T.; Gulkewicz, CoreyAnne; Stellar, Tonya; Carol.Dobak@ed.gov; Glesing, Laura; bdallas@niu.edu
**Subject:** [External] Request for Appeal for Dorothy Reddic 12-12-2017
**Importance:** High

Greetings Mr. Madison and Mrs. Younger-White,

I pray you too are still the appropriate people to contact regarding the matters at hand. I am requesting an appeal hearing regarding my disputed Individualized Plan for Employment that the Administrative Law Judge ordered the Vocational Rehabilitation Services Program to implement during the Appeal Hearing on 10-12-2017 when she determined it was illegal for the VR Staff to discontinue services outlined in the previous IPE. Perhaps she wasn't as clear to the VR staff as I heard her on the call because they appeared to write the IPE with my informed choices while I was sitting with the VR staff and the other advocates who accompanied me to the meeting but when I arrived home I discovered the IPE was lacking many of the details agreed upon during the development of the IPE on November 21, 2017.

As you are aware along with Secretary James T. Dimas and his General Counsel Corey-Anne Gulkewicz, previously the Illinois Department of Human Services staff allowed their staff to violate my rights to due process within 60 days as outlined by the federal regulations of the Rehabilitation Act of 1973 and the Illinois Administrative Code. In addition to that violation my rights as a grievance were violated which states the services outlined in a signed IPE are to be continued during the appeal process. Unfortunately no one from the IDHS would ensure these rights were not violated during the course of the appeal process. Additionally I requested accommodations during the appeal process and your staff wrote that I would receive the accommodations but they were not afforded to me during the appeal process. Therefore I have made an official request to Mrs. Younger-White outlining the accommodations I need in the appeal process.

I hate that once again I am forced to appeal the Inaction of the Vocational Rehabilitation Services Staff and I petitioned Mrs. Wade to Intervene based on Section 572.50(e):

- **Illinois Administrative Code 572.50** (e) *In unusual circumstances, the Chief of the Bureau of Field Services or the Bureau of Blind Services may grant an exception to the timeline in subsection (d) upon request and when an appropriate justification is provided by the counselor with acknowledgement from the customer,*
- **Illinois Administrative Code 508.170** (c) Miscellaneous *Conflict of Authority. If the hearing is being conducted pursuant to federal law and there is a conflict between this Part and federal procedural or evidentiary requirements, then the federal requirements shall control.*

§ 361.57 Review of determinations made by designated State unit personnel.

(e) *Impartial due process hearings.* The State unit must establish and implement formal review procedures, as required under paragraph (b) (1)(i) of this section, that provide that -

- (1) Hearing conducted by an impartial hearing officer, selected in accordance with paragraph (f) of this section, must be held within 60 days of an applicant's or recipient 's request for review of a determination made by personnel of the State unit that affects the provision of vocational rehabilitation services to the individual, unless informal resolution or a mediation agreement is achieved prior to the 60th day or the parties agree to a specific extension of time;

- (4) *Impact on provision of services.* The State unit may not institute a suspension, reduction, or termination of vocational rehabilitation services being provided to an applicant or recipient, including evaluation and assessment services and individualized plan for employment development, pending a resolution through mediation, pending a decision by a hearing officer or reviewing official, or pending informal resolution under this section unless -

- **(i)** The Individual or, in appropriate cases, the <u>individual's representative</u> requests a suspension, reduction, or termination of services; or

- **(ii)** The <u>State</u> agency has evidence that the services have been obtained through misrepresentation, fraud, collusion, or criminal conduct on the part of the individual or the <u>individual's representative</u>.

- <u>34 CFR Part 361</u> and 29 U.S. Code § 721 (2)(B)(ii)(II) - State plans Designated State Agency Designated State Unit has a full-time <u>director</u> who is responsible for the day-to-day operation of the vocational rehabilitation program;

- *Section 572.50 IPE Development and Content The IPE must be developed, agreed to and signed by the customer, or, as appropriate, the customer's parent, family member, guardian, advocate, or authorized representative, and approved and signed by the counselor. The IPE shall be developed and implemented in a manner that affords the customer the opportunity to exercise informed choice (89 Ill. Adm. Code 557.20) in selecting an employment outcome, the specific vocational services to be provided, the provider of the services and the methods used to provide services.*

Unfortunately it appears to be the custom of the Illinois Department of Human Services practice to require customer like myself to adhere to the rules, regulations, polices and procedures but the same level of expectation of a reasonable person is not to be expected by those who work for the IDHS. I am praying that God will intervene and change the hearts of those who are in charge will ensure that the hands of justice move much quicker than six months and the laws outlined by the federal government which funds the Illinois Department of Human Services Vocational Rehabilitation Services will be carried out with fidelity and the letter of the law.

It is my hope that the two of you would ensure my rights are not violated one IOTA during this process.

Thank you in advance!

Respectfully,

Dorothy Reddic

VR customer/Illinois Tax Payer/United States Citizen

State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.

**Wade, Quinetta** <Quinetta.Wade@illinois.gov>

Thu 11/30/2017 2:03 PM

To: Dorothy Reddic <msreddic@hotmail.com>;

Thank you for reaching the Illinois Division of Rehabilitation Services. I am currently out of the office. I will respond to your message as soon as possible.

If this matter requires attention prior to my return, please contact Lori Zenner at 217-524-7552 or Carmen Dodd at 217-557-0401.

Have a great day!

State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.

# FW: Complaint Against CAP in Illinois---Assistance Needed

### Stellar, Tonya <Tonya.Stellar@ed.gov>

Mon 6/19/2017 8:07 AM

To: msreddic@hotmail.com <msreddic@hotmail.com>;

Cc: Doyle, Jim <Jim.Doyle@ed.gov>; Liuzzi, Marisa <Marisa.Liuzzi@ed.gov>; Dobak, Carol <Carol.Dobak@ed.gov>;

Dear Ms. Reddic:

I appreciate the additional information you provided to me earlier this afternoon. I was able to communicate the concerns you raised in your e-mails below during a teleconference with Mr. Alvarado, Ms. Jenkins, Marisa Liuzzi and Jim Doyle today. The Illinois CAP communicated that it is willing to work with you and to provide any clarification you need related to the appeals process, including rules from the Illinois Administrative Code (IAC) specific to appeals and hearings that was sent to you in writing by Ms. Jenkins, as you requested.

During the teleconference, I shared your statement below that Prairie Legal Services agreed to assist you, but not with an appeal. Ms. Jenkins agreed to follow-up with Prairie Legal Services, as she did for you on June 13 (per your e-mail thread below), to determine whether your case was determined to have merit for representation by Prairie Legal Services.

It appears from the information you shared with me below that Mr. Andre Howard e-mailed you on June 9, 2017, that your hearing was scheduled for July 11, 2017, in the DeKalb DRS Field Office 1330 Oakwood DeKalb Illinois 60115 at 9:30 am. However, due to a scheduling conflict, you requested on June 9 via e-mail that your hearing be rescheduled. Although Ms. Jenkins can explain the appeals process to you, I was informed that the Bureau of Administrative Hearings schedules the date and time of the hearings and coordinates with the impartial hearings officer. If you have not received a response from Mr. Howard rescheduling your hearing, I would recommend following-up with him to ensure your hearing has been rescheduled to a date and time that is convenient for your schedule.

Although RSA does not intervene directly with individual consumers it funds a Client Assistance Program (CAP) in each State to assist applicants or eligible individuals experiencing issues with the provision of services through programs funded under the Rehabilitation Act, in accordance with section 112 of the Rehabilitation Act. The CAP provides advocacy and legal representation to eligible individuals based on the merits of the individual's concerns. Furthermore, you have the right to appeal any decision made by DRS, as well as the right to receive assistance through CAP. However, the CAP has the right to determine the availability and level of representation for each client based on the merits of the case and its available resources.

We continue to encourage you to pursue resolution of this matter at the State level. If you feel that you have been discriminated against, you are encouraged to utilize the resources previously provided to you by Ms. Liuzzi. Per your e-mail below, it appears that you have filed a complaint of discrimination with the Illinois Department of Human Services (DHS), Bureau of Civil Affairs and are awaiting a determination. While you await a response from the Illinois Bureau of Civil Affairs, I would recommend that you continue to work with Ms. Jenkins from the Illinois CAP to better understand the appeals process; follow-up with Mr. Howard to ensure your hearing is rescheduled; and Ms. Jenkins will follow-up with Prairie Legal Services.

Thank you,

Tonya

Tonya M. Stellar, M.A., CRC
Vocational Rehabilitation Program Specialist
State Team Facilitator
Rehabilitation Services Administration
Office of Special Education and Rehabilitative Services
U.S. Department of Education
550 12th Street SW, PCP 5097
Washington, DC 20202
(202) 245-6638
Tonya.stellar@ed.gov

---

**From:** Dorothy Reddic [mailto:msreddic@hotmail.com]
**Sent:** Friday, June 16, 2017 12:50 PM
**To:** Stellar, Tonya
**Cc:** Doyle, Jim; Dobak, Carol; Liuzzi, Marisa; Dorothy Reddic
**Subject:** Re: Complaint Against CAP in Illinois---Assistance Needed

Hello Mrs. Stellar:

I really appreciate your willingness to contact me. I have spent more than 100 hours seeking assistance, compiling documents to file complaints, seeking assistance from individuals at the IDRS, Prairie Legal Services and Equip for Equality. I can anticipate what you are going to hear from Francisco and Leslie, is they referred me to Prairie Legal Services and that is true. Although I just heard from Prairie Legal Services yesterday late afternoon that they are willing to assist me as long as it is not with an Appeal. I met with an attorney there on April 21, 2017 and June 15, 2017 is when I found this information out. They did provide guidance on how to complete the Request for Appeal Hearing. Unfortunately no one could tell me why the appeal is July 11, 2017 when I submitted the request on May 1, 2017 and it is supposed to be timely. No one can tell me why the services have NOT been continued despite the "Grievant Rights" indicating the services are supposed to be continued even during a hearing process. No one has told who I can talk to to request a change in date and time for the hearing because I was not consulted about the scheduling despite my multiple calls and emails requesting someone contact me to inform me about how and when it would be scheduled. Leslie offered to assist me but when I returned her call she didn't call me back but wrote me telling Prairie Legal Services would let me know by today if they are going to take my case.

I have questions about the services I am supposed to receive now. I have questions about how the IPE should be written moving forward. I have questions regarding assistance I was told I would receive in February for medication as long as I provided the documentation and I submitted the documentation in March, 2017 then inquired in April 2017 but didn't receive it and went to a meeting to amend my IPE to add the medication assistance and the counselor ran out of time so she couldn't add it to the IPE although I drove more than an hour to meet with her because I had to be transferred to the DeKalb office because I was being subject to racial discrimination, sexual harassment and being given unreasonable expectations in order to receive services in attempt at making me fail so the counselor could close my case. Since I filed a complaint of discrimination to the wrong entity because no one would assist me with filing a formal complaint as I was told by the Assistant Bureau Chief, Mary Beth Scholten DRS doesn't have a formal compliant process I filed with the wrong entity OIEG who then referred it to the Bureau of Civil Affairs and they are reviewing my complaints but I am not sure if I represented myself well. As a result of all this added stress my mental health has diminished significantly requiring additional therapy appointments, increases in antidepressants and additional anxiety medications. I have not been able to attend to my education as I would like because I have been researching ways to get

assistance to resolve these matters. I had to fully disclose my diagnoses to people at my university in the Bursar's office begging them to let me register for classes for the Summer term up to a week before the start of a class and they informed me the delinquent payments prohibit me from registering for additional courses and enrolling in the upcoming insurance plan that affords me the ability to obtain the medications I take for my mental health.

I have asked several times to multiple people in management if there is a guide for customers that outline the services available to customers or provide examples of what customers can expect. Is there a functional guide for people with disabilities to help us receive the information we are required to provide in a format that accommodates our learning style. I have asked who can assist with issues related to discrimination and the explanation of the administrative codes that I found based on a discussion with an attorney.

I am not sure what you can do but as a Black woman with multiple disabilities who receives accommodations at the university I attend and on my job I find it difficult to work with the DRS program in Rockford and I believe it systematically designed to be difficult and intentionally misleading. I am grateful your website is user friendly and contacts job titles, working phone numbers and emails. I look forward to hearing from you soon. Thank you very much!

Respectfully,

Dorothy Reddic

---

**From:** Stellar, Tonya <Tonya.Stellar@ed.gov>
**Sent:** Friday, June 16, 2017 8:19 AM
**To:** Dorothy Reddic
**Cc:** Doyle, Jim; Dobak, Carol; Liuzzi, Marisa
**Subject:** RE: Complaint Against CAP in Illinois—Assistance Needed

Hello Ms. Reddic:

Thank you for your e-mail submitted to RSA on June 14, 2017, and communicating your concerns related to the assistance you have received from the Illinois' Division of Rehabilitation Services (DRS) and the Client Assistance Program (CAP). I will be meeting with Jim Doyle and Marisa Liuzzi, RSA CAP liaisons, as well as Francisco Alvarado and Leslie Jenkins from the Illinois CAP this afternoon to discuss your case. I will follow-up with you as soon as I am able to gather more information for you.

Tonya

Tonya M. Stellar, M.A., CRC
Vocational Rehabilitation Program Specialist
State Team Facilitator
Rehabilitation Services Administration
Office of Special Education and Rehabilitative Services
U.S. Department of Education
550 12th Street SW, PCP 5097
Washington, DC 20202
(202) 245-6638
Tonya.stellar@ed.gov

# RE: [External] Request for Hearing Dorothy Reddic ---Please Confirm Receipt 6-8-2017

### DHS.HSPAppeals <DHS.HSPAppeals@Illinois.gov>

Fri 6/9/2017 10:33 AM

To:Dorothy Reddic <msreddic@hotmail.com>;

Cc:Mwinzi, Beatrice <BEATRICE.MWINZI@illinois.gov>; Howard, Andre M. <Andre.M.Howard@illinois.gov>; Shakur, Taqiyyah
<Taqiyyah.Shakur@Illinois.gov>; Jenkins, Leslie C. <Leslie.C.Jenkins@Illinois.gov>; Alvarado, Francisco
<Francisco.Alvarado@illinois.gov>;

Good Morning Ms. Reddic,

Please be advised that a subsequent submission is valid and therefore an appeal is currently pending under appeal #: I17-014596.

Currently your appeal hearing is scheduled for July 11, 2017.

In regards to the outstanding balance issue, that is an issue to be address at your scheduled hearing of July 11, 2017 before a hearing.

Thank you.

---

**From:** Dorothy Reddic [mailto:msreddic@hotmail.com]
**Sent:** Thursday, June 08, 2017 4:29 PM
**To:** DHS.HSPAppeals
**Cc:** Mwinzi, Beatrice; Howard, Andre M.; Shakur, Taqiyyah; Dorothy Reddic; Jenkins, Leslie C.; Alvarado, Francisco
**Subject:** Re: [External] Request for Hearing Dorothy Reddic ---Please Confirm Receipt 6-8-2017
**Importance:** High

Greetings "Rosa" or Director of Hearings:

My name is Dorothy Reddic, a customer of the DRS VRS program. On May 1, 2017 I filed a Request for Hearing to your office via email. I received an email on May 8, 2017 informing me that my request was "incomplete" and upon further inquiry I was informed by an "unnamed" person from this email that the document I submitted was blank. I sent the completed form I sent the first time to this email address and faxed it to the following fax number provided: 312 793-8573 and requested confirmation upon receipt. Although I did not receive a confirmation.

Since that time 30 days have passed and I have called the following number 1-800-435-0774 (voice) on many occasions over the past 30 days and each time I have been hung up on when I selected the Appeals/Hearing option. I have called several numbers seeking the phone number to a live person who could tell me the status of the request for hearing filed on May 1, 2017. This week I was blessed to speak to two individuals who work for DHS and requested assistance regarding the hearing process I was provided three more numbers two for Chicago with a 312 area code and a non-working Springfield number but I was unable to reach anyone. I persisted to call multiple numbers and select various options and I spoke to a kind woman named "Rosa" who indicated the person I needed to speak with was also named "Rosa" who coordinates the hearings. I asked to speak to a supervisor and she transferred me to Mrs. Jones who indicated that she was

not the person who handles appeals for VRS but "Rosa" was the person I needed to speak with because I didn't have an appeal date assigned. She agreed to walking the message to Rosa and asking her to return my call on Tuesday, June 6, 2017 in the afternoon with further information. **Unfortunately I have not received any return calls from Rosa nor have I received a letter notifying me of the "timely" and "impartial hearing" regarding my request for a hearing.**

It is unfortunate as a person with multiple disabilities I have to seek multiple entities for assistance to figure out how to file an appeal, a complaint and how to properly follow-up regarding the status of the hearing. DHS assist individuals as myself with disabilities but the process isn't conducive to a person with disabilities and it seems very unfair but it is distressing. Although I have asked multiple people when I have spoken to someone I am not sure how the term "timely" is defined but 30 days seems to be reasonable. Please provide me a clear definition of how "timely' is defined.

**Additionally based on Section 510.60 Service Notice, I would like to know why I have an outstanding balance with Northern Illinois University for the items listed on the Request for Hearing:**
A.) Tuition---$411.24 (PSPA 650)
B.) Books/Supplies---$564.26
C.) Student Medical Insurance $1039
D.) Late Fees incurred due to the lack of sufficient payments made by DRS

It is my understanding according to the Administrative Code this means the above issues are to be paid until a decision is rendered through the process of a hearing. I asked my counselor on May 11, 2017 at our last meeting if these items were going to be paid and she informed me I was misunderstanding this rule. I am not sure how because it appears very clear and concise. I do not that I am in negative standing financially with the university, I had to disclose more about my disabilities than necessary or warranted begging the Bursars office to grant me permission to register for classes. I know that I am going to lose my health insurance which will leave me without a way to have prescriptions filled that were going to be covered by DRS based on a March 2017 request that has not been accomplished to date due to a request for a copy of an actual prescription of controlled substance which is illegal for me to do and no alternative for documentation has been determined acceptable. I really don't see how this process is fair or how this could be discriminatory or retaliatory when clearly there was a delay in finding out the correct way to file an appeal, a possible delay in getting a date for the request for hearing, the non-continuance of services as outlined in Section 510.60 and no assistance from the Client Assistance Program with resolving any of these issues even with a referral to an outside source that has not accepted my case for assistance.

**It is my hope and prayer that I can receive a detailed response to this email by the close of business today along with a follow-up name and phone number to a live person who can assist me with follow-up questions and next steps. Your assistance is anticipated and appreciated.**

Respectfully,

Dorothy Reddic
815-519-5439

## Joint Committee on Administrative Rules

# ADMINISTRATIVE CODE

### TITLE 89: SOCIAL SERVICES
### CHAPTER IV: DEPARTMENT OF HUMAN SERVICES
### SUBCHAPTER a: GENERAL PROGRAM PROVISIONS

**PART 510 APPEALS AND HEARINGS**
**SECTION 510.60 SERVICE NOTICE**

**Section 510.60  Service Notice**

e)    For issues related to the disposition of services during the hearing process, the customer must be advised that DHS-ORS will continue to provide the disputed services until DHS-ORS final decision has been rendered unless:

1)    the services being provided were obtained through misrepresentation, fraud, collusion or criminal conduct on the part of the customer;

2)    the service has been planned but not commenced; or

3)    the customer, or as appropriate, the customer's parent, family member, guardian, advocate or duly authorized representative requests the service be terminated.  Continuances in the proceeding shall not be issued for the purpose of extending services.

---

**From:** DHS.HSPAppeals <DHS.HSPAppeals@Illinois.gov>
**Sent:** Monday, May 8, 2017 3:57 PM
**To:** Dorothy Reddic
**Cc:** Mwinzi, Beatrice; Howard, Andre M.
**Subject:** RE: [External] Request for Hearing Dorothy Reddic ---Please Confirm Receipt

You may fax it to: 312 793-8573

---

**From:** Dorothy Reddic [mailto:msreddic@hotmail.com]
**Sent:** Monday, May 08, 2017 3:08 PM
**To:** DHS.HSPAppeals
**Cc:** Mwinzi, Beatrice; Howard, Andre M.; Dorothy Reddic
**Subject:** RE: [External] Request for Hearing Dorothy Reddic ---Please Confirm Receipt

Hi do you have a fax number I can send it to?

Thank you!
Dorothy Reddic

On May 8, 2017 2:19 PM, "DHS.HSPAppeals" <DHS.HSPAppeals@Illinois.gov> wrote:
Your form was blank - no information was on the form.

---

**From:** Dorothy Reddic [mailto:msreddic@hotmail.com]
**Sent:** Monday, May 08, 2017 2:13 PM
**To:** DHS.HSPAppeals
**Cc:** Howard, Andre M.; Mwinzi, Beatrice; Dorothy Reddic
**Subject:** RE: [External] Request for Hearing Dorothy Reddic ---Please Confirm Receipt

Good Afternoon,

Please advise me what makes my form incomplete. I have been calling and the phone number keeps hanging up on me.

Your prompt attention is request.  Thank you very much!

Respectfully,

Dorothy Reddic

On May 8, 2017 1:13 PM, "DHS.HSPAppeals" <DHS.HSPAppeals@Illinois.gov> wrote:
Good Afternoon Ms Reddic,

Please be advised, the form submitted is not complete and therefore we're unable to process your submission.

Please complete the form and remit upon completion.

Thank you.

---

**From:** Dorothy Reddic [mailto:msreddic@hotmail.com]
**Sent:** Monday, May 01, 2017 8:39 PM
**To:** DHS.BAH
**Cc:** Mwinzi, Beatrice; Howard, Andre M.; Dorothy Reddic
**Subject:** [External] Request for Hearing Dorothy Reddic ---Please Confirm Receipt
**Importance:** High

Dear Hearings Coordinator:

My name is Dorothy Reddic, Vocational Rehabilitation Customer and I am requesting a hearing. Please find the Request for Hearing Form attached. Also please confirm receipt.

Respectfully,

Dorothy Reddic


State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.

Dorothy

From: Jenkins, Leslie C. <Leslie.C.Jenkins@illinois.gov>
Sent: Monday, June 12, 2017 1:31 PM
To: Dorothy Reddic; Howard, Andre M.; DHS.HSPAppeals
Cc: Mwinzi, Beatrice; Shakur, Taqiyyah; Alvarado, Francisco
Subject: RE: [External] Request for Hearing Dorothy Reddic ---Please Confirm Receipt 6-8-2017---Major Concerns Responses Needed ---Still Waiting 6-12-2017

I do not have the ability to record the call. Therefore, I will direct you to review IL Administrative Code Title 89: Social Services, Chapter IV: Department of Human Services, Subchapter a: General Program Provisions, Part 510 Appeals and Hearings located at www.ilga.gov/commission/icar/admincode/089/08900510 <http://www.ilga.gov/commission/icar/admincode/089/08900510> . This will possibly answer your questions regarding DRS' appeal process. After reviewing this information if you have more questions, please contact me in the best way you see fit.

I will follow-up with PSLS managing attorney, K. Thielbar, in order to gain some resolution as to whether or not your case has been determined to have merit for representation. It is my hope that we can come to a meeting of the minds in order to finally alleviate the added stressors being put on you as a DRS/VR customer.

Leslie C. Jenkins
Client Assistance Program (CAP)
4450 North Prospect Road
Peoria Heights, IL 61616
(309) 686-7877  Phone
(309) 686-7880  Fax
Leslie.c.jenkins@illinois.gov

-----Original Message-----
From: Dorothy Reddic [mailto:msreddic@hotmail.com]
Sent: Monday, June 12, 2017 1:04 PM
To: Jenkins, Leslie C.; Howard, Andre M.; DHS.HSPAppeals
Cc: Mwinzi, Beatrice; Shakur, Taqiyyah; Alvarado, Francisco; Dorothy Reddic
Subject: Re: [External] Request for Hearing Dorothy Reddic ---Please Confirm Receipt 6-8-2017---Major Concerns Responses Needed ---Still Waiting 6-12-2017

Hello Mrs. Jenkins:

I am currently working and I will call you after 3:00 PM but I am requesting written responses because I will not have the ability to capture everything you say over the phone which will pose more questions unless you have the ability to record the call and I can get

a quick copy of the recording. I have issues with my ability to retain, process and recall information without having written documents in front of me which is why I generally attend most meetings with VRS with a binder of information.

FYI, my number is 815-200-9730 and 815-519-5439, the number you left the message on was my mother's phone and she did text me the message.

Thank you very much!

Dorothy Reddic

From: Jenkins, Leslie C. <Leslie.C.Jenkins@illinois.gov>
Sent: Monday, June 12, 2017 12:48 PM
To: Dorothy Reddic; Howard, Andre M.; DHS.HSPAppeals
Cc: Mwinzi, Beatrice; Shakur, Taqiyyah; Alvarado, Francisco
Subject: RE: [External] Request for Hearing Dorothy Reddic ---Please Confirm Receipt 6-8-2017---Major Concerns Responses Needed ---Still Waiting 6-12-2017

Ms. Reddic,

I would like to answer as many of your questions as I can. However, I believe the best way to do that is to speak with you rather than continuing the email chains. The emails seem to cause more unanswered questions as the emails evolve. I attempted to reach at 10:20am after I responded to your email. However, there was no answer. I left a voice message (815)218-8309 requesting a return call. Please contact me at (866)480-0833.

Leslie C. Jenkins
Client Assistance Program (CAP)
4450 North Prospect Road
Peoria Heights, IL 61616
(309) 686-7877 Phone
(309) 686-7880 Fax
Leslie.c.jenkins@illinois.gov

-----Original Message-----
From: Dorothy Reddic [mailto:msreddic@hotmail.com]
Sent: Monday, June 12, 2017 11:07 AM
To: Jenkins, Leslie C.; Howard, Andre M.; DHS.HSPAppeals
Cc: Mwinzi, Beatrice; Shakur, Taqiyyah; Alvarado, Francisco; Dorothy Reddic
Subject: Re: [External] Request for Hearing Dorothy Reddic ---Please Confirm Receipt 6-8-2017---Major Concerns Responses Needed ---Still Waiting 6-12-2017
Importance: High

Hello Mrs. Jenkins:

Please advised my case has NOT been ACCEPTED my case but it is being REVIEWED by the managing attorney for whether or NOT they are able to assist me with the APPEAL. Although you I know it is NOT your intent to make me feel as though my case isn't important there is NO one who is ensuring that my questions are answered regarding the appeal process and other questions I have regarding continued DRS sevices.

Additionally without my multiple inquires to the "DHS.HSPAppeals" ghost writer who responds to the emails without leaving their name or phone number to further explain to a person with disabilities what they have expressed they do not understand I find this entire process very overwhelming, dismissive, lacks dignity and it makes me pray more than I can find a way to ensure my rights are not violated, discrimination ceases for people of color, individuals with disabilities are provided appropriate accommodations based on their requests due to their ability status, client advocates have the best knowledge and availability to assist clients with ensuring all the necessary steps are followed by them and all aspects of DHS along with with reassuring the client they will receive a fair process to address all their concerns. I am not having that experience and I don't know who can assist me with achieving these things.

From everything I have read, there set ways for arranging appeals and one of the things states mutually agreed upon dates and times. I also read if a client requests to have the hearing via phone the Appeals department would acknowledge the request. I also read that the CAP program would assist clients with understanding their rights to the appeal process and I was referred to Prairie Legal Services in April and it is mid June there hasn't been a decision made on their part to assist me or not. I filed a request for hearing on May 1, 8 and 9th and after multiple calls and emails to various people I received an email from an unnamed person from DHS HSPAppeals providing me a date for the appeal and no further details or answer to my other questions that made sense to me. I did receive a prompt response by Mr. Howard, Supervisor for the DeKalb DRS office providing me the date, time and location for the Appeal. I am not sure how he received the information prior to me when I am the client who requested the hearing but I am grateful he gave me the information. Now I understanding you saying I can do the following:

"If the date/time of the currently scheduled hearing presents a problem, you can make notice of your request for a continuance to the Impartial Hearing Officer no later than 3 working days prior to the original hearing date. You can send an email to DHS.HSPAppeals to make this request, and to make request for any other accommodations that you might require for this hearing."

I don't know what you mean by "make a notice for a continuance to the impartial hearing officer." What is a notice? How is the impartial hearing officer? Isn't there some official documentation that notifies me of the hearing and why my original request wasn't honored. Something that explains what the term "timely" means because July 11, 2017 from May 1, 2017 doesn't seem timely but perhaps I am unaware of the time frames provided to the Appeals process. Everything seems to be done so haphazardly without regard for me as a person with a disability who continues to seek assistance but is being passed on to some other entity who has had a difficult time determining if they are going to accept my case or not.

If there is a higher authority who can assist me or I can file a complaint, grievance, or appeal to regarding these entire process and the lack of clarity and assistance I am receiving despite my request for assistance. I would appreciate someone providing me the contact information for an outside entity who can explain the answers to all the questions I have asked and can ensure I receive ALL the records I requested from my file in the fashion I requested and helps me prepare for the hearing whether I have assistance or not

from CAP or Prairie Legal Services. There really needs to be more transparency with a government entity and accountability for those who work for those of us who pay taxes in the state of Illinois and Federally.

1.  *    How much time is considered "timely" according the administrative code?
2.  *    What is a "subsequent submission is valid mean?"

3.  *    What time is the appeal hearing on July 11, 2017? I thought this was supposed to be a mutually agreed upon time? Where is the hearing going to be held?

4.    When an d How will I receive the "official" documents informing me of the hearing date, time and location?
5.  *    What do you mean by "the outstanding balance issue...to be address at your scheduled hearing on July 11, 2017 before a hearing"?

6.  *    Who can inform me what Section 510.60 Service Notice means and how it is implemented during a request for a hearing?

7.  *    What is the first and last name of the person who is in charge of all appeals/hearing for DRS/VRS/DHS and what is a working telephone number and email for that person?

8.    What is a notice?
9.    Who is the impartial hearing officer?
10.    What are all my options for submitting this "notice"?
11.    What other entities can assist me with this process other than DHS who is really impartial?
12.    Who can explain to me what my other rights are as it relates to my services as a customer?
13.    Who can ensure I receive ALL the records I requested from my client file from DRS without there being such a great burden placed on me or further delay?
14.    Who will oversee all of this to ensure my rights as a client are being met in a customer-driven manner that makes me look forward to my next encounter with DRS? As it is written in your mission.

Please understand I do appreciate your response but I am going to continue to send this same email until I receive ALL the answers to my questions in written format in a way that I can understand along with the name and phone number of someone who can explain the answers in the event I request clarification. Thank you very much!

Respectfully,
Dorothy Reddic

---

From: Jenkins, Leslie C. <Leslie.C.Jenkins@Illinois.gov>
Sent: Monday, June 12, 2017 10:15 AM
To: Dorothy Reddic; Howard, Andre M.; DHS.HSPAppeals
Cc: Mwinzi, Beatrice; Shakur, Taqiyyah; Alvarado, Francisco
Subject: RE: [External] Request for Hearing Dorothy Reddic ---Please Confirm Receipt 6-8-2017---Major Concerns Responses Needed

Ms. Reddic,

If the date/time of the currently scheduled hearing presents a problem, you can make notice of your request for a continuance to the Impartial Hearing Officer no later than 3 working days prior to the original hearing date. You can send an email to DHS.HSPAppeals to make this request, and to make request for any other accommodations that you might require for this hearing.

Also, per your signed release of information, I have been in contact with your legal representative making them aware of your concerns. Unfortunately, the attorney that you met with had a death in the family and your case was transferred to another attorney within that firm. Please be aware that it was not CAP's intent to make you feel as though your case was not important to us.

Leslie C. Jenkins
Client Assistance Program (CAP)
4450 North Prospect Road
Peoria Heights, IL 61616
(309) 686-7877 Phone
(309) 686-7880 Fax
Leslie.c.jenkins@illinois.gov


-----Original Message-----
From: Dorothy Reddic [mailto:msreddic@hotmail.com]
Sent: Friday, June 09, 2017 5:16 PM
To: Howard, Andre M.; DHS.HSPAppeals
Cc: Mwinzi, Beatrice; Shakur, Taqiyyah; Jenkins, Leslie C.; Alvarado, Francisco; Dorothy Reddic
Subject: Re: [External] Request for Hearing Dorothy Reddic ---Please Confirm Receipt 6-8-2017---Major Concerns Responses Needed

Hello Mr. Howard:


I appreciate your response to the one part of my question. Unfortunately the date and time does not work for my schedule. I would appreciate information on how to request a change of day, time and method for meeting because I requested a phone meeting. Also would you please direct me to someone who can answer the other questions I wrote previously in the earlier email?


Thank you very much for your "timely" response to my email today!


Respectfully,


Dorothy Reddic

From: Howard, Andre M. <Andre.M.Howard@illinois.gov>
Sent: Friday, June 9, 2017 3:47 PM
To: Dorothy Reddic; DHS.HSPAppeals
Cc: Mwinzi, Beatrice; Shakur, Taqiyyah; Jenkins, Leslie C.; Alvarado, Francisco
Subject: RE: [External] Request for Hearing Dorothy Reddic ---Please Confirm Receipt 6-8-2017---Major Concerns Responses Needed

Ms. Reddic:

Your Hearing is scheduled for July 11, 2017 in the DeKalb DRS Field Office 1330 Oakwood DeKalb Illinois 60115 at 9:30AM. The issues you outlined that you are in disagreement with DRS will be addressed at your 7/11/2017 Hearing by an Impartial Hearings Officer.

Thanks,

Andre M. Howard M.Ed.
Public Service Administrator
Aurora Field Office
888 So. Edgelawn Ste. 1771
Aurora, Illinois 60506
630-892-7417

DeKalb Field Office
1330 Oakwood
DeKalb,Illinois 60115
815 758-2471
andre.m.howard@illinois.gov

A great relationship is about two things:
First, appreciating the similarities and second, respecting the differences.

"This document and data being transmitted is legally protected and confidential and intended for use by the individual or entity to which it is addressed. The recipient is prohibited from re-disclosure unless required or authorized to do so by law or written request. If you are not the intended authorized recipient, you are hereby notified that any disclosure, copying, distribution, or action taken in reliance on the contents of these documents or data is strictly prohibited. Should the recipient receive information in error, the recipient is to notify the sender of the error and delete the e-mail and accompanying file information immediately. DHS users are solely responsible for maintaining the confidentiality of the information."

-----Original Message-----
From: Dorothy Reddic [mailto:msreddic@hotmail.com]
Sent: Friday, June 09, 2017 1:10 PM
To: DHS.HSPAppeals
Cc: Mwinzi, Beatrice; Howard, Andre M.; Shakur, Taqiyyah; Jenkins, Leslie C.; Alvarado, Francisco; Dorothy Reddic
Subject: Re: [External] Request for Hearing Dorothy Reddic ---Please Confirm Receipt 6-8-2017---Major Concerns Responses Needed
Importance: High

Hello I am not sure to whom I am speaking. Would you please send the name and phone number of a supervisor who I can speak with

to explain your email. I don't understand much of it or the process. I would greatly appreciate getting more insight today as I have been waiting in great anticipation for a month and now I am asked to wait another 32 days without fully understanding the terms used in this email or the administrative code referencing a "timely" hearing.

Hello Mr. Howard, Alvarado and Mrs. Jenkins, Shakur: If any of you can provide me the answers to one or all the questions listed below I would appreciate your prompt assistance. As you all are aware this has been an ongoing issue for several months for me and has caused increased stress, anxiety, depression, financial hardship and negatively impacts my credit and character with Northern Illinois University. I need someone to assist me, I am a person with multiple disabilities by being bounced around from one disconnected phone number, to a non-responsive email, to a client assistance program that is unable to assist me, to a law firm that can't decide if they will assist me after more than 30 days and multiple meetings I believe I am being exploited and my rights are being violated and intentional delays are being placed upon me for unexplained reasons resulting in the need for more mental health services to assist me with daily functioning. This is a serious matter and I believe this all retaliatory as a result of me filing complaints against those who are in management exposing the

*    How much time is considered "timely" according the administrative code?

*    What is a "subsequent submission is valid mean?"

*    What time is the appeal hearing on July 11, 2017? I thought this was supposed to be a mutually agreed upon time? Where is the hearing going to be held?

*    What do you mean by "the outstanding balance issue...to be address at your scheduled hearing on July 11, 2017 before a hearing"?

*    Who can inform me what Section 510.60 Service Notice means and how it is implemented during a request for a hearing?

*    What is the first and last name of the person who is in charge of all appeals/hearing for DRS/VRS/DHS and what is a working telephone number and email for that person?

"Please be advised that a subsequent submission is valid and therefore an appeal is currently pending under appeal #: I17-014596. Currently your appeal hearing is scheduled for July 11, 2017.

In regards to the outstanding balance issue, that is an issue to be address at your scheduled hearing of July 11, 2017 before a hearing."

Section 510.60  Service Notice

For issues related to the disposition of services during the hearing process, the customer must be advised that DHS-ORS will continue to provide the disputed services until DHS-ORS final decision has been rendered unless:

Your assistance is greatly appreciated and I look forward to getting concise response to these questions.

Respectfully,

Dorothy Reddic

815-519-5439

_____

From: DHS.HSPAppeals <DHS.HSPAppeals@Illinois.gov>
Sent: Friday, June 9, 2017 10:33 AM
To: Dorothy Reddic
Cc: Mwinzi, Beatrice; Howard, Andre M.; Shakur, Taqiyyah; Jenkins, Leslie C.; Alvarado, Francisco
Subject: RE: [External] Request for Hearing Dorothy Reddic ---Please Confirm Receipt 6-8-2017

Good Morning Ms. Reddic,

Please be advised that a subsequent submission is valid and therefore an appeal is currently pending under appeal #: I17-014596.

Currently your appeal hearing is scheduled for July 11, 2017.

In regards to the outstanding balance issue, that is an issue to be address at your scheduled hearing of July 11, 2017 before a hearing.

Thank you.

From: Dorothy Reddic [mailto:msreddic@hotmail.com]
Sent: Thursday, June 08, 2017 4:29 PM
To: DHS.HSPAppeals
Cc: Mwinzi, Beatrice; Howard, Andre M.; Shakur, Taqiyyah; Dorothy Reddic; Jenkins, Leslie C.; Alvarado, Francisco
Subject: Re: [External] Request for Hearing Dorothy Reddic ---Please Confirm Receipt 6-8-2017
Importance: High

Greetings "Rosa" or Director of Hearings:

My name is Dorothy Reddic, a customer of the DRS VRS program. On May 1, 2017 I filed a Request for Hearing to your office via email. I received an email on May 8, 2017 informing me that my request was "incomplete" and upon further inquiry I was informed by an "unnamed" person from this email that the document I submitted was blank. I sent the completed form I sent the first time to this email address and faxed it to the following fax number provided: 312 793-8573 and requested confirmation upon receipt. Although I did not receive a confirmation.

Since that time 30 days have passed and I have called the following number 1-800-435-0774 (voice) on many occasions over the past 30 days and each time I have been hung up on when I selected the Appeals/Hearing option. I have called several numbers seeking the phone number to a live person who could tell me the status of the request for hearing filed on May 1, 2017. This week I was blessed to speak to two individuals who work for DHS and requested assistance regarding the hearing process I was provided three more numbers two for Chicago with a 312 area code and a non-working Springfield number but I was unable to reach anyone. I persisted to call multiple numbers and select various options and I spoke to a kind woman named "Rosa" who indicated the person I needed to speak with was also named "Rosa" who coordinates the hearings. I asked to speak to a supervisor and she transferred me to Mrs. Jones who indicated that she was not the person who handles appeals for VRS but "Rosa" was the person I needed to speak with because I didn't have an appeal date assigned. She agreed to walking the message to Rosa and asking her to return my call on Tuesday, June 6, 2017 in the afternoon with further information. Unfortunately I have not received any return calls from Rosa nor have I received a letter notifying me of the "timely" and "impartial hearing" regarding my request for a hearing.

It is unfortunate as a person with multiple disabilities I have to seek multiple entities for assistance to figure out how to file an appeal, a complaint and how to properly follow-up regarding the status of the hearing. DHS assist individuals as myself with disabilities but the process isn't conducive to a person with disabilities and it seems very unfair but it is distressing. Although I have asked multiple people when I have spoken to someone I am not sure how the term "timely" is defined but 30 days seems to be reasonable. Please provide me a clear definition of how "timely' is defined.

Additionally based on Section 510.60 Service Notice, I would like to know why I have an outstanding balance with Northern Illinois University for the items listed on the Request for Hearing:

A.) Tuition---$411.24 (PSPA 650)

B.) Books/Supplies---$564.26

C.) Student Medical Insurance $1039

D.) Late Fees incurred due to the lack of sufficient payments made by DRS

It is my understanding according to the Administrative Code this means the above issues are to be paid until a decision is rendered through the process of a hearing. I asked my counselor on May 11, 2017 at our last meeting if these items were going to be paid and she informed me I was misunderstanding this rule. I am not sure how because it appears very clear and concise. I do not that I am in negative standing financially with the university, I had to disclose more about my disabilities than necessary or warranted begging the

Bursars office to grant me permission to register for classes. I know that I am going to lose my health insurance which will leave me without a way to have prescriptions filled that were going to be covered by DRS based on a March 2017 request that has not been accomplished to date due to a request for a copy of an actual prescription of controlled substance which is illegal for me to do and no alternative for documentation has been determined acceptable. I really don't see how this process is fair or how this could be discriminatory or retaliatory when clearly there was a delay in finding out the correct way to file an appeal, a possible delay in getting a date for the request for hearing, the non-continuance of services as outlined in Section 510.60 and no assistance from the Client Assistance Program with resolving any of these issues even with a referral to an outside source that has not accepted my case for assistance.

It is my hope and prayer that I can receive a detailed response to this email by the close of business today along with a follow-up name and phone number to a live person who can assist me with follow-up questions and next steps. Your assistance is anticipated and appreciated.

Respectfully,

Dorothy Reddic

815-519-5439

<http://www.ilga.gov/commission/jcar/images/admincode.gif>

TITLE 89: SOCIAL SERVICES
CHAPTER IV: DEPARTMENT OF HUMAN SERVICES SUBCHAPTER a: GENERAL PROGRAM PROVISIONS PART 510 APPEALS AND HEARINGS SECTION 510.60 SERVICE NOTICE

Section 510.60  Service Notice

e)     For issues related to the disposition of services during the hearing process, the customer must be advised that DHS-ORS will continue to provide the disputed services until DHS-ORS final decision has been rendered unless:

1)     the services being provided were obtained through misrepresentation, fraud, collusion or criminal conduct on the part of the customer;

2)      the service has been planned but not commenced; or

3)      the customer, or as appropriate, the customer's parent, family member, guardian, advocate or duly authorized representative requests the service be terminated.  Continuances in the proceeding shall not be issued for the purpose of extending services.

From: DHS.HSPAppeals <DHS.HSPAppeals@illinois.gov>
Sent: Monday, May 8, 2017 3:57 PM
To: Dorothy Reddic
Cc: Mwinzi, Beatrice; Howard, Andre M.
Subject: RE: [External] Request for Hearing Dorothy Reddic —Please Confirm Receipt

You may fax it to: 312 793-8573

From: Dorothy Reddic [mailto:msreddic@hotmail.com]
Sent: Monday, May 08, 2017 3:08 PM
To: DHS.HSPAppeals
Cc: Mwinzi, Beatrice; Howard, Andre M.; Dorothy Reddic
Subject: RE: [External] Request for Hearing Dorothy Reddic —Please Confirm Receipt

Hi do you have a fax number I can send it to?

Thank you!

Dorothy Reddic

On May 8, 2017 2:19 PM, "DHS.HSPAppeals" <DHS.HSPAppeals@illinois.gov> wrote:

Your form was blank - no information was on the form.

From: Dorothy Reddic [mailto:msreddic@hotmail.com]
Sent: Monday, May 08, 2017 2:13 PM
To: DHS.HSPAppeals
Cc: Howard, Andre M.; Mwinzi, Beatrice; Dorothy Reddic

Subject: RE: [External] Request for Hearing Dorothy Reddic ---Please Confirm Receipt



Good Afternoon,

Please advise me what makes my form incomplete. I have been calling and the phone number keeps hanging up on me.

Your prompt attention is request.  Thank you very much!

Respectfully,

Dorothy Reddic

On May 8, 2017 1:13 PM, "DHS.HSPAppeals" <DHS.HSPAppeals@Illinois.gov> wrote:

Good Afternoon Ms Reddic,

Please be advised, the form submitted is not complete and therefore we're unable to process your submission.

Please complete the form and remit upon completion.

Thank you.

From: Dorothy Reddic [mailto:msreddic@hotmail.com]
Sent: Monday, May 01, 2017 8:39 PM
To: DHS.BAH
Cc: Mwinzi, Beatrice; Howard, Andre M.; Dorothy Reddic
Subject: [External] Request for Hearing Dorothy Reddic ---Please Confirm Receipt
Importance: High

Dear Hearings Coordinator:

My name is Dorothy Reddic, Vocational Rehabilitation Customer and I am requesting a hearing. Please find the Request for Hearing Form attached. Also please confirm receipt.

Respectfully,

Dorothy Reddic

State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.

# FW: Questions

Stellar, Tonya <Tonya.Stellar@ed.gov>

Mon 7/31/2017 8:23 AM

To:Dorothy Reddic (msreddic@hotmail.com) <msreddic@hotmail.com>;

Hello Ms. Reddic:

Thank you for your follow-up e-mail submitted to RSA on July 25, 2017. I have provided responses under each of your questions below.

Tonya

Tonya M. Stellar, M.A., CRC
Vocational Rehabilitation Program Specialist
State Team Facilitator
Rehabilitation Services Administration
Office of Special Education and Rehabilitative Services
U.S. Department of Education
550 12th Street SW, PCP 5097
Washington, DC 20202
(202) 245-6638
Tonya.stellar@ed.gov

---

**From:** Dorothy Reddic [mailto:msreddic@hotmail.com]
**Sent:** Tuesday, July 25, 2017 6:11 PM
**To:** Stellar, Tonya
**Cc:** Dorothy Reddic
**Subject:** Questions


Hello Mrs. Stellar:

I apologize for contacting you again but I have need of assistance with ensuring I am interpreting things correctly and I don't have anyone who can definitely tell me if I am reading this information correctly. I really would appreciate you not sharing this email with anyone within the State of Illinois or who will speak to anyone within the state. I do have some pending complaints and they are attempting to close my case as result of me exercising my right to file complaints. It is very sad.

I have attached a document which states appeal rights....

1.) By filing an appeal the "Services" which are outlined in the IEP are supposed to continue based on what this document states. Therefore if a service is "Training" and I am receiving training at a University and the IPE states "tuition and fees" will be paid to the maximum amount on the IEP. If the IDRS paid for part of the tuition and fees and I file an appeal then does this mean they would pay the disputed fees until the appeal decision is made? In accordance with 34 CFR §361.57(b)(4) of the VR regulations, the VR agency may not institute a

suspension, reduction or termination of VR services provided under an approved IPE pending mediation, or a decision by a hearing officer. However, if services and costs were not approved under an IPE, and are under dispute, the VR agency would not be responsible for paying disputed fees.

2.) Next question: If I file an appeal and it takes the Bureau of Hearings more than 60 days to schedule the appeal resulting in a delayed decision impacting my ability to continue the pursuit of the vocational goal what entity may I file a complaint against the Bureau of Hearings? It appears from the information you shared with me in your June 16, 2017 inquiry, Mr. Andre Howard e-mailed you on June 9, 2017, communicating that your hearing was scheduled for July 11, 2017, in the DeKalb DRS Field Office 1330 Oakwood DeKalb Illinois 60115 at 9:30 am. However, due to a scheduling conflict, you requested on June 9 via e-mail that your hearing be rescheduled. In my previous response to you on June 19, 2017, I inquired about whether the hearing date had been rescheduled per your request, and you did not respond.

3.) Finally, is there any reason why the VR programs are not required to provide customers with service guidelines outlining the potential services available, how they are to be implemented with expectations of each involved party, how to file a complaint and where all complaints can be filed when a customer deems their rights have been violated to ensure they file the complaints within the said amount of time to give the customer the best chance at being heard by an impartial entity? I am sure you are thinking that the CAP program should assist but they are very limited and their oversight is provided by the entities in which a customer may complain and they don't provide the information to assist a customer as myself. The Illinois Division of Rehabilitation Services has posted its policies and State rules at:
http://www.dhs.state.il.us/page.aspx?item=75376

It is my hope and prayer that you do not share this information with anyone who works for the State of Illinois as I ask these questions with the strictest confidence.

Respectfully,

Dorothy Reddic
VR Customer

---

From: Stellar, Tonya <Tonya.Stellar@ed.gov>
Sent: Friday, June 16, 2017 8:19 AM
To: Dorothy Reddic
Cc: Doyle, Jim; Dobak, Carol; Liuzzi, Marisa
Subject: RE: Complaint Against CAP in Illinois---Assistance Needed

Hello Ms. Reddic:

Thank you for your e-mail submitted to RSA on June 14, 2017, and communicating your concerns related to the assistance you have received from the Illinois' Division of Rehabilitation Services (DRS) and the Client Assistance Program (CAP). I will be meeting with Jim Doyle and Marisa Liuzzi, RSA CAP liaisons, as well as Francisco Alvarado and Leslie Jenkins from the Illinois CAP this afternoon to discuss your case. I will follow-up with you as soon as I am able to gather more information for you.

Tonya

Tonya M. Stellar, M.A., CRC
Vocational Rehabilitation Program Specialist
State Team Facilitator
Rehabilitation Services Administration

Office of Special Education and Rehabilitative Services
U.S. Department of Education
550 12th Street SW, PCP 5097
Washington, DC 20202
(202) 245-6638
Tonya.stellar@ed.gov

---

**From:** Dorothy Reddic [mailto:msreddic@hotmail.com]
**Sent:** Wednesday, June 14, 2017 6:19 PM
**To:** Stellar, Tonya
**Cc:** Doyle, Jim; Dobak, Carol; Dorothy Reddic; Liuzzi, Marisa
**Subject:** Complaint Against CAP in Illinois---Assistance Needed
**Importance:** High

Hello Mrs. Stellar:

I sent the email below to Mrs. Liuzzi who has been exceptionally kind to assist me previously. I just stumbled across your contact information that you are the State Liaison, Mrs. Liuzzi referenced in our previous communications. I pray you are someone who is willing to assist me with getting the assistance I need as outline below.

Thank you in advance!

Respectfully,

Dorothy Reddic

---

**From:** Dorothy Reddic <msreddic@hotmail.com>
**Sent:** Wednesday, June 14, 2017 5:14 PM
**To:** Liuzzi, Marisa
**Cc:** Doyle, Jim; Dorothy Reddic; carol.dobak@ed.gov; Dorothy Reddic
**Subject:** Complaint Against CAP in Illinois---Assistance Needed

Hello Mrs. Liuzzi:

I apologize for contacting you again regarding the VRS CAP program in Illinois but the issues I have continue to persist and I believe I am being systematically blocked from getting assistance because I am a Black woman with disabilities. I have been seeking assistance since January 2017 due to discrimination. I was told by Dr. Daniel Grohens, Supervisor for Rockford Vocational Rehab office that I was going to wish I had never filed a complaint. Since that time I have been seeking assistance even from the head of the Division of Rehab Services Mrs. Q. Wade who referred me to the CAP program and the appeals process. The CAP program referred me to Prairie Legal Services because they didn't believe they could assist me with getting the outcome I desired. I met with an attorney at Prairie Legal Services on April 24, 2017. I have provided her with hundreds of pages of documentation to assist me. Approximately three weeks ago I asked her were they taking my case and she still had not made a decision. We were scheduled to have a phone conference and she didn't call me. I contacted her office to learn her mother passed. I reached out to the Managing Attorney for the Office who never called me back but sent me an email approximately three days later informing me that she was unsure if they were taking my case and could not provide me with a timeline for a decision. She agreed to contact Equip for Equality who initially indicated in early April they would assist me with the Appeal but once they learned that I was

**From:** Dorothy Reddic [mailto:msreddic@hotmail.com]
**Sent:** Wednesday, June 14, 2017 6:19 PM
**To:** Stellar, Tonya
**Cc:** Doyle, Jim; Dobak, Carol; Dorothy Reddic; Liuzzi, Marisa
**Subject:** Complaint Against CAP in Illinois---Assistance Needed
**Importance:** High

Hello Mrs. Stellar:

I sent the email below to Mrs. Liuzzi who has been exceptionally kind to assist me previously. I just stumbled across your contact information that you are the State Liaison, Mrs. Liuzzi referenced in our previous communications. I pray you are someone who is willing to assist me with getting the assistance I need as outline below.

Thank you in advance!

Respectfully,

Dorothy Reddic

---

**From:** Dorothy Reddic <msreddic@hotmail.com>
**Sent:** Wednesday, June 14, 2017 5:14 PM
**To:** Liuzzi, Marisa
**Cc:** Doyle, Jim; Dorothy Reddic; carol.dobak@ed.gov; Dorothy Reddic
**Subject:** Complaint Against CAP in Illinois---Assistance Needed

Hello Mrs. Liuzzi:

I apologize for contacting you again regarding the VRS CAP program in Illinois but the issues I have continue to persist and I believe I am being systematically blocked from getting assistance because I am a Black woman with disabilities. I have been seeking assistance since January 2017 due to discrimination. I was told by Dr. Daniel Grohens, Supervisor for Rockford Vocational Rehab office that I was going to wish I had never filed a complaint. Since that time I have been seeking assistance even from the head of the Division of Rehab Services Mrs. Q. Wade who referred me to the CAP program and the appeals process. The CAP program referred me to Prairie Legal Services because they didn't believe they could assist me with getting the outcome I desired. I met with an attorney at Prairie Legal Services on April 24, 2017. I have provided her with hundreds of pages of documentation to assist me. Approximately three weeks ago I asked her were they taking my case and she still had not made a decision. We were scheduled to have a phone conference and she didn't call me. I contacted her office to learn her mother passed. I reached out to the Managing Attorney for the Office who never called me back but sent me an email approximately three days later informing me that she was unsure if they were taking my case and could not provide me with a timeline for a decision. She agreed to contact Equip for Equality who initially indicated in early April they would assist me with the Appeal but once they learned that I was being referred by CAP to their contracted legal service they declined their offer to help me. I wrote a grievance as instructed to the Vice President of CAP and it was still denied then I was given the impression that Prairie Legal Services was going to help me only to discover they still have not made a decision. I contacted Equip for Equality asking for their assistance and I have not heard from them as of yet.

I filed a request for an appeal on May 1, 2017 and received an email confirmation that they received the request. On May 8, 2017 I received an email from a ghost writer from DHS.Appeals who wouldn't provide a name or phone number stating the appeal form was incomplete. I resubmitted the form via email on May 8, 2017 and on May 9, 2017 I requested confirmation and did not receive confirmation until after several requests, emails and phone calls to others with in DHS that it has been received as of last week but it still had not been scheduled for a hearing. I asked for the person in charge of scheduling to call me to inform me of the upcoming hearing date and time because I wanted to know why there was such a delay. I never received a response. I asked why my services were not continued as it states in the Administrative Coed the 'ghost writer' wrote something I could not understand the meaning. I requested clarification and did not receive clarification from anyone on the emails below. I received an email and phone call from Leslie Jenkins from CAP stating they are not intending to leave me on my own but when I called her back she failed to return my call. She sent me email stating the law firm would have a decision on whether or not they are going to assist me by this Friday, June 16, 2017 less than 30 days from the Appeals Hearing, 10 days from the time I must have documentation I want considered or heard submitted on a day and time that does not work best for my schedule. It is also 20 days from the time my insurance will expire, three weeks into the time my next class begins but two weeks before it ends, six months after the payments were due to the university and very close to the time that I will NOT have coverage for my mental health services (counseling and medications) which have been covered by the VRS program for the past 12 months and are a major component to why I am receiving services.

Additionally I have questions that are not about the APPEALS process but the CAP program is not offering me ANY assistance with any of my questions. I am systematically being discriminated against as a Black woman with disabilities because I have exercised my right to refuse unfair treatment and file complaints. I am and have been experiencing systematic racism, discrimination and exploitation as a Black person with mental health disabilities that have been exacerbated as a resulting causing an increase in symptoms requiring more frequent visits to the doctors, increase in medications and counseling. My education has been impacted along with my quality of life.

What recourse do I have when the CAP program is unwilling to assist a customer of the Vocational Rehabilitation Program? I am can't find a name or number for anyone in the State of Illinois who is over the CAP program higher than Francisco Alvarado nor is there information about filing a grievance or complaint against their unwillingness to serve me. This is why it is a major conflict of interest to have the Assistant Director of the Division of Rehabilitation Services serve as the Acting Director of the Client Assistant Program because when there are discriminatory practices or there is no recourse or watch dog group for the customer and/or tax payer.

Is there anyone who can assist me with ensuring I receive the assistance needed to adequately prepare for the hearing? Have other questions answered about delayed services that are supposed to be in place to ensure I have the necessary medications to treat my mental health. Anyone who can assist with filing a complaint of discrimination and exploitation of a person with a mental disability? It used to be illegal to discriminate or intentionally exploit a person with a mental illness but perhaps that is not the case anymore.

Your assistance is requested and greatly needed.

Respectfully,

Dorothy Reddic

---

From: Dorothy Reddic <msreddic@hotmail.com>
Sent: Wednesday, June 14, 2017 4:32 PM
To: Alvarado, Francisco

Cc: Mwinzi, Beatrice; Shakur, Taqiyyah; Alvarado, Francisco; Dorothy Reddic; Jenkins, Leslie C.; Andre Howard
Subject: Complaint Against CAP

Hello Mr. Alvarado:

Are you still the "Acting Director for CAP?" If you are I would appreciate you responding to my questions in the multiple emails I have sent that have gone unanswered. I think it is unreasonable and unfair to ask me to wait to have my answers to my questions while a legal entity continues to deliberate as to whether or not they are willing to accept my case after more than 2 months. I am not sure what "time" or a "quick" or "fair" or "client assistance" may look like to DRS or DHS but if what I have experienced is what the state promises to deliver and how persons like myself with disabilities are served then as a tax payer I am disappointed in the entire system that allows individuals like myself to be systematically given the run around continue to add distress and delay to needed services.

I have been searching for an organization who is willing to challenge the status quo that appears to be acceptable with the State of Illinois and it helps me to understand why services for people like myself are being cut because we continue to experience discrimination and are marginalized even by those who are in position to protect and ensure our rights are not denied, delayed or people are not discriminated.

I have asked several questions that you, Leslie, Andre and Beatrice should have been able to answer easily based on the fact you all are the ones who are either working with the VRS program, or are required to assist clients with obtaining services or you are the one's who are administrators for the State Agencies. Even if you didn't have the answers you could have obtained the answers at this point but it demonstrates how the organization further devalues me as a customer, client and a tax payer. I am extremely disappointed and I am seeking every avenue to express my discontent because I am sure there are other people similar to me, Black with a disability who are being railroaded because of being Black and having a disability.

The customer service I have received thus far is deplorable and needs a thorough investigation. I have NOT received ANY assistance from CAP and I KNOW you all realize I am crying out for help but you keep IGNORING my requests and not returning my calls. Denying my requests to receive assistance in a manner that meets my individual needs a person with a disability or accommodating me.

If you are NOT the acting Director for CAP any longer please send me the contact information for the person in charge of CAP, the person in charge of the Appeals Department and the entity which handles complaints for each area of the VRS program as I want this go to on record that I requesting help since January 2017 and NO one within the DHS system other than Beatrice with limitations has rendered me any assistance. You have made a referral but as I anticipated the assistance would be delayed or denied based on Prairie Legal Services ability to handle my case leaving me without anyone to assist me with preparing for a hearing that is less than 30 days away on a day and time that is NOT conducive to my schedule. Regarding services that will expire before the a decision has to be made based on the appeal by individuals who intentionally delayed the appeal process to ensure that I would not have an opportunity to adequately prepare for the hearing or potentially receive the services prior to the end of the IPE or the start of my next classes.

I am so hurt and upset and I pray the Lord will have mercy on all of those who are involved but failed to act on my behalf to ensure I had the information necessary to represent myself in the event no one else will or that my rights as a customer or client or tax payer are NOT denied or delayed.

Disappointment and Discouraged,

Dorothy Reddic

**NORTHERN ILLINOIS UNIVERSITY**
**Parking Services**
*Facilities Management & Campus Services*

A-Z Index | Directory | Calendar | Libraries | Make a Gift | Quick Links

Search NIU [  ]

Home / Permits / Rates

Permits

Buy Permits Online

Permit Rates

Buying a Permit

Students Permits

Faculty and Staff Permits

Visitor and Temporary Permits

Temporary Construction Permits

Service/Vendor Permits

Retiree Permits

Handicapped Permits

Request a Refund

Lost or Stolen Permit

## Contact Us

121 Normal Road
815-753-1045
parking@niu.edu

## Office Hours

Monday-Friday
7:30 a.m.-4 p.m.

# 2017–18 Permit Rates

Save money and time by purchasing your permit ahead of time online. There will be an additional $10.00 surcharge for permits purchased in person, unless noted.

## Student Permits

| Type | Fee Online | Fee in Office | Expiration |
|---|---|---|---|
| Yellow | Annual: $92.00<br>Fall Only: $70.00 | Annual: $102.00<br>Fall Only: $80.00 | Annual: 08/15/2018<br>Fall: 12/31/2017 |
| Brown | Annual: $47.00<br>Fall Only: $42.00 | Annual: $57.00<br>Fall Only: $52.00 | Annual: 08/15/2018<br>Fall: 12/31/2017 |
| Orange | Annual: $92.00<br>Fall Only: $70.00 | Annual: $102.00<br>Fall Only: $80.00 | Annual: 08/15/2018<br>Fall: 12/31/2017 |
| Green | Free | Free | Annual: 08/15/2018 |

## Faculty Permits

| Type | Fee Online | Fee in Office | Expiration |
|---|---|---|---|
| Blue | Annual: $135.00<br>Fall: $100.00<br>Summer/Fall: $112.00 | Annual: $145.00<br>Fall: $110.00<br>Summer/Fall: $122.00 | Annual: 06/30/2018<br>Fall: 12/31/2017<br>Summer/Fall: 12/31/2017 |
| Green | Free | Free | Annual: 08/15/2018 |
| Handicapped Reserve | Annual: $135.00<br>Fall Only: $100.00 | Annual: $145.00<br>Fall Only: $110.00 | Annual: 06/30/2018<br>Fall: 12/31/2017 |
| Vendor/Service / no surcharge | N/A | Annual: $135.00 | 1 year from date of purchase |

## Motorcycles

| Type | Fee Online | Fee in Office | Expiration |
|---|---|---|---|
| Motorcycle Annual | $50.00 | $60.00 | 06/30/2018 |
| Motorcycle Annual Reduced | $10.00 | $20.00 | 06/30/2018 |
| Motorcycle Fall | $25.00 | $35.00 | 12/31/2017 |
| Motorcycle Fall Reduced | $10.00 | $20.00 | 12/31/2017 |

- Reduced Motorcycle permits are available to those who have a current year vehicle permit, excluding Green permit holders.
- Must pay in the Paylot - $5.00

## Reserved Spaces

### Student Reserves



**NORTHERN ILLINOIS UNIVERSITY**
**Office of the Bursar**
*Division of Administration and Finance*

# Summary of Estimated Costs

## For Dorothy Reddic

DISCLAIMER: Keep in mind that these calculations should not be considered your official guaranteed costs at NIU. Official tuition and fees are those billed and reported on your MyNIU account by the Office of the Bursar and are subject to change.

**Illinois Residency:** IL State Resident

**Academic Career:** Graduate (Degree-Seeking)
**Engineering Major:**

### Tuition, General Fees and Expenses

|  | Fall 2017 | Spring 2018 |
|---|---|---|
| Tuition for 24 Course Hours | 5,952.48 | 5,952.48 |
| Student Medical Insurance | 1,039.00 | 1,039.00 |
| **Subtotal:** | 6,991.48 | 6,991.48 |

|  | Fall 2017 | Spring 2018 |
|---|---|---|
| **Term Total Due:** | 6,991.48 | 6,991.48 |

| **Yearly Total Due:** | |
|---|---|
| | 13,982.96 |



NORTHERN ILLINOIS UNIVERSITY
**Housing and Residential Services**

January 3, 2018

Dorothy Reddic
1335 4Th Ave
Rockford, IL 61104

Dear Dorothy,

Registration and Records has notified our office that you are not enrolled yet for Spring 2018. As you are only eligible to live in University housing if you are an active student, we wanted to give you some advance notice to take action as soon as possible. Online sign-up for courses through myNIU is available until Sunday, Jan 21, 2018, after which registration will require instructor/ departmental approval. Promptly enrolling now will keep your housing current and avoid any of the adverse consequences outlined below.

According to our records, as of the date of this mailing, you have a "HOLD/Negative Service Indicator" on your account and you will be unable to register without having that removed. If your hold is due to an unpaid balance or balance above $500, you will need to take care of that with the Office of the Bursar in order for you to enroll for classes. It can be difficult to get the hold removed in time to register for class, unless you take action promptly.

Keep in mind, that if the hold is not removed, you will not be able to register for classes, and if you are not registered for classes you will not be able to live on campus.

If you are unable to get enrolled by Thursday, Jan 18 your meal plan will be deactivated and can only be reinstated once a change in status has been verified. If you are not enrolled by Friday, January 26, you must check out of your room and turn in your key, otherwise you will be evicted. An eviction involves having the locks changed (approx. $200 charge), and you will also have your items boxed up and put in storage by hall staff ($500 fine) along with a $50 improper checkout fine and a $100 late contract cancellation fine. In addition, you will be accountable for all room and board charges incurred until you check out with the residence hall staff. The room charges range from approximately $687 for a Neptune double to approximately $955 for a New Hall mini-suite for this time period, in addition to any other fines incurred as mentioned above.

If you are not planning on attending NIU in the spring, you can contact our office at housing@niu.edu to let us know so that we can cancel your contract and remove room and board charges. We cannot complete the release process, however, until you have checked out of your room. If you are able to remove your items by Jan 12, you can avoid room and board charges, otherwise you will be charged for each night you occupy the room space. *Does not apply for Northern View Community Residents.

Your continued education and involvement are very important to us, so we wanted to make sure you had this heads-up as soon as possible. It is much easier to get enrolled before the spring semester begins, and doing so will make for a smooth transition into your classes and residence hall experience.

Should our information be incorrect, or you have additional information pertinent to your situation, please contact the Residential Administration office at housing@niu.edu or 815-753-1525.

Sincerely,

Paul Wrezinski
Associate Director of Residential Administration

**Your Future. Our Focus.**

740 Lucinda Ave • DeKalb, Illinois 60115-2828 • 815-753-1525 • Fax 815-753-9669 • housing@niu.edu • www.niu.edu/housing/
NORTHERN ILLINOIS UNIVERSITY IS AN EQUAL OPPORTUNITY/AFFIRMATIVE ACTION INSTITUTION.





**Northern Illinois University**

*Division of Finance and Facilities*

Office of the Bursar
Swen Parson 235
DeKalb, Illinois 60115-2828
815-753-1885
Fax 815-753-2400

# Payment Policy

Northern Illinois University establishes an account for each of its students that functions like a credit plan for the purpose of charging tuition and fees, room and board, and other applicable university charges.

Payment of all charges for a term is due one week prior to the start of the term to which the charges apply. Through this account, students can pay the full account balance at this time or an amount less than the full amount. **Students who pay less than the total amount due by the respective due date will be assessed a monthly late payment fee of 1.08% on the remaining unpaid portion, with a minimum late fee charge of $0.50.**

**Returned Payment Charge:** Payments unpaid by your financial institution may be subject to a returned payment charge of $25.00.

**NIU does not cancel registrations for non-payment.** Any student with a past due balance remaining, in addition to the assessment of late payment fees, will have a hold placed on his/her records. This hold will prohibit the student from obtaining official transcripts and/or registering for future term classes until the account balance is paid-in-full. To be able to register for the next term, students should pay their accounts in full by October for Fall term charges and by March for Spring term charges.

**Financial Responsibility:** By registering for courses at Northern Illinois University, the student accepts financial responsibility for payment in full of the student account plus (if necessary) any additional costs which may be incurred by the university in the collection of these debts. Late payment fees will be applied to past due amounts. Failure to pay a past due debt may result in the debt being listed with the State Comptroller's Offset Program and (if necessary) referred to a collection agency and/or other authorized legal debt collection procedures. Under such circumstances, the student is responsible for all fees and costs incurred by the university in the collection of the past due debt, including the collection fees and/or attorney's fees.



**Northern Illinois University**

*Office of the Bursar*

July 12, 2017

Dorothy Reddic
1335 4Th Ave
Rockford, IL 61104

Re: Office of the Bursar
Account Number: **01006348**

Dear Dorothy:

This letter is to advise you that our records indicate your account has a past due balance. The details of your account can be viewed online via **www.niu.edu/MyNIU**. Please be aware, in addition to a late fee being assessed to your account, a hold prohibiting you from future registration and receipt of official transcripts has been placed on your records. Payment of your past due balance would be greatly appreciated and will prevent further late payment penalties.

**If you were anticipating financial aid awards to pay your account,** check to be certain you have completed all of your **To Do List** items on **www.niu.edu/MyNIU** and have accepted all your awards. Failure to complete these may result in delay or loss of your awards.

If you would like to meet with one of our Account Counselors to discuss your specific situation and what options may be available for you, please contact our office for an appointment. The Account Counselors are located in the Bursar's Office in Swen Parson Hall Room 235. You can phone for an appointment by calling (815) 753-1885 or (815) 753-1886.

If a payment has been made to clear your account since the date of this notice, we thank you for your payment and you may disregard the above.

Thank you for your cooperation,

Office of the Bursar
SD1



**NORTHERN ILLINOIS UNIVERSITY**
**Health Services**
*Division of Student Affairs & Enrollment Management*

# Welcome to Student Health Insurance

### New Student Health Insurance Plan
The fall 2017 waiver will not be available until July 3, 2017.

The NIU student health insurance plan is through Aetna and is a PPO.

### Coverage Dates
Fall semester: August 1 to December 31.
Spring semester: January 1 to July 31.

### Cost
Student: $1039 per semester.
Spouse: $1039 per semester.
One child: $1039 per semester.
If more than one child covered: $2058 per semester.

### Open Enrollment/Waiver Dates
July 3, 2017 to September 8, 2017.

### Questions?
Please contact us at 815-753-0122 or studentinsurance@niu.edu , or visit our office in the Health Services building, room 101.

### Other Resources

- Aetna information (including Printing an ID card and Provider Search)
- Student Health Plan Policy Information
- Aetna Customer Service: 800-841-9978

*Handwritten annotations:*

Insurance lapsed
No Coverage for
Mental health
meds
or

Therapy

2nd Time Due to
VR-failure
to follow
Federal &
State Codes
"Continue Services"

1/23/18

Out of meds



**Northern Illinois University**

*Office of the Bursar*

1425 W. Lincoln Hwy.
DeKalb, Illinois 60115-2828
815-753-1885
Fax 815-753-2400
www.niu.edu/bursar

# DUE CHARGES REPORT

## *Summary of Items Owed by Term*

**Name:** Dorothy Lynette Reddic
**Student ID:** 01006348

**Account Balance:** $4,054.10

| TERM | DESCRIPTION | DUE AMOUNT |
|------|-------------|-----------:|
| Fall 2016 | Grad IL Tuition | 318.59 |
| Fall 2016 | Late Payment Fee | 24.52 |
| Spring 2017 | Grad IL Tuition | 411.24 |
| Spring 2017 | HSC Bookstore Charge | 127.17 |
| Spring 2017 | Late Payment Fee | 86.76 |
| Spring 2017 | Student Medical Insurance | 990.50 |
| Spring 2017 | VCB Bookstore Charge S | 500.56 |
| Summer 2017 | Grad IL Tuition | 1,482.24 |
| Summer 2017 | Late Payment Fee | 50.94 |
| Summer 2017 | Parking Ticket | 20.00 |
| Fall 2017 | Late Payment Fee | 41.58 |
| | **Total Due:** | **$4,054.10** |

*Account information as of August 31, 2017.*

Northern Illinois University is an Equal Opportunity/Affirmative Action Institution.



**Northern Illinois University**

Office of the Bursar

1425 W. Lincoln Hwy.
DeKalb, Illinois 60115-2828
815-753-1885
Fax 815-753-2400
www.niu.edu/bursar

# TERM SUMMARY REPORT

## Fall 2017

Name: Dorothy Lynette Reddic
Student ID: 01006348

Account Balance Due: $4,027.62          Term Balance: $1,548.28

| CHARGES | | CREDITS | |
|---|---|---|---|
| Grad IL Tuition | 1,488.12 | DFI Fellowship Waiver | -1,071.00 |
| Housing App Processing Fee | 25.00 | | |
| Student Medical Insurance | 1,039.00 | | |
| Late Payment Fee | 67.16 | | |
| Total Charges | $2,619.28 | Total Credits | -$1,071.00 |
| | | Pending Financial Aid for Fall 2017: | $0.00 |

Account information as of October 20, 2017

Please Note: For term balances displaying credit amounts, the non-refunded credits have been applied to other terms with applicable charges. Any questions or inquiries should be directed to the Office of the Bursar.

Northern Illinois University is an Equal Opportunity/Affirmative Action Institution.



# Northern Illinois University

*Office of the Bursar*

1425 W. Lincoln Hwy.
DeKalb, Illinois 60115-2828
815-753-1885
Fax 815-753-2400
www.niu.edu/bursar

# DUE CHARGES REPORT

## *Summary of Items Owed by Term*

**Name:** Dorothy Lynette Reddic
**Student ID:** 01006348

**Account Balance:** $4,054.10

| TERM | DESCRIPTION | DUE AMOUNT |
|------|-------------|-----------|
| Fall 2016 | Grad IL Tuition | 318.59 |
| Fall 2016 | Late Payment Fee | 24.52 |
| Spring 2017 | Grad IL Tuition | 411.24 |
| Spring 2017 | USC Bookstore Charge | 127.17 |
| Spring 2017 | Late Payment Fee | 86.76 |
| Spring 2017 | Student Medical Insurance | 990.50 |
| Spring 2017 | VCB Bookstore Charge S | 500.56 |
| Summer 2017 | Grad IL Tuition | 1,482.24 |
| Summer 2017 | Late Payment Fee | 50.94 |
| Summer 2017 | Parking Ticket | 20.00 |
| Fall 2017 | Late Payment Fee | 41.58 |

*My responsibility*

**Total Due:** $4,054.10

*Account information is as of August 31, 2017*

Northern Illinois University is an Equal Opportunity/Affirmative Action Institution.



### Charges Due

Following is a Running Totals summary by due date of the charges and deposits that you owe.  Review either the Details by Due Date table or the Details by Charge table to see the specific charges.

Summary of Charges by Due Date — Find | View All | First  1-10 of 10  Last

| Due Date | Due Amount | Running Total |
|---|---|---|
| 09/19/2016 | 318.59 | 318.59 |
| 11/28/2016 | 12.26 | 330.85 |
| 01/09/2017 | 12.26 | 343.11 |
| 02/13/2017 | 1,406.85 | 1,749.96 |
| 03/20/2017 | 652.14 | 2,402.10 |
| 04/24/2017 | 31.88 | 2,433.98 |
| 06/12/2017 | 25.38 | 2,459.36 |
| 07/17/2017 | 20.00 | 2,479.34 |
| 09/25/2017 | 41.58 | 2,520.91 |
| 10/30/2017 | 1,506.70 | 4,027.62 |

Currency used is US Dollar.

Details by Due Date

Currency used is US Dollar.

View By:  Fall 2017

Details by Charge — Find | View All | First  1-7 of 7  Last

| Charges | Due Date | Term | Amount |
|---|---|---|---|
| Late Payment Fee | 09/25/2017 | Fall 2017 | 41.58 |
| Grad St Tuition | 10/30/2017 | Fall 2017 | 413.10 |
| Late Payment Fee | 10/30/2017 | Fall 2017 | 25.30 |
| Housing App Processing Fee | 10/30/2017 | Fall 2017 | 19.00 |
| Student Medical Insurance | 10/30/2017 | Fall 2017 | 639.00 |
| | | | 9,446.29 |
| | | | 10,927.62 |

Currency used is US Dollar.

First  1-7 of 7  Last

MAKE A PAYMENT



## Charges Due

Following is a Running Totals summary by due date of the charges and deposits that you owe. Review either the Details by Due Date table or the Details by Charge table to see the specific charges.

Summary of Charges by Due Date     Find | View All |     First   1-10 of 10   Last

| Due Date | Due Amount | Running Total |
|---|---|---|
| 09/19/2016 | 318.59 | 318.59 |
| 11/28/2016 | 12.26 | 330.85 |
| 01/09/2017 | 12.26 | 343.11 |
| 02/13/2017 | 1,406.85 | 1,749.96 |
| 03/20/2017 | 652.14 | 2,402.10 |
| 04/24/2017 | 31.88 | 2,433.88 |
| 06/12/2017 | 25.36 | 2,459.24 |
| 07/17/2017 | 20.00 | 2,479.34 |
| 09/25/2017 | 41.58 | 2,520.91 |
| 10/30/2017 | 1,506.70 | 4,027.61 |

First   1-10 of 10   Last

Currency used is US Dollar.

▶ Details by Due Date

Currency used is US Dollar.

View By   Spring 2017   ▼ | go

▼ Details by Charge     Find | View All |     First   1-10 of 10   Last

| Charge | Due Date | Term | Amount |
|---|---|---|---|
| Student Medical Insurance | 02/13/2017 | Spring 2017 | 990.50 |
| Grad Ib Tuition | 02/13/2017 | Spring 2017 | 412.24 |
| Late Payment Fee | 02/13/2017 | Spring 2017 | 5.11 |
| Late Payment Fee | 03/20/2017 | Spring 2017 | 14.46 |
| NCB Bookstore Charge | 03/20/2017 | Spring 2017 | 600.56 |
| NBC Bookstore Charge | 03/20/2017 | Spring 2017 | 127.17 |
| Late Payment Fee | 04/24/2017 | Spring 2017 | 31.88 |
| Late Payment Fee | 06/12/2017 | Spring 2017 | 25.36 |
| | | | 2,216.28 |
| | | | 4,027.62 |

First   1-10 of 10   Last

Currency used is US Dollar.

Make A Payment   |



Dorothy Reddic    |go to ... ▼ |®

| Account Inquiry | Electronic Payments/Purchases | Account Services |
|---|---|---|
| summary | charges due | payments | pending aid |

## Account Summary

You owe 4,027.62, for the breakdown, access   Charges Due

- Due Now    2,520.92
- Future Due    1,506.70

**

What I Owe

| Term | Outstanding Charges & Deposits | Pending Financial Aid | Total Due |
|---|---|---|---|
| Fall 2016 | | | 343.11 |
| Spring 2017 | 2,136.23 | | 2,136.23 |
| Summer 2017 | 0.00 | | 0.00 |
| Fall 2017 | 1,548.28 | | 1,548.28 |
| Total | 4,027.62 | | 4,027.62 |

Currency used is US Dollar.

MAKE A PAYMENT

Remittance Address

Financial Aid

Account Inquiry   Electronic Payments/Purchases   Account Services
Summary   Charges Due   Payments   Pending Aid

|go to ... ▼ |®



Dorothy Reddic

go to ...   ▼ ⊛

### Financial Aid

## Award Summary

### Financial Aid Year 2017-2018

Select the term hyperlinks below to see more detailed information.

Aid Year

| Award Description | Category | Offered | Accepted |
|---|---|---|---|
| Institutional Waiver | Waiver | 1,071.00 | 1,071.00 |
| Institutional Waiver Assumed | Waiver | 1,071.00 | 1,071.00 |
| Aid Year Totals | | 2,142.00 | 2,142.00 |

Currency used is US Dollar.

Satisfactory Academic Progress

Financial Aid Summary                 ACCEPT/DECLINE AWARDS

Terms
Spring 2018

| Award Description | Category | Offered | Accepted |
|---|---|---|---|
| Institutional Waiver Assumed | Waiver | 1,071.00 | 1,071.00 |
| Term Totals | | 1,071.00 | 1,071.00 |

Fall 2017

| Award Description | Category | Offered | Accepted |
|---|---|---|---|
| Institutional Waiver | Waiver | 1,071.00 | 1,071.00 |
| Term Totals | | 1,071.00 | 1,071.00 |

Currency used is US Dollar.

Your financial aid award is determined from the information provided in your application. If there
is no financial aid displayed your application may be in progress. Please check back.

Financial Aid Summary                 ACCEPT/DECLINE AWARDS

Return to Aid Year Selection

go to ...   ▼ ⊛

*m*NIU

Dorothy Reddic

go to ...

Financial Aid

## Award Summary

### Financial Aid Year 2016-2017

Select the term hyperlinks below to see more detailed information.

Aid Year

| Award Description | Category | Offered | Accepted |
|---|---|---|---|
| Institutional Waiver | Waiver | 4,284.00 | 4,284.00 |
| Third Party Payment | Scholarship | 3,789.30 | 3,789.30 |
| Aid Year Totals | | 8,073.30 | 8,073.30 |

Currency used is US Dollar.

Shopping Sheet          Satisfactory Academic Progress

Financial Aid Summary                    ACCEPT/DECLINE AWARDS

                                         View Canceled Awards

Terms

Summer 2017

| Award Description | Category | Offered | Accepted |
|---|---|---|---|
| Third Party Payment | Scholarship | 1,976.32 | 1,976.32 |
| Term Totals | | 1,976.32 | 1,976.32 |

Spring 2017

| Award Description | Category | Offered | Accepted |
|---|---|---|---|
| Institutional Waiver | Waiver | 2,142.00 | 2,142.00 |
| Third Party Payment | Scholarship | 411.24 | 411.24 |
| Term Totals | | 2,553.24 | 2,553.24 |

Fall 2016

| Award Description | Category | Offered | Accepted |
|---|---|---|---|
| Institutional Waiver | Waiver | 2,142.00 | 2,142.00 |
| Third Party Payment | Scholarship | 1,401.74 | 1,401.74 |
| Term Totals | | 3,543.74 | 3,543.74 |

Currency used is US Dollar.

Your financial aid award is determined from the information provided in your application. If there is no financial aid displayed your application may be in progress. Please check back.

Financial Aid Summary                    ACCEPT/DECLINE AWARDS

Return to Aid Year Selection



MyNIU Portal Home    Sign out
A-Z  Calendar  Directory  NIU Home

Dorothy Reddic

go to ...

| Account Inquiry | Electronic Payments/Purchases | Account Services |
|---|---|---|
| summary | charges due | payments | pending aid |

## Payment History

From 04/04/2017  To 10/04/2017   go

Posted Payments    Find | View All |    First   1-4 of 4   Last

| Date Paid | Payment Type | Paid Amount |
|---|---|---|
| 09/28/2017 | DPT Fellowship Waiver | 1,071.00 |
| 09/19/2017 | Third Party Payment | 1,582.24 |
| 06/22/2017 | Third Party Payment | 494.08 |
| | Total Posted Payments for this view | 3,647.32 |

First  1-4 of 4  Last

Currency used is US Dollar.

Account Inquiry   Electronic Payments/Purchases   Account Services
Summary   Charges Due   Payments   Pending Aid

go to ...

**NORTHERN ILLINOIS UNIVERSITY**
**Parking Services**
*Facilities Management & Campus Services*

A-Z Index   Directory   Calendar   Libraries   Make a Gift   Quick Links ▾

Search NIU   🔍

Home / Permits / Rates

**Permits**

Buy Permits Online

Permit Rates

Buying a Permit

Students Permits

Faculty and Staff Permits

Visitor and Temporary Permits

Temporary Construction Permits

Service/Vendor Permits

Retiree Permits

Handicapped Permits

Request a Refund

Lost or Stolen Permit

## Contact Us

121 Normal Road
815-753-1045
parking@niu.edu

## Office Hours

Monday-Friday
7:30 a.m.-4 p.m.

# 2017-18 Permit Rates

Save money and time by purchasing your permit ahead of time online. There will be an additional $10.00 surcharge for permits purchased in person, unless noted.

## Student Permits

| Type | Fee Online | Fee In Office | Expiration |
|---|---|---|---|
| Yellow | Annual: $92.00<br>Fall Only: $70.00 | Annual: $102.00<br>Fall Only: $80.00 | Annual: 08/15/2018<br>Fall: 12/31/2017 |
| Brown | Annual: $47.00<br>Fall Only: $42.00 | Annual: $57.00<br>Fall Only: $52.00 | Annual: 08/15/2018<br>Fall: 12/31/2017 |
| Orange | Annual: $92.00<br>Fall Only: $70.00 | Annual: $102.00<br>Fall Only: $80.00 | Annual: 08/15/2018<br>Fall: 12/31/2017 |
| Green | Free | Free | Annual: 08/15/2018 |

## Faculty Permits

| Type | Fee Online | Fee In Office | Expiration |
|---|---|---|---|
| Blue | Annual: $135.00<br>Fall: $100.00<br>Summer/Fall: $112.00 | Annual: $145.00<br>Fall: $110.00<br>Summer/Fall: $122.00 | Annual: 06/30/2018<br>Fall: 12/31/2017<br>Summer/Fall: 12/31/2017 |
| Green | Free | Free | Annual: 08/15/2018 |
| Handicapped Reserve | Annual: $135.00<br>Fall Only: $100.00 | Annual: $145.00<br>Fall Only: $110.00 | Annual: 06/30/2018<br>Fall: 12/31/2017 |
| Vendor/Service / no surcharge | N/A | Annual: $135.00 | 1 year from date of purchase |

## Motorcycles

| Type | Fee Online | Fee In Office | Expiration |
|---|---|---|---|
| Motorcycle Annual | $50.00 | $60.00 | 06/30/2018 |
| Motorcycle Annual Reduced | $10.00 | $20.00 | 06/30/2018 |
| Motorcycle Fall | $25.00 | $35.00 | 12/31/2017 |
| Motorcycle Fall Reduced | $10.00 | $20.00 | 12/31/2017 |

- Reduced Motorcycle permits are available to those who have a current year vehicle permit, **excluding Green permit holders.**
- **Must pay in the Paylot - $5.00**

## Reserved Spaces

Student Reserves

my**NIU**

Dorothy Raddle

| Account Inquiry | Electronic Payments/Purchases | Account Services |
|---|---|---|
| summary | charges due | payments | pending aid |

## Charges Due

Following is a Running Totals summary by due date of the charges and deposits that you owe. Review either the Details by Due Date table or the Details by Charge table to see the specific charges.

| Summary of Charges by Due Date | Find | View All | First  1-9 of 9  Last |
|---|---|---|
| **Due Date** | **Due Amount** | **Running Total** |
| 09/19/2016 | 338.59 | 338.59 |
| 11/28/2016 | 12.26 | 338.88 |
| 01/09/2017 | 12.26 | 343.11 |
| 02/13/2017 | 1,406.82 | 1,749.96 |
| 02/20/2017 | 682.14 | 2,402.10 |
| 04/24/2017 | 31.89 | 2,433.98 |
| 06/12/2017 | 25.38 | 3,488.34 |
| 07/17/2017 | 48.38 | 2,804.79 |
| 08/21/2017 | 1,507.82 | 4,812.82 |

First  1-9 of 9  Last

Currency used is US Dollar

### Details by Due Date

Currency used is US Dollar

View By  [All Terms ▼]  Go

### Details by Charge     Find | View All |     First  1-18 of 17  Last

| Charge | Due Date | Term | Amount |
|---|---|---|---|
| Grad IL Tuition | multiple | Fall 2016 | 338.59 |
| Late Payment Fee | 11/28/2016 | Fall 2016 | 12.26 |
| Late Payment Fee | 01/09/2017 | Fall 2016 | 12.26 |
| Grad IL Tuition | 02/13/2017 | Spring 2017 | 411.34 |
| Student Medical Insurance | 02/13/2017 | Spring 2017 | 550.50 |
| Late Payment Fee | 02/13/2017 | Spring 2017 | 5.13 |
| VCB Bookstore Charge 8 | 03/20/2017 | Spring 2017 | 500.56 |
| HSC Bookstore Charge | 03/20/2017 | Spring 2017 | 127.17 |
| Late Payment Fee | 03/20/2017 | Spring 2017 | 24.43 |
| Late Payment Fee | 04/24/2017 | Spring 2017 | 31.89 |
| Late Payment Fee | 06/12/2017 | Spring 2017 | 25.38 |

n

Exhibit B

# myNIU

Dorothy Raddle

| Account Inquiry | Electronic Payments/Purchases | Account Services |
| summary | charges due | payments | posting aid |

## Account Summary

You owe 4,013.52. For the breakdown, see here  Change this

- Due Now    7,724.70
- Future Due  1,587.82

**What I Owe**

| Term | Outstanding Charges & Deposits | Pending Financial Aid | Total Due |
|------|-------|------|------|
| Fall 2016 | 343.12 | | 343.12 |
| Spring 2017 | 3,116.13 | | 4,116.20 |
| Summer 2017 | 1,583.18 | | 1,583.18 |
| Total | 4,013.52 | | 4,012.52 |

Currency used is US Dollar

Remittance Address    MAKE A PAYMENT

Financial Aid

Account Inquiry | Electronic Payments/Purchases | Account Services
Summary  Charges Due  Payments  Posting Aid

n



## Charges Due

Following is a Running Totals summary by due date of the charges and deposits that you owe.  Review either the Details by Due Date table or the Details by Charge table to see the specific charges.

**Summary of Charges by Due Date**            Find | View All |        First   1-9 of 9   Last

| Due Date | Due Amount | Running Total |
|---|---|---|
| 09/19/2016 | 318.59 | 318.59 |
| 11/28/2016 | 12.26 | 330.85 |
| 01/09/2017 | 12.26 | 343.11 |
| 02/13/2017 | 1,406.85 | 1,749.96 |
| 03/20/2017 | 652.14 | 2,402.10 |
| 04/24/2017 | 31.88 | 2,433.98 |
| 06/12/2017 | 25.36 | 2,459.34 |
| 07/17/2017 | 45.35 | 2,504.70 |
| 08/21/2017 | 1,507.82 | 4,012.52 |

First   1-9 of 9   Last

Currency used is US Dollar.

▷  Details by Due Date

Currency used is US Dollar.

View By   Summer 2017 ▾   go

▽ Details by Charge            Find | View All |        First   1-6 of 6   Last

| Charge | Due Date | Term | Amount |
|---|---|---|---|
| Grad IL Tuition | multiple | Summer 2017 | 1,482.16 |
| Late Payment Fee | 07/17/2017 | Summer 2017 | 25.36 |
| Parking Ticket | 07/17/2017 | Summer 2017 | 20.00 |
| Late Payment Fee | 08/21/2017 | Summer 2017 | 25.59 |
|  |  |  | 1,553.16 |
|  |  |  | 4,012.52 |

First   1-6 of 6   Last

Currency used is US Dollar.

| MAKE A PAYMENT |

**Account Inquiry    Electronic Payments/Purchases    Account Services**
Summary   Charges Due   Payments   Pending Aid

go to ...   ▾  ⊗



Dorothy Reddic

**Financial Aid**

go to ... ▼ ⊗

**Award Summary**

Financial Aid Year 2017-2018

Select the term hyperlinks below to see more detailed information.

Aid Year

| Award Description | Category | Offered | Accepted |
|---|---|---|---|
| Institutional Waiver | Waiver | 1,071.00 | 1,071.00 |
| Institutional Waiver Assumed | Waiver | 1,071.00 | 1,071.00 |
| NIUFoundationScholarshipCOE | Scholarship | 750.00 | 750.00 |
| Aid Year Totals | | 2,892.00 | 2,892.00 |

Currency used is US Dollar.

Shopping Sheet

Satisfactory Academic Progress

Financial Aid Summary

ACCEPT/DECLINE AWARDS

Terms

**Spring 2018**

| Award Description | Category | Offered | Accepted |
|---|---|---|---|
| Institutional Waiver Assumed | Waiver | 1,071.00 | 1,071.00 |
| Term Totals | | 1,071.00 | 1,071.00 |

**Fall 2017**

View Scheduled Disbursement Dates

| Award Description | Category | Offered | Accepted |
|---|---|---|---|
| Institutional Waiver | Waiver | 1,071.00 | 1,071.00 |
| NIUFoundationScholarshipCOE | Scholarship | 750.00 | 750.00 |
| Term Totals | | 1,821.00 | 1,821.00 |

Currency used is US Dollar.

Your financial aid award is determined from the information provided in your application. If there is no financial aid displayed your application may be in progress. Please check back.

Financial Aid Summary

ACCEPT/DECLINE AWARDS

Return to Aid Year Selection

go to ... ▼ ⊗



paparo
ADHD COACH

Elizabeth Paparo
Certified ADHD Coach, ACG, ACC, CSST,
Mindfulness and ADHD
312-888-1232
Elizabeth@paparo-ADHDcoach.com

DATE: 10-17-17

Bill to:
Department of Human Services
Division of Rehabilitation Services

Description: ADHD Coaching

ADHD Coaching

Amount: $54.00 as allowed by DHS/DRS

$54.00 per one-hour session per week. This fee includes unlimited texts, email, and
when needed, phone/Skype calls for accountability in-between sessions.

Dates: 9-7-17, 10-7-17, and 10-9-17

Total: $162.00

Balance due: $.162.00

Make all checks payable to:

Elizabeth Paparo
811 S. Lytle
Apt. 501
Chicago, IL. 60607

Thank you,

Elizabeth Paparo



October 7, 2016

Mary Beth Scholten
Illinois Department of Human Services
Assistant Bureau Chief, Region 2

Dear Ms. Scholten:

I want to start by expressing how grateful I am that my ADHD coach and hardship application for my NIU tuition were approved. My ADHD coach has been, and will continue to be, an immense help to my studies as I move towards my goal of being an Education Administrator. The tuition assistance greatly reduces the stress level caused by my current financial burden.

The reason why I am writing is to start a dialogue to ensure that I can continue to receive services from your Department without having to repeat the headache that we all experienced this summer. But at times I found myself at a loss as to what was required of me and when documents were due. A lot of times these requirements and due dates are explained to me orally, but due to my learning disabilities, I have a very hard time remembering. For that reason I don't think having more frequent meetings with Sonya will be beneficial. However, I am wondering if we can supplement my in-person appointments with some sort of written system (perhaps a checklist) that keeps track of everything your Department needs from me (with due dates) so that my case can be handled without any delays or confusion. I am very open to discussing other strategies as well.

Thank you for everything that you have done so far, and thank you for consideration of this request.

Respectfully,

Dorothy Reddic

From the Desk of:
Dorothy Reddic
1335 4th Ave, Rockford, IL 61104
msreddic@hotmail.com
815-200-9730

Illinois Department of Human Services
Bureau of Accessibility and Job Accommodations
Martha Younger-White/ADA Coordinator
401 South Clinton, 3rd Floor
Chicago, IL 60607

November 30, 2017

Re: Request for Accommodations

Dear Mrs. Younger-White,

I am formally requesting accommodations under the ADA Title: II: State and Local Government Activities, Part 35 Nondiscrimination on the Basis of Disability in State and Local Government Services, "...They are required to make reasonable modifications to policies, and procedures where necessary to avoid discrimination, unless they can demonstrate that doing so would fundamentally alter the nature of the service, program, or activity being provided."

I have previously requested accommodations with various people who work within the Illinois Department of Human Services and unfortunately I didn't receive the requested accommodations. After discovering you are the ADA Coordinator for the Illinois Department of Human Services and you would ensure the rights afforded by the law.

Therefore, I am formally requesting the Illinois Department of Human Services afford me the following accommodations as a person documented to have disabilities with your agency. It is my request to have these applied effective immediate as I have ongoing contact with staff through various avenues of the court system.

- Receive written documents in an accessible PDF format, 10-14 days prior to them being due in the exact format that will be used in a meeting or require a signature or reading, comprehension.
- Receive written documents in an alternate form of media or digital audio
- Extension of due dates (double time)
- Recorded meetings via phone or in-person
- Note taker during meetings whether via phone or in-person
- Use of assisted technology during meetings via phone or in-person
- Reader aloud verbatim, when documents have not been provided ahead of time and require acknowledgement or understanding and/or written signature in a short amount of time.

These accommodations are needed whenever I am actively involved with the Illinois Department of Human Services. I recognize you as being someone who will ensure I receive accommodations that will allow me to fully participate as a citizen with disabilities involved with legal proceedings in IDHS without being penalized as a result of challenges related to my ability status.

If you have any questions or comments, please do not hesitate to contact me.

Respectfully,

Dorothy Reddic M.S.Ed.

CC: Governor Rauner, Secretary James T. Dimas, CoreyAnne Gulkewicz, General Counsel, Quinnetta Wade, Director of Division of Rehabilitation Services, Dr. Litesa Wallace, State Representative of the 67th District

**Vocational Rehabilitation Services Planning Sheet**
**College Planning Assistance Guide**

**Customer Name:** <u>Dorothy Reddic</u>
**VRS Counselor Name:** <u>Sonya Wiley</u>
**Date:** _____

| Requested Information | Who is to Provide the Information? | Due Date for the requested information? | Submitted via Mail; Email; In Person | Initial it was received | Comments |
|---|---|---|---|---|---|
| Semester <u>Class Schedule</u> __Spring X Summer__FALL 2016 | Dorothy Reddic | | __Mail<br>X Email<br>__In Person | | |
| Semester <u>Grade(s) 2016</u> X Spring__Summer__FALL 2016 | Dorothy Reddic | | __Mail<br>X Email<br>__In Person | Customer Created form | |
| <u>Syllabus for each course</u> __Spring X Summer__FALL 2016 | Dorothy Reddic | | __Mail<br>X Email<br>__In Person | | |
| <u>List of REQUIRED Books</u> and Supplies with COSTS | Dorothy Reddic | | __Mail<br>X Email<br>__In Person | | |
| Program Plan of courses to graduate | Dorothy Reddic | | __Mail<br>X Email<br>__In Person | | |
| University Detailed Bill __Spring__Summer__FALL 2016 | Dorothy Reddic | | __Mail<br>X Email<br>__In Person | | |
| Awards, Scholarships, Financial Aid 2016 __Spring__Summer__FALL | Dorothy Reddic | | __Mail<br>X Email<br>__In Person | | |
| Mileage | Dorothy Reddic | | __Mail<br>__Email<br>__In Person | | |
| Tuition Payment (NOTSA) form sent to NIU __Spring__Summer__FALL | Sonya Wiley | | X Mail<br>__Email<br>__In Person | | |
| Voucher for School Supplies and Books to the Book Store 2016 __Spring__Summer__FALL | Melinia Villela | | X Mail<br>__Email<br>__In Person | | |
| Mileage payment processed | Sonya Wiley | | __Mail<br>__Email<br>__In Person | | |
| Individualized Employment Plan mailed to Customer | Melinia Villela | | X Mail<br>__Email<br>__In Person | | |
| Other: <u>Medical Excuse</u> _____ | Dorothy Reddic | | __Mail<br>X Email<br>__In Person | | |
| Other: <u>Letter requesting</u> <u>additional ADHD coaching</u> <u>services</u>_____ | Elizabeth Paparo Dorothy Reddic | | __Mail<br>X Email<br>__In Person | | |

Form created by Dorothy Reddic to assist with planning for creating an Individualized Employment Plan
06/01/2016

*Given to customer 08/30/16 two-sided*

# COLLEGE ONGOING

Upon receipt/availability, you will need to provide Official Documentation of the following to DRS:

1. Last Semester Grades;

2. Class Schedule;

3. College/University Bill;

4. Official list of **REQUIRED** books, stating whether required or recommended, and their cost;

5. **Portion of SYLLABI** with course name, semester, and REQUIRED materials;

6. Documentation of **required supplies/expenses, with** current cost;

7. For relocation only, current cost **housing/meals;**

8. If **plan of courses changes,** any advisor signed document;

**SPRING OR SUMMER FOR FALL THRU SUMMER; and income when it changes** provide to DRS:

9. Household Income: Pay Stubs for all of household; benefits, Child Support or other income;

10. FAFSA application and award letter;

Next appt. __/__/__, _____, __m



**Northern Illinois University**

College of Education

Department of Counseling, Adult
and Higher Education
DeKalb, Illinois 60115-2896
815-753-1448
Fax 815-753-9309
cahe@niu.edu

Jan. 11, 2017

To Whom It May Concern:

This is to inform you that Ms. Dorothy Reddick is still in the process of completing her course work and dissertation proposal. It is recommended that she take the following courses:

| Fall 2016 | Spring 2017 | Summer 2017 |
|---|---|---|
| PPHE 508 | PSPA 750 | CAHA 798 |
| CAHA 798 | CAHA 721 | ETR 526 |

Fall 2017 thru Fall 2018
CAHA 799  3 credits (must enroll every semester until she have satisfactorily defended the dissertation and meet the requirements of the graduate school.)
Since you are working on a certificate in Public Administration, she will be enrolled in 1 of the required courses until she completes the 18 credits required for the certificate.
If you have any questions, please contact me at lgyant@niu.edu.

Be encouraged,

*LaVerne Gyant*
LaVerne Gyant, Prof. Counseling Adult Higher Education

*Learning Today,* Leading Tomorrow
Northern Illinois University is an Equal Opportunity/Affirmative Action Institution.



**Northern Illinois University**

DISABILITY RESOURCE CENTER
DIVISION OF STUDENT AFFAIRS & ENROLLMENT MANAGEMENT
HEALTH SERVICES BUILDING 400
DEKALB, ILLINOIS 60115-2828
(815) 753-1303
FAX (815) 753-9570

## Letter of Accommodation*
### Academic Year 2016-17

Dear Sir or Madam, DM

Dorothy Reddic has registered with the NIU Disability Resource Center (DRC) and is entitled to the identified accommodations below. To ensure compliance with federal and state laws, such as the Americans with Disabilities Act of 1990, as amended, and Section 504 of the Rehabilitation Act of 1973, NIU has designated the DRC as the department responsible for ensuring that student requests for accommodations are implemented.

**Students are required to present this letter of accommodation to their instructors in courses where they plan to use their accommodations. Accommodations are not active in the classroom until this letter has been given to the instructor and a discussion has commenced regarding the implementation of the accommodations. Further, accommodations are not retroactive and cannot, without the instructor's approval, be applied to previous work.**

Accommodations are influenced by the design and delivery of course instruction. The accommodations listed below may need to be adjusted based on course design, content, and/or delivery**. DRC staff are available to students and faculty to consult regarding the implementation of accommodations. To consult with a staff member, please contact the DRC during University business hours at: drc@niu.edu or call 815-753-1303.

Dorothy has participated in an interactive process and is entitled to the following accommodations:

| Classroom Accommodations | Exam Accommodations |
|---|---|
| • Alternate Media/E-Text: Digital Audio | • Extra time: 2 |
| • Extension of due dates: to be discussed with professor and mutually agreed upon. | • Alt Format Exam: Digital Audio |
| • Priority seating in class | • Distraction reduced environment |
| • Tape record lectures | |
| • Syllabus/Assignments provided early | • Food or beverage allowed |
| • Use of assistive technology in class/labs | |
| • Use of a computer or tablet in class | • Use computer/software: Natural Reader (digital audio) |
| | • Use computer/software: Dragon Naturally Speaking |

Signature DRC Staff: _Deb A. Miller_

Printed DRC Staff: Debra Miller

Date: January 18, 2017

Student Signature: _(signature)_

Printed Student Name: Dorothy Reddic

Date: January 18, 2017

**\* Confidential:** All information in this letter is confidential. All discussions and dealings with the student about their disability status and accommodations should be conducted privately and in a manner that preserves the student's rights to confidentiality.

**\*\*Some accommodations** may need to be individualized for each course. DRC staff members strongly encourage students and faculty members to set up an appointment to discuss how each accommodation will be implemented in the class setting. For example, if a student receives an accommodation of exceptions to absentee/tardiness policies, how will that accommodation be implemented?



State of Illinois
Department of Human Services - Division of Rehabilitation Services
**CASE FOLDER MEMORANDUM**



Customer Name: REDDIC, DOROTHY

Case Number: 02344928

Telephone No: (815) 200-9730

| Status | Date | Chronological Record of Contacts and Action |
|---|---|---|
| | | IDHS/Division Of Rehabilitation Services 1830 Oakwood Avenue DeKalb, IL. 60115 Tel: 815-758-2471 Fax: 815-758-6942 E-Mail: Beatrice.mwinzi@illinois.gov State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure. Author/Entered by: MWINZI, BEATRICE |
| Rehabilitation Plan | 03/02/2017 | Authorization #967 was created in the amount of $432.00 for services of ADHD coaching by Elizabeth Paparo on 1/3, 1/9, 1/17, 1/24, 1/30, 2/14, 2/20, and 2/27 of 2017. Emailed copy to Elizabeth@paparo-ADHDcoach.com to be signed and returned to the DRS DeKalb office. jjk Author/Entered by: HARDY, JENNIFER |
| Rehabilitation Plan | 02/23/2017 | Met with customer at this DRS office today. Customer was scheduled to meet with me at 3:00 PM and showed up for the appointment late at 3:20 PM. Customer had a lot of concerns/issues to be addressed so meeting went for over hour and was adjourned at 4:45 PM per this counselor advise. We reviewed IPE services and customer academic progress. Customer provided a copy of her Unofficial Transcript, Class schedule, and NIU bills for the last Fall Semester 2016 and for this Spring Semester 2017. We reviewed the bills and counselor will follow up with NIU to pay the DRS portion of the Tuition and Fees bills and for the Books and supplies. Customer is in a PhD program in Adult and Higher Education and is scheduled to graduate in December 2018. She is supposed to pay a 10% graduate school contribution, but she had requested an exemption and granted for one year which expires by the end of this year. Customer was advised that DRS will continue to provide the services listed on her IPE for the life of the IPE unless a need arises for which we would complete an amendment to the IPE. Customer expressed needs for Electronic Books and was advised of some options to help her get the needed books including signing up for membership to a company that provides books in electronic format such as the Reading Ally and she will reach on it and let me know if she will sign up for membership or just be purchasing electronic books per need. We discussed customer transportation needs and customer was advised that DRS will help her with transportation allowance based on her semester class schedule. She will provide mileage to and from NIU for the number of days she is scheduled to attend classes and DRs will help her with some money for transportation. DRS will help with transportation to attend classes at NIU and to purchase a Parking Permit ($85.00 ?) per semester. DRS will help customer with the cost of the Straterra medication which is not covered by Medicaid and only during the school year when she is attending classes so she can maintain her health stability. DRS will not pay for NIU Health Insurance since |

Note:File in case folder so that all case folder memorandum pages are together and in sequence

L 488-0300W (07/94)

RE: Informal Resolution Conference for Dorothy Reddic

Mwinzi, Beatrice <BEATRICE.MWINZI@illinois.gov>

Mon 7/31/2017 11:35 AM

To: msreddic@hotmail.com <msreddic@hotmail.com>; Brian Pflaum <BrianP@equipforequality.org>;

Cc: Knauf, James <JAMES.KNAUF@illinois.gov>; Hamer, Louis <Louis.Hamer@illinois.gov>; Alvarado, Francisco <Francisco.Alvarado@illinois.gov>; Howard, Andre M. <Andre.M.Howard@illinois.gov>; Jenkins, Leslie C. <Leslie.C.Jenkins@illinois.gov>;

Ms. Reddic and Mr. Pflaum;

I am writing to inform you that we are cancelling the in person meeting that Ms. Reddic and I had scheduled for August 2, 2017 at 3:00 PM at our DeKalb DRS Office. We will need to wait until after the Mediation has occurred then we will determine if there is need for another meeting date.

Thank you.

Beatrice

Beatrice Mwinzi, M.A.,
Senior Rehabilitation Counselor
IDHS/Division Of Rehabilitation Services
1330 Oakwood Avenue
DeKalb, IL 60115
Tel: 815-758-2471
Fax: 815-758-6942
E-Mail: Beatrice.mwinzi@illinois.gov

-----Original Message-----
From: Brian Pflaum [mailto:BrianP@equipforequality.org]
Sent: Friday, July 28, 2017 2:49 PM
To: Howard, Andre M.; Jenkins, Leslie C.
Cc: msreddic@hotmail.com; Mwinzi, Beatrice; Knauf, James; Hamer, Louis; Alvarado, Francisco
Subject: [External] RE: Informal Resolution Conference for Dorothy Reddic

Mr. Howard,

We have been informed that our continuance request was granted. We were also informed that as a vocational rehabilitation customer, Ms. Reddic's alternative dispute resolution option is mediation, as opposed to an informal resolution conference. Accordingly, we have requested a mediation.

In the meantime, it is my understanding that Ms. Reddic's IPE expires in a few weeks. Ms. Reddic's NIU insurance policy also expires at the end of this month. There appears to be significant confusion about what Ms. Reddic needs to do in order for DRS to reimburse for services that her NIU insurance has been covering, but that Medicaid does not (ADHD medication and therapy, if I understand correctly).

Please advise on what we can do so that Ms. Reddic's IPE is extended pending resolution of our disputes, and how we can address the issue of Ms. Reddic's ADHD medication and therapy expenses given the forthcoming expiration of her NIU policy. My understanding is that there is already an in-person meeting scheduled for this upcoming Wednesday (8/2) at 3 PM. If this meeting is necessary, I would request to attend with Ms. Reddic.

Lastly, Ms. Reddic is interested in modifying the scope of the current releases of information that are on file between DRS and NIU. We would be grateful if you could please share the necessary form or paperwork that Ms. Reddic needs to complete in order to do this.

Thank you,
Brian

Brian Pflaum
Staff Attorney/University of Chicago Fellow-Civil Rights Team Equip for Equality
20 N Michigan Ave #300
Chicago, IL 60602
(312) 895-7209 (direct)

# RE: Informal Resolution Conference for Dorothy Reddic

## Howard, Andre M. <Andre.M.Howard@illinois.gov>

Sun 7/30/2017 8:10 AM

To: Brian Pflaum <BrianP@equipforequality.org>; Jenkins, Leslie C. <Leslie.C.Jenkins@illinois.gov>;

Cc: msreddic@hotmail.com <msreddic@hotmail.com>; Mwinzi, Beatrice <BEATRICE.MWINZI@illinois.gov>; Knauf, James <JAMES.KNAUF@illinois.gov>; Hamer, Louis <Louis.Hamer@illinois.gov>; Alvarado, Francisco <Francisco.Alvarado@illinois.gov>; Gertz, Scott <Scott.Gertz@Illinois.gov>;

Mr. Pflaum,

After another review of the time line of this Appeal it appears Ms. Reddic's IPE will remain in force until a resolution of the related issues are arrived at. However, that IPE cannot at this time compromise the validity of the Illinois Administrative Code that determines service provision in her case.

Regards,

Andre M. Howard M.Ed.
Public Service Administrator
Aurora Field Office
888 So. Edgelawn Ste. 1771
Aurora, Illinois 60506
630-892-7417

DeKalb Field Office
1330 Oakwood
DeKalb,Illinois 60115
815 758-2471
andre.m.howard@illinois.gov

A great relationship is about two things:
First, appreciating the similarities and second, respecting the differences.

"This document and data being transmitted is legally protected and confidential and intended for use by the individual or entity to which it is addressed. The recipient is prohibited from re-disclosure unless required or authorized to do so by law or written request. If you are not the intended authorized recipient, you are hereby notified that any disclosure, copying, distribution, or action taken in reliance on the contents of these documents or data is strictly prohibited. Should the recipient receive information in error, the recipient is to notify the sender of the error and delete the e-mail and accompanying file information immediately. DHS users are solely responsible for maintaining the confidentiality of the information."

-----Original Message-----
From: Brian Pflaum [mailto:BrianP@equipforequality.org]
Sent: Friday, July 28, 2017 4:36 PM
To: Howard, Andre M.; Jenkins, Leslie C.
Cc: msreddic@hotmail.com; Mwinzi, Beatrice; Knauf, James; Hamer, Louis; Alvarado, Francisco; Gertz, Scott
Subject: [External] RE: Informal Resolution Conference for Dorothy Reddic

IPE Meeting

Mwinzi, Beatrice <BEATRICE.MWINZI@illinois.gov>

Wed 10/11/2017 5:36 PM

To:msreddic@hotmail.com <msreddic@hotmail.com>;

Cc:BrianP@equipforequality.org <BrianP@equipforequality.org>; Liberman, Moshe <Moshe.Liberman@illinois.gov>; Howard, Andre M.
<Andre.M.Howard@illinois.gov>; Hardy, Jennifer <Jennifer.Hardy@illinois.gov>;

Dear Ms. Reddic,

This is a follow up with you regarding our meeting to complete an IPE for your DRS case. I have scheduled you a meeting on Thursday, November 2nd, 2017 at 10:00 AM at our DeKalb DRS Office located at 1330 Oakwood Avenue, DeKalb, IL 60115. In order to complete your IPE for DRS services we will need the following items:

1. Summer 2017 Grades   *Need to complete class*
2. Fall Semester 2017 Class Schedule
3. Fall Semester 2017 NIU Bill for Tuition & Fees, Required Books & Supplies, and Graduate Financial Award letter.   *Need to obtain*
5. Fall Semester 2017 ADHD Coach Bill and Monthly Progress Notes.   *what is this?*
6. A Copy of your 2016 Income Taxes that you filed this year   *why?*   *VE responsebility will vendor — they have access*

*letter from Karen Frazer*

Please bring the requested items with you at the time of the meeting or you may submit them to our DRS office earlier at your convenience.

Thank you,

Sincerely,

Beatrice

Beatrice Mwinzi, M.A.,
Senior Rehabilitation Counselor
IDHS/Division Of Rehabilitation Services
1330 Oakwood Avenue
DeKalb, IL 60115
Tel: 815-758-2471
Fax: 815-758-6942
E-Mail: Beatrice.mwinzi@illinois.gov

*→ Katie @ RAMP will help with*
*Medicaid Card & Denials of Medication*

*→ Deb Miller will help ... obtain*
*program plan from Dr. Bryant that*
*meets the requirements*

*→ Dr. Long to provide actual*

State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.



Bruce Rauner, *Governor*

Illinois Department of Human Services

James T. Dimas, *Secretary-designate*

Dorothy Reddic
1335 4th Ave.
Rockford, IL. 61104

January 11, 2018

Dear Ms. Reddic,

This letter is to inform you that since we were unable to mutually agree regarding the IPE during our phone meeting today, we are unable to assist you with the payment for services related to school attendance for Spring Semester 2018 at Northern Illinois University. Without a signed IPE by both Customer and DRS Counselor services cannot be provided.

89 ILL. Adm. Code 572.30 (a) states that: The IPE outlines the nature and scope of the VR services to be provided to meet the established objectives that are related to the customer's employment outcome. In accordance with 89 ILL. ADM Code 572.30 (a) it must be signed by the customer and the counselor. Without a service having been approved in the IPE, no authorization for payment can be made. Such authorization must occur either prior to or simultaneously with the purchase of services, 89 ILL. ADM. Code 520.10

Since we were unable to reach an agreement regarding IPE today we are advising you of your Rights of Appeal and of Client Assistance Program (CAP) which can be reached at 1-(800) 641–3929.

Thank you.

Beatrice

Beatrice Mwinzi, M.A.,
Senior Rehabilitation Counselor
IDHS/Division of Rehabilitation Services
1330 Oakwood Avenue
DeKalb, IL. 60115
Tel: 815-758-2471
Fax: 815-758-6942
E-Mail: Beatrice.mwinzi@illinois.gov

# State of Illinois
# Code of Personal Conduct



## Introduction

Employees of the State of Illinois are a team of public servants working on behalf of the people of Illinois. State employees perform critical services upon which our residents and businesses depend. State employees are entrusted to make important decisions and carry out responsibilities that affect the future of our communities.

The purpose of this Code of Personal Conduct (**Code**) is to:

- Ensure that State employees are conducting the business of the State in an honest and respectful manner.

- Promote accountability to the taxpayers and the people of Illinois.

- Promote honest and ethical conduct and fair dealing.

- Promote compliance with applicable laws, policies, rules, and regulations.

- Deter wrongdoing.

## Authority and Applicability

This Code was prepared by the Department of Central Management Services, on behalf of the Governor, pursuant to Section IV of Executive Order 2016-04, and filed with the Executive Ethics Commission pursuant to Section 5-5(b) of the State Officials and Employees Ethics Act (5 ILCS 430) (**Ethics Act**).

This Code applies to all officers, employees (including without limitation full-time, part-time, and contractual employees), appointees (including without limitation paid and unpaid appointees), and persons holding similar positions (**State Employees**) in any office, department, agency, board, commission, or authority of the Executive Branch of the State of Illinois under the jurisdiction of the Governor for the purposes of Section 20-10(c) of the Ethics Act (**State Agencies**).

More detailed policies and procedures that apply to all State Employees or certain groups of State Employees are set forth in other documents. While these other policies are not part of this Code, each State Employee covered by this Code is expected to conduct himself or herself consistently with this Code and all other applicable policies, laws, and regulations. Nothing in this Code prohibits any State Agency from adopting or maintaining policies or rules of personal conduct that are more restrictive than those set forth in this Code, as long as such policies or rules comply with applicable law and the requirements of any collective bargaining agreement. To the extent any State Agency policy conflicts with this Code, the more restrictive policy will control.

1

State Employee conduct in violation of this Code may result in discipline, up to and including discharge. The principles of just cause shall apply to the extent required by law or any collective bargaining agreement. In addition to any discipline imposed by a State Agency, any State Employee who knowingly violates this Code, with the intent to defraud the State of Illinois, is in violation of the Ethics Act and will be subject to disciplinary action under the Ethics Act as set forth without limitation in Sections 20-15, 20-20, 20-50, 20-55, 50-5 and 50-10 of the Ethics Act and Title 2, Sections 1620.1100 and 1620.1110 of the Illinois Administrative Code.

This Code does not, and may not be interpreted to, create any rights for any person or entity other than the State of Illinois, the State Agencies, the Executive Ethics Commission, and the Office of Executive Inspector General for the Agencies of the Illinois Governor. Nothing in this Code may be construed as altering the employment relationship between the State of Illinois and any State Employee. Application of progressive discipline pursuant to this Code to State Employees who serve at-will is discretionary and does not affect the at-will status of any such State Employee. State Employees in supervisory positions or in positions with the ability to recommend employee discipline will comply with applicable law and collective bargaining agreements when imposing discipline pursuant to this Code.

This Code is effective as of July 1, 2016. Copies of this Code will be made available to all State Agencies and publicly posted on the Team Illinois website (http://team.illinois.gov). The Department of Central Management Services will provide training to all State Agencies regarding the implementation of this Code.

The Department of Central Management Services has the ability to amend or supplement this Code with the approval of the Office of the Governor. Any amendment of, or supplement to, this Code will be filed with the Executive Ethics Commission and made publicly available by the Department of Central Management Services, including through posting on the Team Illinois website (http://team.illinois.gov).

## Principles of Public Service

While serving in his or her official capacity, each State Employee has a responsibility to the people of the State of Illinois to act with integrity and to treat the people we serve, our colleagues, and other parties with dignity and respect. State Employees hold a position of public trust and are expected to conduct themselves in a responsible and professional manner.

The following principles apply to every State Employee and form the basis for the standards contained in this Code. When a situation is not covered by the standards set forth in this Code or in other applicable policies, laws, or regulations, State Employees will apply the principles set forth in this section in determining whether their conduct is proper.

**Public service is a public trust, not to be abused for private gain.**

- Except as permitted by applicable law (including but not limited to the Ethics Act and Executive Order 15-09), State Employees may not solicit or accept any gift or other item of monetary value from any person or entity seeking official action from, doing business with, or conducting activities regulated by the State Employee's State Agency or whose interests may be substantially affected by the performance or nonperformance of the State Employee's duties.

- State Employees may not use public employment or access to nonpublic State information for private gain.

- State Employees may not engage in outside employment or activities, including seeking or negotiating for employment, that conflict with their official State duties and responsibilities.

- State employees must take appropriate action to identify, disclose, and avoid potential conflicts of interest with the performance of their official duties.

**Public service requires honest and impartial performance.**

- State Employees must put forth honest effort in the performance of their duties.

- State Employees may not give improper preferential treatment to any private organization or individual.

**Public servants protect taxpayer resources.**

- State Employees may not knowingly make unauthorized commitments or promises of any kind purporting to bind the State of Illinois.

- State Employees must protect and conserve State property and not use it for other than authorized activities.

- State Employees must disclose waste, fraud, abuse, and corruption to the appropriate authorities.

**Public servants are good citizens.**

- State Employees should avoid any action that creates the appearance of a violation of the law or the ethical standards set forth in this Code.

- State Employees must satisfy in good faith all personal financial obligations to the State and comply with all requirements of all governmental taxing authorities.

**Public Service must be an equal opportunity for all.**

- State Employees must adhere to all laws and regulations that provide equal opportunity for all.

- There must be no unlawful discrimination, harassment, intimidation or retaliation in any employment practice based on race, color, national origin, religion, age, sex, marital status, disability, ancestry, sexual orientation, military service, political affiliation, or any other protected status or non-merit based factor.

## Specific Instances of Unethical Conduct

This section sets forth specific ethical standards for all State Employees. Violations of these standards are subject to discipline up to and including discharge. This section is applicable to all State Employees when on State-compensated time (other than vacation, personal, or compensatory time off, as defined in the Ethics Act), on State property, or carrying out the State Employee's official duties, or when there is a nexus between the State Employee's off-duty conduct and his or her official duties. As noted above, this Code does not preclude a State Agency from maintaining or establishing additional rules of personal conduct consistent with this Code, applicable law, and the requirements of any collective bargaining

agreement. To the extent any State Agency policy conflicts with this Code, the more restrictive policy will control.

**Insubordination:** A State Employee (a) must execute the lawful instructions, whether oral or written, of a supervisor or member of management having authority over the State Employee, (b) may not be disrespectful in his or her conduct and communication, whether oral or written, directed toward a supervisor or member of management, and (c) will comply with State and State Agency policy as directed.

**Disruptive Conduct:** A State Employee may not (a) engage in disruptive conduct or activities or horseplay that interrupts work or impedes the work of others, or (b) use abusive or offensive language, gestures, or similar conduct.

**Unsatisfactory Work Performance:** While on duty, a State Employee should dedicate his or her efforts to the performance of assigned work and other job responsibilities. A State Employee (a) will perform all work duties assigned to him or her, (b) will not perform any work duties in a negligent manner that results in a material delay or material financial loss to the State, and (c) will not engage in willful idleness while on the job.

**Breach of Confidentiality:** A State Employee will take reasonable measures to protect confidential information in his or her possession. A State Employee may not knowingly (a) fail to safeguard confidential information, (b) take actions which result in a breach of confidential information, or (c) violate confidentiality requirements inherent to the State Employee's position or his or her State Agency's mission.

**Stealing:** A State Employee may not steal or attempt to steal, with the intent to deprive, the property of another individual or entity or collude with another person to commit such acts.

**Misuse or Abuse of State Property:** Except for *de minimis* personal use, a State Employee will use State property for official purposes and not for personal benefit or political gain. When entrusted with safeguarding State property, a State Employee may not (a) intentionally lose or damage such State property, or (b) knowingly and willfully use or authorize the use of a State vehicle for an other-than-official purpose.

**Conduct Unbecoming of a State Employee:** A State Employee will conduct himself or herself (a) with integrity and in a manner that reflects favorably upon the State, (b) in compliance with all laws, policies, orders, and procedures that prohibit the solicitation or acceptance of any gift or other item of monetary value from any person or entity seeking official action from, doing business with, or conducting activities regulated by the State Employee's State Agency or whose interests may be substantially affected by the performance or nonperformance of the State Employee's duties, and (c) in accordance with the State Officials and Employees Ethics Act (5 ILCS 430) and the Illinois Governmental Ethics Act (5 ILCS 420).

**Conduct Unbecoming of a Supervisor:** A State Employee in a position with supervisory authority may not (a) intentionally, negligently, or recklessly commit any illegal act or violation of State or State Agency disciplinary rules or code of conduct, (b) order State Employees to perform a task for other than an official purpose, or (c) exploit supervisory authority for personal gain or personal profit.

**Threatening Words or Actions:** A State Employee may not threaten or attempt to inflict bodily harm on another individual, unless otherwise authorized by State or State Agency policy or procedure.

4

A State Employee who witnesses, is a victim of, or becomes aware of any threatening words or actions must immediately report the incident to his or her supervisor or to the appropriate law enforcement entity in accordance with Executive Order 2016-04. Subject to applicable law and any contrary instructions by law enforcement, the State Employee will be required to submit a written statement regarding the incident.

**Fighting:** A State Employee may not hit or push another person or have hostile or unwelcomed contact with another person, unless otherwise authorized by State or State Agency policy or procedure.

A State Employee who witnesses, is a victim of, or becomes aware of any fighting must immediately report the incident to his or her supervisor or to the appropriate law enforcement entity in accordance with Executive Order 2016-04. Subject to applicable law and any contrary instructions by law enforcement, the State Employee will be required to submit a written statement regarding the incident.

**Discriminatory Personnel Action:** A State Employee may not (a) discriminate against another State Employee on any basis in violation of federal or State law with respect to any adverse employment or personnel action, or (b) if such State Employee is a supervisor, fail to prevent or curtail unlawful discrimination of a subordinate when, as a supervisor, the State Employee knew or should have known that discrimination was occurring.

**Interference with or Obstruction of an Investigation:** A State Employee may not interfere with or obstruct an investigation by (a) refusing to testify or cooperate in a properly authorized inquiry or investigation, without legal justification, (b) interfering with or improperly influencing, or attempting to interfere with or improperly influence, the testimony of any witness or participant in an investigation, or (c) improperly influencing, or attempting to improperly influence, any investigatory official.

**Retaliation:** A State Employee may not (a) intentionally interfere with a State Employee's exercise of, or retaliate against a State Employee for exercising, the right to grieve or file a complaint through established procedures, or (b) retaliate against a State Employee for filing a complaint, providing information to an investigatory official, or testifying in an official proceeding. To the extent this section conflicts with the Whistleblower Act (740 ILCS 174) or Section 15-5 of the Ethics Act, the applicable statute will control.

**False Statement:** A State Employee may not (a) make any materially false statement or knowing misrepresentation on an application for State employment or other document pertaining to qualifications or any other official record, (b) knowingly or intentionally make any false or malicious statement against a fellow State Employee (including a State Employee's co-worker, supervisor, and subordinate) with the intent of harming or destroying the reputation, authority, or official standing of that individual, (c) knowingly make any deliberate misrepresentation or omission, of a material fact, including perjury, making any false sworn statement, and lying to a supervisor, or (d) falsify or knowingly fail to correct false information contained in official documentation or in an official record related to the performance of such State Employee's job duties.

**Unlawful Job Action:** A State Employee may not participate in or promote an unprotected strike, work stoppage, slow down, sick-out, or other job action in violation of the Illinois Public Labor Relations Act, Illinois Education Labor Relations Act, or a no-strike agreement between the State or a State Agency and an exclusive representative.

**Sexual Harassment:** A State Employee will work to ensure that his or her workplace is free from sexual harassment. Conduct such as unwelcome sexual advances, requests for sexual favors, and other conduct of a sexual nature constitute sexual harassment when (a) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (b) submission to or rejection of such conduct by an individual is used as the basis for employment related decisions affecting such individual, or (c) the conduct unreasonably has the purpose or effect of substantially interfering with an individual's work performance or creates an intimidating, hostile, abusive or offensive working environment.

> Any State Employee who witnesses, is subjected to, or becomes aware of such conduct should immediately report the incident to his or her supervisor, a member of management, or the applicable State Agency Equal Opportunity Officer. All complaints of sexual harassment will be investigated thoroughly and appropriate action will be taken when warranted.

**Unauthorized On the Job Use of Alcohol, Drugs, or Controlled Substances:** A State Employee may not (a) be under the unauthorized influence of alcohol, drugs, or other controlled substances to a degree that would interfere with proper performance of his or her job duties, would be a menace to safety, or would be prejudicial to the maintenance of discipline, or (b) be under the unauthorized influence of alcohol, drugs, or other controlled substances to a degree that results in injury to another individual or damage to State property.

**Health and Safety Violation:** A State Employee will maintain a clean and orderly work area and will follow all applicable safety rules and regulations, including (a) not smoking in any unauthorized area, (b) not possessing a lighter, match, or other flammable materials in any explosive or hazardous area, (c) reporting to a supervisor any on-the-job personal injury or accident for which the State Employee had primary responsibility, (d) observing all precautions for personal safety, posted rules, signs, and written or oral safety instructions, (e) using appropriate protective clothing and equipment in any hazardous area, (f) following all material traffic regulations and not engaging in reckless driving or improper operation of a motor vehicle while on property owned or controlled by the State or while driving a State vehicle, and (g) not possessing any explosive, firearm, or other dangerous weapon on State property, or attempt to bring such explosive, firearm, or other dangerous weapon onto State property unless his or her State Agency requires such possession by the State Employee. A State Employee who wants to travel to and from work with a firearm and who possesses a lawful concealed-carry license or permit may secure the firearm in a vehicle parked on State property in accordance with the Firearm Concealed Carry Act (430 ILCS 66).

James T. Dimas, Secretary

## Secretary

## James T. Dimas, Secretary



### Chicago Office

401 South Clinton St.
Seventh Floor
Chicago IL 60607

**Phone:** (312) 793-1547
**Fax:** (312) 793-8064
**Fax:** (312) 793-2049
**TTY/Nextalk:** (866) 324-5553

### Springfield Office

100 South Grand Ave.
Harris Building –Third Floor
Springfield IL 62762

**Phone:** (217) 557-1601
**Fax:** (217) 557-1647
**TTY/Nextalk:** (866) 324-5553

Illinois

Illinois Division of Rehabilitation Services
Attention: Quinetta Wade
100 S. GRAND AVENUE
1ST FLOOR
SPRINGFIELD, IL 62762
Phone: 217-782-2093
Toll Free: 800-843-6154
Fax Number: 217-557-0142
TTY Number: 800-447-6404
Email address: Quinetta.Wade@illinois.gov
http://www.dhs.state.il.us/page.aspx?item=29737

Recent awards: BASIC-VR FY2018: H126A180018 , OIB FY2018: H177B180013 , RAND-SHEP FY2018: RANDS18PIL , SE FY2018: H187B180019 , TRAINING-LF P265100013

$\mathcal{M}$

# Discrimination & Harassment Policy at IDHS

## Our Policy

It is the policy of the Illinois Department of Human Services that all employees and individuals requesting services from the Department shall be free from discrimination or harassment* without regard to:

- Race
- Religion
- National Origin
- Age

- Ancestry
- Military Status
- Sexual Orientation
- Color

- Sex
- Arrest Record
- Disability
- Citizenship Status
- Marital Status

*Food Stamp Program applicants and participants are also protected against discrimination based on political affiliation.*

## It is AGAINST Our Policy to

- Deny you money, care, services or other benefits you are eligible to receive.
- Provide other eligible people with money, care, services or other benefits that are different from yours or provide them in a different way from the way we provide them to you if you are eligible to receive them.
- Treat you differently from other eligible people in the way you get your money, care, services or other benifits.
- Prohibit you from having the same advantages or privileges as other eligible people who receiv help from the Departement of Human Services.
- Treat you differently from other people in the way the Department of Human Services determines if you are eligible to receive money, care, services or other benifits.
- Deny or offer to other eligible people an opportunity that is different from the opportunities offered to you (if you are eligible) through the Department of Human Services. This includes the opportunity to take part in education, job training, community work programs and the opportunity to receive a hearing.

## Next Steps

If you feel that you have been discriminated against, you have the right to <u>File a Charge</u> with the Bureau of Civil Affairs.



James T. Dimas, Secretary

# Your Civil Rights – DHS 592

State of Illinois
Department of Human Services

IDHS 592 Your Civil Rights (pdf)



**Your Civil Rights**

## No Discrimination...

## No Harassment...

## No Excuses

### IDHS Cannot Take Any Of The Following Actions:

Deny you money, care, services or other benefits you are eligible to receive.

Provide other eligible people with money, care, services or other benefits that are different from yours or provide them in a different way from the way we provide them to you if you are eligible to receive them.

Treat you differently from other eligible people in the way you get your money, care, services or other benefits.

Prohibit you from having the same advantages or privileges as other eligible people who receive help from the Illinois Department of Human Services.

Treat you differently from other people in the way the Illinois Department of Human Services determines if you are eligible to receive money, care, services or other benefits.

Deny or offer to other eligible people an opportunity that is different from the opportunities offered to you (if you are eligible) through the Illinois Department of Human Services. This includes the opportunity to take part in education, job training, community work programs and the opportunity to receive a hearing.

### What Can I Do If I Think I Have Been Discriminated Against?

If you feel that you have been discriminated against, you have the right to file a charge with the Bureau of Civil Affairs. A written complaint must be filed within 180 days of the alleged action:

Fill out a Customer/Applicant Discrimination Claim Form (IL444-4026), which can be obtained at your local IDHS office, hospital, school or facility;

Send a written complaint to one of the following addresses:

Central Office/Chicago

401 S. Clinton, 2nd Floor

Chicago, IL 60607

312-793-1862 (V) or 312-793-3628 (TTY)

Central Office/Springfield

100 South Grand Avenue East

Springfield, IL 62704

217-524-7068 (V)

Under the ADA and Section 504 of the Rehabilitation Act of 1973, you are protected against discrimination based on disability. You have the right to file a grievance and may obtain a copy of the grievance form, Americans With Disabilities Act/Section 504 Grievance Request (IL444-4715) to do so. Grievances must be submitted within 30 days of the alleged violation to:

IDHS – ADA?Coordinator

Bureau of Accessibility and Safety Systems

401 S. Clinton, 7th Floor

Chicago, IL 60607

A determination will be made and written notification sent to you within 45 business days after receipt of the grievance. If you disagree with the decision, you may appeal to the Secretary of the Department within 10 business days after receipt of the determination.

### What Happens After a Charge is Filed?

An EEO/AA Officer will review your complaint immediately to determine whether there is substantial evidence to support the charge. You will receive a written notification at the conclusion of the investigation. If you are not in agreement with the findings of the investigator, you may appeal directly to the Chief of the Bureau of Civil Affairs in writing

at one of the above listed addresses. In addition, you may file a discrimination complaint with one of the following regulatory agencies:

Illinois Department of Human Rights

100 W. Randolph St., Suite 10-100

Chicago, IL 60601

312-814-6200 (V) or 312-263-1579 (TTY)

222 S. College St., 1st Floor

Springfield, IL 62704

217-785-5100 (V) or 217-263-5125 (TTY)

U.S. Equal Employment Opportunity Commission

500 W. Madison, Room 2800

Chicago, IL 60661

312-353-2713 (V) or 312-353-2421 (TTY)

United States Department of Health and Human Services

Office of Civil Rights

233 North Michigan Avenue, Suite 240

Chicago, IL 60601

312-886-2359 (V) or 312-353-5693 (TTY)

### Department Policy

It is the policy of the Department of Human Services that all individuals requesting services from the Department shall be free from discrimination or harassment* without regard to:

• Race

- Color
- Religion
- Sex
- National Origin
- Age
- Disability
- Political Beliefs



## The Illinois Department of Human Services' Pledge

As part of our commitment to serve you, we will see to it that you:

Receive benefits for which you are eligible in a timely and uninterrupted manner.

Are treated fairly, with dignity, courtesy, and respect.

Have your questions answered in a way that you understand.

Receive referrals for agency supportive services and community resources.

Have your complaints and disagreements with agency actions or treatment reviewed and addressed.

If you have questions about any IDHS?program or do not know where your local IDHS office is, you may call the automated helpline 24 hours a day at:

1-800-843-6154 (V) or 1-800-447-6404 (TTY)

You may speak to a representative between: 8:00 a.m. - 5:00 p.m. Monday - Friday (except state holidays)

An IDHS representative will give you the address and telephone number of your local office. If you are physically unable to go to the office, a caseworker will call you on the telephone and interview you.

For answers to your questions, you may also write:

Illinois Department of Human Services

Bureau of Customer Support and Services

100 South Grand Avenue East, 2nd Floor

Springfield, Illinois 62762

Visit our website at: www.dhs.state.il.us

In accordance with Federal civil rights law and U.S. Department of Agriculture (USDA) civil rights regulations and policies, and U.S Department of Health and Human Services (HHS) policy, this institution is prohibited from discriminating based on race, color, national origin, sex, religious creed, disability, age, political beliefs, or reprisal or retaliation for prior civil rights activity in any program or activity conducted or funded by USDA.

Persons with disabilities who require alternative means of communication for program information (e.g. Braille, large print, audiotape, American Sign Language, etc.), should contact the Illinois Department of Human Services (IDHS)?office where they applied for benefits. Individuals who are deaf, hard of hearing or have speech disabilities may contact USDA through the Federal Relay Service at (800) 877-8339. Additionally, program information may be made available in languages other than English.

To file a program complaint of discrimination, complete the USDA Program Discrimination Complaint Form, (AD-3027) found online at: http://www.ascr.usda.gov/complaint_filing_cust.html, and at any USDA office, or write a letter addressed to USDA and provide in the letter all of the information requested in the form. To request a copy of the complaint form, call (866) 632-9992. Submit your completed form or letter to USDA by:

(1) mail:

U.S. Department of Agriculture

Office of the Asst. Sec. for Civil Rights

1400 Independence Avenue, SW

Washington, D.C. 20250-9410;

(2) fax: (202) 690-7442; or

(3) email: program.intake@usda.gov.

You may also write IDHS at:

Illinois Department of Human Services

Bureau of Civil Affairs

401 South Clinton St., 2nd Floor

Chicago, Illinois 60607

or call the IDHS?Helpline Number at 1-800-843-6154 (V) or 1-800-447-6404 (TTY).

IDHS, HHS, and USDA?are equal opportunity providers and employers.

The State of Illinois provides reasonable accommodations according to Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act of 1990.

DHS 592 (R-12-15) Your Civil Rights   Printed by the Authority of the State of Illinois.   8,000 copies P.O.# 16-0709



James T. Dimas, Secretary

# Sample Abuse/ Neglect Policy

## DHS Office of the Inspector General's Sample Policy for Reporting Abuse/Neglect Allegations

### I. Purpose

To establish a uniform policy and procedures for reporting and responding to all abuse/neglect allegations and deaths.

### II. Authority

- Department of Human Services Act *(20 ILCS 1305/1-17)*
- Section 7.3 of the Mental Health and Developmental Disabilities Administrative Act *(20 ILCS 1705/)*
- Illinois Administrative Code, Chapter 1, Title 59, Part 50 (herein referred to as "Rule 50")
- Section 25 of the Health Care Worker Background Check Act *(225 ILCS 46/)*
- Nursing Home Care Act *(210 ILCS 45/)*
- Section 11-9.5 of the Illinois Criminal Code of 1961, Sexual Misconduct with a Person with a Disability *(720 ILCS 5/)*
- Mental Health and Developmental Disabilities Code *(405 ILCS 5/)*
- Substance Abuse Confidentiality *(42 CFR 2/)*
- AIDS Confidentiality Act *(410 ILCS 305/)*
- MHDD Confidentiality Act *(740 ILCS 110/)*
- Freedom of Information Act *(5 ILCS 140/)*
- Health Insurance Portability and Accountability Act of 1996 (HIPAA), *(45 CFR, Parts 160, 162, and 164)*

### III. Policy

It is the policy and the responsibility of [AGENCY NAME] to report all allegations of abuse/neglect and deaths to the Office of the Inspector General in the Illinois Department of Human Services within the required time frames in an appropriate and thorough manner. All employees (which includes owners/operators, contractors, subcontractors and volunteers) of [AGENCY NAME] shall adhere to the standards set forth in this policy directive. Nothing in this policy directive precludes the agency's responsibilities as outlined in Illinois Administrative Code, Chapter 1, Title 59, Part 50, herein referred to as "Rule 50."

### IV. Objective

To describe the procedures for reporting and responding to allegations of abuse, neglect, death, and other reportable incidents to the Office of the Inspector General (OIG).

### V. Responsibilities

The [AGENCY/JOB TITLE] shall ensure that all employees (which includes owners/operators, contractors, subcontractors and volunteers) are trained upon hire, and at least biennially thereafter, and are held responsible for carrying out the designated duties set forth in Rule 50 and this policy. The Rule 50 training should include, but not be limited to, the fact that identities of employees with substantiated physical abuse, sexual abuse, or egregious neglect shall be referred to the Department of Public Health's Health Care Worker Registry except when any appeal is pending or successful.

### VI. Definitions

**Abuse:** See definitions for physical abuse, sexual abuse, mental abuse and financial exploitation.

**Access:** Admission to a community agency or facility for the purpose of conducting imminent risk assessments, conducting investigations, monitoring compliance with a written response, or completing any other statutorily assigned duty, such as annual unannounced site visits, including but not limited to conducting interviews and obtaining and reviewing any documents or records that OIG believes to be pertinent to an investigation.

**Act:** The Department of Human Services Act [20 ILCS 1305].

**Administrative action:** Measures taken by the community agency or the facility as a result of the findings or recommendations contained in the investigation that protect individuals from abuse, neglect, or financial exploitation, prevent recurrences, and eliminate problems.

**Aggravating circumstance:** A factor that is attendant to a finding and that tends to compound or increase the culpability of the accused.

**Allegation:** An assertion, complaint, suspicion or incident involving any of the following conduct by an employee, facility, or agency against an individual or individuals: mental abuse, physical abuse, sexual abuse, financial exploitation or neglect.

**Authorized Representative:** The administrative head or executive director of a community agency appointed by the community agency's governing body with overall responsibility for fiscal and programmatic management, or the facility director or hospital administrator of a Department facility. If this person is implicated in an investigation, the governing body of the community agency or the Secretary of the Department shall be deemed the authorized representative for that investigation.

**Bodily harm:** Any injury, damage, or impairment to an individual's physical condition, or making physical contact of an insulting or provoking nature with an individual.

**Community agency or agency:** A community agency or program licensed, funded, or certified by the Department but not licensed or certified by any other human services agency of the State, to provide mental health service or developmental disabilities service.

**Complainant:** The person who reports a death or an allegation of abuse, to include financial exploitation, or neglect, directly to OIG and is not the required reporter.

**Complaint:** A report of a death or an allegation of abuse, to include financial exploitation or neglect reported directly to the OIG Hotline.

**Credible evidence:** Any evidence that relates to the allegation or incident and that is considered believable and reliable.

**Day:** Working day, unless otherwise specified.

**Deflection:** A situation in which an individual is presented for admission to a facility or agency and the facility staff or agency staff do not admit that individual. Deflection includes triage, redirection and denial of admission.

**Department:** The Department of Human Services.

**Egregious neglect:** A finding of neglect as determined by the Inspector General that represents a gross failure to adequately provide for, or a callous indifference to, the health, safety, or medical needs of an individual and results in an individual's death or other serious deterioration of an individual's physical condition or mental condition.

**Employee:** Any person who provides services at the facility or the community agency on or off site. The service relationship can be with the individual or the agency. Also "employee" includes any employee or contractual agent of the Department of Human Services or the community agency involved in providing or monitoring or administering mental health or developmental disability services. This includes but is not limited to: owners, operators, payroll personnel, contractors, subcontractors, and volunteers. Employee also includes someone who is no longer working for an agency or facility, but is the subject of an ongoing investigation for which OIG has jurisdiction.

**Facility:** A mental health facility or developmental disabilities center operated by the Department.

**Final report:** A completed investigative report approved by the Inspector General that summarizes the evidence and that indicates whether the allegation of abuse, financial exploitation or neglect is substantiated, unsubstantiated, or unfounded based on the evidence gathered from the investigation, when the reconsideration and response period has expired.

**Financial exploitation:** Taking unjust advantage of an individual's assets, property, or financial resources through deception, intimidation, or conversion for the employee's, facility's, or agency's own advantage or benefit.

**Finding:** The Office of the Inspector General's determination regarding whether an allegation is substantiated, unsubstantiated, or unfounded.

**Health Care Worker Registry or Registry:** The Health Care Worker Registry created by the Nursing Home Care Act (210 ILCS 45/).

**Individual:** Any person receiving mental health services developmental disabilities services or both from a facility or agency, while either on-site or off-site.

**Investigative report:** A written report that summarizes the evidence in an investigation, addresses the elements of the allegation, and contains a recommendation as to whether the findings of the investigation

indicate that the allegation should be substantiated, unsubstantiated, or unfounded.

**Investigator:** A staff person employed by an OIG-approved community agency, who has current investigative skills training by OIG, has been designated by the agency's authorized representative, and has been authorized by OIG to carry out the investigative duties as set forth in OIG's Community Agency Investigative Protocol.

**Medical treatment:** Any treatment, other than diagnostic procedures, that may only be ordered or rendered to an individual by a physician or dentist regarding an injury.

**Mental abuse:** The use of demeaning, intimidating, or threatening words, signs, gestures, or other actions by an employee about an individual and in the presence of an individual or individuals that results in emotional distress or maladaptive behavior, or could have resulted in emotional distress or maladaptive behavior, for any individual present.

**Mitigating circumstance:** A condition that is attendant to a finding, does not excuse or justify the conduct in question, but may be considered in evaluating the severity of the conduct, the culpability of the accused, or both the severity of the conduct and the culpability of the accused.

**Neglect:** An employee's, agency's, or facility's failure to provide adequate medical care, personal care, or maintenance, and that, as a consequence, causes an individual pain, injury, or emotional distress, results in either an individual's maladaptive behavior or the deterioration of an individual's physical condition or mental condition, or places an individual's health or safety at substantial risk of possible injury, harm or death.

**Non-accidental:** Occurring with volition, consciousness, not occurring by chance.

**OIG:** The Office of the Inspector General in the Illinois Department of Human Services.

**OIG Protocol Coordinator:** Person within OIG designated as the Coordinator for the Investigative Protocol for Community Agencies.

**Physical abuse:** An employee's non-accidental and inappropriate contact with an individual that causes bodily harm. "Physical abuse" includes actions that cause bodily harm as a result of an employee directing an individual or person to physically abuse another individual.

**Preponderance of the evidence:** Proof sufficient to persuade the finder of fact that a fact sought to be proved is more likely true than not true.

**Recommendation:** An admonition, separate from a finding, that requires action by the facility, agency, or Department to correct a systemic issue, problem or deficiency identified during an investigation.

**Required reporter:** Any employee who suspects, witnesses, or is informed of an allegation of any one or more of the following: mental abuse, physical abuse, sexual abuse, financial exploitation or neglect.

**Routine programmatic:** Refers to services provided as part of the individual's habilitation plan, treatment plan, or as a regular or ongoing component of the community agency's or facility's general services or practices.

**Sexual abuse:** Any sexual behavior, sexual contact or intimate physical contact between an employee and an individual, including an employee's coercion or encouragement of an individual to engage in sexual activity that results in sexual contact, intimate physical contact, sexual behavior or intimate physical behavior.

**Sexual contact:** Inappropriate sexual contact between an employee and an individual involving either an employee's genital area, anus, buttocks or breast(s) or an individual's genital area, anus, buttocks or breast(s). Sexual contact also includes sexual contact between individuals that is coerced or encouraged by an employee.

**Substantiated:** There is a preponderance of the evidence to support the allegation.

**Unfounded:** There is no credible evidence to support the allegation.

**Unsubstantiated:** There is credible evidence, but less than a preponderance of evidence, to support the allegation.

# VII. Procedures

A. Reporting

1. If an employee witnesses, is told of, or suspects an incident of physical abuse, sexual abuse, mental abuse, financial exploitation, neglect or a death has occurred, the employee or agency shall report the allegation to the OIG Hotline (1-800-368-1463). The employee or agency shall report the allegation immediately, but no later than the time frames specified herein.

2. Nothing precludes the employee from reporting the allegation to the agency according to its procedures. [THE AGENCY MAY DETAIL INTERNAL PROCEDURES HERE.]

3. The agency shall then ensure that allegations of abuse, neglect and deaths are reported to OIG no later than the time frames specified herein.

B. Reporting to OIG

1. All allegations of abuse/neglect and death shall be reported to the OIG within the following required time frames:

   a. **Four-hour reporting** - Within four hours after the initial discovery of an incident of alleged abuse or neglect, all allegations shall be reported to OIG's Hotline number: 1-800-368-1463. Four-hour reporting includes the following:

      i. Any allegation of abuse, including financial exploitation;

      ii. Any allegation of neglect; and

      iii. Any injury or death of an individual that occurs within the agency's programs when abuse or neglect is suspected.

   b. At a minimum, the following details must be reported to the OIG Hotline concerning the allegation or death:

      i. Information about the victim, including name, date of birth, sex, disability, and identification number and/or social security number (if known);

      ii. Information about the incident, including what happened, when it happened, where it happened, how it happened and the identification of all witnesses;

      iii. Information about the accused (if known), including name, contact information and if the accused is presently working with or will be working with the alleged victim, and

      iv. Information about the person initiating the complaint, including name, contact information, and relationship to the victim.

   c. Deaths: The following reports of death shall be made to the OIG Hotline within 24 hours after initial discovery:

      i. Any death occurring within 14 calendar days after discharge or transfer from a residential program;

      ii. Any death occurring within 24 hours after deflection from a residential program; and

      iii. Any other death of an individual occurring within a residential program or at any DHS-funded site even though not alleged to be a result of abuse or neglect.

   d. Screening, delaying or withholding reports of incidents or allegations of abuse or neglect from OIG is strictly prohibited.

   e. It is a violation of the Act to take retaliatory action against an employee who acts in good faith in conformance with his or her duties as a required reporter.

2. OIG Hotline: The OIG Hotline telephone number (1-800-368-1463) shall be communicated to individuals and guardians at the time of admission and the number shall be posted in plain sight at each community agency location where individuals receive services.

C. Process for Notification of Alleged Victim and Guardian

1. After OIG notifies the [AGENCY/JOB TITLE] that an allegation of abuse or neglect has been received, the [AGENCY/JOB TITLE] shall notify the victim or his/her legal guardian, if applicable, of the allegation within 24 hours.

2. If the [AGENCY/JOB TITLE] is unable to reach the guardian by phone, a letter of notification shall be sent within 24 hours.

D. Assignment of the Investigation

1. OIG shall determine within one working day who shall have primary responsibility for the investigation.

2. When OIG determines that this agency may investigate, OIG retains the right to take primary responsibility for the investigation at any time.

E. Incident Management/Investigation

1. If an allegation would meet the definition of abuse or neglect in OIG Rule 50, the [AGENCY/JOB TITLE] shall:

   a. Ensure the immediate care and protection of the victim;

   b. Obtain medical examinations, when applicable, and fully document the findings;

   c. Remove accused employees from having contact with any individuals at the agency, when there is credible evidence supporting an allegation of abuse, pending the outcome of any

further investigation, prosecution or disciplinary action against the employee.

d. Report for emergency response when necessary:

    i. When the [AGENCY/JOB TITLE] determines that a medical emergency exists, immediately contact 911 for assistance;

    ii. When the [AGENCY/JOB TITLE] determines that law enforcement assistance is needed, immediately contact the appropriate local law enforcement authority, and notify OIG within one working day of the date and time the local law enforcement authority was notified and the name of the officer who took the report.

2. If there is an allegation or indication of a physical injury, sexual assault or any situation where a victim's health is in question, the agency shall immediately seek appropriate medical attention.

3. The [AGENCY/JOB TITLE] shall ensure that OIG is notified of any changes in the alleged victim's condition, the nature of the injury or allegation, the involvement of any law enforcement authority, or the work status of the accused.

4. Pursuant to statute, agencies are prohibited from conducting abuse/neglect investigations without the authorization of OIG. The agency shall request approval from OIG prior to conducting its own investigation and before attempting to gather information related to an open investigation. If, however, the agency has an approved investigative protocol for the current fiscal year, the agency is required to begin the initial steps of the investigation as trained by OIG, unless directed otherwise by OIG or a law enforcement authority.

5. Response and examination of scene of incident: Unless otherwise directed by OIG, ensure appropriate responses to the allegation, which may include the need to secure the scene of the incident and preserve evidence, when applicable:

a. Securing the scene entails cordoning off and preventing access to and removal of objects from the area where the incident occurred. When there may be physical or visual evidence, the scene should be photographed from several angles, and nothing in the scene will be altered (e.g., floors washed, furniture moved, clothing laundered) until directed to do so by the appropriate investigating entity.

b. Immediately securing and preserving all relevant physical evidence.

    i. After securing the scene and if either directed by law enforcement or OIG to secure evidence or if the agency has an approved investigative protocol for the current fiscal year, then diagram the location of, clearly photograph, and collect all evidence placing it in a separate and appropriate container (e.g., paper bag or envelope). Under no circumstance should any item of evidence be placed in a plastic bag.

    ii. In an allegation of sexual abuse, ensure that the victim has a complete medical examination before the victim showers or bathes, unless the victim objects.

    iii. Identify and separate potential witnesses, when applicable.

    iv. Copy and/or impound relevant documents as directed by the appropriate investigating entity.

    v. All evidence collected shall be maintained in a secure and locked space with access only by the person collecting the evidence, until transferred to the investigating entity. The chain of custody must be maintained and documented for all evidence collected.

6. Photographs

a. When injuries are alleged to be the result of abuse or neglect, the [AGENCY/JOB TITLE] shall ensure that they are photographed immediately, even if the injury is not evident at the time.

    i. Each photograph taken will be annotated by a label on the reverse with identifiers including the victim's name, date and time of the photograph, location of the injury, name of the person taking the photograph, and OIG case number, when known.

    ii. Take photographs both with and without an item of standard measurement, such as a ruler.

    iii. Always include an identifying photo, one which shows both the alleged victim's face and injury site in the same photograph.

    iv. List all photographs taken on a photographic log.

b. The privacy of the individual must be considered in all photographs. No photograph(s) will be taken of a female's breast or of any person's genital area unless necessary. If such are taken,

only that portion of the area in question should be photographed and every effort should be made to insure that the photograph is taken by a person of the same gender as the alleged victim.

7. Initial written statements

a. When accused persons and potential witnesses are separated pursuant to (VI)(E)(5)(a)(2) ((3)) above, [AGENCY/JOB TITLE] may require written statements from each person, detailing what he or she knows about the alleged abuse/neglect or other incident. The statement must be written in a quiet and private location and be secured for delivery to the primary investigating entity.

b. The statement shall be obtained immediately upon the report of an allegation.

c. The person providing the statement may also be required to draw a diagram of the location of the allegation, identifying all persons present.

8. Additional Responsibilities

a. If, at any point, OIG determines, and informs the agency that there is credible evidence of a possible criminal act, the agency shall notify the appropriate law enforcement authority immediately, but no later than 24 hours after such discovery, and shall notify OIG of that notification and any report/complaint number(s) within one working day.

b. Confidentiality of Information

i. Any allegation(s) or investigations of reports of abuse and neglect shall remain confidential until a final report is completed and approved by OIG.

ii. Information concerning diagnosis and treatment for alcohol or drug abuse shall be disclosed to OIG in accordance with federal regulations. OIG investigations are exempted from restrictions under the federal Health Information Portability and Accountability Act (HIPAA).

iii. Information concerning tests for human immunodeficiency virus (HIV) and diagnosis and treatment for acquired immune deficiency syndrome (AIDS) shall be disclosed to OIG only in accordance with the AIDS Confidentiality Act.

iv. All personal health-related information contained in investigative reports shall remain confidential in accordance with the Health Insurance Portability and Accountability Act of 1996 (HIPAA).

F. Processing Investigative Reports

1. If the agency has been assigned primary responsibility, the investigative report to the Inspector General shall contain a narrative summary of the investigation which shall include:

a. A statement as to whether the findings of the investigation should be substantiated, unsubstantiated, or unfounded;

b. For substantiated cases, mitigating and/or aggravating circumstances, if any; and

c. Any actions taken by this agency as a result of the case.

2. The [AGENCY/JOB TITLE] shall maintain a local investigative case file containing a copy of the investigative report and copies of all investigatory materials. This includes all evidence, such as photographs, interview statements and records. The file shall also include documentation of all corrective actions taken as a result of the case.

3. Notifications, Final Report Findings: After receiving a final report or notification of acceptance from OIG, if the alleged victim is an individual with a guardian, the [AGENCY/JOB TITLE] shall inform the individual and the guardian, in an appropriate manner, whether the allegation was substantiated, unsubstantiated or unfounded.

4. Confidentiality of Final Reports

a. Final reports of substantiated investigations shall be released only in accordance with Section 1-17 of the DHS Act, Section 6 of the Abused and Neglected Long Term Care Facility Residents Reporting Act, federal confidentiality statutes, the Illinois Mental Health and Developmental Disabilities Confidentiality Act, the Freedom of Information Act (OIG investigations are governed by this Act), and court orders.

b. Final reports of unsubstantiated or unfounded allegations shall remain confidential except that final reports shall be released pursuant to Section 6 of the Abused and Neglected Long Term

Care Facility Residents Reporting Act (210 ILCS 30/6), Section 1-17(m) of the Department of Human Services Act (20 ILCS 1305), or a valid court order.

c. The identity of any person as the complainant shall remain confidential in accordance with the Freedom of Information Act or unless authorized by the complainant.



**State of Illinois**
**Department of Human Services**

# Your
# Civil Rights

## No Discrimination...
## No Harassment...
## No Excuses

## Department Policy

It is the policy of the Illinois Department of Human Services that all individuals requesting services from the Department shall be free from discrimination or harassment* without regard to:

◆ Race          ◆ Color
◆ Religion       ◆ Sex
◆ National Origin ◆ Age
◆ Disability     ◆ Political Beliefs

## The Illinois Department of Human Services' Pledge

As part of our commitment to serve you, we will see to it that you:

◆ Receive benefits for which you are eligible in a timely and uninterrupted manner.

◆ Are treated fairly, with dignity, courtesy, and respect.

◆ Have your questions answered in a way that you understand.

◆ Receive referrals for agency supportive services and community resources.

◆ Have your complaints and disagreements with agency actions or treatment reviewed and addressed.

If you have questions about any IDHS program or do not know where your local IDHS office is, you may call the automated helpline 24 hours a day at:
1-800-843-6154 (V) or 1-800-447-6404 (TTY)
You may speak to a representative between 8:00 a.m. - 5:00 p.m. Monday - Friday (except state holidays)

An IDHS representative will give you the address and telephone number of your local office. If you are physically unable to go to the office, a caseworker will call you on the telephone and interview you.

For answers to your questions, you may also write:
Illinois Department of Human Services
Bureau of Customer Support and Services
100 South Grand Avenue East, 2nd Floor
Springfield, Illinois 62762

Visit our website at: www.dhs.state.il.us

In accordance with Federal civil rights law and U.S. Department of Agriculture (USDA) civil rights regulations and policies, and U.S Department of Health and Human Services (HHS) policy, this institution is prohibited from discriminating based on race, color, national origin, sex, religious creed, disability, age, political beliefs, or reprisal or retaliation for prior civil rights activity in any program or activity conducted or funded by USDA.

Persons with disabilities who require alternative means of communication for program information (e.g. Braille, large print, audiotape, American Sign Language, etc.), should contact the Illinois Department of Human Services (IDHS) office where they applied for benefits. Individuals who are deaf, hard of hearing or have speech disabilities may contact USDA through the Federal Relay Service at (800) 877-8339. Additionally, program information may be made available in languages other than English.

To file a program complaint of discrimination, complete the USDA Program Discrimination Complaint Form, (AD-3027) found online at: http://www.ascr.usda.gov/complaint_filing_cust.html, and at any USDA office, or write a letter addressed to USDA and provide in the letter all of the information requested in the form. To request a copy of the complaint form, call (866) 632-9992. Submit your completed form or letter to USDA by:
(1) mail:    U.S. Department of Agriculture
             Office of the Asst. Sec. for Civil Rights
             1400 Independence Avenue, SW
             Washington, D.C. 20250-9410;
(2) fax:     (202) 690-7442; or
(3) email:   program.intake@usda.gov.

You may also write IDHS at:
             Illinois Department of Human Services
             Bureau of Civil Affairs
             401 South Clinton St., 2nd Floor
             Chicago, Illinois 60607

or call the IDHS Helpline Number at
1-800-843-6154 (V) or 1-800-447-6404 (TTY).

IDHS, HHS, and USDA are equal opportunity providers and employers.

The State of Illinois provides reasonable accommodations according to Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act of 1990.



**Illinois Department of Human Services**

DHS 592 (R-12-15) Your Civil Rights
Printed by the Authority of the State of Illinois.
8,000 copies   P.O.# 16-0709



## IDHS Cannot Take Any Of The Following Actions:

◆ Deny you money, care, services or other benefits you are eligible to receive.

◆ Provide other eligible people with money, care, services or other benefits that are different from yours or provide them in a different way from the way we provide them to you if you are eligible to receive them.

◆ Treat you differently from other eligible people in the way you get your money, care, services or other benefits.

◆ Prohibit you from having the same advantages or privileges as other eligible people who receive help from the Illinois Department of Human Services.

◆ Treat you differently from other people in the way the Illinois Department of Human Services determines if you are eligible to receive money, care, services or other benefits.

◆ Deny or offer to other eligible people an opportunity that is different from the opportunities offered to you (if you are eligible) through the Illinois Department of Human Services. This includes the opportunity to take part in education, job training, community work programs and the opportunity to receive a hearing.

## What Can I Do If I Think I Have Been Discriminated Against?

If you feel that you have been discriminated against, you have the right to file a charge with the Bureau of Civil Affairs. A written complaint must be filed within 180 days of the alleged action:

◆ Fill out a *Customer/Applicant Discrimination Claim Form* (IL444-4026), which can be obtained at your local IDHS office, hospital, school or facility;

◆ Send a written complaint to one of the following addresses:

**Central Office/Chicago**
401 S. Clinton, 2nd Floor
Chicago, IL 60607
312-793-1862 (V) or 312-793-3628 (TTY)

**Central Office/Springfield**
100 South Grand Avenue East
Springfield, IL 62704
217-524-7068 (V)

Under the ADA and Section 504 of the Rehabilitation Act of 1973, you are protected against discrimination based on disability. You have the right to file a grievance and may obtain a copy of the grievance form, *Americans With Disabilities Act/Section 504 Grievance Request* (IL444-4715) to do so. Grievances must be submitted within 30 days of the alleged violation to:

**IDHS – ADA Coordinator**
Bureau of Accessibility and Safety Systems
401 S. Clinton, 7th Floor
Chicago, IL 60607

A determination will be made and written notification sent to you within 45 business days after receipt of the grievance. If you disagree with the decision, you may appeal to the Secretary of the Department within 10 business days after receipt of the determination.

## What Happens After a Charge is Filed?

An EEO/AA Officer will review your complaint immediately to determine whether there is substantial evidence to support the charge. You will receive a written notification at the conclusion of the investigation. If you are not in agreement with the findings of the investigator, you may appeal directly to the Chief of the Bureau of Civil Affairs in writing at one of the above listed addresses. In addition, you may file a discrimination complaint with one of the following regulatory agencies:

**Illinois Department of Human Rights**
100 W. Randolph St., Suite 10-100
Chicago, IL 60601
312-814-6200 (V) or 312-263-1579 (TTY)

222 S. College St., 1st Floor
Springfield, IL 62704
217-785-5100 (V) or 217-263-5125 (TTY)

**U.S. Equal Employment Opportunity Commission**
500 W. Madison, Room 2800
Chicago, IL 60661
312-353-2713 (V) or 312-353-2421 (TTY)

**United States Department of Health and Human Services**
Office of Civil Rights
233 North Michigan Avenue, Suite 240
Chicago, IL 60601
312-886-2359 (V) or 312-353-5693 (TTY)

James T. Dimas, Secretary

# IDHS Discrimination/Harassment Policy Statement

For the Fiscal Year 2017

It is the policy of the Department of Human Services (DHS) that its employees and applicants for employment will be free from discrimination and harassment with regard to employment practices or in the workplace. This DHS policy provides for freedom from discrimination and harassment and prohibits exclusion from personnel actions for reasons related to race, color, religion, sex, national origin, ancestry, age, marital status, physical or mental disability, genetic information, pregnancy, citizenship status, military status, order of protection status, military discharge status or sexual orientation in connection with employment. Further, the DHS prohibits the discriminatory exclusion of a person(s) from employment, examination, appointment, training, recruitment, promotion, retention, discipline or any other personnel action.

The nondiscrimination and affirmative action policy of the DHS is in conformance with: Title VII of the Civil Rights Act of 1964; the Civil Rights Act of 1991; the Equal Pay Act of 1963; Title I of the Americans with Disabilities Act of 1990; the Illinois Human Rights Act; Section 504 of the Rehabilitation Act; HIPAA General Administrative Requirements; HIPAA Security and Privacy; Non-Discrimination on the Basis of Disability in State and Local Government Services; Section 504 Grievance Procedure; the Age Discrimination in Employment Act of 1967; the Nutrition Act of 2008; Genetic Information Nondiscrimination Act of 2008; the Pregnancy Discrimination Act; the Americans with Disabilities Act of 1990; and the Americans with Disabilities Amendments Act of 2008. Any DHS employee or applicant for employment, who feels that he or she has been discriminated against or harassed on any of the bases stated above, is free to file a discrimination or harassment complaint without fear of reprisal or retaliation.

Consistent with its stated policy on nondiscrimination and affirmative action, the DHS is committed to undertaking affirmative action to correct any apparent underutilization, in all levels of employment, of women, persons who represent racial minorities, and people with disabilities as defined in federal and State statutes and regulations, i.e., Black or African American, Hispanic or Latino, Asian, American Indian or Alaska Native, and Native Hawaiian or Other Pacific Islander in all levels of employment. The DHS is also committed to ensuring that appropriate training is provided to maximize the promotion and retention of staff whose employment assists the department in meeting its affirmative action goals.

The Chief EEO/AA Officer has direct access to the Secretary of DHS, to discuss EEO/AA issues, progress, and discrimination complaints. The positive support of all DHS managers, administrative staff, and personnel is expected and required, in order to have a workplace that is free from discrimination or harassment, and that supports affirmative action for women, minorities, and persons with disabilities.



# Civil Affairs

In compliance with the Americans with Disabilities Act and the Illinois Human Rights Act, State agencies must ensure that the employment process is accessible to persons with disabilities. Specifically, these laws require that the State provide <u>reasonable accommodations</u> upon request by individuals participating in all steps of the employment process. This includes the initial testing phases of the candidate selection process for state positions as well as the subsequent employment interview process.

Any and all accommodation requests by applicants throughout the State employment process should be appropriately reviewed and considered by the **ADA Coordinator and human resources staff** in state hiring agencies.

If you need such an accommodation, please contact:

**Martha Younger-White**, Bureau Chief, Bureau of Accessibility and Job Accommodation
Voice: (312) 793-0034
TTY: (888) 614-2385
FAX: (312) 793-2406

## Mission to Our Customers

The Bureau of Civil Affairs strives to provide fair and unbiased treatment to employees and individuals requesting services from the Department of Human Services. We strive to create an environment free from discrimination and harassment for those we employ as well as those customers we serve.

Ganapathi Ramaswamy, Civil Affairs, EEO/AA Director

## Contact Us

If you have any questions or concerns about discrimination, harassment, or the process to file a charge you can call the Bureau of Civil Affairs Monday-Friday 8:30 am - 5:00 pm at one of the following numbers:

**Northern Illinois**
Chicago Office
(312) 793-8300

**Central Illinois**
Springfield Office
(217)524-7068



James F. Dimas, Secretary

# After a Charge is Filed

## What to Expect

After a charge is filed and received by the Bureau of Civil Affairs, the following will occur:

1. An EEO/AA officer will review your complaint and conduct an investigation.
2. A determination will be made whether there is substantial evidence to support the charge.
3. You will receive a written notification at the conclusion of the investigation.
4. If you are **not in agreement** with any of the findings of the investigator, you may appeal directly to the Chief of the Bureau of Civil Affairs in writing at the following address:

   BCA Chicago
   Chief of the Bureau of Civil Affairs
   401 S. Clinton, 4th Floor
   Chicago, IL 60607

## Additional Regulatory Agencies

In addition, you may file a discrimination complaint with one of the following regulatory agencies:

**Illinois Department of Human Rights**
100 W. Randolph St., Suite 10-100
Chicago, IL 60601

(312) 814-6200 (V)
(312) 263-1579 (TTY)

**Illinois Department of Human Rights**
222 S. College St., 1st Floor
Springfield, IL 62706

(217) 785-5100 (V)
(217) 263-5125 (TTY)

**U.S. Equal Employment Opportunity Commission**
500 W. Madison, Room 2800
Chicago, IL 60661

(312) 353-2713 (V)
(312) 253-2421 (TTY)

## Food Assistance (SNAP) Specific

Finally, if you have applied for food assistance and feel that you have been discriminated against, you may send a written complaint to:

**United States Department of Agriculture**
Director, Office of Civil Rights
Room 326-W Whitten Building
1400 Independence Ave, SW
Washington, D.C.  20250-9410



James T. Dimas, Secretary

# Reasonable Accommodation

## Notice

In compliance with the Americans with Disabilities Act and the Illinois Human Rights Act, State agencies must ensure that the employment process is accessible to persons with disabilities. Specifically, these laws require that the State provide reasonable accommodations upon request by individuals participating in all steps of the employment process. This includes the initial testing phases of the candidate selection process for state positions as well as the subsequent employment interview process. Any and all accommodation requests by applicants throughout the State employment process should be appropriately reviewed and considered by **the ADA Coordinator and human resources staff** in state hiring agencies. If you need such an accommodation, please contact:

Martha Younger-White, Bureau Chief, Bureau of Accessibility and Job Accommodation
Voice: (312) 793-0034
TTY: (888) 614-2385
FAX: (312) 793-2406

## What is Reasonable Accommodation?

Reasonable Accommodation is modifications or adjustments to the job application process and the work environment that enable qualified applicants or employees with disabilities to be considered for a position, to perform the essential functions of a position in the manner or circumstances under which the position held or desired is customarily performed, and to enjoy equal benefits and privileges of employment.

Reasonable Accommodation Frequently Asked Questions

## Who can receive these services?

State of Illinois Department of Human Resources job applicants and/or DHS employees with disabilities can apply for a Reasonable Accommodation request.

## How to apply?

Complete and submit the following two (2) forms to your immediate supervisor who will forward within 5 business days to your Division/Facility Reasonable Accommodation Liaison. The Reasonable Accommodation Liaison will submit all signed forms to the Bureau of Job Accommodation:

- IL444-4231 - Request for Reasonable Accommodation (.pdf) (expandable) - (R-08-16)
- IL444-4235 - REQUEST FOR REASONABLE ACCOMMODATION - NEW JOB CANDIDATE (.pdf) (expandable) - (N-08-16)
- IL444-4232 - Physician's Medical Review (pdf) - (R-08-12)

## Who is my Reasonable Accommodation Liaison?

Please contact (217) 782-7691 Voice or (217) 557-5564 TTY. A staff will refer you to an appropriate Reasonable Accommodation Liaison based on the division and location where you work or with whom you are applying for employment.

## More Info & Resources

Reasonable accommodations may be categorized as follows:

- **Restructuring and Modification Accommodations**
  These include, but are not limited to, removal of nonessential tasks, job modifications, rearrangement of office furniture, removal of desk drawers, and flexible time to allow for transportation or medical schedules;

- **Technological and Accessibility Accommodations**
  These include, but are not limited to, dictating machines, voice-activated equipment, push-button telephones, opticons, TTY, hand controls for dictating devices, speaker phones, telephone amplifiers, typewriters, braille writers, orthopedic desk chairs, and other adaptive office furniture and audio-looping systems as well as architectural modifications; and

- **Assistive Care Accommodations**
  These include, but are not limited to, readers, drivers, interpreters, and assistants.

Reasonable accommodation requests may arise any time the employee's or applicant's disability or job changes. If you have questions on this topic, call Bureau of Job Accommodation at (217) 782-7691 Voice or

James I. Dimas, Secretary

# Bureau of Accessibility & Job Accommodation

## Notice

In compliance with the Americans with Disabilities Act and the Illinois Human Rights Act, State agencies must ensure that the employment process is accessible to persons with disabilities. Specifically, these laws require that the State provide reasonable accommodations upon request by individuals participating in all steps of the employment process. This includes the initial testing phases of the candidate selection process for state positions as well as the subsequent employment interview process. Any and all accommodation requests by applicants throughout the State employment process should be appropriately reviewed and considered by **the ADA Coordinator and human resources staff** in state hiring agencies. If you need such an accommodation, please contact:

Martha Younger-White, Bureau Chief, Bureau of Accessibility and Job Accommodation
Voice: 312/793-0034
TTY: 888/614-2385
FAX: 312/793-2406

## Our Mission

Provide timely, accurate information and assistance to support actualization of a goal of self-sufficiency and independence for DHS clients, consumers, and customers

## Our Values

Inclusion and Quality Customer Service

**Chicago Office**

401 South Clinton, Third Floor
Chicago IL, 60607
Phone: (312) 793-0034
TTY: (888) 614-2385
Fax: (312) 793-2406

**Springfield Office**

100 South Grand Ave East, Second Floor
Springfield IL, 62762
Phone: (217) 782-7691
TTY: (888) 614-2387
Fax: (312) 793-2406

## Bureau of Accessibility & Job Accommodation:

Bureau of Accessibility and Job Accommodation (BAJA) is is responsible for ensuring accessibility to DHS services and programs by people with disabilities in accordance with the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. In addition, BAJA is the program designated by the DHS Secretary to carry out the Department's legal obligations under Title I of the Americans with Disabilities Act of 1990, Illinois Human Rights Act and Section 504 of the Rehabilitation Act regarding Reasonable Accommodation.

i